UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

NEW YORK STATE RIFLE & PISTOL ASSOCIATION,
INC., *et al.*,

                *Plaintiffs*,

     -against-                         Case No. 1:22-CV-00907
                                             (MAD / CFH)

STEVEN A. NIGRELLI, in his official capacity as
Acting Superintendent of the New York State Police, *et al.*,

                *Defendants*.
----------------------------------------------------------------------X

## STATE DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

LETITIA JAMES
Attorney General
State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Acting Superintendent Nigrelli
and Justice McNally


Michael G. McCartin, Bar Roll No. 511158
  Assistant Attorney General | Special Counsel
Shannan Krasnokutski, Bar Roll No. 512932
  Assistant Attorney General

November 16, 2022

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT.......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

STANDARD OF REVIEW ............................................................................................... 5

ARGUMENT ....................................................................................................................... 6

   I.   UNDER BINDING SECOND CIRCUIT PRECEDENT, THE ORGANIZATIONAL
       PLAINTIFF LACKS STANDING ...................................................................... 6

   II.  THE INDIVIDUAL PLAINTIFFS FAIL TO ALLEGE  INJURY-IN-FACT AGAINST
       THE STATE DEFENDANTS ............................................................................ 7

     A.   Plaintiffs Lack Standing to Challenge the Licensing Provisions of the CCIA Because
         They Have Not Yet Applied For Licenses ................................................................ 8

     B.   Plaintiffs' Overly Generalized and Conclusory Allegations Do Not Properly Allege A
         Sufficient Injury-In-Fact for a Pre-Enforcement Challenge........................................ 11

   III. ACTING SUPERINTENDENT NIGRELLI AND JUSTICE MCNALLY ARE NOT
       PROPER DEFENDANTS ................................................................................ 14

     A.   Any Alleged Injury From the Licensing Laws Is Not Fairly Traceable To Acting
         Superintendent Nigrelli ................................................................................... 14

   VI.   THE ELEVENTH AMENDMENT BARS SUIT AGAINST STATE DEFENDANTS.
       ......................................................................................................... 18

   IV. THE § 1983 CLAIMS AGAINST THE STATE DEFENDANTS MUST ALSO BE
       DISMISSED FOR LACK OF PERSONAL INVOLVEMENT ..................................... 20

CONCLUSION................................................................................................................... 21

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Aguayo v. Richardson*,
   473 F. 2d 1090 (2d Cir. 1973)..................................................................................14

*Allen v. Wright*,
   468 U.S. 737 (1984).................................................................................................18

*Aron v. Becker*,
   48 F. Supp. 3d 347 (N.D.N.Y. 2014).......................................................................23

*Bach v. Pataki*,
   408 F. 3d 75 (2d Cir. 2005).......................................................................................23

*Bass v. Jackson*,
   790 F.2d 260 (2d Cir. 1986).....................................................................................27

*Brokamp v. James*,
   573 F. Supp. 3d 696 (N.D.N.Y. 2021) ............................................... 15, 17, 20-21

*Carney v. Adams*,
   141 S.Ct. 493 (2020)................................................................................................19

*Carter v. HealthPort Techs., LLC*,
   822 F. 3d 47 (2d Cir. 2016)......................................................................................12

*Chrysafis v. James*,
   534 F. Supp. 3d 272 (E.D.N.Y. 2021) .....................................................................26

*Citizens Union of the City of N.Y. v. Attorney General of N.Y.*,
   No. 16 Civ. 9592, 2017 WL 2984167 (S.D.N.Y. June 23, 2017)...........................26

*City of L.A. v. Lyons*,
   461 U.S. 95 (1983)...................................................................................................20

*Connecticut Citizens Defense League, Inc. v. Lamont*,
   6 F. 4th 439 (2d Cir. 2021) ......................................................................................14

*D.C. v. Heller*,
   554 U.S. 570 (2008).................................................................................................11

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006).................................................................................................15

*Davis v. FEC*,
    554 U.S. 724 (2008)................................................................................................15

*Frey v. Bruen*,
    No. 21 CV 5334, 2022 WL 522478 (S.D.N.Y. Feb. 22, 2022) ................................. 18-19, 21

*HealthNow N.Y., Inc. v. New York*,
    739 F. Supp. 2d 286 (W.D.N.Y. 2010), aff'd on other grounds, 448 F. App'x
    79 (2d Cir. 2011).................................................................................................25

*In re Dairy Mart Convenience Stores, Inc.*,
    411 F.3d 367 (2d Cir. 2005)....................................................................................26

*Keepers, Inc. v. City of Milford*,
    807 F. 3d 24 (2d Cir. 2015)....................................................................................15

*Kelly v. N.Y. State Civil Service Comm'n*,
    No. 14 Civ. 716, 2015 WL 861744 (S.D.N.Y. Jan. 26, 2015)................................................26

*Levine v. N.Y. State Police*,
    2022 U.S. Dist. LEXIS 100188 (N.D.N.Y. June 6, 2022)......................................................27

*Libertarian Party of Erie Cty. v. Cuomo*,
    300 F. Supp. 3d 424 (W.D.N.Y. 2018), ...............................................................15, 22, 24

*Libertarian Party of Erie Cty. v. Cuomo*,
    970 F. 3d 106 (2d Cir. 2020)........................................................................... passim

*Mann v. N.Y. State Ct. of Appeals*,
    No. 21-CV-49, 2021 WL 5040236 (N.D.N.Y. Oct. 29, 2021) ..............................................25

*Marino v. Twn. of Branford*,
    No. 17-cv-1828, 2018 WL 691715 (D. Conn. Feb. 2, 2018)................................................23

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)................................................................................................11

*Miccosukee Tribe of Indians v. Fla. State Ath. Comm'n*,
    226 F. 3d 1226 (11th Cir. 2000) ...............................................................................19

*Minott v. Duffy*,
    2014 U.S. Dist. LEXIS 49791 (S.D.N.Y. Apr. 8, 2014)......................................................28

