UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NEW YORK STATE RIFLE & PISTOL ASSOCIATION,
INC., *et al.*,

                    Plaintiffs,

          -against-

STEVEN G. JAMES, in his official capacity as Acting
Superintendent of the New York State Police, *et al.*,

                    Defendants.

---

Case No. 1:22-cv-00907
(MAD/CFH)

# AMENDED MEMORANDUM OF LAW IN SUPPORT OF
# THE STATE DEFENDANTS' MOTION TO DISMISS

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

*Attorney for Defendants Acting
Superintendent James and Justice
McNally*

Molly Thomas-Jensen, Bar Roll No. 705119
  Special Counsel

March 8, 2024

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND .............................................................................................................. 3

LEGAL STANDARDS ...................................................................................................... 6

ARGUMENT ................................................................................................................. 7

    I.    The Eleventh Amendment Bars All Claims Against Justice McNally and the Licensing Claims Against Superintendent James ................................................................... 7

        A.    Justice McNally Cannot Be Sued Under Ex Parte Young ........................................ 7

        B.    Acting Superintendent James Cannot Be Sued for Equitable Relief as to the Licensing Provisions of the CCIA ................................................................................. 9

    II.    Judicial Immunity Bars the Claim for Monetary Damages Against Justice McNally ....... 10

    III.    Plaintiffs Fail to Allege Traceability as to Most of Their Claims ..................................... 10

    IV.    NYSRPA Does Not Have Standing to Sue ..................................................................... 11

    V.    The Individual Plaintiffs' Challenges to the CCIA's Licensing Process Are Non-Justiciable ................................................................................................................ 12

        A.    Plaintiffs Have Obtained their Handgun Carry Licenses and Their Licensing Claims Are Therefore Moot. ................................................................................................ 13

    VI.    Individual Plaintiffs Lack Standing to Challenge the Majority of the CCIA's Sensitive Place Restrictions ......................................................................................................... 15

        A.    No Plaintiff Alleges They Intend to Visit the Majority of Enumerated Sensitive Places ... 16

        B.    Plaintiffs' Allegations as to Other Sensitive Places Are Inadequate to Establish Standing 17

    VII.    The Individual Plaintiffs' Challenges to the Restricted Places Statute Are Non-Justiciable as to Private Property Not Open to the Public ..................................................... 23

CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*74 Pinehurst LLC v. New York*, 59 F.4th 557 (2d Cir. 2023) ........................................................ 7

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011).................. 6, 15, 16, 21

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) ............................................................ *passim*

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43 (1997)................................................................ 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 20

*Betts v. Brnovich*, 2023 WL 2186576 (D. Ariz. Feb. 23, 2023) ..................................................... 8

*Briscoe v. LaHue*, 460 U.S. 325 (1983)........................................................................................ 10

*Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023) .......................................................................... 17

*Cinotti v. Adelman*, 709 F. App'x 39 (2d Cir. 2017) ...................................................................... 9

*Connecticut Citizens Def. League, Inc. v. Lamont, 6 F.4th 439 (2d Cir. 2021)* ................... *passim*

*District of Columbia v. Heller*, 554 U.S. 570 (2008)................................................................... 4, 5

*Ex parte Young*, 209 U.S. 123, 157 (1908)............................................................................. 7, 8, 9

*Gazzola v. Hochul*, 88 F.4th 186 (2d Cir. 2023)........................................................................... 17

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2d Cir. 2022) ......................................................... 20

*HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286 (W.D.N.Y. 2010)........................ 10

*Hedges v. Obama*, 724 F.3d 170 (2d Cir. 2013) ........................................................................... 15

*Idlibi v. Burgdorff*, 2023 WL 3057160 (D. Conn. Apr. 24, 2023).................................................. 8

*Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326 (2d Cir. 1997)....................................... 6

*Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314 (2d Cir. 2020). .................. 13

*Kirchner v. Marshall*, 2023 WL 110953 (D. Colo. Jan. 5, 2023).................................................... 8

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472 (1990) ........................................................................ 14

*Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020) ............................... *passim*

*Lindke v. Tomlinson*, 31 F.4th 487 (6th Cir. 2022)........................................................................ 8

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................................ 10, 15, 20, 23

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).............................................................. 6

*Mireles v. Waco*, 502 U.S. 9 (1991) .................................................................. 10

*Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008) ............................ 6

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013) .......................... 14

*Nat'l Rifle Ass'n of Am. v. Hochul*, 2021 WL 5313713 (2d Cir. Nov. 16, 2021) .......... 12

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) ............................ *passim*

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ...................................................... 12

*Ortiz v. Foxx*, 596 F. Supp. 3d 1100 (N.D. Ill. 2022) ........................................... 8

*Papasan v. Allain*, 478 U.S. 265 (1986) ........................................................ 7, 9

*Preiser v. Newkirk*, 422 U.S. 395 (1975) ........................................................ 18

*Serafine v. LaVoie*, 2022 WL 229364 (W.D. Tex. Jan. 26, 2022) ................................ 8

*Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26 (1976) .................................... 10

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..................................................... 15

*State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71 (2d Cir. 2007) ............... 6

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .............................................. 15

*United States v. Homer*, 2024 WL 417103 (E.D.N.Y. Feb. 5, 2024) ............................ 3

*Vitagliano v. Cty. of Westchester*, 71 F.4th 130 (2d Cir. 2023) ...................... 15, 20, 23

*Warth v. Seldin*, 422 U.S. 490 (1975) ........................................................... 19

*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) ...................................... 2, 8

**Statutes**

18 U.S.C.  922 ................................................................................... 22

42 U.S.C. § 1983 ............................................................................... *passim*

N.Y. Penal Law § 265.00 ....................................................................... 9, 11

N.Y. Penal Law § 265.01-d .................................................................... 5, 23

N.Y. Penal Law. § 265.01-e ................................................................... *passim*

N.Y. Penal Law § 265.45 ........................................................................ 24

