UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NEW YORK STATE RIFLE & PISTOL ASSOCIATION,
INC., *et al.*,

                              Plaintiffs,

          -against-

STEVEN G. JAMES, in his official capacity as
Superintendent of the New York State Police, *et al.*,

                              Defendants.

---

Case No. 1:22-cv-00907
(MAD/CFH)

# MEMORANDUM OF LAW IN SUPPORT OF
# SUPERINTENDENT JAMES' MOTION TO DISMISS

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

*Attorney for Defendant*
*Superintendent James*

Molly Thomas-Jensen, Bar Roll No. 705119
  Special Counsel

May 13, 2024

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 2

    LEGAL STANDARDS ................................................................................................. 6

    ARGUMENT ................................................................................................................ 6

        I.    The Eleventh Amendment Bars Licensing Claims Against Superintendent James......... 6

        II.   Plaintiffs Fail to Allege Traceability as to the Licensing Claims ................................... 8

        III.   NYSRPA Does Not Have Standing to Sue ..................................................................... 9

        IV. The Individual Plaintiffs' Challenges to the CCIA's Licensing Process Remain Non-Justiciable................................................................................................................... 10

        V.  The Individual Plaintiffs Lack Standing to Challenge the Majority of the CCIA's Sensitive Place Restrictions ................................................................................................. 12

           A.  No Plaintiff Alleges They Intend to Visit the Majority of Enumerated Sensitive Places ..................................................................................................................... 14

           B.  Plaintiffs' Allegations as to Places of Worship Are Inadequate to Establish Standing 15

    CONCLUSION...................................................................................................................... 17

i

## TABLE OF AUTHORITIES

**Cases**

*74 Pinehurst LLC v. New York*, 59 F.4th 557 (2d Cir. 2023) ........................................ 7

*Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) ....................... 6, 12, 13

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) ............................................ passim

*Arizonans for Off. Eng. v. Ariz.*, 520 U.S. 43 (1997) .................................................. 13

*Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023) ......................................................... 14

*Conn. Citizens Defense League v. Lamont,* 6 F.4th 439 (2d Cir. 2021) ...................... 9, 10, 13, 15

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .................................................... 4

*Ex parte Young*, 209 U.S. 123 (1908) ......................................................................... 7

*Gazzola v. Hochul*, 645 F. Supp. 3d 37 (N.D.N.Y. 2022), .......................................... 7, 13

*HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286 (W.D.N.Y. 2010) ........................ 8

*Hedges v. Obama*, 724 F.3d 170 (2d Cir. 2013) .......................................................... 12

*Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020) ....................... 6, 7, 8, 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). ........................................... 8, 12, 13

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................................. 6

*Marchi v. Bd. of Cooperative Educ. Servs. of Albany*, 173 F.3d 469 (2d Cir. 1999) ................. 12

*Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167 (2d Cir. 2008) .............................. 6

*New  York State Firearms Ass'n v. James*, 2024 WL 1932050 (W.D.N.Y. May 2, 2024) ........... 10

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682 (2d Cir. 2013) .................................. 10, 11

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ........................... 11

*Nat'l Rifle Ass'n of Am. v. Hochul*, 2021 WL 5313713 (2d Cir. Nov. 16, 2021) ..................... 9

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. (2022) .......................... 2, 3, 4

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) ............................................................... 9

*Oneida Indian Nation v. United States Dep't of the Interior*, 336 F. Supp. 3d 37 (N.D.N.Y. 2018) ................................................................................................................................. 16

*Preiser v. Newkirk*, 422 U.S. 395 (1975) .................................................................... 13

*Ross v. Bank of America, N.A.*, 524 F.3d 217 (2d Cir. 2008) ...................................... 10

*Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976) ........................................ 8, 16

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .............................................................. 12

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). ................................................... 12

*United States v. Homer*, 2024 WL 417103 (E.D.N.Y. Feb. 5, 2024) ........................... 3

*Vitagliano v. Cty. of Westchester*, 71 F.4th 130, (2d Cir. 2023) ................................ 12

**Statutes**

42 U.S.C. § 1983 .................................................................................................... passim

N.Y. Laws. Ch. 371 (S. 51001) ..................................................................................... 3

