**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **NEW YORK STATE RIFLE & PISTOL ASSOCIATION, INC.,** *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 1:22-cv-00907 (MAD/CFH)** |
| **STEVEN G. JAMES, in his official capacity as Superintendent of the New York State Police,** *et al.*, | ) ) ) ) | |
| **Defendants.** | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
SUPERINTENDENT JAMES' MOTION TO DISMISS**

Plaintiffs New York State Rifle & Pistol Association, Inc., Robert Nash, Brandon Koch, Thomas Stirnweis, Wayne Francis, Scott Noren, and Khoury Porter (collectively, "Plaintiffs") respectfully submit this response in opposition to Defendant Superintendent Steven G. James' motion to dismiss. (ECF No. 66).

Date: June 3, 2024

Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

/s/ *John Parker Sweeney*
John Parker Sweeney
James W. Porter, III
Connor M. Blair
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 393-7150
jsweeney@bradley.com
jporter@bradley.com
cblair@bradley.com

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION AND BACKGROUND ............................................................................ 1

LEGAL STANDARD .......................................................................................................... 10

ARGUMENT ...................................................................................................................... 11

I.      Plaintiffs' license renewal challenges are ripe and are not moot ...................................... 11

      A.      Plaintiffs' challenges to renewal requirements are ripe ......................................... 11

      B.      Plaintiffs' challenges to the social media requirement are not moot .................... 13

II.      Plaintiffs have standing to challenge the CCIA's place-of-worship ban .......................... 15

III.      NYSRPA should have associational standing ................................................................. 18

IV.      The Court should reject Superintendent James' sovereign immunity and traceability arguments regarding licensing ............................................................................................. 19

CONCLUSION ................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguayo v. Richardson*,
    473 F.2d 1090 (2d Cir. 1973)................................................................18

*Ala. Legis. Black Caucus v. Alabama*,
    575 U.S 254 (2015)..........................................................................19

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2013).................................................10, 12, 16

*Antonyuk v. Bruen*,
    624 F. Supp. 3d 210 (N.D.N.Y. 2022)....................................................20

*Antonyuk v. Chiumento*,
    89 F.4th 271 (2d Cir. 2023) ...........................................................7, 16

*Brown v. Enter. Merchs. Ass'n*,
    564 U.S. 786 (2011)..........................................................................17

*California v. U.S. Dep't of Health & Hum. Servs.*,
    941 F.3d 410 (9th Cir. 2019) ...........................................................14

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016)................................................................17

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017)..............................................................19

*Chrysafis v. James*,
    534 F. Supp. 3d 272 (E.D.N.Y. 2021) ................................................20

*City & Cnty. of San Francisco v. USCIS*,
    944 F.3d 773 (9th Cir. 2019) ...........................................................14

*Common Cause/Georgia v. Billups*,
    554 F.3d 1340 (11th Cir. 2009) .........................................................18

*Dairy Mart Convenience Stores, Inc. v. Nickel*,
    411 F.3d 367 (2d Cir. 2005)..............................................................19

*Ex parte Lévitt*,
    302 U.S. 633 (1937).........................................................................17

*FEC v. Cruz*,
   596 U.S. 289 (2022)) ............................................................................16, 17, 21

*Florida v. Dep't of Health & Hum. Servs.*,
   19 F.4th 1271 (11th Cir. 2021) ...........................................................................14

*Friends of the Earth, Inc. v. Laidlaw Ent'l Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)...........................................................................................15

*Hunt v. Washington Apple Advertising Comm'n*,
   432 U.S. 333 (1977)......................................................................................18, 19

*Kipke v. Moore*,
   --- F. Supp. 3d ----, 2023 WL 6381503 (D. Md. Sept. 29, 2023) ...........................17

*Koons v. Platkin*,
   673 F. Supp. 3d 515 (D.N.J. 2023) .....................................................................11

*Lacewell v. Off. of Comptroller of Currency*,
   999 F.3d 130 (2d Cir. 2021)...............................................................................11

*LaRoque v. Holder*,
   650 F.3d 777 (D.C. Cir. 2011)............................................................................11

*Libertarian Party of Erie Cnty. v. Cuomo*,
   970 F.3d 106 (2d Cir. 2020)...............................................................................21

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
   591 U.S. 657 (2020)...........................................................................................14

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................10, 12, 17, 21

*McConnell v. FEC*,
   540 U.S. 93 (2009).............................................................................................12

*Mead v. Holder*,
   766 F. Supp. 2d 16 (D.D.C. 2011) ......................................................................12

*Mecinas v. Hobbs*,
   30 F.4th 890 (9th Cir. 2022) ..............................................................................20

*Mission Prod. Holdings, Inc. v. Tempnology LLC*,
   139 S. Ct. 1652 (2019).........................................................................................1

*Nat'l Org. for Marriage, Inc. v. Walsh*,
   714 F.3d 682 (2d Cir. 2013)......................................................................11, 12, 13

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) ............................................................................1, 12, 13, 21

*Nnebe v. Daus*,
644 F.3d 147 (2d Cir. 2011) ....................................................................18

*Oneida Indian Nation v. U.S. Dep't of the Interior*,
336 F. Supp. 3d 37 (N.D.N.Y. 2018) ......................................................17

