UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE & PISTOL ASSOCIATION, INC., *et al.*,

Plaintiffs,

-against-

STEVEN G. JAMES, in his official capacity as Superintendent of the New York State Police, *et al.*,

Defendants.

Case No. 1:22-cv-00907 (MAD/CFH)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF SUPERINTENDENT JAMES' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

*Attorney for Defendant Superintendent James*

Molly Thomas-Jensen, Bar Roll No. 705119
Special Counsel

June 18, 2024

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. The Organizational Plaintiff Lacks Standing .......... 2

II. The Eleventh Amendment Bars Licensing Claims Against Superintendent James .......... 3

III. Stirnweis' and Francis' Challenge to Licensing Renewal Procedures Is Not Ripe .......... 5

IV. The Social Media Requirement Is Not in Effect .......... 8

V. The Only Remaining Plaintiff Challenging the Places of Worship Provision Does Not Have Standing .......... 9

**TABLE OF AUTHORITIES**

**Cases**

*Antonyuk v. Bruen,* 624 F. Supp. 3d 210 (N.D.N.Y. 2022) .......... 5

*Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023) .......... passim

*California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410 (9th Cir. 2019) .......... 10

*Chrysafis v. James*, 534 F. Supp. 3d 272 (E.D.N.Y. 2021) .......... 5, 6

*City & Cnty. of San Francisco v. USCIS*, 944 F.3d 773 (9th Cir. 2019) .......... 10

*Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439 (2d Cir. 2021) .......... 3

*FEC v. Cruz,* 596 U.S. 289 (2022) .......... 13

*Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021) .......... 10, 11

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. ___ (2024) .......... 4

*Friends of Animals v. Bernhardt*, 961 F.3d 1197 (D.C. Cir. 2020) .......... 11

*GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012) .......... 12

*Grant v. Dep't of Homeland Sec.*, 2005 WL 240766 (D. Conn. Jan. 31, 2005) .......... 7

*HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286 (W.D.N.Y. 2010) .......... 6

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977) .......... 3

*Kaluza v. Herron*, 2011 WL 1565406 (W.D.N.Y. Apr. 25, 2011) .......... 8, 9

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015) .......... 3

*League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors,* 737 F.2d 155 (2d Cir. 1984) .......... 2

*Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020) .......... 6

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......... 2, 12

*Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022) .......... 5

*Murphy v. New Milford Zoning Com'n*, 402 F.3d 342 (2d Cir. 2005) .......... 6

*Nat'l Org. for Marriage v. Walsh*, 714 F.3d 682 (2d. Cir. 2013) .......... 8, 9, 10

*Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011) .......... 2, 3

*Outlogic, LLC v. Advan Rsch. Corp., LLC*, 682 F. Supp. 3d 407 (S.D.N.Y. 2023) .......... 7

*Raju v. Shanahan*, 2015 WL 7567455 (S.D.N.Y. Nov. 23, 2015) .......... 7, 8

*Simmonds v. I.N.S.*, 326 F.3d 351 (2d Cir. 2003) .......... 7, 8, 9

*Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976) .......... 13

*Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) .......... 5

*Warth v. Seldin*, 422 U.S. 490 (1975) .......... 3

*Ex parte Young*, 209 U.S. 123 (1908) .......... 4, 5, 6

**Statutes**

42 U.S.C. § 1983 .......... 2, 3

N.Y. Penal L. § 400.00 .......... 4

Defendant Steven G. James, in his official capacity as Superintendent of the New York State Police (hereinafter, "Superintendent James"), submits this reply memorandum of law in support of his motion to dismiss the Second Amended Complaint ("SAC") (ECF No. 63).

## PRELIMINARY STATEMENT

Superintendent James moved to dismiss non-justiciable claims to narrow this case to actual controversies. In their opposition brief, Plaintiffs concede that none of the Individual Plaintiffs have been harmed by many of the aspects of the Concealed Carry Improvement Act ("CCIA") that are the subject of the Superintendent's motion. In an attempt to manufacture a case-or-controversy, Plaintiffs argue that this Court should disregard decades of binding precedent to allow the New York State Rifle & Pistol Association ("NYSRPA") to challenge the CCIA in its organizational capacity. Even if this Court were inclined to find NYSRPA had standing to sue based solely on harm to its members (and it should not), the SAC does not allege with any specificity how the challenged portions of the CCIA affect NYSRPA members.