*Moss v. Williams*,
    1984 U.S. Dist. LEXIS 21343 (S.D.N.Y. Dec. 11, 1984) ....................................................28

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    142 S. Ct. 2111 (2022)......................................................................................9-11, 18

*Nnebe v. Daus*,
    644 F. 3d 147 (2d Cir. 2011)..............................................................................14

*NRA of Am. v. Hochul*,
    No. 20-3187-cv, 2021 WL 5313713 (2d Cir. Nov. 16, 2021) ........................... 13-14

*Oneida Indian Nation v. U.S. Dep't of the Interior*,
    336 F. Supp. 3d 37 (N.D.N.Y. 2018) ............................................................. 12-13

*Osterweil v. Bartlett*,
    No. 09-cv-825, 2010 WL 1146268 (N.D.N.Y. Feb. 24, 2010)..............................23

*Provost v. City of Newburgh*,
    262 F.3d 146 (2d Cir. 2001)..............................................................................27

*Roper v. Hynes*,
    2006 U.S. Dist. LEXIS 69128 (S.D.N.Y. Sep. 27, 2006)....................................28

*Sibley v. Watches*,
    501 F. Supp. 3d 210 (W.D.N.Y. 2020) ............................................................ 21-22

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976)...........................................................................................21

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016).....................................................................................15, 17

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017)......................................................................................13

*United Food & Commercial Workers Union, Local 919 v. Centermark Props.*
    *Meriden Square*, 30 F. 3d 298 (2d Cir. 1994).......................................................13

*United States v. Decastro*,
    682 F.3d 160 (2d Cir. 2012), cert. denied, 568 U.S. 1092 (2013) .............................. 15-16, 18

*Wright v. Smith*,
    21 F.3d 496 (2d Cir. 1994)................................................................................27

**CONSTITUTIONS**

Second Amendment ...............................................................................10, 18

Eleventh Amendment............................................................................... passim

Fourteenth Amendment .................................................................................12

U.S. Constitution.............................................................................................21

**FEDERAL STATUTES**

42 U.S.C.
  § 1983.................................................................................................................... passim

**STATE STATUTES**

Any Alleged Injury From the Licensing Laws ........................................................21

CCIA ................................................................................................................. passim

Concealed Carry Improvement Act ........................................................................8

N.Y. Penal Law
  § 265.00(10)..........................................................................................................23
  §§ 265.00(10), 400.01(1) ....................................................................................26
  § 265.01-d.............................................................................................................12

N.Y. Penal Law.
  § 265.01-e......................................................................................................11, 20

N.Y. Penal Law
  § 400.00(1).............................................................................................................11

Penal Law
  § 265.01-e(2) subsections (a), (e), (g), (h), (i), (j), (k), (l), (m), (q), and (s)...........................20

**RULES**

Fed. R. Civ. P. 12(b)(1)............................................................................................8

Fed. R. Civ. P.
  Rule 12(b)(1).........................................................................................................28

Federal Rule of Civil Procedure 25(d) ...................................................................8

This Memorandum of Law is respectfully submitted on behalf of Defendants Steven A. Nigrelli,[1] Acting Superintendent of the New York State Police, and Richard J. McNally, Jr., Justice of the New York State Supreme Court, Third Judicial District, who is also a Licensing Officer for Rensselaer County ("State Defendants") - each sued in his official capacity - and in support of their motion to dismiss the Amended Complaint, ECF No. 8 ("Amend. Compl."). Because Plaintiffs lack standing, and because the Eleventh Amendment also separately bars this lawsuit, the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## PRELIMINARY STATEMENT

Plaintiffs New York State Rifle & Pistol Association, Inc. ("NYSRPA"), Robert Nash, Brandon Koch, Thomas Stirnweis, Wayne Francis, Khourly Porter, and Scott Noren (collectively, "Plaintiffs") want the Court to adjudicate the constitutionality of large swaths of the new Concealed Carry Improvement Act ("CCIA"), passed by the Legislature in special session on July 1, 2022, but they have not alleged sufficient facts to support the "irreducible constitutional minimum" elements of standing that would give them the ability to challenge these provisions. In particular, Plaintiffs have not suffered any injury traceable to the State Defendants that would support their challenge to the CCIA's licensing provisions. This is because (a) Acting Superintendent Nigrelli is not a licensing official with regard to any of the named Plaintiffs, and (b) Justice McNally has not been alleged to have actually acted on the licensing applications of any of the Plaintiffs, let alone denied any of them on the basis of the statutes they challenge. Plaintiffs thus have not shown (and cannot show) an injury-in-fact, which in the case of their

---

[1] Defendant Kevin P. Bruen recently stepped down from his position as Superintendent of the New York State Police, effective October 19, 2022. Because Superintendent Bruen is sued in his official capacity, Acting Superintendent Nigrelli is "automatically" substituted as his successor under Federal Rule of Civil Procedure 25(d). The State Defendants respectfully request that the caption be amended accordingly.

challenge to the licensing laws requires the actual denial of a licensing application by one of the State Defendants, and in the case of their challenge to the prohibitions on carrying guns in sensitive locations requires a specific, concrete and imminent threat of prosecution by the State Defendants. Instead, Plaintiffs' allegations of standing apparently are based solely on the existence of the statute and the State Defendants' official positions.  This is insufficient as a matter of law.

This same rationale also gives rise to a fatal Eleventh Amendment issue at play in this case. More specifically, for the *Ex parte Young* exception to permit Plaintiffs' suit to go forward, the State Defendants must have a particular duty to enforce the challenged statute. Acting Superintendent Nigrelli plays no role in licensing, and his general law enforcement role does not satisfy this "particular duty" requirement; accordingly, the Eleventh Amendment presents a separate barrier to the licensing-based claims against him.  Additionally, Justice McNally has no law enforcement powers with regard to the new statute, so the Eleventh Amendment also bars Plaintiffs' claims against Justice McNally, to the extent they challenge the CCIA's various criminal prohibitions. And Plaintiffs have also failed to show that Justice McNally is or will be the licensing official making determinations on their licensing applications, which bars any licensing-based claims against him as well.