N.Y. Penal Law. § 400.00 ...................................................................... 3, 4, 14

**Rules and Regulations**

Federal Rule of Civil Procedure 12 ............................................................. 6

N.Y.C. Admin. Code § 10-315 ..................................................................................... 23

**Treatises**

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Federal Practice and Procedure § 1350 (4th ed.) ................................................................................................................................ 6

Defendants Steven G. James, Acting Superintendent of the New York State Police, and Richard J. McNally, Jr., Justice of the New York State Supreme Court, Third Judicial District (together referred to as the "State Defendants"), submit this memorandum of law[1] in support of their motion to dismiss the Amended Complaint ("Am. Compl.") (ECF No. 8). The Amended Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

New York regulates the public carry of guns through its licensing process and by certain limitations on places where people may carry guns. These laws reflect New York's commitment to public safety and ensure that New York has one of the lowest gun homicide rates in the country. Through this lawsuit, plaintiffs seek to challenge all of New York's laws regarding public carry. But many of their claims cannot survive the Eleventh Amendment's jurisdictional bar, and plaintiffs also lack standing and an active case or controversy as to the vast majority of the statutory provisions they challenge. Much of this case can and should be dismissed on justiciability and immunity grounds.

In July 2022, the State of New York enacted the Concealed Carry Improvement Act ("CCIA"). Within weeks of the CCIA's passage, the New York State Rifle & Pistol Association ("NYSRPA") and two individual plaintiffs filed this lawsuit to challenge the constitutionality of the CCIA, arguing that its licensing, sensitive places, and restricted places provisions violate the

---

[1]   The State Defendants previously filed a notice of motion to dismiss (ECF No. 30) and memorandum of law in support thereof (ECF No. 30-1). Subsequently, this case was stayed pending the Second Circuit's decision in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023). *Antonyuk* was decided in December 2023 and clarified certain aspects of standing and immunity doctrines in this Circuit, and for that reason, the State Defendants withdraw the previously filed memorandum of law and file this amended memorandum of law in its place.

Second Amendment of the U.S. Constitution, and that certain aspects of the licensing and restricted places provisions violate the First, Fourth, and Fourteenth Amendments.

In choosing to sue Acting Superintendent James and Justice McNally in their official capacities, plaintiffs have run headlong into the Eleventh Amendment's protections. The claims against Justice McNally cannot be brought under *Ex parte Young*, because "an *ex ante* injunction preventing" a state court judge, like Justice McNally, "from hearing cases" is not normally permitted, as "an injunction against a state court or its machinery would be a violation of the whole scheme of our Government." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (cleaned up). Likewise, the claims against Acting Superintendent James seeking to enjoin him from enforcing the licensing provisions of the CCIA do not fall within the *Ex parte Young* exception, because under Second Circuit precedent, he lacks the requisite connection to enforcement of those provisions.

Plaintiffs have failed to plead a justiciable case or controversy for many of their claims. As an initial matter, the organizational plaintiff asserts no direct injury and is therefore categorically barred from bringing suit under 42 U.S.C. § 1983. Additionally, the individual plaintiffs who challenge the licensing provisions of the CCIA have all since received handgun carry licenses, and their claims are thus moot. With respect to the individual plaintiffs who challenge the sensitive places provision of the CCIA, they do not allege that they visit (with any specificity) the vast majority of sensitive places laid out in the statute. And lastly, plaintiffs do not allege that any harm they may have suffered under the licensing law is actually traceable to and redressable by the State Defendants.

While it is evident from the face of the Amended Complaint that each plaintiff *dislikes* the CCIA's requirements, more is required when a party seeks to invalidate a duly enacted state law.

As the Second Circuit recently noted in *Antonyuk v. Chiumento*, "a court must be confident that it is deciding a true 'case or controversy'—rather than issuing an advisory opinion—when asked to invalidate the action of a co-ordinate branch or of a state." 89 F.4th at 371. Plaintiffs have failed to meet their burden to establish a case or controversy, and the claims against the State Defendants should be dismissed.

## **BACKGROUND**

Following the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) ("*NYSRPA I*"), which struck down New York's requirement of "proper cause" to carry a concealed firearm in public, the State enacted the CCIA on July 1, 2022, with an effective date of September 1, 2022. *See* 2022 N.Y. Laws. Ch. 371 (S. 51001) .

The licensing provisions of the CCIA amended New York law "to alter the firearm licensing regime from one in which licensing officers had discretion to determine whether an applicant had proper cause to one in which licensing officers 'shall' issue a license to 'any person.'" *United States v. Homer*, No. 23-CR-00866, 2024 WL 417103, at *5 (E.D.N.Y. Feb. 5, 2024) (quoting N.Y. Penal Law. § 400.00(2)(f)). Under current law, a licensee must demonstrate "good moral character," which is defined by statute as an assessment of dangerousness, and must meet other eligibility requirements. N.Y. Penal L. § 400.00(1). The CCIA also required that applicants for concealed carry licenses submit the following to their licensing officer: (1) names and contact information of all adults residing with the applicant, as well as whether any children reside with the applicant; (2) four character references; (3) certification that the applicant has completed the required sixteen hours of classroom training and two hours of live-fire range training, and that the applicant has demonstrated proficiency on both the classroom and the range

components of the training; (4) a list of the applicant's current and former social media accounts[2]; and (5) "such other information required by the licensing officer that is reasonably necessary and related to the review of the licensing application." N.Y. Penal Law § 400.00(1)(o). *NYSRPA I* emphasized that its analysis did not implicate licensing laws that "require applicants to undergo a background check or pass a firearm safety course" and that have "narrow, objective, and definite standards guiding licensing officers," because such laws "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding responsible citizens.'" *NYSRPA I*, 597 U.S. at 38, n.9 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).[3]