N.Y. Penal Law § 265.00 .......................................................................................... 7, 8

N.Y. Penal Law § 265.01-d ........................................................................................... 5

N.Y. Penal Law § 265.01-e ...................................................................................... 4, 13

N.Y. Penal Law § 400.00 .................................................................................. 3, 7, 9, 10

**Rules**

Federal Rules of Civil Procedure 12(b)(1) ................................................................. 1, 6

**Other Materials**

5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Federal Practice and Procedure § 1350 (4th ed.) ............................................................................................................................ 6

Defendant Steven G. James, in his official capacity as Superintendent of the New York State Police (hereinafter, "Superintendent James"), submits this memorandum of law in support of his motion to dismiss the Second Amended Complaint ("SAC") (ECF No. 63). The Second Amended Complaint should be dismissed in part pursuant to Federal Rules of Civil Procedure 12(b)(1).

## PRELIMINARY STATEMENT

New York regulates the public carry of guns through its licensing process and by certain limitations on places where people may carry guns. These laws reflect New York's commitment to public safety and ensure that New Yorkers enjoy one of the lowest gun homicide rates in the country. Through this lawsuit, plaintiffs seek to challenge New York's laws regarding public carry. But many of their claims cannot survive the Eleventh Amendment's jurisdictional bar, and plaintiffs also lack standing and an active case or controversy as to many of the statutory provisions they challenge. Much of this case can and should be dismissed on justiciability and immunity grounds.

In July 2022, the State of New York enacted the Concealed Carry Improvement Act ("CCIA"). Within weeks of the CCIA's passage, the New York State Rifle & Pistol Association ("NYSRPA") and two individual plaintiffs filed this lawsuit to challenge the constitutionality of the CCIA, arguing that its licensing, sensitive places, and private property provisions violate the Second Amendment of the U.S. Constitution, and that certain aspects of the licensing and private property provisions violate the First, Fourth, and Fourteenth Amendments.

In choosing to sue Superintendent James in his official capacity, plaintiffs have run headlong into the Eleventh Amendment's protections. The claims against Superintendent James seeking to enjoin him from enforcing the safety course and training provisions of the CCIA do not

fall within the *Ex parte Young* exception, because under Second Circuit precedent, he lacks the requisite connection to enforcement of those provisions.

Plaintiffs have failed to plead a justiciable case or controversy for many of their claims. As an initial matter, the organizational plaintiff asserts no direct injury and is therefore categorically barred from bringing suit under 42 U.S.C. § 1983. Additionally, the two individual plaintiffs who challenge the licensing provisions of the CCIA have both received handgun carry licenses and are not due to renew their licenses until December 2025 and May 2026. Challenging the renewal procedures this far in advance raises abstract and premature questions that are not ripe for review. Moreover, plaintiffs do not allege that any harm they may have suffered under the licensing law is traceable to and redressable by Superintendent James. With respect to the individual plaintiffs who challenge the sensitive places provision of the CCIA, they do not allege that they visit many of the sensitive places laid out in the statute.

While it is evident from the face of the Second Amended Complaint that each plaintiff *dislikes* the CCIA's requirements, more is required when a party seeks to invalidate a duly enacted state law. As the Second Circuit recently noted in *Antonyuk v. Chiumento*, "a court must be confident that it is deciding a true 'case or controversy'—rather than issuing an advisory opinion—when asked to invalidate the action of a co-ordinate branch or of a state." 89 F.4th 271, 371 (2d Cir. 2023). Plaintiffs have failed to meet their burden to establish a case or controversy with respect to many provisions of the CCIA, and these claims should therefore be dismissed.

## **BACKGROUND**

Following the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) ("*Bruen*"), which struck down New York's requirement of "proper

cause" to carry a concealed firearm in public, the State enacted the CCIA on July 1, 2022, with an effective date of September 1, 2022. *See* 2022 N.Y. Laws. Ch. 371 (S. 51001).