*Ruesch v. Comm'r of Internal Rev.*,
25 F.4th 67 (2d Cir. 2022) .......................................................................15

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...........................................................................11, 13

*Sharkey v. Quarantillo*,
541 F.3d 75 (2d Cir. 2008) .......................................................................13

*Silva v. Farrish*,
47 F.3d 78 (2d Cir. 2022) .........................................................................19

*Simon v. E. Kentucky Welfare Rights Org.*,
426 U.S. 26 (1976) ...................................................................................17

*Texas v. United States*,
945 F.3d 355 (5th Cir. 2019) ....................................................................18

*Texas Democratic Party v. Abbott*,
978 F.3d 168 (5th Cir. 2020) ....................................................................20

*Thole v. U.S. Bank N.A.*,
140 S. Ct. 1615 (2020) .............................................................................18

*Town of Chester v. Laroe Estates, Inc*,
581 U.S. 433 (2017) .................................................................................18

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) ...............................................................18

*Vengalettore v. Cornel Univ.*,
36 F.4th 87 (2d Cir. 2022) ........................................................................10

*Warth v. Seldin*,
422 U.S. 490 (1975) .................................................................................18

*West Virginia v. EPA*,
597 U.S. 697 (2022) ...........................................................................14, 15

*Whole Woman's Health v. Jackson*,
   595 U.S. 30 (2021)...........................................................................................7, 19

**Statutory Provisions**

N.Y. Penal Law § 265.01-d ...........................................................................1, 3

N.Y. Penal Law § 265.01-e...........................................................1, 2, 3, 4, 8, 9, 10

N.Y. Penal Law § 265.45...........................................................................3

N.Y. Penal Law § 400.00...........................................................1, 4, 7, 8, 20

## INTRODUCTION AND BACKGROUND

For more than a century, New York prohibited most ordinary citizens from carrying handguns outside the home for self-defense, granting carry permits only to those few who could convince a government official that they had "proper cause." The Supreme Court struck down the "proper cause" requirement as contrary to our historical tradition of firearm regulation and confirmed that "[t]he Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 70 (2022).

New York promptly enacted the Concealed Carry Improvement Act, which effectively negates *Bruen*'s holding by imposing an unnecessarily burdensome licensing process, N.Y. Penal Law § 400.00; prohibitions on carrying in many "sensitive locations," *id.* § 265.01-e, and even more "restricted locations," *id.* § 265.01-d; and restrictions on storage of a firearm inside a vehicle, *id.* § 265.45. The CCIA so restricts as to effectively eliminate the fundamental right to bear arms in New York with unreasonable restrictions that have no more historical support than the overturned "proper cause" requirement.

Plaintiffs include the New York State Rifle & Pistol Association ("NYSRPA") suing on behalf of its members, as well as six individuals ("Individual Plaintiffs") who wish to exercise their fundamental right to carry a handgun outside the home for self-defense. (ECF No. 63 ¶ 4). Plaintiffs challenge the CCIA's ahistorical provisions governing licensure (including the initial application for a license and renewal), sensitive locations, restricted locations, and automobile storage. Plaintiffs assert their challenges against the state and local officials charged with the administration and enforcement of those provisions. (*Id.* ¶¶ 15–17). All defendants but Superintendent James answered Plaintiffs' operative second amended complaint. (ECF Nos. 65,

67). Superintendent James moved to dismiss some aspects of the complaint under Rule 12(b)(1) on justiciability or immunity grounds. (ECF No. 66).

Superintendent James concedes that the Individual Plaintiffs have sufficiently pled standing to challenge the CCIA's restricted locations and automobile storage bans. (ECF No. 66-1 at 16–21). Superintendent James also concedes that the Individual Plaintiffs have sufficiently pled standing to challenge every sensitive location at issue in the complaint except the places-of-worship ban. (*Id.*). The following chart lists those challenges asserted by Individual Plaintiffs that are NOT subject to Superintendent James' motion:

| CCIA Provision | Individual Plaintiff(s) with Standing, Ripeness, and non-Mootness | Appropriate Defendant(s) |
|---|---|---|
| *Second Amendment Challenges to Sensitive Locations (Within Count One)* | | |
| Any place owned or under the control of federal, state or local government, for the purpose of government administration, including courts (§ 265.01-e(2)(a)) | Nash, Koch, Stirnweis | James |
| Any location providing health care or services (§ 265.01-e(2)(b)) | Nash, Noren | James |
| Libraries, public playgrounds, public parks, and zoos (§ 265.01-e(2)(d)) | Nash, Porter, Stirnweis | James |
| Residential setting licensed, certified, regulated, funded, or operated by the department of health (§ 265.01-e(2)(l)) | Porter | James |
| Public transportation or public transit (§ 265.01-e(2)(n)) | Francis, Stirnweis | James |