Likewise, though Plaintiffs argue that Superintendent James is the proper defendant for the challenge to the training requirement, they have not shown that he has any enforcement role with respect to that requirement. As for the licensing claims, only two Individual Plaintiffs may need to renew their licenses, and they have not met their burden of showing that these claims are ripe for adjudication. Plaintiffs argue that the social media requirement challenge is justiciable, but their challenge amounts to a request for an advisory opinion given that the law is presently enjoined and is not being enforced, and that the social media question has been removed from the form that governs applications and renewals alike. Finally, only one Plaintiff now seeks to challenge the place-of-worship provision, but there, too, the SAC does not provide a basis for concluding that any injury to the Plaintiff is traceable to Superintendent James.

# ARGUMENT

## I. The Organizational Plaintiff Lacks Standing

Plaintiffs concede that no Individual Plaintiff has standing to challenge many of the sensitive places where it is prohibited to carry guns, such as at nursery schools and homeless shelters, but they argue in their opposition brief that "NYSRPA on behalf of its members" *does* have standing to challenge the CCIA's prohibition on carrying firearms in these sensitive places. Opp. Br. at 8-10. Likewise, they concede that "no Individual Plaintiff has a justiciable challenge to the safety course and training requirements" but contend that NYSRPA could assert such a challenge on behalf of its members. Opp. Br. at 7. It is a bedrock principle of constitutional litigation in the Second Circuit that organizational plaintiffs may not bring suit under 42 U.S.C. § 1983 solely on the basis of harm to their members. *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (citing *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors,* 737 F.2d 155, 160 (2d Cir. 1984)). An organizational plaintiff may sue only if "it can independently satisfy the requirements of Article III standing as enumerated in *Lujan*," and Plaintiffs make no argument that NYSRPA itself has been harmed by the CCIA. *Id*.

Though NYSRPA "acknowledge[s]" this precedent, it asks this Court to disregard decades of Second Circuit precedent to permit its challenges to New York's licensing law and sensitive locations laws. Opp. Br. at 18. NYSRPA argues that the Second Circuit's binding case law is at odds with *Warth v. Seldin*, 422 U.S. 490 (1975), and *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977), but that argument has been repeatedly made to and rejected by the Second Circuit. *See, e.g.*, *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) ("this court has reaffirmed its rule as to organizational plaintiffs' representative standing even after *Warth v. Seldin*"); *Nnebe*, 644 F.3d at 156 n.5.

Even if an organizational plaintiff could sue under § 1983 solely based on harm to its members, NYSRPA's claims here would still fail because the SAC does not sufficiently allege how any individual NYSRPA member is harmed by the CCIA. With respect to sensitive places, the SAC alleges only that "Plaintiff NYSRPA has at least one member who, but for Defendants' continued enforcement of the New York laws and regulations set forth above, would possess a firearm for self-defense in each of the now-designated sensitive . . . areas." SAC at ¶ 103. This is not enough to establish Article III standing. *Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 448 (2d Cir. 2021) (finding that organization's "conclusory assertion[s] cannot support standing"); *Antonyuk v. Chiumento*, 89 F.4th 271, 371 (2d Cir. 2023) (noting importance of justiciability "when asked to invalidate the action of a co-ordinate branch or of a state"). As for NYSRPA's challenge to the safety training requirement, the paragraphs in the SAC they cite in support of that argument either simply recite the statutory requirements, without identifying any harm felt by NYSRPA members (SAC at ¶¶ 22-23), or else make no mention of the safety training requirement (*id.* at ¶ 55). There is no allegation that any NYSRPA member experiences any harm as a result of the safety training requirement. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. ___ (2024) ("The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might roam the country in search of governmental wrongdoing." (cleaned up)).

## II. The Eleventh Amendment Bars Licensing Claims Against Superintendent James

Plaintiffs concede that Superintendent James is not the "appropriate defendant" for their licensing claims. Opp. at Br. 4-6. At the same time, they erroneously argue that he does not "enjoy[] sovereign immunity from NYSRPA's claim on behalf of its members regarding the CCIA's firearms safety course and training requirements" and that "there is no requirement that

Plaintiffs demonstrate that their injury results singularly from the official's manner of enforcement." *Id*. at 19-20.