The CCIA is a statute of extraordinary importance to public safety, and its constitutionality deserves to be adjudicated in the context of genuine challenges brought by parties with a real stake in its specific application, not simply a generalized desire to see it struck down.  The Court should therefore dismiss the Amended Complaint for lack of standing and under the Eleventh Amendment.

## **STATEMENT OF FACTS**

On June 23, 2022, the Supreme Court issued a decision in the case of *New York State Rifle*

*& Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).  In that decision, the Supreme Court found that a single provision of New York's previous gun licensing regime was unconstitutional.  That provision in the licensing regime required an applicant to demonstrate "proper cause" to obtain a license to carry a concealed weapon.  The Court held that requiring such a heightened, individualized need for self-defense to obtain a license violated the Second Amendment.  *See id.* at 2123 n.1; *see also id.* at 2157 (Alito, J., concurring).  The Court did not address any other provision of New York's gun licensing or related statutes, and instead held that "nothing in our analysis should be interpreted to suggest the unconstitutionality of . . . 'shall-issue' licensing regimes, under which 'a general desire for self-defense is sufficient to obtain a permit.'"  *Id.* at 2138 n.9 (cleaned up).  Justice Thomas' majority opinion noted that these licensing laws "often require applicants to undergo a background check or pass a firearms safety course," but that such measures are constitutional because they "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'"  *Id.* (quoting *D.C. v. Heller*, 554 U.S. 570, 635 (2008)).  The Court likewise found other licensing criteria permissible where they were aimed at excluding "individuals whose conduct has shown them to be lacking the essential character of temperament necessary to be entrusted with a weapon."  *Id.* at 2123 n.1 (quoting *Dwyer v. Farrell*, 193 Conn. 7, 12 (1984)).

The New York State Legislature met in a special session to address the issues raised in *Bruen*, remove the proper cause requirement held unconstitutional, and pass new statutory language that complied with the Supreme Court's ruling.  On July 1, 2022, the CCIA was passed by the New York State Legislature during a special session, then promptly signed into law by Governor Kathy Hochul.

Currently in New York, under the CCIA, an applicant must take certain steps to obtain a

handgun carry license.  The applicant must be 21 years of age, not have been convicted of a felony or serious offense, not be a user of an unlawful substance, and not have any history of serious mental illness.  *See* N.Y. Penal Law § 400.00(1).  Additionally, applicants must complete a minimum of sixteen hours of in-person, live firearms safety and training curriculum, and score higher than 80% on a written test.  *Id.* § 400.00(19).  Further, the applicant must complete two hours of live-fire range course training, *id.*, and satisfy other criteria, such as being of "good moral character," which the CCIA specifically defines as "having the essential character, temperament and judgement necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others."  *Id.* § 400.00(1)(b).  As part of the application process, a licensing officer conducts an interview of the applicant.  *Id.* § 400.00(1)(o).  During the interview (or prior to it), the applicant must provide (1) the names and contacts of anyone living in his or her home; (2) four character references; (3) the certification of completion of the required training; (4) a list of the applicant's social media accounts, both current and from the past three years; and (5) any other information that the licensing officer deems reasonably necessary and related to the review of the application.  *Id.*  Finally, fingerprints and other physical descriptive data must be obtained. *Id.* § 400.00(4).  Per the CCIA, the licensing officer then has six months to make a determination on the application; any further delay "may only be for good cause" and must be justified in writing. *Id.* § 400.00(4-b).

The CCIA also prohibits carrying firearms in certain "sensitive locations" such as courthouses, preschools, places of worship, and public transportation, N.Y. Penal Law § 265.01-e, in accordance with the Supreme Court's repeated declarations that "laws forbidding the carrying of firearms in sensitive places" are "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *Bruen*, 142

S.Ct. 2111, 2162 (2022) (Kavanaugh, J., joined by Roberts, C.J., concurring).  The CCIA also affirmed the right of private property owners and lessees to control the presence of deadly weapons in their homes or on their property, by prohibiting carrying a concealed weapon onto someone else's property without obtaining "express consent" to do so.  N.Y. Penal Law § 265.01-d.  And the CCIA also responds to concerns about gun theft and accidental discharges by requiring persons leaving a firearm in a vehicle to remove ammunition and secure the weapon out of sight.  *See id.* § 265.45(2).

In response to the passing of the CCIA, Plaintiffs filed a Complaint on August 31, 2022, ECF No. 1, and an Amended Complaint on September 27, 2022.  ECF No. 8.  The Amended Complaint nowhere specifies which exact sections of the CCIA the Plaintiffs are challenging, nor what theories they think are applicable to any given provision.  *See* Amend. Compl. ¶ 135 (demanding an injunction against "the challenged sections of the Handgun Carry License requirements," without ever specifying what sections are being challenged).  Instead, it contains a broad list of grievances with the law before alleging violations of Plaintiffs' First, Second, Fourth, and Fourteenth Amendment rights, under 42 U.S.C. § 1983.  *Id.*

## STANDARD OF REVIEW

"Unless a plaintiff has Article III standing, a court lacks subject matter jurisdiction to hear their claim."  *Oneida Indian Nation v. U.S. Dep't of the Interior*, 336 F. Supp. 3d 37, 44 (N.D.N.Y. 2018) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, as the State Defendants do here, a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue."  *Carter v. HealthPort Techs., LLC*, 822 F. 3d 47, 56 (2d Cir. 2016) (internal quotation marks omitted).