The CCIA also identified a list of sensitive locations where the possession[4] of a firearm is prohibited: (1) federal, state, or local government administration buildings (including courts); (2) locations providing health or chemical dependence care or services; (3) places of worship; (4) libraries, public playgrounds, many public parks, and zoos; (5) many childcare programs, as well as nursery schools, preschools, and summer camps; (6) programs licensed, regulated, certified, operated, or funded by the State's Offices for People with Developmental Disabilities, of Addiction Services and Supports, of Mental Health, and of Temporary and Disability Assistance; (7) homeless shelters; (8) residential settings licensed, certified, regulated, funded or operated by the Department of Health; (9) educational institutions; (10) public transit; (11) any establishment that is licensed for on-premise consumption of cannabis or alcohol; (12) performance,

---

[2]    In *Antonyuk*, the Second Circuit upheld an order preliminarily enjoining enforcement of this requirement. 89 F.4th at 333. Since then, the New York State Police has removed that question from the application. Declaration of Michael W. Deyo, attached hereto as Exhibit A.

[3]    The questions of justiciability, the Eleventh Amendment, and judicial immunity that this brief addresses were not raised in *NYSRPA I*.

[4]    The statute carves out a list of people, who by virtue of their status (e.g. law enforcement officers) or activity (e.g engaging in hunter education training) are permitted to carry in these sensitive locations. N.Y. Penal L. § 265.01-e(3).

4

entertainment, gaming, or sporting venues; (13) polling places; (14) public areas "restricted from general public access for a limited time or special event that has been issued a permit"; (15) "any gathering of individuals to collectively express their constitutional rights to protest or assemble"; and (16) Times Square. N.Y. Penal L. § 265.01-e(2). In *District of Columbia v. Heller*, the Court emphasized that it was not "cast[ing] doubt on longstanding prohibitions . . . forbidding the carrying of firearms in sensitive places such as schools and government buildings." 554 U.S. 570, 626 (2008). The Supreme Court echoed this in *NYSRPA I*, "assum[ing] it settled that" states could prohibit carrying arms in "sensitive places," and that "courts can use analogies to those historical regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." 597 U.S. at 30; *see also id.* ("we are also aware of no disputes regarding the lawfulness of such prohibitions.").

The CCIA also prohibited the possession of a firearm in restricted locations, which are defined as "private property where such person knows or reasonably should know that the owner or lessee of such property has not permitted such possession by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted or by otherwise giving express consent." N.Y. Penal Law § 265.01-d. In *Antonyuk*, the Second Circuit upheld a preliminary injunction that barred the enforcement of this provision on private property that is generally open to the public "like a gas station or grocery store," but concluded that the plaintiffs had not made out a facial challenge with respect to private property closed to the public. 89 F.4th at 291, 386-87.

On August 31, 2022, plaintiffs NYSRPA, Robert Nash, and Brandon Koch (the same three plaintiffs who brought suit in *NYSRPA I*), filed this action, bringing six 42 U.S.C. § 1983 claims and seeking to invalidate the CCIA's licensing provisions and its prohibitions on carrying firearms

in sensitive locations and restricted locations. A month later, plaintiffs filed an amended complaint, which added four additional named plaintiffs (Thomas Stirnweis, Wayne Francis, Khoury Porter, and Scott Noren).[5]

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Thus, Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle to raise justiciability (standing, mootness, and ripeness) as well as Eleventh Amendment immunity. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Federal Practice and Procedure § 1350 (4th ed.). "[T]o survive . . . [a] Rule 12(b)(1) motion to dismiss, [a plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). On a 12(b)(1) motion, "a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).

Rule 12(b)(6) governs motions to dismiss for judicial immunity. *See State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71 (2d Cir. 2007). As with Rule 12(b)(1), "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

---

[5]    Plaintiffs Nash, Koch, Stirnweis, Francis, Porter, and Noren are together referred to as "Individual Plaintiffs."

<u>**ARGUMENT**</u>

**I.      The Eleventh Amendment Bars All Claims Against Justice McNally and the Licensing Claims Against Superintendent James**

Plaintiffs have sued Justice McNally and Acting Superintendent James in their official capacities, rendering this "an action against the state itself." *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020). Unless the State consents to be sued (which it has not done here), the Eleventh Amendment bars all claims against the state, except those that fall within the *Ex parte Young* exception for "claims for prospective relief against state officials in their official capacities." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 570 (2d Cir. 2023). The *Ex parte Young* exception is not simply a workaround that can be fixed by artful pleading. Rather, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer *must have some connection with the enforcement* of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. 123, 157 (1908) (emphasis added).

**A.  Justice McNally Cannot Be Sued Under Ex Parte Young**

Plaintiffs seek both prospective equitable relief and "nominal and compensatory damages pursuant to 18 [sic] U.S.C. § 1983" from Justice McNally. Am. Compl. ¶138.

Taking the request for monetary damages first, the *Ex parte Young* exception permits only claims for equitable relief and does not allow claims for monetary damages. *Papasan v. Allain*, 478 U.S. 265, 278 (1986). The Eleventh Amendment thus bars the claims for "nominal and compensatory damages." Am. Compl. ¶ 138.

Turning to the request for declaratory and injunctive relief, barring exceptional circumstances, the *Ex parte Young* doctrine does not apply to claims in federal court against state court judges:

> [T]his traditional exception does not normally permit federal courts to issue
> injunctions against state-court judges or clerks. Usually, those individuals do not
> enforce state laws as executive officials might; instead, they work to resolve
> disputes between parties. If a state court errs in its rulings, too, the traditional
> remedy has been some form of appeal, including to this Court, not the entry of an
> ex ante injunction preventing the state court from hearing cases. As *Ex parte Young*
> put it, "an injunction against a state court" or its "machinery" "would be a violation
> of the whole scheme of our Government."