The licensing provisions of the CCIA amended New York law "to alter the firearm licensing regime from one in which licensing officers had discretion to determine whether an applicant had proper cause to one in which licensing officers 'shall' issue a license to 'any person.'" *United States v. Homer*, No. 23-CR-00866, 2024 WL 417103, at *5 (E.D.N.Y. Feb. 5, 2024) (quoting N.Y. Penal Law § 400.00(2)(f)), *appeal filed*, No. 24-1000 (2d Cir.). Under current law, a licensee must demonstrate "good moral character," which is defined by statute as an assessment of dangerousness, and must meet other eligibility requirements. N.Y. Penal Law § 400.00(1). The CCIA also required that applicants for concealed carry licenses submit the following to their licensing officer: (1) names and contact information of all adults residing with the applicant, as well as whether any children reside with the applicant; (2) four character references; (3) certification that the applicant has completed the required sixteen hours of classroom training and two hours of live-fire range training, and that the applicant has demonstrated proficiency on both the classroom and the range components of the training; (4) a list of the applicant's current and former social media accounts[1]; and (5) "such other information required by the licensing officer that is reasonably necessary and related to the review of the licensing application." N.Y. Penal Law § 400.00(1)(o). *Bruen* emphasized that its analysis did not implicate licensing laws that "require applicants to undergo a background check or pass a firearm safety course" and that have "narrow, objective, and definite standards guiding licensing officers," because such laws "are designed to ensure only that those bearing arms in the jurisdiction are, in

---

[1]    In *Antonyuk*, the Second Circuit upheld an order preliminarily enjoining enforcement of this requirement. 89 F.4th at 333. Since then, the New York State Police has removed that question from the application. Declaration of Michael W. Deyo, attached hereto as Exhibit A.

fact, 'law-abiding responsible citizens.'" 597 U.S. at 38, n.9 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).[2]

The CCIA also identified a list of sensitive locations where the possession[3] of a firearm is prohibited: (1) federal, state, or local government administration buildings (including courts); (2) locations providing health or chemical dependence care or services; (3) places of worship; (4) libraries, public playgrounds, many public parks, and zoos; (5) many childcare programs, as well as nursery schools, preschools, and summer camps; (6) programs licensed, regulated, certified, operated, or funded by the State's Offices for People with Developmental Disabilities, of Addiction Services and Supports, of Mental Health, and of Temporary and Disability Assistance; (7) homeless shelters; (8) residential settings licensed, certified, regulated, funded or operated by the Department of Health; (9) educational institutions; (10) public transit; (11) any establishment that is licensed for on-premise consumption of cannabis or alcohol; (12) performance, entertainment, gaming, or sporting venues; (13) polling places; (14) public areas "restricted from general public access for a limited time or special event that has been issued a permit"; (15) "any gathering of individuals to collectively express their constitutional rights to protest or assemble"; and (16) Times Square. N.Y. Penal Law § 265.01-e(2). In *District of Columbia v. Heller*, the Court emphasized that it was not "cast[ing] doubt on longstanding prohibitions . . . forbidding the carrying of firearms in sensitive places such as schools and government buildings." 554 U.S. 570, 626 (2008). The Supreme Court echoed this in *Bruen*, "assum[ing] it settled that" states could prohibit carrying arms in "sensitive places," and that "courts can use analogies to those historical

---

[2]   The questions of justiciability and the Eleventh Amendment that this brief addresses were not raised in *Bruen*.

[3]   The statute carves out a list of people, who by virtue of their status (e.g. law enforcement officers) or activity (e.g. engaging in hunter education training) are permitted to carry in these sensitive locations. N.Y. Penal Law § 265.01-e(3).

regulations of 'sensitive places' to determine that modern regulations prohibiting the carry of firearms in new and analogous sensitive places are constitutionally permissible." 597 U.S. at 30; *see also id.* ("we are also aware of no disputes regarding the lawfulness of such prohibitions.").

The CCIA also prohibited the possession of a firearm on "private property where such person knows or reasonably should know that the owner or lessee of such property has not permitted such possession by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted or by otherwise giving express consent." N.Y. Penal Law § 265.01-d. In *Antonyuk*, the Second Circuit upheld a preliminary injunction that barred the enforcement of this provision on private property that is generally open to the public "like a gas station or grocery store," but concluded that the plaintiffs had not made out a facial challenge with respect to private property closed to the public. 89 F.4th at 291, 386-87.