| Any establishment holding an active license for on-premises consumption of alcohol (§ 265.01-e(2)(o)) | Nash, Porter, Stirnweis | James |
|---|---|---|
| Sporting venues (§ 265.01-e(2)(p)) | Porter | James |
| Public areas restricted from general public access for a limited time or special event that has been issued a permit (§ 265.01-e(2)(r)) | Porter, Stirnweis | James |
| Times Square (§ 265.01-e(2)(t)) | Porter, Stirnweis | James |
| *Second Amendment Challenge to Restricted Locations (Within Count One)* | | |
| Private property lacking clear and conspicuous signage permitting carrying of firearms (§ 265.01-d(1)) | Noren, Porter | James |
| *Second Amendment Challenge to Automobile Storage (Within Count One)* | | |
| Storage of a firearm inside a vehicle without firm removing ammunition and securely locking the firearm in a safe storage depository out of sight from outside the vehicle (§ 265.45(2)) | Noren, Porter | James |
| *Other constitutional challenges (Within various Counts)* | | |
| First Amendment challenge to no-carry default compelled speech (Within Count Two) | Noren, Porter | James |
| Fourteenth Amendment overbreadth challenge regarding sensitive and restricted locations (except as to places-of-worship ban, in which standing in challenged) (Within Count Four) | All Individual Plaintiffs | James |

| Fourteenth Amendment equal protection challenge regarding police officers' exemption from sensitive and restricted locations prohibitions (Within Count Five) | All Individual Plaintiffs | Harrison, Ryder, James |
|---|---|---|

Justiciability for most of the challenges alleged in the complaint is based on the imminent violations of the rights of the Individual Plaintiffs. Superintendent James' threshold arguments as they relate to the Individual Plaintiffs are without merit. The following chart lists challenges by Individual Plaintiffs that are subject to Superintendent James' motion but should not be dismissed:

| CCIA Provision | Individual Plaintiff(s) with Standing, Ripeness, and non-Mootness | Appropriate Defendant(s) |
|---|---|---|
| *Second Amendment Challenges to Licensing (Within Count One)* | | |
| Good Moral Character (§ 400.00(1)(b)) | Francis, Stirnweis<br><br>Defenses: Ripeness to extent based on renewal process (ECF No. 66-1 at 14–15), mootness to extent based on initial application (*id.* at 14), sovereign immunity to extent brought against James (*id.* at 10–12) | Harrison, Ryder |
| In-person meeting with licensing officer and submission to licensing officer of family member names, character references, social media accounts, and "such other information" (§ 400.00(1)(o)) | Francis, Stirnweis<br><br>Defenses: Ripeness to extent based on renewal process (ECF No. 66-1 at 14–16), mootness to extent based on initial application (*id.* at 14), sovereign immunity to extent brought against James (*id.* at 10–12) | Harrison, Ryder |
| *Second Amendment Challenges to Sensitive Locations (Within Count One)* | | |
| Any place of worship, except for those persons responsible for security at such place of worship | Francis | James |

| (§ 265.01-e(2)(c)) | Defense: Standing (ECF No. 66-1 at 19–21) | |
|---|---|---|
| ***Other constitutional challenges (Within various Counts)*** | | |
| First Amendment challenge to license application disclosure requirements (Count Two) | Francis, Stirnweis<br><br>Defenses: Ripeness to extent based on renewal process (ECF No. 66-1 at 14–16), mootness to extent based on initial application (*id.* at 14), sovereign immunity to extent brought against James (*id.* at 10–12) | Harrison, Ryder |
| Fourth Amendment challenge to unlawful seizure of private social media information (Count Three) | Francis, Stirnweis<br><br>Defenses: Ripeness to extent based on renewal process (ECF No. 66-1 at 14–16), mootness to extent based on initial application (*id.* at 14), sovereign immunity to extent brought against James (*id.* at 10–12) | Harrison, Ryder |
| Fourteenth Amendment vagueness challenge (Count Four) | Francis, Stirnweis<br><br>Defenses: Ripeness to extent based on renewal process (ECF No. 66-1 at 14–16), mootness to extent based on initial application (*id.* at 14), sovereign immunity to extent brought against James (*id.* at 10–12) | Harrison, Ryder |
| Fourteenth Amendment overbreadth challenge as to places-of-worship ban (Count Four) | All Individual Plaintiffs<br><br>Defense: Standing to extent based on places-of-worship ban (ECF No. 66-1 at 19–21) | James |

| Fourteenth Amendment equal protection challenge to extent based on disparate treatment in licensing process (Count Five) | All Individual Plaintiffs<br><br>Defenses: Ripeness to extent based on renewal process (ECF No. 66-1 at 14–16), mootness to extent based on initial application (*id.* at 14), sovereign immunity to extent brought against James (*id.* at 10–12) | Harrison, Ryder, James |
|---|---|---|
| Fourteenth Amendment privacy challenge (Count Six) | Francis, Stirnweis<br><br>Defenses: Ripeness to extent based on renewal process (ECF No. 66-1 at 14–16), mootness to extent based on initial application (*id.* at 14), sovereign immunity to extent brought against James (*id.* at 10–12) | Harrison, Ryder |

Superintendent James' arguments fail for the following reasons.

*First*, Superintendent James' ripeness and mootness arguments regarding license renewal challenges (ECF No. 66-1 at 14–16) must fail because Plaintiffs Francis' and Stirnweis' injuries caused by their upcoming renewal obligations are sufficiently imminent for standing and constitutional ripeness, and Superintendent James identifies no uncertain contingency that precludes ripeness. Their challenges are also prudentially ripe, because their facial challenges are legal questions and forcing them to undergo the renewal processes would impose significant hardships. Neither *Antonyuk*'s injunction of the social media requirement nor the State's temporary compliance with that injunction satisfies Superintendent James' burden to prove that the challenge is moot.