To fit within the *Ex parte Young* exception to the Eleventh Amendment's grant of state immunity, a plaintiff must show a connection between the state officer they have sued and the enforcement of the provision they claim to be unconstitutional. 209 U.S. 123, 161 (1908). Superintendent James approves the curriculum for the firearms safety training required of applicants for a pistol permit, N.Y. Penal L. § 400.00(19), but NYSRPA does not challenge the content of the curriculum. Instead, NYSRPA complains about the requirement that an applicant attend such a training, which is not a requirement that Superintendent James enforces.

The fact that Superintendent James does not enforce the safety training requirement should end the inquiry. Plaintiffs' attempts to resuscitate their argument by pointing to authority from other Circuits involving absentee ballots, as well as dicta from the district court decision in *Antonyuk* and an Eastern District of New York case, do not succeed. Taking the cases from other Circuits first: *Texas Democratic Party v. Abbott*, 978 F.3d 168 (5th Cir. 2020) and *Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022) both involved challenges to election procedures, which were brought against State elections officials tasked with administering elections. Neither suggests that what Plaintiffs seek to do here—sue a state officer who does not enforce the law they challenge—is allowed under *Ex parte Young*.

Plaintiffs next cite a district court decision in *Antonyuk v. Bruen*, which does state that the Superintendent of the State Police is the proper defendant for a challenge to the safety course and training requirement. 624 F. Supp. 3d 210, 230 (N.D.N.Y. 2022). But this portion of the opinion was dicta (at best), as the court dismissed the complaint due to insufficient allegations of standing, because the plaintiff had already done the training process. *Id.* at 230 n.8, 245; *see also Antonyuk*,

89 F.4th at 306 n.14 (noting that plaintiffs had not appealed ruling that denied preliminary relief with respect to firearms safety training requirement).

Finally, Plaintiffs are mistaken to rely upon *Chrysafis v. James*, 534 F. Supp. 3d 272, 297–98 (E.D.N.Y. 2021), in which the district court dismissed on Eleventh Amendment grounds a challenge to COVID-era eviction rules brought against the Attorney General. In *Chrysafis*, the court dismissed the claim against the Attorney General because, although the Attorney General had issued guidance on the rules, she played no role in enforcing them. So too here. Superintendent James' approval of curriculum does not create a "'particular duty to enforce the statute in question' and a 'demonstrated willingness to exercise that duty.'" *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010) (quoting *Young*, 209 U.S.at 161).[1]

## III. Stirnweis' and Francis' Challenge to Licensing Renewal Procedures Is Not Ripe

Stirnweis and Francis challenge the licensing provisions of the CCIA, notwithstanding the fact that they have their licenses and their need to renew is not imminent. The burden was theirs, and Plaintiffs have failed to allege facts establishing ripeness. *See Murphy v. New Milford Zoning Com'n*, 402 F.3d 342, 347 (2d Cir. 2005).

With respect to constitutional ripeness, there is no bright-line rule that dictates whether a plaintiff's claims are imminent. For example, courts have found allegations of harm anticipated in less than two years to be unripe for review. *See Outlogic, LLC v. Advan Rsch. Corp., LLC*, 682 F. Supp. 3d 407, 411 (S.D.N.Y. 2023) (holding a contract renewal two years in the future is not ripe

[1] Plaintiffs also argue that this Court should disregard the Second Circuit's holding in *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106 (2d Cir. 2020) that the proper defendant in a challenge to the licensing law is a licensing officer. Opp. Br. at 21. They contend that the fact that Superintendent James approves the curriculum for the firearms safety training somehow dislodges this holding, but the SAC does not allege any injury tied to the content of the curriculum. NYSRPA appears to object to the fact that its members are required to attend a safety training before their license can be issued, but the person who enforces that requirement is the licensing officer. There is no reason to disturb *Libertarian Party of Erie County*'s holding.

for review); *Grant v. Dep't of Homeland Sec.*, No. CIV.A.3:04CV1528 (CFD), 2005 WL 240766, at *2 (D. Conn. Jan. 31, 2005) (finding plaintiff's claims are unripe partly because plaintiff's earliest release date from custody is "over six months away" and is "well in the future"); *Raju v. Shanahan*, No. 15-CV-7499 (RA), 2015 WL 7567455, at *3 (S.D.N.Y. Nov. 23, 2015) (concluding plaintiff's claim pertaining to an alleged injury in three months is not ripe). A court is in a better position to evaluate claims "at a time closer to the moment at which the [renewal process] will exert a substantial adverse effect." *Simmonds v. I.N.S.*, 326 F.3d 351, 360 (2d Cir. 2003).