"To establish Article III standing, a plaintiff bears the burden of establishing three 'irreducible constitutional minimum' elements." *Oneida*, 336 F. Supp. 3d at 44 (quoting *Lujan*, 504 U.S. at 560). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). "[W]hen there are multiple plaintiffs," as there are in this case, then at least "one plaintiff must have standing to seek each form of relief requested in the complaint." *Id.* The burden must be carried by the plaintiff without the Court filling in the blanks on its behalf, because "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Oneida*, 336 F. Supp. 3d at 44 (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 14 F. 3d 129, 131 (2d Cir. 1998)). And "[w]here jurisdiction is lacking" because of a lack of standing, then "dismissal is mandatory." *United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square*, 30 F. 3d 298, 301 (2d Cir. 1994).

## **ARGUMENT**

### I.   **UNDER BINDING SECOND CIRCUIT PRECEDENT, THE ORGANIZATIONAL PLAINTIFF LACKS STANDING**

Under controlling Second Circuit precedent, the organizational plaintiff - NYSRPA - does not allege facts sufficient to support standing as a litigant in its own right. The Second Circuit has held that "organizations suing under Section 1983 must, *without relying on their members' injuries*, assert that their own injuries are sufficient to satisfy Article III's standing requirements." *NRA of Am. v. Hochul*, No. 20-3187-cv, 2021 WL 5313713, at *2 (2d Cir. Nov. 16, 2021) (summary order) (emphasis added) (quoting *N.Y. State Citizens' Coal. for Child. v. Poole*, 922 F.

3d 69, 74-75 (2d Cir. 2019)).  The rule that "an organization does not have standing to assert the rights of its members" stems from the Circuit's longstanding doctrine "interpret[ing] the rights § 1983 secures to be personal to those purportedly injured."  *Nnebe v. Daus*, 644 F. 3d 147, 156 (2d Cir. 2011) (quoting *League of Women Voters of Nassau Cty. v. Nassau Cty. Bd. of Supervisors*, 737 F. 2d 155, 160 (2d Cir. 1984)).  This doctrine has been the law of the Second Circuit for nearly half a century, *see Aguayo v. Richardson*, 473 F. 2d 1090, 1099 (2d Cir. 1973), and remains binding precedent today.  *See Connecticut Citizens Defense League, Inc. v. Lamont*, 6 F. 4th 439, 447 (2d Cir. 2021).

NYSRPA does not allege any injury separate from its members.  In fact, the Complaint in this action only alleges that "at least one member" of NYSRPA will experience injury.  Amend. Compl. ¶ 69.  There are no facts in the Complaint pointing to NYSRPA experiencing any injury of its own, as an organization, under the CCIA.

Thus, under the settled law described above, these alleged harms to members cannot provide standing for the organizational plaintiff to sue.  "Because [the organizational plaintiff] failed to allege its own injuries separate and apart from injuries to its members, it lacks standing in this § 1983 action," and dismissal is required.  *NRA*, 2021 WL 5313713, at *2.[2]

## II.   THE INDIVIDUAL PLAINTIFFS FAIL TO ALLEGE   INJURY-IN-FACT AGAINST THE STATE DEFENDANTS

---

[2] Even if the organizational plaintiff had plausibly alleged making additional efforts or expenditures in connection with the passing of the CCIA – which it has not – that still would not be sufficient for standing under the Second Circuit's recent holding in *Connecticut Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439 (2021).  In *CCDL*, the Circuit held that the plaintiff gun advocacy organization failed to show standing even where the state's action had required it to spend additional resources on communicating with members, lobbying the State, and pursuing litigation, since those were "usual activities" that were part of the organization's core mission. *Id.* at 447-48.

To establish standing, Plaintiffs must have (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the State Defendants, and (3) that is likely to be redressed by a favorable judicial decision. *See Spokeo*, 578 U.S. at 338. In the context of a pre-enforcement challenge to a criminal statute, such as the one raised in this case, in order to plead an injury-in-fact, a plaintiff "must allege both a concrete intention to violate the law and the credible threat of prosecution if []he were to do so." *Brokamp v. James*, 573 F. Supp. 3d 696, 705 (N.D.N.Y. 2021) (ellipsis omitted). Plaintiffs, as the parties invoking Article III federal jurisdiction, bear the burden of establishing *all three* of the elements cited above. *Id.* Therefore, where a case is at the pleading stage, as it is here, Plaintiffs must clearly allege sufficient facts demonstrating each element of their claim. *Id.* Further, an alleged injury must be "particularized" in addition to being "concrete;" thus, the injury "must affect the plaintiff in a personal and individual way." *Id.* (citation omitted).

"A plaintiff must demonstrate standing for each claim he seeks to press" and "'for each form of relief'" that is sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)); *see also Davis v. FEC*, 554 U.S. 724, 734 (2008) (same); *Keepers, Inc. v. City of Milford*, 807 F. 3d 24, 42 (2d Cir. 2015) (same).

A.   Plaintiffs Lack Standing to Challenge the Licensing Provisions of the CCIA Because They Have Not Yet Applied For Licenses

None of the Plaintiffs have filed for permits under the CCIA, and their challenge of the CCIA is not ripe unless and until they do so, and unless or until their application is denied.[3] *See*

---

[3] According to the Amended Complaint, Plaintiff Nash has filed an updated application, which "is currently pending." Am. Compl. ¶ 48. It is not clear whether the application was made before or after the effective date of the CCIA, but in any event, he cannot have an injury-in-fact, or a ripe claim, unless that application is denied. *See Libertarian Party*, 970 F.3d at 122 (no injury-in-fact where plaintiffs either received a license or had not submitted an application).

*United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012) (holding that plaintiff who failed to apply for a New York gun license lacked standing to challenge the state's licensing laws), *cert. denied*, 568 U.S. 1092 (2013); *see also Libertarian Party of Erie Cty. v. Cuomo*, 300 F. Supp. 3d 424, 433 (W.D.N.Y. 2018), *aff'd in relevant part, appeal dismissed in part on other grounds*, 970 F.3d 106.  This is because the Second Circuit has repeatedly held that "[a]s a general matter, to have standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy."  *Decastro*, 682 F.3d at 164.