*Whole Woman's Health*, 595 U.S. at 39 (quoting *Ex parte Young*, 209 U.S. at 163). Plaintiffs do

not contend that Justice McNally was not acting in his judicial capacity; nor could they. *See*

*Libertarian Party of Erie Cty.*, 970 F.3d at 125. Federal courts across the country, including in the

Second Circuit, have applied *Whole Woman's Health* to bar official capacity lawsuits against state

judges for actions taken in their judicial roles. *E.g.*, *Betts v. Brnovich*, No. CV-22-1186, 2023 WL

2186576, at *6 (D. Ariz. Feb. 23, 2023) ("*Ex parte Young* does not provide an exception to

Eleventh Amendment immunity with regard to judicial officers in this instance"); *see also, e.g.*,

*Idlibi v. Burgdorff*, No. 22-cv-902, 2023 WL 3057160, at *3 (D. Conn. Apr. 24, 2023); *Kirchner*

*v. Marshall*, No. 22-cv-1512, 2023 WL 110953, at *3 (D. Colo. Jan. 5, 2023); *Ortiz v. Foxx*, 596

F. Supp. 3d 1100, 1109-10 (N.D. Ill. 2022); *Serafine v. LaVoie*, No. 20-CV-1249, 2022 WL

229364, at *12 (W.D. Tex. Jan. 26, 2022).

As the Supreme Court further explained in *Whole Woman's Health*, there is a separate,

standing-related bar on parties seeking to strike down a law by suing a state court judge. "Judges

exist to resolve controversies about a law's meaning or its conformance to the Federal and State

Constitutions, not to wage battle as contestants in the parties' litigation. As this Court has

explained, no 'case or controversy' exists 'between a judge who adjudicates claims under a statute

and a litigant who attacks the constitutionality of the statute.'" *Whole Woman's Health*, 595 U.S.

at 40; *see also Lindke v. Tomlinson*, 31 F.4th 487, 495 (6th Cir. 2022) (finding that "a federal court

lacks subject-matter jurisdiction over a challenge to a state statute brought under § 1983 against a

state-court judge when, in the underlying action, the judge merely acted in an adjudicatory capacity to construe and apply the statute.").

Finally, even if there were a way for a plaintiff to sue a state court judge acting in their judicial capacity under *Ex parte Young*, there is no basis in the Amended Complaint for abrogating the State's Eleventh Amendment immunity. There are no allegations that Justice McNally plays any role in enforcing either the sensitive and restricted places laws or the automobile storage requirement. And as to the licensing law, as described *infra*, plaintiffs have obtained their licenses and therefore cannot point to any prospective relief to fit within the narrow *Ex parte Young* exception. *Papasan*, 478 U.S. at 278 (barring "[r]elief that in essence serves to compensate a party injured in the past" even if "styled as something" other than "an award of damages").[6]

### B. Acting Superintendent James Cannot Be Sued for Equitable Relief as to the Licensing Provisions of the CCIA

Acting Superintendent James is not involved in the licensing of civilian applicants like the Individual Plaintiffs as, under New York Law, he is only responsible for the licensing of retired members of the Division of State Police. *See* N.Y. Penal Law § 265.00(10). Under *Ex parte Young*, there must be *some* "special relation" between the named defendant and the enforcement of the complained of provision. 209 U.S. at 157. Otherwise, Acting Superintendent James would simply be serving as "a representative of the state," in violation of the Eleventh Amendment. *Id*.; *see also Libertarian Party of Erie Cty.*, 970 F.3d at 122 (affirming dismissal of challenge to licensing

---

[6]    Additionally, the plain text of 42 U.S.C. § 1983 provides that in a suit against a judicial officer for an act taken in their official capacity, "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Plaintiffs seek declaratory relief, Am. Compl. ¶ 135, thus conceding that declaratory relief is not "unavailable." And the Amended Complaint contains no allegations that Justice McNally has violated any declaratory decree. Thus, under the plain language of section 1983, no injunctive relief may be granted as to Justice McNally. *See Cinotti v. Adelman*, 709 F. App'x 39, 41 (2d Cir. 2017).

statute as to the Superintendent of the State Police). That "special relation" is not present here. There are no allegations in the Amended Complaint that Acting Superintendent James is a licensing officer for any of the Individual Plaintiffs. Without some closer connection to the enforcement of the licensing provisions, this claim fails. *See HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), *aff'd on other grounds*, 448 F. App'x 79 (2d Cir. 2011) (summary order).[7]

## II.     Judicial Immunity Bars the Claim for Monetary Damages Against Justice McNally

The U.S. Supreme Court has held that "state judges are absolutely immune from liability for their judicial acts." *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983). And the Second Circuit has held that firearms licensing decisions by state court judges are judicial acts. *Libertarian Party of Erie Cty.*, 970 F.3d at 125. There is no allegation in the Amended Complaint that Justice McNally has acted in any way outside his judicial capacity or outside his jurisdiction. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Justice McNally is thus entitled to judicial immunity from any claims for monetary relief.

## III.    Plaintiffs Fail to Allege Traceability as to Most of Their Claims

To establish standing, a plaintiff must show (1) an injury-in-fact, (2) that is traceable to the complained of conduct, and (3) that is redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As to traceability, "a federal court [may] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976).

---

[7]     The State Defendants do not contest that Acting Superintendent James does oversee enforcement of the sensitive places, restricted places, and automobile storage provisions of the CCIA, and thus do not raise an Eleventh Amendment challenge to the claim against Superintendent James as to those provisions.

Plaintiffs fail to allege any injury traceable to either of the State Defendants with respect to the CCIA's licensing process and eligibility. As noted above, Superintendent James is only responsible for the licensing of retired members of the Division of State Police. *See* N.Y. Penal Law § 265.00(10) ("'Licensing officer' means . . . for the purposes of section 400.01 of this chapter [for retired members of the Division of State Police] the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance."). Thus, in *Libertarian Party*, the Second Circuit upheld a district court's determination in a challenge to New York's firearms license law that "the only defendants to whom their alleged injuries were fairly traceable were the judges" reviewing licensing applications. 970 F.3d at 122. Plaintiffs do not allege that they are current or retired members of the State Police. They have alleged no licensing injuries traceable to Acting Superintendent James.