On August 31, 2022, plaintiffs NYSRPA, Robert Nash, and Brandon Koch (the same three plaintiffs who brought suit in *Bruen*), filed this action, bringing six 42 U.S.C. § 1983 claims and seeking to invalidate the CCIA's licensing provisions and its prohibitions on carrying firearms in sensitive locations and certain private property. A month later, plaintiffs filed an amended complaint, which added four additional plaintiffs (Thomas Stirnweis, Wayne Francis, Khoury Porter, and Scott Noren).[4] Proceedings were stayed pending the Second Circuit's decision in *Antonyuk*. After the stay was lifted, Superintendent James and Justice Richard J. McNally, Jr., moved to dismiss the First Amended Complaint, arguing *inter alia* that the challenge to the licensing law was moot as all the Individual Plaintiffs had obtained their handgun carry licenses. (ECF No. 53).

---

[4]     Plaintiffs Nash, Koch, Stirnweis, Francis, Porter, and Noren are together referred to as the "Individual Plaintiffs."

In response to the motion to dismiss, plaintiffs sought leave to file the SAC (ECF No. 59), which this Court granted. (ECF No. 61). The SAC dropped all claims against Justice McNally, amended the requested injunctive relief, conceded that the Individual Plaintiffs had obtained licenses, added allegations about the requirement to renew licenses for the two plaintiffs who reside in Suffolk and Nassau Counties, and added allegations about plaintiffs' visits to sensitive places. (ECF No. 59-3).

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Thus, Federal Rule of Civil Procedure 12(b)(1) is the proper vehicle to raise justiciability (standing, mootness, and ripeness) as well as Eleventh Amendment immunity. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, Federal Practice and Procedure § 1350 (4th ed.). "[T]o survive . . . [a] Rule 12(b)(1) motion to dismiss, [a plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). On a 12(b)(1) motion, "a district court may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

## ARGUMENT

**I.     The Eleventh Amendment Bars Licensing Claims Against Superintendent James**

Plaintiffs have sued Superintendent James in his official capacity, rendering this "an action against the state itself." *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020). Unless the State consents to be sued (which it has not done here), the Eleventh Amendment bars all claims against the state, except those that fall within the *Ex parte Young* exception for "claims for prospective relief against state officials in their official capacities." *74 Pinehurst LLC v. New*

*York*, 59 F.4th 557, 570 (2d Cir. 2023). The *Ex parte Young* exception is not simply a workaround that can be fixed by artful pleading. Rather, "[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer *must have some connection with the enforcement* of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. 123, 157 (1908) (emphasis added); *accord Gazzola v. Hochul*, 645 F. Supp. 3d 37, 58 (N.D.N.Y. 2022), *aff'd*, 88 F.4th 186 (2d Cir. 2023).

Superintendent James is not involved in the licensing of civilian applicants like the Individual Plaintiffs as, under New York Law, he is only responsible for the licensing of retired members of the Division of State Police. *See* N.Y. Penal Law §§ 265.00(10), 400.01(1). Under *Ex parte Young*, there must be *some* "special relation" between the named defendant and the enforcement of the complained of provision. 209 U.S. at 157. Otherwise, Superintendent James would simply be serving as "a representative of the state," in violation of the Eleventh Amendment. *Id.*; *see also Libertarian Party of Erie Cty.*, 970 F.3d at 122 (affirming dismissal of challenge to licensing statute as to the Superintendent of the State Police). That "special relation" is not present here. There are no allegations in the SAC that Superintendent James is a licensing officer for any of the Individual Plaintiffs, nor could he be as they are not retired members of the Division of State Police.

Though the SAC has added a specific prayer for relief as to Superintendent James, namely that he not enforce the "CCIA's firearms safety course and training requirements," there is no allegation in the SAC that he plays any role in enforcing those requirements. SAC ¶ 154. The statute does require that Superintendent James "approve" the curriculum for those courses, but the SAC alleges no injury based on the curriculum's content. *See* N.Y. Penal Law § 400.00(19).

Without some closer connection to the enforcement of the licensing provisions, this claim fails.
*See HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010), *aff'd on other grounds*, 448 F. App'x 79 (2d Cir. 2011) (summary order).[5]

## II.   Plaintiffs Fail to Allege Traceability as to the Licensing Claims

To establish standing, a plaintiff must show (1) an injury-in-fact, (2) that is traceable to the complained of conduct, and (3) that is redressable by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). As to traceability, "a federal court [may] act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976).