*Second*, Plaintiff Francis has sufficiently pled standing to challenge the place-of-worship ban because he alleges that he would but for the CCIA carry a handgun in his place of worship.

(ECF No. 63 ¶ 99). His right to carry a handgun into his place of worship "is affected by the statute, not by any action of [the place of worship]." *Antonyuk v. Chiumento*, 89 F.4th 271, 380 (2d Cir. 2023) (rejecting identical argument to private-property restricted-location provision), *pet. for cert. filed*, (U.S. Feb. 20, 2024) (No. 23-910).

*Third*, sovereign immunity does not bar a challenge against Superintendent James to the CCIA's firearms safety course and training requirements. (ECF No. 66-1 at 10–12). Superintendent James has a statutory duty to "approve[]" the curricula for the course and training, N.Y. Penal Law § 400.00(19), which is a sufficient connection to enforcement of the challenged law to trigger "*Ex parte Young*'s historic exception to sovereign immunity." *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 45 (2021). NYSRPA has a justiciable challenge to the safety course and training requirements because many of its members must still undergo these requirements to complete an application for a carry license. (ECF No. 63 ¶¶ 22–23, 55). Plaintiffs recognize that no Individual Plaintiff has a justiciable challenge to the safety course and training requirements because each has received a carry license, and the course and training need not be repeated for renewal. *See* N.Y. Penal Law § 400.00(1)(o)(iii), (19).

Superintendent James also moves to dismiss all of Plaintiffs' challenges to the extent justiciability is based on NYSRPA asserting the rights of its members. (ECF No. 66-1 at 13–14). That includes some challenges that no Individual Plaintiff has justiciability to assert: (1) the licensing provision's firearms safety course and training requirements, N.Y. Penal Law § 400.00(1), (19), (ECF No. 63 ¶¶ 55, 103, 154); and (2) and certain sensitive places bans on carrying (*see* Chart below). (ECF No. 63 ¶¶ 103, 112). NYSRPA has associational standing to assert the rights of its members under settled Supreme Court precedent, and this Court should not apply Second Circuit precedent foreclosing associational standing for Section 1983 claims. The licensing

challenge for which Superintendent James asserts sovereign immunity—as to the "CCIA's firearms safety course and training requirements" (ECF No. 63 ¶ 154)—is currently based on NYSRPA's associational standing, rather than the standing of an Individual Plaintiff, and so the Court need not reach that immunity defense if it finds that NYSRPA cannot assert the rights of its members. But controlling precedent make clear that the immunity defense is baseless here.

The following chart lists those challenges only by NYSRPA on behalf of its members that are subject to Superintendent James' motion:

| CCIA Provision | Plaintiff | Appropriate Defendant(s) |
|---|---|---|
| *Second Amendment Challenges to Licensing (Within Count One)* | | |
| Firearms safety courts and training requirement (§ 400.00(1)(o)(iii); *id.* § 400.00(19)) | NYSRPA on behalf of its members | James |
| *Second Amendment Challenges to Sensitive Locations (Within Count One)* | | |
| "any location providing . . . behavioral health, or chemical dependence care or services" (§ 265.01-e(2)(c)) | NYSRPA on behalf of its members | James |
| locations providing childcare programs (§ 265.01-e(2)(e)) | NYSRPA on behalf of its members | James |
| nursery schools and preschools (§ 265.01-e(2)(f)) | NYSRPA on behalf of its members | James |
| "the location of any program licensed, regulated, certified, operated, or funded by the office for people with developmental disabilities" (§ 265.01-e(2)(g)) | NYSRPA on behalf of its members | James |
| "the location of any program licensed, regulated, certified, operated, or funded by office of addiction services and supports" | NYSRPA on behalf of its members | James |

| | | |
|---|---|---|
| (§ 265.01-e(2)(h)) | | |
| "the location of any program licensed, regulated, certified, operated, or funded by the office of mental health" (§ 265.01-e(2)(i)) | NYSRPA on behalf of its members | James |
| "the location of any program licensed, regulated, certified, operated, or funded by the office of temporary and disability assistance" (§ 265.01-e(2)(j)) | NYSRPA on behalf of its members | James |
| "homeless shelters, runaway homeless youth shelters, family shelters, shelters for adults, domestic violence shelters, and emergency shelters, and residential programs for victims of domestic violence" (§ 265.01-e(2)(k)) | NYSRPA on behalf of its members | James |
| educational institutions (§ 265.01-e(2)(m)) | NYSRPA on behalf of its members | James |
| any establishment holding an active license for on-premises consumption of cannabis (§ 265.01-e(2)(o)) | NYSRPA on behalf of its members | James |
| any place used for the performance, art entertainment, gaming, or sporting events such as stadiums, racetracks, museums, amusement parks, performance venues, concerts, exhibits, conference centers, banquet halls, and gaming facilities and video lottery terminal facilities as licensed by the gaming commission (but Plaintiffs do challenge this Section 265.01e(2)(p) to the extent it reaches "places used for | NYSRPA on behalf of its members | James |

| | | |
|---|---|---|
| sporting events," which Plaintiff Porter frequents. (ECF No. 63 ¶ 86). (§ 265.01-e(2)(p)) | | |
| polling places (§ 265.01-e(2)(q)) | NYSRPA on behalf of its members | James |
| "any gathering of individuals to collectively express their constitutional rights to protest or assemble" (§ 265.01-e(2)(s)) | NYSRPA on behalf of its members | James |

For the reasons set forth below, this Court should reject Superintendent James' motion.

## LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(1), courts "draw all facts—which [are] assume[d] to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto," unless the defendant "place[s] jurisdictional facts in dispute." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2013). In reviewing the allegations, courts "construe all reasonable inferences to be drawn from those factual allegations in [the plaintiff's] favor." *Id.* "At the pleading stage a plaintiff must 'allege facts that affirmatively and plausibly suggest that [he] has standing to sue.'" *Vengalettore v. Cornel Univ.*, 36 F.4th 87, 112 (2d Cir. 2022) (quoting *Amidax*, 671 F.3d at 145). Absent a factual showing otherwise, a plaintiff's pleading-stage burden is satisfied by allegations demonstrating that jurisdiction exists. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

10

**ARGUMENT**

I.      **Plaintiffs' license renewal challenges are ripe and are not moot.**

Superintendent James objects to Plaintiffs' license renewal challenges on ripeness grounds. (ECF No. 66-1 at 14–15). He also objects to any challenge to the social media requirement on mootness grounds. (*Id.* at 16). Both arguments fail.

A.      **Plaintiffs' challenges to renewal requirements are ripe.**

Plaintiffs Stirnweis and Francis assert challenges to the CCIA's license renewal requirements. (ECF No. 63 ¶¶ 50, 54). Superintendent James does not contest that Stirnweis and Francis are subject to the renewal requirements. (ECF No. 66-1 at 14–16). Plaintiff Stirnweis must renew his license in December 2025. (ECF No. 63 ¶ 50). And Plaintiff Francis must renew his in April 2026. (*Id.* ¶ 54). Under established precedent, their injuries are sufficiently imminent for both standing and constitutional ripeness, and Superintendent James identifies nothing that counsels against deciding the constitutionality of the burdens attendant to renewal.

***Constitutional Ripeness.*** Constitutional ripeness is "a specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013). In cases seeking prospective relief, standing and ripeness "boil down to the same question": whether the plaintiff faces a sufficiently imminent injury. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014); *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (same). Stirnweis and Francis must renew in 18 months and 24 months, respectively. Those prospective injuries are sufficiently imminent, as "courts have found similar or longer timeframes to be imminent enough for standing purposes." *Koons v. Platkin*, 673 F. Supp. 3d 515, 557 (D.N.J. 2023) (holding that 24 months before carry-permit renewal was sufficiently imminent); *see also LaRoque v. Holder*, 650 F.3d 777, 788 (D.C. Cir. 2011) (19-month

period between filing and injury was imminent); *Mead v. Holder*, 766 F. Supp. 2d 16, 25 (D.D.C. 2011) (three-year period before effective date of Affordable Care Act's Individual Mandate was sufficiently imminent). The time period at issue in this case is a far cry from the five years found insufficiently imminent in *McConnell v. FEC*, 540 U.S. 93, 226 (2003).

Imminence is an "elastic concept" that serves the purpose of preventing reliance on an *uncertain* injury "at some indefinite future time." *Lujan*, 504 U.S. 564 n.2. That is not the case here, and Superintendent James cites no authority to suggest that December 2025 and April 2026 are not imminent. Nor that the injury attendant upon renewal is uncertain.

Francis and Stirnweis almost certainly will have to renew their licenses before this case is resolved. *See Nat'l Org. for Marriage*, 714 F.3d at 692 (holding that two years is short enough to "evad[e] review" for mootness analysis). *Bruen* took over five years to resolve. *See* 597 U.S. at 16. These challenges are constitutionally ripe.

Failing to demonstrate that Plaintiffs have not alleged ripe challenges to the renewal process, Superintendent James conjures two contingencies that supposedly render Plaintiffs' renewal challenges unripe: the speculative possibility of a legislative amendment and the baseless assertion that "the plaintiffs' lives may also change." (ECF No. 66-1 at 15). Both these arguments prove too much; if valid they would defeat most Section 1983 claims seeking to prevent imminent future harm. The off-chance of legislative amendment cannot itself render a challenge unripe, especially where Defendant can point to no active legislation likely to do so. As for Plaintiffs' intentions, the applicable legal standard requires the Court to assume Plaintiffs' allegations of their intentions are true and to construe inferences in the light most favorable to Plaintiffs. *See Amidax*, 671 F.3d at 145. The complaint alleges that Stirnweis and Francis "will timely renew" their

licenses in December 2025 and April 2026, (ECF No. 63 ¶¶ 50, 54), and Superintendent James' imagined contingencies cannot render their claims unripe for present review.