Stirnweis must renew his license in December 2025, and Francis must renew in May 2026. SAC at ¶¶ 50, 54. Similar to *Grant*, 18 months and 24 months are "well in the future" and Plaintiffs' claims will be better adjudicated at a time closer to when they may renew. 2005 WL 240766, at *2; *Simmonds*, 326 F.3d at 360. Adjudicating the claim now would cause all parties to hypothesize about alleged future injury—precisely what the ripeness doctrine requires courts not to do.

Turning to prudential ripeness, neither Stirnweis nor Francis has met their burden of showing the fitness of the claims for adjudication and the hardship to the parties. *Nat'l Org. for Marriage v. Walsh*, 714 F.3d 682, 691 (2d Cir. 2013). The fitness aspect considers "whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.* Courts have found cases to be unripe when a claim requires speculation about the future or when relevant laws have been subject to extensive changes. *See Simmonds*, 326 F.3d at 360 (holding claims were unripe because laws pertaining to immigration "have been especially changeable in recent years" and it was unclear what the law would be when plaintiff's injuries come to fruition); *Raju*, 2015 WL 7567455, at *3 (finding claims unripe because plaintiff was speculating what the law will be in three months); *Kaluza v. Herron*, No. 10-CV-403A, 2011 WL 1565406, at *3 (W.D.N.Y. Apr. 25, 2011) (concluding lack of ripeness because plaintiff could change his mind about applying for

a travel document, requiring "needless speculation"). Here, as in *Simmonds*, there have been numerous challenges to the CCIA and provisions of the statute have been amended. *See Antonyuk*, 89 F.4th at 291-94, 343; *Simmonds*, 326 F.3d at 360. If the court were to weigh in now on hypothetical renewal requests that might take place in 18 months and 24 months, it would "require needless speculation" to adjudicate the claims. *Kaluza*, 2011 WL 1565406, at *3. As in *Kaluza*, while plaintiffs currently desire to proceed with the renewals, circumstances may change, rendering the adjudication unfit for review. *Id.*

As to hardship, the primary question is "whether the challenged action creates a direct and immediate dilemma for the parties." *Nat'l Org. for Marriage*, 714 F.3d at 691. "The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Simmonds*, 326 F.3d at 360. Plaintiffs have their pistol permits. They have alleged no "present detriment" from the licensing process. See SAC at ¶ 50 ("In other words, in materially similar situations *in the future*, Mr. Stirnweis will be subjected to the CCIA's burdensome renewal process such that the CCIA will repeatedly violate his constitutional rights." (emphasis added)). Any alleged hardship faced by Plaintiffs is not an "immediate dilemma." *Nat'l Org. for Marriage*, 714 F.3d at 691. Plaintiffs point to authority that hardship occurs when one subjects themselves to a process that is unconstitutional. Opp. Br. at 13. But the key issue is timing, and in *Nat'l Org. for Marriage, Inc.*, relied upon by Plaintiffs, the plaintiff sought to air political advertisements it believed violated state law and it "presented the court with several advertisements it wanted to broadcast immediately, not in the future." 714 F.3d at 691. Here, unlike *Nat'l Org. for Marriage, Inc.*, plaintiffs have not alleged an injury with an immediate impact any time in the near future. Plaintiffs' license and renewal challenges are not constitutionally or prudentially ripe.

## IV. The Social Media Requirement Is Not in Effect

Stirnweis and Francis[2] allege that they are harmed by the social media requirement, "because they will not know what they can and cannot say in their private lives and in their private social media." SAC ¶ at 28. The social media requirement has been preliminarily enjoined by the district court in an order upheld by the Second Circuit; accordingly, the requirement is not currently in effect, and the State Police have removed the question from the PPB-3 application form. Nevertheless, Plaintiffs argue that this claim is presently justiciable, relying on three cases in which nationwide injunction in another court did not moot out the claim for an injunction. Opp. Br. at 14 (citing *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021); *California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410 (9th Cir. 2019); and *City & Cnty. of San Francisco v. USCIS*, 944 F.3d 773 (9th Cir. 2019)). But nationwide injunctions issued in a different court present a different set of concerns than the situation here, and the reasoning in those cases makes that plain. *See, e.g., Florida*, 19 F.4th at 1284 (concluding, in light of limitations on nationwide injunctions, that it is "an eminently 'reasonable expectation' that, at the very least, the nationwide aspect of the Louisiana injunction would be eliminated, and Florida would be subject to the interim rule . . . upon its taking effect").