The requirement that Plaintiffs must first apply for a license before bringing suit may be excused only "if [Plaintiffs] made a 'substantial showing' that submitting an application 'would have been futile.'"  *Id.* (quoting *Jackson-Bey v. Hanslmaier*, 115 F. 3d 1091, 1096 (2d Cir. 1997)).  Here, Plaintiffs have not alleged that applying for licenses would be futile, nor have they made a "substantial showing" of futility.  In fact, it is likely that Plaintiffs would not be able to make such a showing, as certain Plaintiffs previously were granted licenses to carry handguns.  *See* Amend. Compl. ECF No. 8, at ¶¶ 48, 54, 60.

The Amended Complaint fails to plausibly allege that any of the individual plaintiffs would have their applications denied if they submitted one or that such applications would be denied *because of any of the statutory provisions plaintiffs are challenging* - in fact, Plaintiffs repeatedly aver that they meet all the applicable criteria.  *See, e.g., id.* ¶ 46 ("Mr. Nash possesses all of the qualifications necessary to obtain a Handgun Carry License . . ."); *id.* ¶¶ 52, 58, 65 (same language for other individual plaintiffs who do not already have a license).  This is fatal to the individual plaintiffs' challenge to the licensing laws, since Second Circuit precedent establishes that there is no standing to challenge a gun licensing law unless a plaintiff's application has been denied under that law.  *See Libertarian Party*, 970 F.3d at 122.

9

Plaintiffs further claim that they are deterred from renewing their Handgun Carry Licenses under the CCIA "because of the expense, inconvenience, and other impermissible burdens of the CCIA's application process and its constituent parts."  Amend. Compl. ¶¶ 50, 56, 62, 68.  Such claimed "deterrence," however, is not enough to show injury to the Plaintiffs: a plaintiff must show either that he has applied for a license and been denied based on the provision he is challenging, or else show futility.  *See Brokamp v. James*, 573 F. Supp. 3d 696, 705 (N.D.N.Y. 2021) ("Because plaintiff's alleged injuries result from her own decision to not apply for a license in New York, and she does not allege that obtaining a license would have been futile, she has failed to satisfy a 'threshold requirement for standing' . . ." (quoting *Jackson-Bey*, 115 F.3d at 1096)).

Plaintiffs also challenge the CCIA's language pertaining to the "good moral character" required for a license applicant.  *See, e.g.,* Amend. Compl. ¶¶ 26, 94 and 108.  Plaintiffs allege that the "good moral character" requirement is overly burdensome and inhibits applicants from obtaining Handgun Carry Licenses.  *See id.*  However, plaintiffs fail to plausibly allege that they would be denied a license for lack of good moral character.  *See Libertarian Party*, 970 F.3d at 125-27 (upholding "good moral character" requirement against due process challenge). To the contrary, Plaintiffs allege that they possess all qualifications for a license and lack any disqualifying factors.  *See* Am. Compl. ¶¶ 46, 52, 58, 65.  Therefore, because a "concrete" injury must "actually exist," and must be "real" and not "abstract," *see Spokeo*, 578 U.S. at 340, Plaintiffs have not borne their burden to establish standing on this issue.

Similarly, Plaintiffs plead no facts that indicate that the reference, interview, or "social media" licensing requirements of the CCIA would bar them from owning and carrying a gun. Plaintiffs do not allege that they cannot find character references, that there is disqualifying content in their social media postings, or that their presence for an in-person interview would somehow

lead to the denial of their applications.  They instead allege, without explanation, that these requirements are "burdensome."  *See* Amend. Compl., ECF No. 8, at ¶¶ 27-35.  However, it is permissible for state laws to "require a license applicant to undergo fingerprinting, a background check, a mental health records check, and . . . other possible requirements."  *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).  These requirements cannot be viewed as burdensome to the Plaintiffs.  *See id.*

Simply put, the Amended Complaint fails to allege that the CCIA's licensing requirements would actually prevent Plaintiffs from keeping and bearing arms.  Under *Decastro* and *Libertarian Party* unless and until Plaintiffs seek licenses and are rejected, they do not have standing to challenge the licensing law.  This is because an individual lacks constitutional standing to challenge a law that has not impacted his or her Second Amendment rights.  *See Decastro*, 682 F.3d at 164 ("The premise of Decastro's argument is that New York's licensing scheme is itself constitutionally defective; his argument is therefore tantamount to a challenge to that scheme. However, because Decastro failed to apply for a gun license in New York, he lacks standing to challenge the licensing laws of the state.").  As the Plaintiffs have not been denied licenses under the newly enacted CCIA, Plaintiffs cannot claim standing here.

B.      Plaintiffs' Overly Generalized and Conclusory Allegations Do Not Properly Allege A Sufficient Injury-In-Fact for a Pre-Enforcement Challenge

The standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."  *Allen v. Wright*, 468 U.S. 737, 752 (1984).  Here, Plaintiffs seek to challenge various criminal prohibitions in the CCIA that have never been enforced against them.  "[P]re-enforcement review is available where the 'circumstances render the threatened enforcement sufficiently imminent,' which can be established 'by plausible allegations that a plaintiff intends to engage in

conduct proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Frey v. Bruen*, No. 21 CV 5334, 2022 WL 522478, at *4 (S.D.N.Y. Feb. 22, 2022) (cleaned up) (quoting *Adam v. Barr*, 792 F. App'x 20, 21-22 (2d Cir. 2019) (summary order)).  Plaintiffs do not allege any credible threat of prosecution by either Acting Superintendent Nigrelli or Justice McNally.