As to Justice McNally, as previously noted, only Koch and Nash reside in Rensselaer County, and thus only these plaintiffs conceivably could have had their license applications processed by Justice McNally.[8] The Amended Complaint lacks any allegations that Koch and Nash have been injured in any way that is traceable to Justice McNally.

With respect to the other provisions of the CCIA that plaintiffs challenge (automobile storage, sensitive places provision, and restricted places), there are no allegations that Justice McNally has played or will ever play a role in enforcing those statutes. Plaintiffs have not met their burden to allege traceability as to these provisions.

## IV.    NYSRPA Does Not Have Standing to Sue

NYSRPA has sued the State Defendants under 42 U.S.C. § 1983. Am. Compl. ¶¶ 88-133. "It is the law of this Circuit that an organization does not have standing to assert the rights of its

---

[8] Given the foregoing, all licensing claims asserted against either of the State Defendants by Plaintiffs Stirnweis, Francis, Porter, and/or Noren must also be dismissed.

members in a case brought under 42 U.S.C. § 1983, as we have interpreted the rights § 1983 secures to be personal to those purportedly injured." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (cleaned up). While an organization may bring suit under § 1983 "on its own behalf," it must show that it has been directly injured to do so. *Id.* In *Connecticut Citizens Defense League v. Lamont*, the Second Circuit held that an organization's lobbying efforts and litigation relating to the challenged law were "integral to [its] mission" and "not a departure from [the organization's] usual activities" and thus not a basis for standing. 6 F.4th 439, 447 (2d Cir. 2021). More generally, "[a]n organization's abstract concern with a subject that could be affected by an adjudication is insufficient." *Id*. (cleaned up).

There are no allegations in the Amended Complaint that NYSRPA has suffered any direct injury as a result of the CCIA. And while the Amended Complaint contains some allegations about NYSRPA's members, *see* Am. Compl. ¶¶ 14, 29, 69, 87, the organization cannot rely on its members to create standing to bring suit under 42 U.S.C. § 1983. NYSRPA's claims should be dismissed for failing to "allege its own injuries separate and apart from injuries to its members." *Nat'l Rifle Ass'n of Am. v. Hochul*, No. 20-3187-CV, 2021 WL 5313713, at *2 (2d Cir. Nov. 16, 2021) (summary order).

## V.    The Individual Plaintiffs' Challenges to the CCIA's Licensing Process Are Non-Justiciable

Plaintiffs Koch, Stirnweis, and Francis challenged the CCIA's licensing provisions, alleging that the CCIA would "deter [them] from obtaining or renewing a Handgun Carry License." Am. Compl. ¶ 45. Plaintiff Nash alleged that the CCIA would "burden" his ability to renew his license.[9] *Id*. Each of these claims is moot, because each plaintiff has received a license to carry handguns in the time since they filed this lawsuit.

---

[9]    Plaintiffs Noren and Porter do not challenge the CCIA's licensing provisions.

**A. Plaintiffs Have Obtained their Handgun Carry Licenses and Their Licensing Claims Are Therefore Moot.**

"If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020). Where a plaintiff challenges a licensing law, their claims become moot if they receive a license. *Conn. Citizens Def. League*, 6 F.4th at 444; *see also Libertarian Party of Erie Cty.*, 970 F.3d at 121-22.

Here, each plaintiff challenging the licensing provisions of the CCIA has, subsequent to the filing of this lawsuit, obtained a handgun carry license.

Plaintiff Nash alleged that he had a restricted license prior to the passage of the CCIA and that he was beginning the process of renewing his license so that he could "obtain a Handgun Carry License without restrictions." Am. Compl. ¶¶ 48, 50. Nash obtained a concealed carry license without restrictions in 2022. Declaration of Charles Daniels, attached hereto as Exhibit B.

Plaintiff Koch alleged that he had a restricted license prior to the passage of the CCIA and that he was "deterred from" renewing his current license (a pre-requisite for obtaining a "Handgun Carry license without restrictions"), "because of the expense, inconvenience, and other impermissible burdens of the CCIA's application process and its constituent parts." Am. Compl. ¶¶ 54, 56. But, in early 2024, Koch obtained a handgun carry license without restrictions. Declaration of Charles Daniels.

Plaintiff Stirnweis alleged that he had a restricted license prior to the passage of the CCIA. Am. Compl. ¶ 60. Like Koch, Stirnweis alleged that he was "deterred from" renewing his current license (a pre-requisite for obtaining a "Handgun Carry license without restrictions"), by "the expense, inconvenience, and other impermissible burdens of the CCIA's application process and

13

its constituent parts." *Id*. ¶ 62. Also like Koch, Stirnweis has obtained a handgun carry license without restrictions after the filing of the Amended Complaint. State Police records show that his pistol permit was renewed on November 1, 2023, with an indication that he was permitted to carry concealed pursuant to Penal Law 400.00(2)(f). Declaration of Michael W. Deyo.

Plaintiff Francis alleged that, at the time of the Amended Complaint, he did not "possess a Handgun Carry License—with or without restrictions," and that he had "begun" the process of applying for a license under the CCIA. Am. Compl. ¶¶ 66, 68. Nassau County records show that Francis was issued a license on May 19, 2023. Declaration of Ralph J. Reissman, attached hereto as Exhibit C.

Thus, each individual plaintiff has obtained the license that they sought, and under *Connecticut Citizens Defense League,* 6 F.4th at 444, and *Libertarian Party of Erie County*, 970 F.3d at 121-22, their challenge to the CCIA's licensing provisions is moot.[10] *Antonyuk*, which allowed a plaintiff who alleged that the licensing process deterred him from seeking a license to bring a claim, 89 F.4th 307-11, is not to the contrary. *Antonyuk* emphasized that a claim may become moot if a plaintiff ceases to have "'a personal stake in the outcome of the lawsuit.'" *Id*. at 370 (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)). That is precisely what happened here. Koch and Stirnweis were not ultimately deterred from obtaining their licenses, and they raise no justiciable challenge to the CCIA's licensing provisions.