Plaintiffs fail to allege any injury traceable to Superintendent James with respect to the CCIA's licensing process and eligibility (including renewal). As noted above, Superintendent James is only responsible for the licensing of retired members of the Division of State Police. *See* N.Y. Penal Law § 265.00(10) ("'Licensing officer' means . . . for the purposes of section 400.01 of this chapter [for retired members of the Division of State Police] the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance."). Thus, in *Libertarian Party*, the Second Circuit upheld a district court's determination in a challenge to New York's firearms license law that "the only defendants to whom their alleged injuries were fairly traceable were the judges" reviewing licensing applications. 970 F.3d at 122. Plaintiffs do not allege that they are current or retired members of the State Police. The two plaintiffs who challenge the licensing law challenge the renewal requirement, which is a

---

[5]   Superintendent James does oversee enforcement of the sensitive places, private property, and automobile storage provisions of the CCIA, and thus does not raise an Eleventh Amendment challenge to the claim against Superintendent James as to those provisions.

requirement administered by the counties in which they live, not the State. *See* N.Y. Penal Law § 400.00(10). They have alleged no licensing injuries traceable to Superintendent James.

### III.    NYSRPA Does Not Have Standing to Sue

NYSRPA has sued Superintendent James under 42 U.S.C. § 1983. SAC ¶¶ 104-149. "It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983, as we have interpreted the rights § 1983 secures to be personal to those purportedly injured." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (cleaned up). While an organization may bring suit under § 1983 "on its own behalf," it must show that it has been directly injured to do so. *Id.* In *Connecticut Citizens Defense League v. Lamont*, the Second Circuit held that a Second Amendment advocacy organization's lobbying efforts, communications, investigations, and litigation relating to the challenged law were "integral to [its] mission" and "not a departure from [the organization's] usual activities" and thus not a basis for standing. 6 F.4th 439, 447 (2d Cir. 2021). More generally, "[a]n organization's abstract concern with a subject that could be affected by an adjudication is insufficient." *Id.* (cleaned up).

There are no allegations in the SAC that NYSRPA has suffered any direct injury as a result of the CCIA. While the SAC contains some allegations about NYSRPA's members, *see* SAC ¶¶ 14, 28, 35, 55, 103, the organization cannot rely on its members to create standing to bring suit under 42 U.S.C. § 1983. Although Plaintiffs have made minor tweaks to their allegations—for instance, now alleging that the CCIA "directly impact[s]" NYSRPA's central mission," instead of being "a direct affront" to that mission (ECF No. 59-3 at ¶ 14)—the allegations do not explain what that impact is or how the organization is harmed by the CCIA. NYSRPA's claims should be dismissed for failing to "allege its own injuries separate and apart from injuries to its members." *Nat'l Rifle Ass'n of Am. v. Hochul*, No. 20-3187-CV, 2021 WL 5313713, at *2 (2d Cir. Nov. 16, 2021) (summary order); *see also N.Y. State Firearms Ass'n v. James*, No. 23-CV-6524, 2024 WL

1932050 at *3 (W.D.N.Y. May 2, 2024) ("Because [§ 1983] claims are personal to those that are injured, it necessarily follows that cases that bring these claims require the participation of individual members." (cleaned up)).

## IV.    The Individual Plaintiffs' Challenges to the CCIA's Licensing Process Remain Non-Justiciable

In response to the motion to dismiss and supporting affidavits filed by the former New York State Police Superintendent and Richard J. McNally, Jr., Justice of the New York State Supreme Court (ECF No. 53), the Individual Plaintiffs now acknowledge that they have obtained their handgun carry licenses. SAC ¶¶ 44-55. Where a plaintiff challenges a licensing law, their claims become moot if they receive a license. *Conn. Citizens Def. League*, 6 F.4th at 444; *see also Libertarian Party of Erie Cty.*, 970 F.3d at 121-22. For plaintiffs Nash, Koch, Porter, and Noren, there is no renewal process, given the counties where they reside. *See* N.Y. Penal Law § 400.00(10). They have not presented a justiciable challenge to the licensing regime.