*Prudential Ripeness.* Prudential ripeness turns on an evaluation of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 691 (citation omitted). Both factors heavily support Plaintiffs here. A challenge is fit for decision if it "primarily 'presents legal questions and there is a concrete dispute between the parties.'" *Id.* (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 89 (2d Cir. 2008)). Plaintiffs' facial challenge to the burdens attendant to the renewal requirement are "legal questions," *Bruen*, 597 U.S. at 25 n.6 (explaining that the historical-tradition burden is a "legal question[]" or "inquiry" that courts can decide "based on the historical record compiled by the parties"), and Superintendent James offers no basis to conclude that "further factual development" is necessary or even relevant to Plaintiffs' challenge. *Susan B. Anthony List*, 573 U.S. at 167. As for hardship of withholding review, courts routinely recognize that "significant hardship" arises where a plaintiff is forced to subject himself to a process he "believes is unconstitutional," *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 692; *Susan B. Anthony List*, 573 U.S. at 167–68 (holding that exposure to unconstitutional statutory enforcement "would impose a substantial hardship"), as Plaintiffs Stirnweis and Francis allege they will here, (ECF No. 63 ¶¶ 50, 54). This Court therefore should conclude that "the 'fitness' and 'hardship' factors are easily satisfied here" and weigh heavily in favor of Plaintiffs. *Susan B. Anthony List*, 573 U.S. at 167. Plaintiffs' license renewal challenges are constitutionally and prudentially ripe.

### B.   Plaintiffs' challenges to the social media requirement are not moot.

Superintendent James suggests that Plaintiffs lack a "justiciable challenge" to the CCIA's social media requirement because *Antonyuk* affirmed a preliminary injunction regarding that

provision and, in compliance with the injunction, the State removed the requirement from the license application. (ECF No. 66-1 at 16). To carry his burden that Plaintiffs' challenges are now moot, Superintendent James must prove that it is "absolutely clear" that the case is permanently moot. *West Virginia v. EPA*, 597 U.S. 697, 720 (2022). He has not done so; nor could he because the preliminary injunction in *Antonyuk* does not moot Plaintiffs' challenge. *See, e.g.*, *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1286 (11th Cir. 2021) (holding that "nationwide preliminary injunction" issued by another court did not moot case); *California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410, 421–23 (9th Cir. 2019) (observing that "no court" has held that an injunction by another court "deprives every other federal court of subject matter jurisdiction over a dispute in which a plaintiff seeks similar equitable relief against the same defendant" and holding "in any event" that exception for cases capable of repetition yet evading review precluded mootness), *judgment vacated on other grounds by Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020); *City & Cnty. of San Francisco v. USCIS*, 944 F.3d 773, 788 (9th Cir. 2019) (following *California* in holding that nationwide injunction issued by another court did not moot challenge). Just as a nationwide injunction (and, necessarily, a defendant's compliance with it) does not moot other challenges to the same law, neither does the State's temporary compliance with the *Antonyuk* preliminary injunction.

Nor does the State's temporary removal of the social media requirement from the license application moot Plaintiffs' challenges. Superintendent James' burden to prove that Plaintiffs' challenge is permanently moot is "heavy" because he relies on the State's supposedly "voluntary conduct" of complying with a preliminary injunction that it contested even at the Second Circuit. *West Virginia*, 597 U.S. at 719. He makes no effort to show that he will not resume enforcement of the social media requirement if the *Antonyuk* injunction is lifted for whatever reason. *Id.*

Superintendent James has not proven that "there is no reasonable expectation that the alleged violation will recur." *Ruesch v. Comm'r of Internal Rev.*, 25 F.4th 67, 71 (2d Cir. 2022). And courts "do not dismiss a case as moot in such circumstances." *West Virginia*, 597 U.S. at 719.

## II.   Plaintiffs have standing to challenge the CCIA's place-of-worship ban.

Superintendent James concedes that individual Plaintiffs have sufficiently pled standing for their restricted locations challenges, vehicle storage restriction challenges, and all of their sensitive locations challenges except one: the place-of-worship ban. (ECF No. 66-1 at 17 n.6, 19). Superintendent James contends that Plaintiffs lack standing to challenge the place-of-worship ban because their places of worship could "designate them as members of the security team," triggering the ban's statutory exception. (*Id.* at 20). He also contends that the asserted injury—deprivation of the Second Amendment right to carry a firearm into a place of worship—is traceable to, and redressable by, the places of worship and not the State. (*Id.*). These arguments misconstrue the CCIA, *Antonyuk*'s holdings, and Article III jurisdictional precedents and cannot defeat this Court's subject-matter jurisdiction.[1]

Superintendent James' argument is essentially one of mootness, not standing. He does not dispute that a case or controversy existed "at the outset of the litigation," *Friends of the Earth, Inc. v. Laidlaw Ent'l Srevs. (TOC), Inc.*, 528 U.S. 167, 180 (2000), but that a change in the law rendered the dispute moot, *see Antonyuk*, 89 F.4th at 342 (analyzing whether the amendment adding the security-team exception mooted plaintiffs' challenges). But Superintendent James has not met his

---

[1] Plaintiffs Francis and Noren allege prospective injuries traceable to the place-of-worship ban. (ECF No. 63 ¶¶ 76, 99). Only Plaintiff Francis continues to pursue this claim. (*Id.* ¶ 99). Plaintiff Noren was recently designated to provide security and carry a firearm at his Chabad. Although Plaintiff Noren no longer pursues his claim, *Antonyuk*, 89 F.4th at 344–45, the CCIA has infringed and continues to infringe his individual right to armed self-defense. And as explained below, Plaintiff Francis has standing to challenge the constitutionality of the place-of-worship ban.

burden to demonstrate that "it is impossible for [the] court to grant any effectual relief." *Mission Prod. Holdings, Inc. v. Tempnology LLC*, 139 S. Ct. 1652, 1660 (2019).