Plaintiffs gesture at the "voluntary cessation" exception to mootness, but that exception does not apply here, where the cessation was not voluntary—the State removed this question after it was required to do so. *See Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203-04 (D.C. Cir. 2020) (concluding that voluntary cessation doctrine did not apply where agency withdrew findings in response to court decision). Likewise, this is not an issue that is "capable of repetition in a way that evades review," in that the issue will be resolved in the *Antonyuk* case. *Friends of Animals*,

---

[2] NYSRPA also alleges that this provision harms its members, but as discussed above, NYSRPA cannot bring a claim based on alleged injury to its members, and they certainly cannot do so based on the barebones allegations in the SAC.

961 F.3d at 1203-1204 ("prior litigation in this area suggests such disputes—even over permits—could be timely adjudicated"). The social media requirement is not in effect, and the question has been removed from the application. The only justification for retaining this claim is to ask this Court to issue an advisory opinion.

**V. The Only Remaining Plaintiff Challenging the Places of Worship Provision Does Not Have Standing**

At some point in the last two months, Noren was designated to provide security for Chabad at Cornell, leaving Francis as the sole Plaintiff who seeks to challenge the place of worship provision. Opp. Br. at 15; *cf*. SAC at ¶ 76. Francis has not alleged that he has asked his place of worship if he may be designated as responsible for security (or if there is a reason that he does not want to do so). Though he argues that "the lost time and effort associated with trying to gain a security designation are themselves cognizable injuries, traceable to the ban," (Opp. Br. at 17), there are no allegations in the SAC to support that argument.

Francis points to the Second Circuit's holding in *Antonyuk* that the plaintiffs who challenged the CCIA's private property provisions had standing and, specifically, that their alleged injuries were traceable to the State Police Superintendent. 89 F.4th at 380. But this question comes back to the sufficiency of their pleadings. At this point, on the third complaint filed in this action, Francis has not alleged that his church would permit him to carry a firearm, but for the CCIA.[3] Francis has also failed to allege whether he has taken any steps to be designated as responsible for his church's security or whether there is a reason he does not want to do so. *Cf. Antonyuk*, 89 F.4th at 384 n.111 (noting that the plaintiffs had alleged their concern that private property owners may "fail to post clear and conspicuous signage" and providing example locations where plaintiffs

[3] Francis does allege that his church permitted guns "prior to the CCIA's enactment," but in the intervening two years, the church's leadership and views may well have changed. SAC at ¶ 99.

feared to go while carrying their guns). It was Francis' burden to sufficiently allege that any injury he has suffered is traceable to Superintendent James, and he has failed to meet that burden. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260-61 (11th Cir. 2012).

Francis also points to *FEC v. Cruz*, but that case does not help his cause, as the Court held, in response to an argument that the campaign could comply with a statute governing loans to political campaigns by repaying the loans in full within twenty days of the election, that doing so "would . . . require it to forgo the exercise of a First Amendment right we must assume it has." 596 U.S. 289, 296-98 (2022). Here, Francis has not asserted that he has taken steps to carry guns to his church, nor has he explained how asking his church to be designated as a member of its security team would cause him any harm.

Francis argues that *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26 (1976) does not apply here, as it involves "standing to challenge the regulation of third parties that only incidentally affects them," in contrast to a statute that "directly regulates Plaintiffs." Opp. Br. at 17. But *Simon* stands for a broader point, namely that where "[i]t is purely speculative whether" the harm "fairly can be traced" to the regulation or instead to a decision of a third party made without regard to the regulation, Plaintiffs have not met their burden to establish traceability. 426 U.S. at 42-3. Here, Francis has failed to meet his burden to allege that his church's decision to not allow him to carry a gun stems from the CCIA, rather than a decision by the church leadership to not allow guns at all or an individualized determination about who the church trusts to provide security.

Date: June 18, 2024

LETITIA JAMES
Attorney General
State of New York

*Attorney for Defendant*
*Superintendent James*

By: ______________________
Molly Thomas-Jensen
Special Counsel
Bar Roll No. 705119
28 Liberty Street
New York, NY 10005
(212) 416-8679
Molly.Thomas-Jensen@ag.ny.gov