In their Amended Complaint, Plaintiffs challenge the entirety of the CCIA's "sensitive locations" provision.  *See, e.g.,* Amend. Compl. ¶ 92.  Plaintiffs make it clear that they do not agree with the listed "sensitive" locations in the CCIA; however, they fail to allege sufficient facts showing that any Plaintiff intends to bring a firearm to any of the designated sensitive locations. *Cf. Carney v. Adams*, 141 S.Ct. 493, 499 (2020) ("a plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public, no matter how sincere or deeply committed a plaintiff is to vindicating that general interest on behalf of the public.").  The type of allegation made by Plaintiffs - that they may at some point violate this provision- is both overly broad and conclusory in fashion. *See* Amend. Compl., ECF No. 8, at ¶¶ 63, 67, 6, 81, 83, 84.  "Such 'someday' intentions—without any description of concrete plans, or indeed even any specification of *when* the someday will be—do not support a finding of the 'actual or imminent' injury that is required." *Frey*, 2022 WL 522478, at *5 (emphasis in original) (quoting *Lujan*, 504 U.S. at 564). *See also Miccosukee Tribe of Indians v. Fla. State Ath. Comm'n*, 226 F. 3d 1226, 1229-30 (11th Cir. 2000) (courts must not "piece together an injury sufficient to give plaintiff standing when [the plaintiff] has demonstrated none").

Plaintiffs' challenge to the sensitive locations laws fail for additional reasons as well.  First, to the extent that these allegations are raised by Plaintiffs Stirnweis and Francis, *e.g.* Am. Compl. ¶¶ 63, 66, the allegations are irrelevant because the plaintiffs acknowledge that they do not have valid general carry permits, and would not be able to lawfully carry guns without one.  *See, e.g.,*

*id.* ¶ 68 ("To obtain a Handgun Carry License, Mr. Francis must apply for one."). Second, to the extent that Plaintiffs Noren and Porter make any allegations about specific sensitive locations, the allegations actually state that the plaintiffs do *not* intend to carry guns there. *See, e.g.,* Am. Compl. ¶ 80 (alleging that Mr. Porter "would, but for the enactment and enforcement of the CCIA" carry a concealed handgun at a summer camp where "some 500 children attend"); *id.* ¶ 85 (alleging that "Mr. Porter used to frequent Times Square to attend Broadway shows. He no longer does so because he may not carry a firearm there."). This is insufficient to provide standing, especially for such a broad and generalized challenge. *See Brokamp*, 573 F. Supp. 3d at 705 (No standing where "plaintiff seems to concede that []he intends to *follow* the law, not violate it." (emphasis in the original)). And Plaintiffs' claims must, at a minimum, be dismissed as to the many sensitive locations (from libraries to playgrounds to government buildings to homeless shelters) where they make no allegations whatsoever. *See* N.Y. Penal Law § 265.01-e. In particular, Plaintiffs make no allegations at all regarding subsections (a), (e), (g), (h), (i), (j), (k), (l), (m), (q), and (s) of Penal Law § 265.01-e(2).

Plaintiffs also challenge the CCIA's private property protection, which requires that a person have an owner's or lessee's consent – either through express consent or the posting of signage – before taking a gun onto private property. Plaintiffs have not stated sufficient facts that allege that they have been injured by this provision. Rather, Plaintiffs allege only that the provision may cause them injury in the future. "Abstract injury is not enough. The plaintiffs must show that they 'ha[ve] sustained or [are] immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983) (quoting *Golden v. Zwicker*, 394 U.S. 103-109-10 (1969)). As stated, there is no proof that there

is any "real or immediate" injury or threat of injury to the Plaintiffs as a result of the restricted locations provision of the CCIA.

Plaintiffs also fail to allege an injury-in-fact because they plead no facts indicating that there is a credible threat of prosecution against them.  "Although courts generally presume that the government will enforce its laws, 'the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing.'"  *Sibley*, 501 F. Supp. 3d at 222 (quoting *Adam*, 792 F. App'x at 22).  Plaintiffs "do not allege that the [CCIA] has been enforced against [them] in the past or that anyone threatened [them] with prosecution."  *Id.*  Instead, the Plaintiffs merely allege that they may be prosecuted under current law if, in the future, they happen to carry their firearms outside the limitations of their licenses.  *See Frey*, 2022 WL 522478, at *5.  This is insufficient to establish a credible threat of prosecution.  *Id.*  "A credible threat is not established by 'imaginary or speculative' fears of prosecution," and there is no standing where a plaintiff refers to general enforcement authority but "has not alleged facts which particularize such enforcement as to her."  *Brokamp*, 573 F. Supp.3d at 705, 706 (quoting *Adam v. Barr*, 792 F. App'x 20, 22 (2d Cir. 2019)).

## III.   ACTING SUPERINTENDENT NIGRELLI AND JUSTICE MCNALLY ARE NOT PROPER DEFENDANTS

### A.   Any Alleged Injury From the Licensing Laws Is Not Fairly Traceable To Acting Superintendent Nigrelli

In suing Acting Superintendent Nigrelli, Plaintiffs sue an improper defendant to challenge the licensing provisions of the CCIA.  The U.S. Constitution requires that a plaintiff's alleged injury be "fairly traceable" *to the defendant's conduct*.  *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42 (1976) ("[T]he 'case or controversy' limitation of Art. III still requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before

the court."). Following this precedent, Plaintiffs must establish some causal relationship between Defendant Nigrelli's conduct and their alleged injury-in-fact, which has not been done here with respect to the licensing provisions. *See id.*

When challenging a gun licensing law, both the Second Circuit and the New York District Courts have held that the only proper defendant is the licensing officer making the determination in the case, and not state officials bearing general law enforcement responsibilities by virtue of their positions. For instance, in *Libertarian Party of Erie County v. Cuomo*, an organization and several individuals sued state officials (including the Governor, Attorney General, and the Superintendent of the State Police), as well as judges who served as licensing officials in several counties, challenging various aspects of the licensing laws, including the "good moral character" requirement that preceded the one Plaintiffs challenge here. *See* 300 F. Supp. 3d 424, 431 (W.D.N.Y. 2018). Chief Judge Geraci ruled that standing was lacking against all defendants other than two state Supreme Court Justices, reasoning that the plaintiffs' injuries were "'fairly traceable' only to [the judges], because none of the other Defendants [including the Superintendent] were involved with [plaintiff]'s injury." *Id.* at 436; *see also id.* (dismissing state officials including the Superintendent and noting that redressability was also lacking).