Finally, to the extent that the Court finds that any plaintiff has presented a justiciable challenge to the CCIA's licensing requirements, *Antonyuk* affirmed an order preliminarily

---

[10]   To the extent that plaintiffs argue that the obligation to recertify or renew their license at some future date renders their claims not moot, there are no allegations in the complaint that any plaintiff would somehow be deterred from recertification or renewal. And even if there were allegations, such a claim would not be ripe. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013).

enjoining enforcement of the CCIA's social media requirement and, as a result, that question has been removed from the pistol permit application. Declaration of Michael W. Deyo. No plaintiff thus could have an injury-in-fact with respect to this requirement "that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

## VI.   Individual Plaintiffs Lack Standing to Challenge the Majority of the CCIA's Sensitive Place Restrictions

In a pre-enforcement challenge such as this, a plaintiff must show "a credible threat of enforcement" and that they intend "'to engage in a course of conduct arguably affected with a constitutional interest' and 'that the intended conduct is proscribed by the challenged law.'" *Antonyuk*, 89 F.4th at 336 (quoting *Vitagliano v. Cty. of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023)). While courts generally assume that a law will be enforced, so long as the statute in question "is recent and not moribund," *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013) (internal quotation marks and citation omitted), a plaintiff still has the burden to allege "specific details" showing they "suffered a concrete, particularized, and actual or imminent injury-in-fact." *Amidax Trading Group*, 671 F.3d at 148 (internal quotation marks and citation omitted). And importantly, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

As with any justiciability issue, a plaintiff seeking to invalidate "bears the burden of establishing standing." *Amidax Trading Group*, 671 F.3d at 145. "[C]onclusory assertion[s] cannot support standing." *Conn. Citizens Def. League*, 6 F.4th at 448. Though plaintiffs seek an order preventing the enforcement of New York's prohibitions on possessing firearms in sensitive places, the Amended Complaint is devoid of allegations about the vast majority of the sensitive places

enumerated in Section 265.01-e of the Penal Law. Even where they allege that they visit an enumerated sensitive place, plaintiffs' allegations are frequently so vague and cursory that they cannot suffice to establish a case or controversy.

### A. No Plaintiff Alleges They Intend to Visit the Majority of Enumerated Sensitive Places

As an initial matter, though the Amended Complaint seeks to invalidate all of section 265.01-e of the Penal Law, it does not allege that any individual plaintiff seeks to carry a concealed weapon while visiting: (1) "any place owned or under the control of federal, state or local government, for the purpose of government administration, including courts"; (2) "any location providing . . . behavioral health[] or chemical dependence care or services"; (3) childcare programs, as well as nursery schools or preschools; (4) programs licensed, regulated, certified, operated, or funded by the State's Office for People with Developmental Disabilities, Office of Addiction Services and Supports, Office of Mental Health, and Office of Temporary and Disability Assistance; (5) "homeless shelters, runaway homeless youth shelters, family shelters, shelters for adults, domestic violence shelters, and emergency shelters, and residential programs for victims of domestic violence"; (6) "residential settings licensed, certified, regulated, funded or operated by the department of health"; (7) educational institutions; (8) any establishment that is licensed for on-premise consumption of cannabis; (9) "stadiums, racetracks, museums, amusement parks, performance venues, concerts, exhibits, conference centers, banquet halls, and gaming facilities and video lottery terminal facilities as licensed by the gaming commission"[11]; (10) polling places; or (11) "any gathering of individuals to collectively express their constitutional rights to protest or

---

[11] As discussed below, Porter alleges that he visits "places used for sporting events" and "Broadway shows."

assemble." Absent such allegations, the Individual Plaintiffs do not have standing to challenge these provisions. *See Brokamp v. James*, 66 F.4th 374, 389 (2d Cir. 2023).

The Amended Complaint alleges that "Plaintiff NYSRPA has at least one member who, but for Defendants' continued enforcement of the New York laws and regulations set forth above, would forthwith carry a firearm outside the home for self-defense in each of the now-designated sensitive and restricted areas." Am. Compl. ¶ 87. But, as discussed above, an organization cannot rely upon its members to establish its standing to bring a claim under 42 U.S.C. § 1983, and it certainly cannot do so based on "conclusory" allegations that do not specify how they were injured. *See Conn. Citizens Def. League*, 6 F.4th at 447-48.

## B. Plaintiffs' Allegations as to Other Sensitive Places Are Inadequate to Establish Standing

At the pre-enforcement stage, "[a] gun owner who alleges a prior visit to a venue, a reason or wish to visit again, and either a plan to do so (thereby subjecting himself to arrest) or a decision to forgo doing so for fear of prosecution" establishes standing. *Antonyuk*, 89 F.4th at 372. But as ever, conclusory and vague allegations will not suffice: "Ordinarily, 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the actual or imminent injury that our cases require." *Gazzola v. Hochul*, 88 F.4th 186, 203 n.9 (2d Cir. 2023) (quoting *Lujan*, 504 U.S. at 564) (cleaned up).

Only four of the individual plaintiffs allege that they wish to carry a concealed firearm in a sensitive place, in violation of Section 265.01-e of the Penal Law.[12] For the reasons laid out

---

[12] Nash and Koch make no such allegations and therefore have no standing to challenge any portion of the sensitive places law.

below, their allegations as to many of the sensitive places they purport to visit fail to establish

standing.[13]

**Places of Worship**

Noren alleges that he would like to carry a concealed firearm at a place of worship that he

attends "at least weekly" (Chabad at Cornell in Ithaca, New York). Am. Compl. ¶ 73. A change in

New York law has rendered Noren's claim moot. As the Second Circuit explained in *Antonyuk*:

> The New York legislature amended the place of worship provision after the district
> courts enjoined it. Previously, the provision criminalized possession of a firearm in
> "any place of worship or religious observation." Effective May 3, 2023, however,
> places of "religious observation" are no longer covered, and the provision has an
> exception for "those persons responsible for security at such place of worship."