The SAC includes new allegations about renewal to gin up a theory of justiciability—namely that Plaintiff Stirnweis resides in Suffolk County and Plaintiff Francis resides in Nassau County, and both counties require renewal every three years. *Id*. However, as the SAC makes plain, Plaintiff Stirnweis need not renew his license until December 2025, and Plaintiff Francis has until May 2026. SAC ¶¶ 50, 54. They each contend that the renewal process is "burdensome" and would "repeatedly violate [their] constitutional rights." *Id*. But this new theory is not ripe for adjudication.

"Constitutional ripeness" is a "specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). It requires that any alleged injury be "actual and imminent." *Ross v. Bank of America, N.A.*, 524 F.3d 217, 226 (2d Cir. 2008). "A claim is not ripe if it depends upon contingent future events that may not

occur as anticipated, or indeed may not occur at all. The doctrine's major purpose is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Org. for Marriage,* 714 F.3d at 687 (cleaned up). "Prudential ripeness," a related but distinct doctrine, involves a two-step inquiry, in which the Court "evaluate[s] both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 691 (cleaned up).

Since the CCIA has been in effect, it has been the subject of extensive litigation, portions of it have been enjoined, the Legislature has amended it, and Suffolk County has altered its pistol permit licensing procedures. *See Antonyuk*, 89 F.4th at 291-94, 343. It is impossible to know how the legal landscape will change over the next year and seven months, but recent experience shows that some change is almost certain. Circumstances in the plaintiffs' lives may also change over the next two years, rendering this suit non-justiciable. These are "contingent future events that may not occur as anticipated, or indeed may not occur at all"—and therefore there is not a case-or-controversy that is ripe for adjudication. *Nat'l Org. for Marriage,* 714 F.3d at 687.

As to prudential ripeness, the questions here are not pure legal questions, which weighs against finding them ripe for decision. *See Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003). The question of what the renewal process will entail (and whether Plaintiffs will even have to undergo it) is still uncertain. *See id.* (noting that petitioner "rel[ied] on specific characteristics of certain types of . . . contracts to support their position" and concluding that the Court should therefore "await a concrete dispute about a particular concession contract").

Nor would withholding a decision create a hardship, as Plaintiffs Stirnweis and Francis have their handgun carry permits now, and they have alleged no injury or harm that affects them immediately, or anytime soon. *See Marchi v. Bd. of Cooperative Educ. Servs. of Albany*, 173 F.3d

469 (2d Cir. 1999) ("In assessing the possible hardship to the parties resulting from withholding judicial resolution, we ask whether the challenged action creates a direct and immediate dilemma for the parties.").

Finally, to the extent that the Court finds that any plaintiff has presented a justiciable challenge to the CCIA's licensing requirements, *Antonyuk* affirmed an order preliminarily enjoining enforcement of the CCIA's social media requirement and, as a result, that question has been removed from the pistol permit application. Declaration of Michael W. Deyo. Thus, no plaintiff could have an injury-in-fact with respect to this requirement "that is 'concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

## V.     The Individual Plaintiffs Lack Standing to Challenge the Majority of the CCIA's Sensitive Place Restrictions

In a pre-enforcement challenge such as this, a plaintiff must show "a credible threat of enforcement" and that they intend "'to engage in a course of conduct arguably affected with a constitutional interest' and 'that the intended conduct is proscribed by the challenged law.'" *Antonyuk*, 89 F.4th at 336 (quoting *Vitagliano v. Cty. of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023)). While courts generally assume that a law will be enforced, so long as the statute in question "is recent and not moribund," *Hedges v. Obama*, 724 F.3d 170, 197 (2d Cir. 2013) (cleaned up), a plaintiff still has the burden to allege "specific details" showing they "suffered a concrete, particularized, and actual or imminent injury-in-fact." *Amidax Trading Group*, 671 F.3d at 148 (cleaned up). And importantly, "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