Defendant James' reliance on the Second Circuit's mootness determination in *Antonyuk* with respect to places of worship is unavailing here. The *Antonyuk* court held that three church pastors could not challenge the ban because they could "grant themselves permission to carry firearms" and thus fell within the statutory exception for persons responsible for security. 89 F.4th at 343–44. Unlike the pastors in *Antonyuk*, Plaintiff Francis "lacks the authority to designate himself as a person responsible for security," (Compl., ECF No. 63 ¶¶ 76, 99), and those uncontradicted allegations are controlling here. *Amidax*, 671 F.3d at 145.

Superintendent James' argument that the injury is traceable to the places of worship, rather than the CCIA, is wrong several times over. First, *Antonyuk* squarely rejected this exact argument as to the restricted locations provision governing private property: it held that the plaintiffs' injuries were traceable to the CCIA's restriction even though their "exclusion occurs due to a decision by a third-party to deny consent." *Antonyuk*, 89 F.4th at 380. The CCIA altered the status quo regarding where an individual could carry a firearm, and "[t]hat change in the gun licensee's rights is affected by the statute, not by any action of the private property owner." *Id.*

That reasoning applies with equal fervor to the place-of-worship ban, which is a criminal prohibition that directly regulates Plaintiff Francis, and it negates his longstanding ability to carry a firearm into a place of worship even in the absence of affirmative exclusion by the entity. That injury is traceable to the CCIA and redressable by a favorable injunction. And the potential ability of the place of worship to remedy that injury is irrelevant. *See, e.g.*, *FEC v. Cruz*, 596 U.S. 289, 297–98 (2022) (holding plaintiffs had standing despite "a legally available 'alternative' that would have avoided any liability" and despite the fact that the injury "could be described in some sense

as willingly incurred"); *Kipke v. Moore*, --- F. Supp. 3d ----, 2023 WL 6381503, at \*13 (D. Md. Sept. 29, 2023) ("The ability of private property owners to remedy Plaintiffs' injury is irrelevant[.]").

Second, *Oneida Indian Nation v. U.S. Department of the Interior*, 336 F. Supp. 3d 37 (N.D.N.Y. 2018), and *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976), the cases relied on by Superintendent James, do not cast doubt on Plaintiffs' standing to challenge the places-of-worship ban. (ECF No. 66-1 at 20–21). Those cases stand merely for the inapposite point that plaintiffs sometimes lack standing to challenge the regulation of third parties that only incidentally affects them. In contrast to the regulations at issue in *Oneida* and *Simon*, the CCIA's place-of-worship ban directly regulates Plaintiffs. *See FEC*, 596 U.S. at 297 (finding standing where the plaintiffs' "injuries are directly inflicted by the FEC's threatened enforcement of the provisions they now challenge"); *Kipke*, 2023 WL 6381503, at \*13 (rejecting reliance on *Simon* because the private-property restriction "prevented [the plaintiffs] from carrying in certain privately owned buildings"); *see also Brown v. Enter. Merchs. Ass'n*, 564 U.S. 786, 795 n.3 (2011) (explaining that a law making it "criminal to admit a person under 18 to church" absent "his parents' prior consent" would "impose *governmental* authority").

The causation element of standing "does not create an onerous standard." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). It is met by Plaintiffs here, who have "sustain[ed] a *direct injury* as the result of" the CCIA's place-of-worship ban, *Lujan*, 504 U.S. at 575 (quoting *Ex parte Lévitt*, 302 U.S. 633, 634 (1937)), just as it would be satisfied even if the Court construed Plaintiffs' injury as "indirect[]," *Carter*, 822 F.3d at 55.

Third, Superintendent James also ignores that the lost time and effort associated with trying to gain a security designation are themselves cognizable injuries, traceable to the ban, and

redressable by an injunction. *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021); *see also Texas v. United States*, 945 F.3d 355, 381 (5th Cir. 2019) ("[T]he time and money spent complying with the statute . . . constitutes the plaintiffs' injury."), *reversed on other grounds*, 593 U.S. 659 (2021). Similarly sufficient is the burden of having to obtain a security designation by the place of worship, just as "[i]mposition of [a] burden" associated with casting a vote suffices. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1351–52 (11th Cir. 2009) (holding that requiring a voter "to obtain photo identification before they can vote," and requiring voters either "to produce photo identification to vote in person or to cast an absentee or provisional ballot" are Article III injuries).

The CCIA's place-of-worship ban prospectively injures Plaintiff Francis in several ways, all of which are directly traceable to the ban and redressable by injunctive relief. *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). Plaintiffs have standing to challenge it. *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017).

## III.    NYSRPA should have associational standing.

Plaintiffs acknowledge Second Circuit precedent holding that an organization lacks associational standing to sue under Section 1983 for violations of the rights of its members. *See, e.g.*, *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (citing the "law of this Circuit" that originated with *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973)). This precedent is wrong because it conflicts with the Supreme Court's decisions in *Warth v. Seldin*, 422 U.S. 490 (1975), and *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343 (1977), and more recent caselaw permitting associational standing in Section 1983 cases. In *Warth*, a Section 1983 case, the Supreme Court recognized that "an association may have standing solely as the representative of its members." 422 U.S. at 511. The Supreme Court then announced the modern

18

associational standing test in *Hunt*, which relied on *Warth* though *Hunt* itself was not a Section 1983 case. 432 U.S. at 342–43.