The Second Circuit affirmed this ruling, finding "no error in the district court's determination that . . . the only defendants to whom [plaintiffs'] alleged injuries were fairly traceable were ***the judges who denied their respective applications***." *Libertarian Party of Erie Cty. v. Cuomo*, 970 F. 3d 106, 122 (2d Cir. 2020) (emphasis added). The Circuit noted that the District Court had "properly dismissed the claims asserted against" the Superintendent of the State Police and the other defendants because "[n]one of the other defendants was alleged to have had any role in the licensing process or in the consideration of the applications." *Id.* Numerous district

15

court decisions have similarly dismissed state officials with law enforcement responsibilities as improper parties to a gun licensing law challenge, both on standing grounds and under the Eleventh Amendment. *See, e.g., Sibley v. Watches*, 501 F. Supp. 3d 210, 234 (W.D.N.Y. 2020) (Governor, State Police Superintendent, and county District Attorney);[4] *Aron v. Becker*, 48 F. Supp. 3d 347, 368-69 (N.D.N.Y. 2014) (Governor); *Osterweil v. Bartlett*, No. 09-cv-825, 2010 WL 1146268, at *2 (N.D.N.Y. Feb. 24, 2010) (Governor and Attorney General).

Plaintiffs name Acting Superintendent Nigrelli as a defendant in this action, but they fail to allege a sufficiently direct causal link between his conduct and the licensing regime that is being challenged here. Further, under the CCIA and other relevant law, Defendant Nigrelli has no involvement with the licensing of civilian applicants. Under New York Law, Defendant Nigrelli is only responsible for the licensing of retired members of the Division of State Police. *See* N.Y. Penal Law § 265.00(10) ("'Licensing officer' means . . . for the purposes of section 400.01 of this chapter [for retired members of the Division of State Police] the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance."). Plaintiffs do not allege that they are members of the State Police. *See generally* Amend. Compl. Thus, Defendant Nigrelli would take no part in determining their eligibility for a Handgun Carry License. Instead, their licensing officer would be a County Court Judge or Supreme Court Justice of their county, not Defendant Nigrelli. *See Bach v. Pataki*, 408 F. 3d 75, 79 (2d Cir. 2005) ("Local licensing officers [are] often local judges . . . .").

---

[4] Although the Second Circuit recently vacated a subsequent opinion in the *Sibley* case and remanded for further proceedings in light of *Bruen, see* No. 21-1986-cv, 2022 WL 2824268 (2d Cir. July 20, 2022), the dismissal of the Governor, Superintendent, and District Attorney was not affected.

The lack of any injury "fairly traceable" to Acting Superintendent Nigrelli is fatal to Plaintiffs' claim against him.  And since Plaintiffs' alleged injuries are not fairly traceable to Acting Superintendent Nigrelli, Plaintiffs lack standing to pursue any of the relief requested as to the licensing provisions as against this Defendant.  *See Marino v. Twn. of Branford*, No. 17-cv-1828, 2018 WL 691715, at *2 (D. Conn. Feb. 2, 2018) ("As an initial matter, the plaintiff appears to have sued the wrong defendants . . . . [a]s a result, the court cannot grant him the relief he seeks with respect to his license.").

B.     Justice McNally May Never Be Plaintiffs "Licensing Officer"

A proper defendant for a challenge to a licensing regime is the licensing officer who makes a determination in an applicant's case, which is usually the County Court Judge or Supreme Court Justice of the county where the applicant has applied.  Although Justice McNally is a Justice of the New York Supreme Court, Third Department, and a Licensing Officer in Rensselaer County, Plaintiffs have not alleged that he would be the licensing officer making the determination on Plaintiffs' applications.

As previously stated, the Second Circuit has held that, "the only defendants to whom [plaintiffs'] alleged injuries were fairly traceable were ***the judges who denied their respective applications***."  *Libertarian Party*, 970 F.3d 106 at 122.  Here, there are no facts alleging Justice McNally will be the judge who makes the determination on any of the plaintiffs'  applications. This is particularly the case for Plaintiffs Stirnweis and Francis, who are alleged to be citizens of Suffolk and Nassau Counties, respectively, *see* Amend. Compl. ¶¶ 10-11, neither of which lies within Judge McNally's geographic jurisdiction in New York's Third Judicial District. Additionally, while the court in *Libertarian Party* found the two judges who made the determination on the plaintiff's applications to be proper defendants, the court only found them as

17

such because they "directly ruled on the application" of those applicants bringing suit.  *Id.* at 125.

In their Complaint, Plaintiffs state that, under the previous gun licensing regime, Justice McNally was the licensing officer who denied each of their applications to remove the restrictions on their licenses.  However, it appears that none of the Plaintiffs have yet applied for licenses under the CCIA before Justice McNally (or any other licensing officer).  Thus, Plaintiffs cannot claim that Justice McNally has caused them any injury-in-fact because, as previously mentioned, there are no facts indicating that he would be the individual who might deny their applications under the new licensing regime, let alone that he would actually do so.  The proper defendant in a case such as this is the licensing officer who is making the decision on the application.  *See id.*

## VI.    THE ELEVENTH AMENDMENT BARS SUIT AGAINST STATE DEFENDANTS

"The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens, unless (1) the state consents to be sued, or (2) Congress validly abrogates the state's immunity."  *Mann v. N.Y. State Ct. of Appeals*, No. 21-CV-49, 2021 WL 5040236, at *4 (N.D.N.Y. Oct. 29, 2021) (quoting *Ross v. CUNY*, 211 F. Supp. 3d 518, 525 (E.D.N.Y. 2015)). "Since New York has not consented to be sued, and because Section 1983 did not abrogate New York's Eleventh Amendment immunity, Plaintiff[s'] claims can only proceed if the *Ex parte Young* exception applies."  *Id.*

Plaintiffs' claims against Acting Superintendent Nigrelli and Justice McNally are also barred by the Eleventh Amendment.  Both Defendants are sued only in their official capacities, and "an action against a state official in his official capacity is deemed an action against the state itself," and is therefore barred by Eleventh Amendment sovereign immunity.  *Libertarian Party of Erie County v. Cuomo*,  970 F. 3d 106, 122 (2d Cir. 2020).  Therefore, Plaintiff's claims against State Defendants may proceed only if the *Ex parte Young* exceptions applies.  *Mann*, 2021 WL

5040236, at *4.