89 F.4th at 343 (citations omitted). As a result, *Antonyuk* held that no plaintiff had standing to

challenge this provision except for the plaintiff who claimed, not just that he personally wanted to

carry a firearm to his church, but also that his religious beliefs were that others should carry

concealed firearms as well, "'because such concealed carry effectuates [his] religious beliefs ...

---

[13]   The State Defendants do not challenge in this motion Noren's standing to challenge the
prohibition on possessing a firearm in a "location providing health . . . care or services," N.Y.
Penal L. § 265.01-e(2)(b), in light of his allegation that he would like to carry a concealed handgun
at his oral surgery practice in Ithaca, where "he handles large sums of money." Am. Compl. ¶ 74.
The State Defendants also do not challenge in this motion Porter's standing to challenge the
prohibition on possessing a firearm in "public playgrounds [or] public parks," N.Y. Penal L. §
265.01-e(2)(d), in light of his allegation that he would like to carry a concealed handgun when he
"regularly goes to Highview Park and other public parks throughout Rockland County with his
son." Am. Compl. ¶ 80. And the State Defendants do not challenge in this motion Porter's standing
to challenge the prohibition on possessing a firearm in a summer camp, N.Y. Penal L. § 265.01-
e(2)(f), in light of his allegations that he "is the martial arts director at Day Camp in the Park in
Harrimon [sic] State Park," that "[e]very year, some 500 children attend this summer camp," and
that "[p]rior to the CCIA's enactment, Day Camp in the Park did not prohibit camp directors, like
Mr. Porter, from carrying handguns concealed." Am. Compl. ¶ 80.
       The State Defendants may seek to challenge plaintiffs' standing as to those sensitive places, to
the extent that any of plaintiffs' claims survive, should discovery reveal that plaintiffs do not, in
fact, intend to visit those places with their firearms. *See Arizonans for Off. Eng. v. Arizona*, 520
U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy
must be extant at all stages of review, not merely at the time the complaint is filed.'" (quoting
*Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

that [they] must protect the physical safety of the flock.'" *Id*. at 345-46. Noren has made no such

allegations. And under section 265.01-e of the Penal Law, "persons responsible for security" may

carry firearms at a place of worship. At this point, either Noren is authorized by his Chabad to

carry a firearm as a person responsible for security, in which case he cannot claim he has been

injured, or his Chabad has chosen not to authorize him to carry a firearm on its premises, in which

case, his dispute is with Chabad leadership.

### Libraries, Zoos

Porter alleges that he would, "but for the enactment and enforcement of the CCIA" carry a

concealed firearm when he "regularly takes his son to the library and quarterly to the zoo." Am.

Compl. ¶ 80. Porter fails to allege what he means by "regularly," which libraries and zoos he

frequents, how long he stays in the library or zoos, whether he takes his son inside those libraries

and zoos or drops him off, and whether the libraries and zoos he allegedly visits allowed guns on

their premises before the enactment of the CCIA—i.e., whether anything changed for Porter as a

result of the enactment of the CCIA. The answers to these questions are relevant to whether Porter

has suffered any injury resulting from the enactment of the sensitive places restrictions, *see*

*Antonyuk*, 89 F.4th at 369-373, and this is all information that Porter should know. It was plaintiffs'

burden to "allege *specific, concrete facts* demonstrating that the challenged practices harm him,

and that he personally would benefit in a tangible way from the court's intervention." *Warth v.*

*Seldin*, 422 U.S. 490, 508 (1975) (emphasis added). These vague and conclusory allegations do

not satisfy Article III.

### Public Transportation

Both Stirnweis and Francis allege that they "regularly ride[] public transportation" and

"would, but for the enactment and enforcement of the CCIA, carry a handgun concealed in these

sensitive locations." Am. Compl. ¶¶ 63, 67. They fail to allege what they mean by "regularly," what forms of public transportation they use and whether those forms of public transportation allowed firearms before the passage of the CCIA. This information is within plaintiffs' control, but they have chosen not to include it here. Instead, the allegations describe "'some day' intentions—without any description of concrete plans, or even indeed any specification of *when* the some day will be." *Lujan*, 504 U.S. at 564 (emphasis in original). Without more, there is no way for this Court to assess whether Stirnweis and Francis actually travel on a form of public transportation that is, in fact, public transportation as used in Section 265.01-e of the Penal Law. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) ("mere 'labels and conclusions,' . . . are insufficient to survive a motion to dismiss" for lack of standing (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### Senior Centers

Porter alleges that he "is a public, motivational speaker and regularly speaks at senior centers," and that "[p]rior to the CCIA's enactment, the senior centers at which he spoke did not prohibit speakers from carrying handguns concealed, and Mr. Porter did so." Am. Compl. ¶ 81. This allegation does not suffice to establish "'that the intended conduct is proscribed by the challenged law.'" *Antonyuk*, 89 F.4th at 336 (quoting *Vitagliano*, 71 F.4th at 136). Specifically, the sensitive places law says nothing about senior centers. *See* N.Y. Penal L. § 265.01-e. It may be that the senior centers Porter visits fall within some other category enumerated in the sensitive places statute, but there is no basis in the Amended Complaint for that speculation. For instance, a senior center *could be* a "residential setting[] licensed, certified, regulated, funded, or operated by the department of health," N.Y. Penal Law § 265.01-e(2)(l), but Porter has not specified the "senior centers" he visits or alleged any connection between the "senior centers" and the Department of

20

Health. This was plaintiffs' burden, and the Court need not fill in the gaps that plaintiffs have chosen to occlude.