As with any justiciability issue, a plaintiff seeking to invalidate "bears the burden of establishing standing." *Amidax Trading Group*, 671 F.3d at 145. "[C]onclusory assertion[s] cannot support standing." *Conn. Citizens Def. League*, 6 F.4th at 448. "Ordinarily, 'some day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the actual or imminent injury that our cases require." *Gazzola v. Hochul*, 88 F.4th 186, 203 n.9 (2d Cir. 2023) (quoting *Lujan*, 504 U.S. at 564) (cleaned up). Though plaintiffs seek an order preventing the enforcement of New York's prohibitions on possessing firearms in sensitive places, the SAC is devoid of allegations about the vast majority of the sensitive places enumerated in Section 265.01-e of the Penal Law. And while two of the Individual Plaintiffs have added allegations about their desire to carry guns to their places of worship, these allegations fail to establish traceability and redressability. [6]

---

[6]     Superintendent James does not challenge in this motion certain Individual Plaintiffs' standing to challenge the prohibitions on possessing firearms in: (1) federal, state, or local government administration buildings (Nash, Koch, and Stirnweis have alleged that they regularly visit places in this category); (2) locations providing health care or services (Nash and Noren have alleged that they regularly visit places in this category); (3) libraries, public playgrounds, public parks, and zoos (Nash, Porter, and Stirnweis have alleged that they regularly visit places in this category); (4) residential settings licensed, certified, regulated, funded or operated by the Department of Health (Porter has alleged that he regularly visits places in this category); (5) public transit (Stirnweis and Francis have alleged that they regularly visit places in this category); (6) any establishment that is licensed for on-premise consumption of alcohol (Nash, Porter, and Stirnweis have alleged that they regularly visit places in this category); (7) sporting venues (Porter has alleged that he regularly visits places in this category); (8) public areas "restricted from general public access for a limited time or special event that has been issued a permit" (Porter and Stirnweis have alleged that they regularly visit places in this category); and (9) Times Square (Porter and Stirnweis have alleged that they regularly visit Times Square). Superintendent James may seek to challenge plaintiffs' standing as to those sensitive places should discovery reveal that plaintiffs do not, in fact, intend to visit those places with their firearms. *See Arizonans for Off. Eng. v. Ariz.*, 520 U.S. 43, 67 (1997) ("To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

     Additionally, Superintendent James does not challenge in this motion Noren's and Porter's standing to challenge section 265.01-d of the Penal Law, which governs possession of a firearm on private property. He reserves the right, however, to challenge their standing at a later time. Nor

**A. No Plaintiff Alleges They Intend to Visit the Majority of Enumerated Sensitive Places**

As an initial matter, though the SAC seeks to invalidate all of section 265.01-e of the Penal Law, it does not allege that any individual plaintiff seeks to carry a concealed weapon while visiting: (1) "any location providing . . . behavioral health[] or chemical dependence care or services"; (2) childcare programs, as well as nursery schools or preschools; (3) programs licensed, regulated, certified, operated, or funded by the State's Office for People with Developmental Disabilities, Office of Addiction Services and Supports, Office of Mental Health, and Office of Temporary and Disability Assistance; (4) "homeless shelters, runaway homeless youth shelters, family shelters, shelters for adults, domestic violence shelters, and emergency shelters, and residential programs for victims of domestic violence"; (5) educational institutions; (6) any establishment that is licensed for on-premise consumption of cannabis; (7) "stadiums, racetracks, museums, amusement parks, performance venues, concerts, exhibits, conference centers, banquet halls, and gaming facilities and video lottery terminal facilities as licensed by the gaming commission"; (8) polling places; or (9) "any gathering of individuals to collectively express their constitutional rights to protest or assemble." Absent such allegations, the Individual Plaintiffs do not have standing to challenge these provisions. *See Brokamp v. James*, 66 F.4th 374, 389 (2d Cir. 2023).

The SAC alleges that "Plaintiff NYSRPA has at least one member who, but for Defendants' continued enforcement of the New York laws and regulations set forth above, would possess a firearm for self-defense in each of the now-designated sensitive and restricted areas." SAC ¶ 103.

---

does Superintendent James challenge in this motion Noren's and Porter's standing to challenge section 265.45 of the Penal Law, which prohibits storing a loaded, unsecured gun in a car. He reserves the right, however, to challenge their standing at a later time.

But, as discussed above, an organization cannot rely upon its members to establish its standing to bring a claim under 42 U.S.C. § 1983, and it certainly cannot do so based on "conclusory" allegations that do not specify how they were injured. *See Conn. Citizens Def. League*, 6 F.4th at 447-48.