The Supreme Court has continued to permit associational standing in Section 1983 cases. *See, e.g.*, *Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 269 (2015). As have other circuits. *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 122 (2d Cir. 2017) (Jacobs, J., dissenting) ("[W]e (and apparently we alone) prevent representational standing[.]"). The Second Circuit's precedents foreclosing associational standing in Section 1983 cases should not be applied, and NYSRPA should be permitted to pursue claims in this case based on the violations of the rights of its members.

Under Supreme Court precedent, NYSRPA has Article III associational standing to assert the rights of its members.

## IV.     The Court should reject Superintendent James' sovereign immunity and traceability arguments regarding licensing.

Superintendent James' argues that he enjoys sovereign immunity from NYSRPA's claim on behalf of its members regarding the CCIA's firearm safety course and training requirements. (ECF No. 66-1 at 10–12). The Superintendent's argument should be rejected.

In *Ex parte Young*, the Supreme Court recognized an exception to sovereign immunity "that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health*, 595 U.S. at 39. This exception applies if: (1) the complaint "alleges an ongoing violation of federal law"; (2) the complaint "seeks relief properly characterized as prospective"; and (3) the state officer against whom relief is sought bears "some connection with the enforcement of the act." *Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022); *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005). Plaintiffs seek prospective relief against ongoing violations of

constitutional protections and Superintendent James has a sufficient connection to the enforcement of the CCIA's safety course and training requirements because he has a statutory duty to "approve[]" the curricula for the firearms safety course and training. N.Y. Penal Law § 400.00(19).

Courts regularly find similar statutory duties sufficient for *Ex parte Young* purposes. For example, the Fifth Circuit held that the Texas Secretary of State was a proper defendant in a constitutional challenge to a Texas absentee voting law because she "has the specific and relevant duty to design [and furnish] the application form for mail-in ballots," and could be enjoined "from using an application form that expressed an unconstitutional absentee-voting option." *Texas Democratic Party v. Abbott*, 978 F.3d 168, 179–80 (5th Cir. 2020); *see also Chrysafis v. James*, 534 F. Supp. 3d 272, 297–98 (E.D.N.Y. 2021) (relying heavily on *TDP*). The Ninth Circuit found *Ex parte Young*'s enforcement requirement "far exceeded" by the Arizona Secretary of State's "clear duties to oversee ballot production," which included "promulgation of the [Election Procedures] Manual" and which local officials had "no discretion to disregard." *Mecinas v. Hobbs*, 30 F.4th 890, 903–04 (9th Cir. 2022).

More importantly, Superintendent James has failed to distinguish this Court's holding that the Superintendent "is a proper defendant" in a challenge to the "training requirement for newly issued or renewed licenses." *Antonyuk v. Bruen*, 624 F. Supp. 3d 210, 230 (N.D.N.Y. 2022) (analyzing standing). Superintendent James' only argument is that Plaintiffs "allege[] no injury based on the curriculum's content." (ECF No. 66-1 at 11). But there is no requirement that Plaintiffs demonstrate that their injury results singularly from the official's manner of enforcement; "[a] scintilla of 'enforcement' by the relevant state official with respect to the challenged law will do." *Chrysafis*, 534 F. Supp. 3d at 297 (quoting *TDP*, 978 F.3d at 179). That standard is met here, as this Court has held.

Superintendent James also suggests that no injury "with respect to the CCIA's licensing process and eligibility (including renewal)" is traceable to him. (ECF No. 66-1 at 12–13). The Superintendent cites *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020), *abrogated by Bruen*, 597 U.S. 1, which held that plaintiffs challenging the pre-CCIA version of New York's licensure law lacked standing to sue the Superintendent because he was not "alleged to have had any role in the licensing process." *Libertarian Party*, 970 F.3d at 122. But that is no longer true because the CCIA created a statutory duty for the Superintendent to "approve[]" course and training curricula, N.Y. Penal Law § 400.00(19), which is a sufficient "role in the licensing process" to confer standing here, *Libertarian Party*, 970 F.3d at 122. The alleged injury would be "traceable to the challenged action of the defendant," that is, enforcement of the safety course and training requirements. *Lujan*, 504 U.S. at 560 (alteration omitted); *see FEC*, 596 U.S. at 301 (finding standing to challenge an injury "traceable to the operation of [the challenged statute]").

The Superintendent's immunity and traceability arguments should be rejected.

## CONCLUSION

For the foregoing reasons, the Court should deny Superintendent James' motion to dismiss.

Date: June 3, 2024                         Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

/s/ *John Parker Sweeney*
John Parker Sweeney
James W. Porter, III
Connor M. Blair
1615 L Street NW, Suite 1350
Washington, DC 20036
(202) 393-7150
jsweeney@bradley.com
jporter@bradley.com
cblair@bradley.com

ATTORNEYS FOR PLAINTIFFS

21

**CERTIFICATE OF SERVICE**

I certify that on June 3, 2024, the foregoing document was served, via the Court's CM/ECF

Document Filing System, upon the registered CM/ECF users in this action.

*/s/ John Parker Sweeney*
John Parker Sweeney