"To fall within the *Ex parte Young* exception…the defendant state officer 'must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), *aff'd on other grounds*, 448 F. App'x 79 (2d Cir. 2011) (summary order); *accord Chrysafis v. James*, 534 F. Supp. 3d 272, 288-89 (E.D.N.Y. 2021); *see also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) ("[T]he *Ex parte Young* exception is not a legal fiction, but rather involves the infliction of real damage by an officer, without authority by the state, upon the plaintiff.").  "For a state officer to be a proper party, both a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty are needed." *Kelly v. N.Y. State Civil Service Comm'n*, No. 14 Civ. 716, 2015 WL 861744, at *3 (S.D.N.Y. Jan. 26, 2015) (citing *HealthNow*, 739 F. Supp. 2d at 294).

Here, as discussed more fully above, neither Acting Superintendent Nigrelli nor Justice McNally has a specific duty to enforce the CCIA against any of the Plaintiffs.  Acting Superintendent Nigrelli is only directly involved in the licensing process for retired State Police members, a category into which none of the Plaintiffs falls.  *See* N.Y. Penal Law §§ 265.00(10), 400.01(1).  Acting Superintendent Nigrelli is the chief executive of a statewide law enforcement agency, but a general ability or obligation to enforce state laws is not sufficient to pierce Eleventh Amendment immunity; instead, "it has been held that 'a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute." *Citizens Union of the City of N.Y. v. Attorney General of N.Y.*, No. 16 Civ. 9592, 2017 WL 2984167, at *4 (S.D.N.Y. June 23, 2017) (collecting cases).  Rather, a state official must have a

"particular duty" to enforce a law in order to be a proper defendant under *Ex Parte Young*. *Id.* at *5 n.6 (quoting *Kelly*, 201 WL 861744, at *3). That "particular duty" is absent here as to any of Plaintiffs' licensing-based claims.

Similarly, as also discussed above, the Amended Complaint fails to plead any facts sufficient to allege that Justice McNally has any duty to enforce the licensing provisions of the CCIA against the Plaintiffs. Nor does the Amended Complaint allege that Justice McNally has authority to enforce the criminal prohibitions of the CCIA pertaining to sensitive and restricted locations. Thus, Plaintiffs' claims against State Defendants are barred by the Eleventh Amendment.

## IV.   THE § 1983 CLAIMS AGAINST THE STATE DEFENDANTS MUST ALSO BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a §1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

Here, Plaintiffs sue the State Defendants for money damages, *see* Dkt. No. 8, ¶ 138, but they have failed to allege the personal involvement of the State Defendants in any alleged harm to the Plaintiffs. In fact, even if any of the Plaintiffs were to be arrested by a State Police Trooper in the future, that would be insufficient to establish liability against Acting

Superintendent Nigrelli.  *See Levine v. N.Y. State Police*, 2022 U.S. Dist. LEXIS 100188, at *43 (N.D.N.Y. June 6, 2022) ("The Court agrees with the State Defendants that Superintendent [of the State Police] McMahon's position as a supervisor, without more, is insufficient to subject him to personal liability on Plaintiff's Section 1983 claims."); *Minott v. Duffy*, 2014 U.S. Dist. LEXIS 49791, at *31-32 (S.D.N.Y. Apr. 8, 2014) (finding that officers who were not present at the scene at the time of arrest, or when suspect was actually taken into custody, were entitled to summary judgment on grounds of lack of personal involvement in arrest).  And certainly, because Judge McNally has not acted on the Plaintiffs' application for licenses under the CCIA, he has no personal involvement as well.  *See Moss v. Williams*, 1984 U.S. Dist. LEXIS 21343, at *7 (S.D.N.Y. Dec. 11, 1984) (dismissing a judge from an action for lack of personal involvement in the alleged constitutional violation); *Roper v. Hynes*, 2006 U.S. Dist. LEXIS 69128, at *21 (S.D.N.Y. Sep. 27, 2006) ("The Complaint contains no allegations indicating that Judge Kaye or Judge Lippman were personally involved in the violation of [plaintiff's] constitutional rights. Accordingly, all § 1983 claims against Judge Kaye and Judge Lippman are dismissed.").

## **CONCLUSION**

For the foregoing reasons, this Court should grant State Defendant's' motion, dismiss this action in its entirety pursuant to Fed. R. Civ. P. Rule 12(b)(1) and the Eleventh Amendment, and grant such other relief as it deems just and proper.

Dated:  Albany, New York
        November 16, 2022

LETITIA JAMES
Attorney General
State of New York
*Attorney for Acting Superintendent Nigrelli and
Justice McNally*

By: *Michael McCartin*

Michael G. McCartin, Of Counsel
Assistant Attorney General | Special Counsel
Bar Roll No. 511158
The Capitol
Albany, New York 12224
Tel.: (518) 776-2620
Michael.McCartin@ag.ny.gov

By: _ s/ *Shannan Krasnokutski*_____
    Shannan Krasnokutski, Of Counsel
    Assistant Attorney General
    Bar Roll No. 512932
    The Capitol
    Albany, New York 12224
    Tel.: (518) 776-2606
    Shannan.Krasnokutski@ag.ny.gov

TO:   All counsel of record (via ECF)