### Establishments that Serve Alcohol

Porter alleges that he "and his family regularly dine at bars and restaurants that serve alcohol," and that "[p]rior to the CCIA's enactment," these places did not prohibit possession of firearms on their premises and he carried a concealed firearm and would like to continue doing so. Am. Compl. ¶ 82. Porter does not allege what "regularly" means and does not allege any information about the bars and restaurants he visits, making it impossible to determine if they are "establishment[s] holding an active license for on-premise consumption pursuant to article four, four-A, five, or six of the alcoholic beverage control law where alcohol is consumed." N.Y. Penal L. § 265.01-e(2)(o). Some degree of specificity is required here, and plaintiffs have failed to carry their burden. *See Amidax Trading Group*, 671 F.3d at 145.

### Places Used for Sporting Events

Porter alleges that he "regularly attends his son's basketball games, which are held at places used for sporting events," and that, but for the CCIA, he would carry a concealed firearm at his son's games. Am. Compl. ¶ 83. Porter does not allege, however, that these places allowed concealed carry before the CCIA such that the passage of the CCIA caused an injury-in-fact (and, given that he has alleged affirmatively that other places he wishes to visit did allow possession of firearms prior to the passage of the CCIA, the negative implication is that these sites may not have done so). Depending on the age of his son, those games may be held in school zones, where possession of a gun would separately violate the federal Gun Free School Zones Act of 1990 (codified at 18 U.S.C.  922(q)). *See also NYSRPA I*, 597 U.S. at 30 (describing history of laws forbidding possession of firearms in sensitive places including schools). But all of this is

speculation, because plaintiffs have not met their burden of alleging facts that would show that the CCIA's requirements have caused them any injury.

**Parades**

Porter alleges that he "annually attends Fourth of July parades with his family" and that he would like to carry a concealed firearm when he does so, but cannot because the CCIA prohibits possession of a firearm "on public sidewalks or other public area restricted from general public access for a limited time or special event that has been issued a permit for such time or event by a governmental entity, or subject to specific, heightened law enforcement protection, or has otherwise had such access restricted by a governmental entity, provided such location is identified as such by clear and conspicuous signage." Am. Compl. ¶ 84. But Porter does not say which Fourth of July parades he attends annually, whether those parades allowed attendees in possession of a firearm prior to the passage of the CCIA, where those parades are (or even if they are in New York State), or whether the public sidewalk where he wishes to view the parade has restricted access, all of which are relevant to the question of whether he intends to carry a firearm in "public area[s] restricted from general public access for a limited time or special event that has been issued a permit for such time or event by a governmental entity." N.Y. Penal Law § 265.01-e(2)(r).

**Times Square and Theaters**

Porter also alleges that he "used to frequent Times Square to attend Broadway shows," but "no longer does so because he may not carry a firearm there." Am. Compl. ¶ 85. Because "Times Square" is a colloquial term without an agreed upon definition, the legislature permitted the City of New York to define the metes and bounds of that area. N.Y. Penal Law § 265.01-e(2)(t). The City of New York promulgated regulations defining the area, *see* N.Y.C. Admin. Code § 10-315. But Porter does not allege if the theaters he "used to frequent" fall within the Times Square zone,

22

as defined by the City. Nor does Porter allege when or how frequently he would like to attend a Broadway show. *See Antonyuk*, 89 F.4th at 371 ("A person with a ticket to a play next week is not necessarily a theater-goer."). These allegations describe "'some day' intentions" and lack the specificity and concreteness that Article III requires. *Lujan*, 504 U.S. at 564.

## VII.   The Individual Plaintiffs' Challenges to the Restricted Places Statute Are Non-Justiciable as to Private Property Not Open to the Public

With respect to private property that is closed to the public, Noren and Porter allege that they would like to permit concealed carry at their homes "without posting the required sign." Am. Compl. ¶ 105. Noren and Porter argue that the restricted places law infringes their Second Amendment rights, *id*. ¶¶ 92-93, and their First Amendment rights, *id*. ¶¶ 104-05. They also argue that the restricted places law is "so broad and all-encompassing" that it is void for vagueness and that it violates the equal protection clause of the Fourteenth Amendment insomuch as it treats former law enforcement officers differently from others. *Id*. ¶¶ 120-21. No other plaintiff raises a challenge to these provisions.

Neither Noren nor Porter alleges that the restricted locations law has been enforced against them, so they must show instead that they plan "to engage in a course of conduct arguably affected with a constitutional interest and that the intended conduct is proscribed by the challenged law." *Antonyuk*, 89 F.4th at 336 (quoting *Vitagliano*, 71F.4th at 136). The restricted places law contemplates that a property owner who wishes to permit firearms on their property do so "by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted *or by otherwise giving express consent*." N.Y. Penal Law § 265.01-d(1) (emphasis added). And while both Noren and Porter allege they do not want to post "the required sign," Am. Compl. ¶ 105, they do not allege an unwillingness to "otherwise giv[e] express consent." N.Y. Penal Law § 265.01-d(1). Without this, they have not alleged that their intended

conduct would violate the law, and therefore, they do not have standing to raise this pre-enforcement challenge to the restricted places law.[14]

## **CONCLUSION**

For the foregoing reasons, this Court should grant the State Defendants' motion to dismiss this action and grant such other relief as it deems just and proper.


Date: March 8, 2024

LETITIA JAMES
Attorney General
State of New York

*Attorney for Defendants Acting Superintendent James and Justice McNally*

By: _____
Molly Thomas-Jensen
Special Counsel
Bar Roll No. 705119
28 Liberty Street
New York, NY 10005
(212) 416-8679
Molly.Thomas-Jensen@ag.ny.gov

---

[14] The State Defendants do not challenge in this motion Noren's and Porter's standing to challenge section 265.45 of the Penal Law, which prohibits storing a loaded, unsecured gun in a car. They reserve the right, however, to challenge their standing at a later time.