**B. Plaintiffs' Allegations as to Places of Worship Are Inadequate to Establish Standing**

At the pre-enforcement stage, "[a] gun owner who alleges a prior visit to a venue, a reason or wish to visit again, and either a plan to do so (thereby subjecting himself to arrest) or a decision to forgo doing so for fear of prosecution" establishes standing. *Antonyuk*, 89 F.4th at 372.

Noren and Francis both allege that they would like to carry concealed firearms at places of worship that they attend on a weekly basis (Chabad at Cornell in Ithaca, New York and Union Baptist Church in Hempstead, New York, respectively). SAC ¶¶ 76, 99. Prior to the filing of the SAC, a change in New York law has made these claims moot. As the Second Circuit explained in *Antonyuk*:

> The New York legislature amended the place of worship provision after the district courts enjoined it. Previously, the provision criminalized possession of a firearm in "any place of worship or religious observation." Effective May 3, 2023, however, places of "religious observation" are no longer covered, and the provision has an exception for "those persons responsible for security at such place of worship."

89 F.4th at 343 (citations omitted). As a result, *Antonyuk* held that the plaintiffs who were pastors could now do what they wanted to do (designate themselves as a person who could carry firearms in their places of worship), with the exception of a pastor who claimed, not just that he personally wanted to carry a firearm to his church, but also that his religious beliefs were that others should carry concealed firearms as well, "'because such concealed carry effectuates [his] religious beliefs ... that [they] must protect the physical safety of the flock.'" *Id*. at 345-46.

Noren has attempted to address this issue (which the State raised in its motion to dismiss the First Amended Complaint) by alleging that he "is not responsible for security at the Chabad and lacks the authority to designate himself as a person responsible for security at the Chabad" and that he would like to carry a weapon to his Chabad "for self-defense." The SAC also adds allegations that Francis is a member of Union Baptist Church, which, prior to the enactment of the CCIA, allowed worshippers to carry concealed weapons, and that he has not been designated as responsible for security at his church (and lacks authority to designate himself a member of the security team). SAC ¶ 99. Neither Noren nor Francis alleges that they wish to carry a concealed weapon as a way of effectuating a religious belief, and they do not assert a First Amendment claim premised on a violation of the Free Exercise clause. Both places of worship—Chabad at Cornell and Union Baptist Church—are private institutions and are permitted, under these rules, to designate who is responsible for security and may therefore carry firearms. As Noren and Francis concede, these private institutions have chosen not to designate them as members of the security team who may carry firearms.

When a third party complains of a regulation that indirectly affects them, as Noren and Francis do here, the standard of establishing traceability and redressability is heightened:

> When an asserted injury arises from the government's allegedly unlawful regulation of someone else, much more is needed. It becomes the burden of the plaintiff to adduce facts showing that the third party will act or has acted in a manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.

*Oneida Indian Nation v. United States Dep't of the Interior*, 336 F. Supp. 3d 37, 44–45 (N.D.N.Y. 2018) (D'Agostino, J.) (decision on motion to dismiss) (cleaned up), *aff'd*, 789 F. App'x 271 (2d Cir. 2019). Noren and Francis may have been injured-in-fact, but any injury is traceable to and redressable by their places of worship. *See also Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26,

16

42-43 (1976) (concluding that denial of hospital services could not fairly be traced to IRS ruling that permitted favorable tax status to a nonprofit hospital that only offered emergency room services to indigent patients and that a change to that ruling would not necessarily lead to more services for indigent patients). At this point, Chabad at Cornell and Union Baptist Church control who may carry firearms on their private property, and Superintendent James is in no position to override that determination. Noren's and Francis's challenge to the place of worship provision is thus non-justiciable.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Superintendent James's motion to dismiss this action and grant such other relief as it deems just and proper.

Date: May 13, 2024

LETITIA JAMES
Attorney General
State of New York

*Attorney for Defendant*
*Superintendent James*

By: _____

Molly Thomas-Jensen
Special Counsel
Bar Roll No. 705119
28 Liberty Street
New York, NY 10005
(212) 416-8679
Molly.Thomas-Jensen@ag.ny.gov