**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**NEW YORK STATE RIFLE & PISTOL**
**ASSOCIATION, INC.; ROBERT NASH;**
**BRANDON KOCH; THOMAS STIRNWEIS;**
**WAYNE FRANCIS; KHOURLY PORTER; and**
**SCOTT NOREN,**

                                **Plaintiffs,**

        **vs.**                                              **1:22-CV-907**
                                                             **(MAD/PJE)**
**STEVEN G. JAMES,** *in his official capacity as*
*Acting Superintendent of the New York State*
*Police***; RODNEY K. HARRISON,** *in his official*
*capacity as Commissioner of the Suffolk County*
*Police Department, and Licensing Officer for*
*Suffolk County***; and PATRICK J. RYDER,** *in*
*his official capacity as Police Commissioner of the*
*Nassau County Police Department, and Licensing*
*Officer for Nassau County,*

                                **Defendants.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**BRADLEY ARANT BOULT CUMMINGS, LLP**         **JAMES W. PORTER, III, ESQ.**
1615 L Street NW – Suite 1350                 **JOHN PARKER SWEENEY, ESQ.**
Washington, DC 20036
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK STATE**              **MOLLY THOMAS-JENSEN, AAG**
**ATTORNEY GENERAL**
28 Liberty Street – 18th Floor
New York, New York 10005
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On August 31, 2022, Plaintiffs New York State Pistol & Rifle Association ("NYSPRA"), Robert Nash, and Brandon Koch, commenced this action pursuant to 42 U.S.C. § 1983 seeking to invalidate many provisions of New York's laws regulating the licensing and public carriage of firearms.  *See* Dkt. No. 1.  On September 27, 2022, Plaintiffs filed an amended complaint, which added four additional Plaintiffs (Thomas Stirnweis, Wayne Francis, Khoury Porter, and Scott Noren).  *See* Dkt. No. 8.  Proceedings were stayed pending the Second Circuit's decision in *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023).  After the stay was lifted, Superintendent James and Justice Richard J. McNally, Jr., moved to dismiss the First Amendment Complaint, arguing, among other things, that the challenge to the licensing law was moot as all the Individual Plaintiffs had obtained their handgun carry licenses.  *See* Dkt. No. 53.

In response to the motion to dismiss, Plaintiffs sought leave to file a Second Amended Complaint, which the Court granted.  *See* Dkt. No. 61.  In the Second Amended Complaint, Plaintiffs dropped all claims against Justice McNally, amended the requested injunctive relief, conceded that the Individual Plaintiffs had obtained licenses, added allegations about the requirement to renew licenses for those who reside in Suffolk and Nassau Counties, and added allegations about Plaintiffs' visits to sensitive places.  *See* Dkt. No. 59-3.

Currently before the Court is Superintendent James' motion to dismiss in part the Second Amended Complaint.  *See* Dkt. No. 66.

## II. BACKGROUND

Following the Supreme Court's decision in *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022) ("*Bruen*"), which struck down New York's requirement of "proper cause" to carry a concealed firearm in public, the State enacted the Concealed Carry Improvement

Act ("CCIA") on July 1, 2022, with an effective date of September 1, 2022.  *See* 2022 N.Y. Laws Ch. 371 (S. 51001).

The licensing provisions of the CCIA amended New York law "to alter the firearm licensing regime from one in which licensing officers had discretion to determine whether an applicant had proper cause to one in which licensing officers 'shall' issue a license to 'any person.'" *United States v. Homer*, No. 23-cr-866, 2024 WL 417103, *5 (E.D.N.Y. Feb. 5, 2024) (quoting N.Y. Penal Law § 400.00(2)(f)).  Under current law, a licensee must demonstrate "good moral character," which is defined by statute as an assessment of dangerousness, and must meet other eligibility requirements.  *See* N.Y. Penal Law § 400.00(1).  The CCIA also required that applicants for concealed carry licenses submit the following to their licensing officer: (1) names and contact information for all adults residing with the applicant, as well as whether any children reside with the applicant; (2) four character references; (3) certification that the applicant has completed the required sixteen hours of classroom training and two hours of live-fire range training, and that the applicant has demonstrated proficiency on both the classroom and the range components of the training; (4) a list of the applicant's current and former social media accounts; and (5) "such other information required by the licensing officer that is reasonably necessary and related to the review of the licensing application." *Id.* § 400.00(1)(o).

The CCIA also identified a list of sensitive locations where the possession of a firearm is prohibited: (1) federal, state, or local government administration buildings (including courts); (2) locations providing health or chemical dependence care or services; (3) places of worship; (4) libraries, public playgrounds, many public parks, and zoos; (5) many childcare programs, as well as nursery schools, preschools, and summer camps; (6) programs licensed, regulated, certified, operated, or funded by the State's Offices for People with Developmental Disabilities, of

Addiction Services and Supports, of Mental Health, and of Temporary and Disability Assistance; (7) homeless shelters; (8) residential settings licensed, certified, regulated, funded or operated by the Department of Health; (9) educational institutions; (10) public transit; (11) any establishment that is licensed for on-premise consumption of cannabis or alcohol; (12) performance, entertainment, gaming, or sporting venues; (13) polling places; (14) public areas "restricted from general public access for a limited time or special event that has been issued a permit"; (15) "any gathering of individuals to collectively express their constitutional rights to protest or assemble"; and (16) Times Square. *See* N.Y. Penal Law § 265.01-e(2).[1] The CCIA also prohibited the possession of a firearm on "private property where such person knows or reasonably should know that the owner or lessee of such property has not permitted such possession by clear and conspicuous signage indicating that the carrying of firearms, rifles, or shotguns on their property is permitted or by otherwise giving express consent." *Id.* § 265.01-d. Finally, the CCIA also prohibited the storing of a loaded, unsecured firearm in a vehicle. *See id.* § 265.45.

In his motion to dismiss, Defendant James raises the following arguments: (1) the Eleventh Amendment bars the licensing claims against Defendant James; (2) Plaintiffs fail to allege any injury traceable to Defendant James with respect to the licensing process (including renewal) and, therefore, Plaintiffs lack standing to pursue this claim; (3) the NYSRPA, as an organization, lacks standing to sue on behalf of its members; (4) the Individual Plaintiffs' challenges to the CCIA's licensing process and renewal are either moot or not ripe for review; and (5) the Individual Plaintiffs lack standing to challenge the majority of the CCIA's sensitive place restrictions. *See* Dkt. No. 66-1.

---

[1] The statute carves out a list of people, who by virtue of their status (*e.g.*, law enforcement) or activity (*e.g.*, engaging in hunter education training) are permitted to carry in these sensitive locations. *See* N.Y. Penal Law § 265.01-e(3).

4

As set forth below, Defendant James' motion to dismiss is granted in part and denied in part.

### III. DISCUSSION

**A.    Standard of Review**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). Rule 12(b)(1) is the proper vehicle to raise justiciability (standing, mootness, and ripeness), as well as Eleventh Amendment immunity. *See* 5B CHARLES ALAN WRIGHT & ARTHUS R. MILLER, Federal Practice and Procedure § 1350 (4th ed.).

To survive a Rule 12(b)(1) motion to dismiss, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "In ruling on a motion to dismiss under Rule 12(b)(1) ..., the district court 'may refer to evidence outside the pleadings.'" *Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 120-21 (2d Cir. 2020) (quotation omitted).

**B.    Eleventh Amendment Bars Licensing Claims Against Defendant James**

"An action against a state official in his official capacity is deemed an action against the state itself, ... which possesses sovereign immunity under the Eleventh Amendment." *Libertarian Party of Erie Cnty.*, 970 F.3d at 122 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "While the immunity conferred by that Amendment 'is not coextensive with the limitations on judicial power in Article III,' it places a 'limitation on the federal court's judicial power.'" *Id.* (quoting *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998)). "Although the Eleventh Amendment does not bar a federal court, in adjudicating federal claims against state officials in any capacity, from granting

prospective injunctive relief, ... a state official sued in his official capacity is entitled to invoke

Eleventh Amendment immunity from a claim for damages." *Id.* at 122-23 (citations omitted).

However, in *Ex parte Young*, the Supreme Court carved out the following "limited

exception," *CSX Transp., Inc. v. N.Y.S. Off. of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002),

to Eleventh Amendment state immunity: "[I]ndividuals who, as officers of the state, are clothed

with some duty in regard to the enforcement of the laws of the state, and who threaten and are

about to commence proceedings, either of a civil or criminal nature, to enforce against parties

affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal

court of equity from such action." *Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also*

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) ("[A] suit challenging the

constitutionality of a state official's action is not one against the State"); *Nat'l Ass'n for*

*Advancement of Colored People v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019) ("The Eleventh

Amendment bars suits against states and their officials unless the state consents to suit, Congress

abrogates the state's immunity, or the case falls within the *Ex parte Young* exception"); *In re*

*Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) ("*Ex parte Young* ... held

that sovereign immunity did not bar actions seeking only prospective injunctive relief against

state officials to prevent a continuing violation of federal law because a state does not have the

power to shield its officials by granting them immunity from responsibility to the supreme

authority of the United States").  As explained by the Supreme Court:

> The act to be enforced is alleged to be unconstitutional; and if it be
> so, the use of the name of the state to enforce an unconstitutional
> act to the injury of complainants is a proceeding without the
> authority of, and one which does not affect, the state in its sovereign
> or governmental capacity.  It is simply an illegal act upon the part
> of a state official in attempting, by the use of the name of the state,
> to enforce a legislative enactment which is void because
> unconstitutional.  If the act which the state attorney general seeks to

> enforce be a violation of the Federal Constitution, the officer, in
> proceeding under such enactment, comes into conflict with the
> superior authority of that Constitution, and he is in that case
> stripped of his official or representative character and is subjected
> in his person to the consequences of his individual conduct. The
> state has no power to impart to him any immunity from
> responsibility to the supreme authority of the United States.

*Ex parte Young*, 209 U.S. at 159-60; *see also Papasan v. Allain*, 478 U.S. 265, 276 (1986) (noting

that *Ex parte Young*'s "holding was based on a determination that an unconstitutional state

enactment is void and that any action by a state official that is purportedly authorized by that

enactment cannot be taken in an official capacity since the state authorization for such action is a

nullity").

Thus, through the doctrine of *Ex parte Young*, a party may bring "'a suit [for injunctive or

declaratory] relief challenging the constitutionality of a state official's actions in enforcing state

law[.]'" *CSX Transp., Inc.*, 306 F.3d at 98 (quotation omitted). "'In determining whether the

doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct

a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law

and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon Md., Inc. v. Public

Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). Furthermore, when a plaintiff seeks

prospective relief against a states official in his or her official capacity where the plaintiff alleges

that a particular statute is unconstitutional, "the state officer ... 'must have some connection with

the enforcement of the act'" that includes "both a particular duty to enforce the statute in question

and a demonstrated willingness to exercise that duty." *Kelly v. New York State Civil Serv.

Comm'n*, No. 14-CV-716, 2015 WL 861744, *3 (S.D.N.Y. Jan. 26, 2015) (quoting *Ex Parte

Young*, 209 U.S. at 157), *aff'd sub nom. Kelly v. New York Civil Serv. Comm'n*, 632 Fed. Appx. 17

(2d Cir. 2016); *see also CSX Transp., Inc.*, 306 F.3d at 99 (holding that amenability to suit under Eleventh Amendment requires "both the power and the duty" to take challenged action).

In the present matter, the Court agrees with Defendant James that Plaintiffs' licensing claims against him are subject to dismissal insofar as those claims relate to Plaintiffs' challenge to the CCIA's firearms safety course and training requirements. As Defendant James notes, he is not involved in the licensing of civilian applicants like the Individual Plaintiffs since, under New York Law, he is only responsible for the licensing of retired members of the Division of State Police. *See* N.Y. Penal Law §§ 265.00(10), 400.01(1). Since none of the Individual Plaintiffs are alleged to be retired members of the Division of State Police, Defendant James does not have the "special relation" required under *Ex parte Young*.

Moreover, although the Second Amended Complaint has added a specific prayer for relief as to Defendant James – namely that he not enforce the "CCIA's firearms safety course and training requirements," – there is no allegation in the Second Amended Complaint that Defendant James plays any role in enforcing those requirements. *See* Dkt. No. 63 at ¶ 154. The CCIA does require that Defendant James "approve" the curriculum for those courses, *see* N.Y. Penal Law § 400.00(19), but the Second Amended Complaint alleges no injury based on the curriculum's content.[2] Because Plaintiffs have not alleged that Defendant James has a role in enforcing the provisions at issue or that they have suffered an injury because of the content of the curriculum of the training courses, *Ex parte Young* is inapplicable. *See Chrysafis v. James*, 534 F. Supp. 3d 272, 297-98 (E.D.N.Y. 2021) (granting the defendants' motion to dismiss on Eleventh

---

[2] Plaintiffs concede that "no Individual Plaintiff has a justiciable challenge to the safety course and training requirements" because all of the Individual Plaintiffs have now been issued a carry license, but contend that NYSRPA could assert such a challenge on behalf of its members. Dkt. No. 68 at 13. As set forth below, however, NYSRPA lacks organizational standing to bring such a claim.

Amendment grounds the plaintiffs' challenge to COVID-era eviction rules brought against the

Attorney General because, although the Attorney General issued guidance on the rules, she

played no role in enforcing them); *see also Libertarian Party of Erie Cnty.*, 970 F.3d at 124

(holding that the proper defendant in a challenge to the licensing law is a licensing officer).

Accordingly, the Court grants this aspect of Defendant James' motion to dismiss.[3]

## C.    NYSRPA Lacks Standing to Sue

In his motion, Defendant James contends that the NYSRPA lacks standing to sue because

it has not alleged that it has suffered any direct injury as a result of the CCIA.  *See* Dkt. No. 66-1

at 13-14.  Plaintiffs "acknowledge Second Circuit precedent holding that an organization lacks

associational standing to sue under Section 1983 for violations of the rights of its members," but

argues that the precedent is wrong "because it conflicts with the Supreme Court's decisions in

*Warth v. Seldin*, 422 U.S. 490 (1975), and *Hunt v. Washington Apple Advertising Commission*,

432 U.S. 333, 343 (1977), and more recent caselaw permitting associational standing in Section

1983 cases." Dkt. No. 67 at 24.

"Standing is 'the threshold question in every federal case, determining the power of the

court to entertain the suit.'" *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *Warth v.

Seldin*, 422 U.S. 490, 498 (1975)) (other citation omitted).  "To establish Article III standing, 'a

plaintiff must have suffered an "injury in fact" that is "distinct and palpable"; the injury must be

fairly traceable to the challenged action; and the injury must be likely redressable by a favorable

---

[3] Defendant James acknowledges that he does oversee enforcement of the sensitive places, private property, and automobile storage provisions of the CCIA and, therefore, does not raise an Eleventh Amendment challenge to the claim against him as to those provisions.  *See* Dkt. No. 66-1 at 12 n.5.

decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (other quotation omitted).

"It is the law of this Circuit that an organization does not have standing to assert the rights of its members in a case brought under 42 U.S.C. § 1983," as the Second Circuit has "'interpret[ed] the rights [§ 1983] secures to be personal to those purportedly injured.'" *Nnebe*, 644 F.3d at 156 (quoting *League of Women Voters of Nassau Cnty. v. Nassau Cnty. Bd. of Supervisors*, 737 F.2d 155, 160 (2d Cir. 1984)) (other citation omitted). "An organization may nonetheless bring 'a § 1983 suit on its own behalf so long as it can independently satisfy the requirements of Article III standing.'" *Connecticut Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439, 447 (2d Cir. 2021) (quotation omitted).

In the present matter, the Court finds that this aspect of Defendant James' motion to dismiss must be granted. In their response, Plaintiffs concede that no Individual Plaintiff has standing to challenge many of the sensitive places where it is prohibited to carry guns, such as at nursery schools and homeless shelters, but they argue in their response that "NYSRPA on behalf of its members" does have standing to challenge the CCIA's prohibition on carrying firearms in these sensitive places. Dkt. No. 68 at 14-16, 24-25. Likewise, Plaintiffs concede that "no Individual Plaintiff has a justiciable challenge to the safety course and training requirements," but contend that NYSRPA could assert such a challenge on behalf of its members. *See id.* at 13.

As set forth above, however, it is bedrock principle of constitutional litigation in the Second Circuit that organizational plaintiffs may not bring suit under Section 1983 solely on the basis of harm to their members. *See Nnebe*, 644 F.3d at 156; *Lamont*, 6 F.4th at 446. Though the NYSRPA acknowledges this precedent, it asks this Court to disregard this binding precedent to permit its challenges to New York's licensing law and sensitive locations laws. Plaintiffs argue

that the Second Circuit's precedent is at odds with *Warth v. Seldin*, 422 U.S. 490 (1975), and *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977), but this argument has been repeatedly made to and rejected by the Second Circuit. *See, e.g.*, *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 387 (2d Cir. 2015) (holding that "this court has reaffirmed its rule as to organizational plaintiffs' representative standing even after *Warth v. Seldin*"); *Nnebe*, 644 F.3d at 156 n.5 (same). Accordingly, until such time as these prior decisions are overruled by an *en banc* panel of the Second Circuit or by the Supreme Court, this Court is bound by their holdings.

As such, the Court grants this aspect of Defendant James' motion to dismiss.[4]

**D.    Ripeness of Challenge to Licensing Renewal Procedures**

In the Second Amended Complaint, Plaintiffs allege that Plaintiff Stirnweis resides in Suffolk County and Plaintiff Francis resides in Nassau County, and both counties require renewal

---

[4] As Defendant James notes, even if an organizational plaintiff could sue under Section 1983 solely based on harm to its members, NYSRPA's claims here would still fail because the Second Amended Complaint does not sufficiently allege how any individual NYSRPA member is harmed by the CCIA. With respect to sensitive places, the Second Amended Complaint alleges only that "Plaintiff NYSRPA has at least one member who, but for Defendants' continued enforcement of the New York laws and regulations set forth above, would possess a firearm for self-defense in each of the now-designated sensitive ... areas." Dkt. No. 63 at ¶ 103. This is insufficient to establish Article III standing. *See Lamont*, 6 F.4th at 448 (holding that an organization's "conclusory assertion[s] cannot support standing"); *Antonyuk v. Chiumento*, 89 F.4th 271, 371 (2d Cir. 2023) (noting the importance of justiciability "when asked to invalidate the action of a co-ordinate branch or of a state"); *Raines v. Byrd*, 521 U.S. 881, 819-20 (1997). As for NYSRPA's challenge to the safety training requirement, the paragraphs in the Second Amended Complaint they cite in support of their argument either simply recite the statutory requirements, without identifying any harm felt by NYSRPA members, *see* Dkt. No. 63 at ¶¶ 22-23, or else make no mention of the safety training requirement, *see id.* at ¶ 55. There is no allegation that any NYSRPA member experiences any harm as a result of the safety training requirement. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024) ("The requirement that the plaintiff possess a personal stake helps ensure that courts decide litigants' legal rights in specific cases, as Article III requires, and that courts do not opine on legal issues in response to citizens who might 'roam the country in search of governmental wrongdoing'") (quotation and other citations omitted).

every three years.[5]  Defendant James contends that this claim is not ripe because Plaintiff

Stirnweis need not renew his license until December 2025, and Plaintiff Francis has until May

2026.  *See* Dkt. No. 66-1 at 14.  In response, Plaintiffs contends that the injuries to Plaintiffs

Stirnweis and Francis "are sufficiently imminent for both standing and constitutional ripeness,

and Superintendent James identifies nothing that counsels against deciding the constitutionality of

the burdens attendant to renewal." Dkt. No. 68 at 17.

### 1. Constitutional Ripeness

"Ripeness 'is peculiarly a question of timing.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714

F.3d 682, 687 (2d Cir. 2013) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568,

580 (1985)).  "To be justiciable, a cause of action must be ripe — it must present 'a real,

substantial controversy, not a mere hypothetical question.'" *Id.* (quoting *AMSAT Cable Ltd. v.

Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)).  "A claim is not ripe if it depends upon

'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.*

(quoting *Union Carbide*, 473 U.S. at 580-81).  "Ripeness is a justiciability doctrine designed 'to

prevent the courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements over administrative policies, and also to protect the agencies from judicial

interference until an administrative decision has been formalized and its effects felt in a concrete

way by the challenging parties.'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08

(2003) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

---

[5] In their Second Amended Complaint, the Individual Plaintiffs acknowledge that they
have all obtained their handgun carry licenses.  *See* Dkt. No. 63 at ¶¶ 44-55.  Where a plaintiff
challenges a licensing law, their claims become moot if they receive a license.  *See Libertarian
Party of Erie Cnty.*, 970 F.3d at 121-22.  For Plaintiffs Nash, Koch, Porter, and Noren, there is no
renewal process, given the counties where they reside.

"For a case to be deemed justiciable under Article III, it must be ripe." *Marchi v. Bd. of Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999). "Indeed, ripeness is a 'constitutional prerequisite to exercise of jurisdiction by federal courts.'" *Id.* (quoting *Fed. Election Comm'n v. Cent. Long Island Tax Reform Immediately Comm.*, 616 F.2d 45, 51 (2d Cir. 1980)). "Often, the best way to think of constitutional ripeness is as a specific application of the actual injury aspect of Article III standing." *Nat'l Org. for Marriage*, 714 F.3d at 688. "The 'irreducible constitutional minimum of standing contains three elements': (1) 'the plaintiff must have suffered an injury in fact,' *i.e.*, 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there must be a causal connection between the injury and the conduct complained of'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Constitutional ripeness, in other words, is really just about the first *Lujan* factor — to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at 560).

### 2. Prudential Ripeness

"To determine whether to abstain from a case on prudential ripeness grounds, 'we proceed with a two-step inquiry, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Nat'l Org. for Marriage*, 714 F.3d at 691 (quoting *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131-32 (2d Cir. 2008)). "The 'fitness' analysis is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *Id.* (quotation omitted). "'In assessing this

possibility of hardship, we ask whether the challenged action creates a direct and immediate dilemma for the parties.'" *Id.* (quotation omitted).

### 3. Application

In the present matter, the Court finds that this aspect of Defendant James' motion to dismiss must be denied.  As mentioned above, Plaintiff Stirnweis is required to renew his license by December 2025, and Plaintiff Francis has until May 2026.  Injuries that will occur in approximately ten and fifteen months are sufficiently imminent to satisfy constitutional ripeness. *See Koons v. Platkin*, 673 F. Supp. 3d 515, 557 (D.N.J. 2023) (holding that twenty-four months before the required carry-permit renewal was sufficiently imminent); *LaRoque v. Holder*, 650 F.3d 777, 788 (D.C. Cir. 2011) (holding that nineteen-month period between filing and injury was sufficiently imminent); *Mead v. Holder*, 766 F. Supp. 2d 16, 25 (D.D.C. 2011) (holding that three-year period before effective date of Affordable Care Act's Individual Mandate was sufficiently imminent).

Defendant James also argues that the potential for legislative amendment renders this challenge unripe.  The Court disagrees.  The off-chance of legislative amendment cannot itself render a challenge unripe, especially since Defendant James has not pointed to any active legislation that would impact the renewal requirement at issue.  Moreover, to the extent that Defendant James contends that potential changes in the lives of Plaintiffs Stirnweis and Francis renders the alleged injury too speculative, this argument is also unpersuasive.  In deciding a motion brought pursuant to Rule 12(b)(1), the Court is required to assume Plaintiffs' allegations of their intentions are true and to construe inferences in their favor.  *See Amidax*, 671 F.3d at 145. The Second Amended Complaint alleges that Plaintiffs Stirnweis and Francis "will timely renew"

their licenses in December 2025 and April 2026, *see* Dkt. No. 63 at ¶¶ 50, 54, and Defendant

James' imagined contingencies cannot render their claims unripe.

Plaintiffs Stirnweis and Francis also satisfy the prudential ripeness requirements. Their

challenge is fit for decision since it "primarily 'presents legal questions and there is a concrete

dispute between the parties.'" *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 691 (quotation omitted).

Plaintiffs' challenge to the burdens attendant to the renewal requirement are "legal questions,"

*Bruen*, 597 U.S. at 25 n.6, and Defendant James offers no basis to conclude that "further factual

development" is necessary or even relevant to Plaintiffs' challenge. *See Susan B. Anthony List v.

Driehaus*, 573 U.S. 149, 167 (2014). As for hardship of withholding review, courts routinely

recognize that "significant hardship" arises where a plaintiff is forced to subject himself to a

process he "believes is unconstitutional." *Nat'l Org. for Marriage, Inc.*, 714 F.3d at 692.

Accordingly, the Court finds that Plaintiffs Stirnweis and Francis' challenge to the renewal

requirement is constitutionally and prudentially ripe for review and, therefore, denies this aspect

of Defendant James' motion to dismiss.

**E.    Challenge to the Social Media Requirement is Not Moot**

Plaintiffs Stirnweis and Francis allege that they are harmed by the social media

requirement, "because they will not know what they can and cannot say in their private lives and

in their private social media." Dkt. No. 63 at ¶ 28. Defendant James notes that the social media

requirement has been preliminarily enjoined by the district court in *Antonyuk*, which was upheld

by the Second Circuit, including in the order on remand from the Supreme Court. *See* Dkt. No.

71 at 12. As such, Defendant James argues that "the requirement is not currently in effect, and

the State Police have removed the question from the PPB-3 application form." *Id.* As such,

Defendant James argues that the challenge to the social media requirement is moot. *See id.* In

response, Plaintiffs contend that their challenge is not moot because Defendant James has not proven that "it is 'absolutely clear' that the case is permanently moot." Dkt. No. 68 at 20. Plaintiffs argue that neither the preliminary injunction, nor the State's voluntary compliance with the *Antonyuk* decision, render this claim moot. *See id.*

While standing doctrine focuses "on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed," *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020), "mootness doctrine ensures that [a] litigant's interest in the outcome continues to exist throughout the life of the lawsuit," *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993). "If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020). A case becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)).

In the present matter, the Court agrees with Defendant James that Plaintiffs challenge to the social media requirement is moot in light of the injunction in *Antonyuk*. In that case, the district court enjoined enforcement of the social media requirement, which the Second Circuit upheld on the initial appeal, *see Antonyuk*, 89 F.4th at 331-33, and once again on remand from the Supreme Court, *see Antonyuk*, 120 F.4th at 1048. The Second Circuit's most recent decision, issued on October 24, 2024, has once again been appealed to the Supreme Court.

In their opposition, Plaintiffs argue that this claim is presently justiciable, relying on three cases in which nationwide injunctions issued in different courts were found to not moot the claim

for injunctive relief sought by the plaintiffs. *See* Dkt. No. 68 at 20 (citing *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1217 (11th Cir. 2021); *California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410 (9th Cir. 2019); and *City & Cnty. of San Francisco v. USCIS*, 944 F.3d 773 (9th Cir. 2019)). However, nationwide injunctions issued in different courts present a different set of concerns than the situation here, and the reasoning in those cases makes that plain. *See, e.g.*, *Florida*, 19 F.4th at 1284 (concluding that, in light of limitations on nationwide injunctions, it is "an eminently 'reasonable expectation' that, at the very least, the nationwide aspect of the Louisiana injunction would be eliminated, and Florida would be subject to the interim rule ... upon its taking effect"). Unlike the nationwide injunctions at issue in the cases upon which Plaintiffs rely, the injunction in *Antonyuk* applies only to New York and has been upheld twice by the Second Circuit.

In *We the Patriots, Inc. v. Grisham*, 119 F.4th 1253 (10th Cir. 2024), the plaintiffs sought an injunction against the defendant prohibiting her from enforcing the state department of health's public health order restricting firearm carry in public parks in a city and county. However, after their appeal was commenced, a district court in another case, *Springer v. Grisham*, 704 F. Supp. 3d 1206 (D.N.M. 2023), granted the injunctive relief that the plaintiffs in *We the Patriots* were seeking. *See id.* at 1257-58. The plaintiffs argued that their appeal was not moot "because it is still possible for this court to grant effectual relief or alternatively, the matter is reviewable under the 'capable of repetition, yet evading review' exception to mootness." *Id.* at 1258. The plaintiffs further argued "that the 'preliminary' nature of the *Springer* injunction means that it is not final and remains subject to reconsideration, dissolution, or cessation." *Id.*

Rejecting the plaintiffs arguments, the Tenth Circuit first noted, that, "in the context of nationwide injunctions, courts have determined that a nationwide injunction issued by a district

court in another circuit does not moot an appeal regarding the grant or denial of a preliminary injunction, although prudential concerns of comity and allowing the law to develop across circuits may be present." *Id.* (citations omitted).  "In those cases, however, our sister circuits had good reason to characterize the nationwide injunctions as particularly vulnerable due to judicial skepticism towards nationwide injunctions." *Id.* (citations omitted).  By contrast, however, the Tenth Circuit found the plaintiffs "very generic concerns about the sensitivity of the *Springer* preliminary injunction (now on appeal) are entirely speculative." *Id.*  As such, the court dismissed this aspect of the plaintiffs' appeal as moot.  *See id.* at 1258-59.

The Court agrees with the reasoning in *We the Patriots*.  Unlike the issues and limitations surrounding nationwide injunctions, the injunction at issue in *Antonyuk* applies only to a New York law (N.Y. Penal Law § 400.00(1)(o)(iv)) and the injunction has been twice upheld by the Second Circuit.  Plaintiffs challenge to this provision is moot because they have already received the relief sought such that any relief granted by this Court would not have any real-world effect.

Accordingly, the Court grants this aspect of Defendant James' motion to dismiss.

**F.    Standing to Challenge the Places of Worship Provision**

In the Second Amendment Complaint, Plaintiffs Noren and Francis both allege that they regularly attend places of worship and that, but for the places-of-worship restriction in the CCIA, they would carry concealed handguns while attending services at these places of worship.  *See* Dkt. No. 63 at ¶¶ 76, 99.  Defendant James argues that a change in New York law has made these claims moot (and that Plaintiffs Noren and Francis lack standing to bring this challenge), since there is now an exception in the CCIA that permits places of worship to allow the concealed carry of handguns for "those persons responsible for security at such place of worship." Dkt. No. 66-1 at 19 (quoting *Antonyuk*, 89 F.4th at 343).  In response, Plaintiffs note that Plaintiff Noren is no

longer pursuing this claim because he "was recently designated to provide security and carry a firearm at his Chabad." Dkt. No. 68 at 21.  Plaintiff Francis, however, continues to pursue this claim and contends that, because he has not been designated to provide security at his place of worship, the CCIA prohibits him from carrying a firearm while there.  *See id.* at 21-22.  In reply, Defendant James notes that Plaintiff Francis has not alleged in the Second Amended Complaint that his church would permit him to carry a firearm, but for the CCIA, or that he has taken any steps to be designated as responsible for his church's security or whether there is a reason he does not want to do so.  *See* Dkt. No. 71 at 13.  As such, Defendant James contends that Plaintiff Francis has failed to allege any injury that is traceable to him.  *See id.* at 13-14.

In the present matter, the Court finds that Plaintiff Francis has plausibly alleged, albeit barely, that he has standing to challenge the places-of-worship provision.  The Second Amended Complaint alleges as follows: "Mr. Francis is a member of Union Baptist Church, a place of worship, in Hempstead, NY.  He attends church weekly and intends to continue doing so.  Prior to the CCIA's enactment, his church permitted worshippers, like Mr. Francis, to carry handguns concealed.  Mr. Francis is not responsible for security at his church and lacks the authority to designate himself as a person responsible for security.  He would, but for the enactment and enforcement of the CCIA, carry a handgun concealed at his church for self-defense." Dkt. No. 63 at ¶ 99.

In his motion, Defendant James relies on the mootness determination in *Antonyuk*, where the Second Circuit held that three church pastors could not challenge the places-of-worship ban because they could "grant themselves permission to carry firearms" and thus fell within the statutory exception for persons responsible for security.  *See Antonyuk*, 89 F.4th at 343-44.  However, unlike the pastors in *Antonyuk*, Plaintiff Francis "lacks the authority to designate

himself as a person responsible for security," and those uncontradicted allegations are controlling here.

Moreover, the Court disagrees with Defendant James' argument that Plaintiff Francis' injury is traceable to his place of worship, rather than the CCIA.  The CCIA altered the status quo regarding where an individual may carry a firearm, and "[t]hat change in the gun licensee's rights is affected by the statute, not by any action of the [place of worship]." *Id.* at 380.  Stated another way, Plaintiff Francis is now required to seek permission from his place of worship to carry his concealed firearm, whereas prior to the CCIA and its subsequent amendment, no such permission was required.  The fact that Plaintiff Francis could potentially get permission from his place of worship to carry a firearm does not mean that his injury is not traceable to the CCIA.  Prior to the CCIA, Plaintiff Francis was permitted to carry his firearm at his place of worship unless otherwise instructed by those in charge of that private institution.  Now, he is required to seek permission to engage in previously permissible conduct.  These facts are sufficient to establish an injury that is traceable to the CCIA.  *See F.E.C. v. Cruz*, 596 U.S. 289, 297 (2022) (holding that "an injury resulting from the application or threatened application of an unlawful enactment remains fairly traceable to such application, even if the injury could be described in some sense as willingly incurred") (citations omitted); *Kipke v. Moore*, 695 F. Supp. 3d 638, 658 (D. Md. 2023) ("The ability of private property owner to remedy Plaintiffs' injury is irrelevant ...  Rather, their injury is the threat of prosecution for carrying firearms in places that, under prevailing law, they have previously had the presumptive right to do so absent express prohibition by the property owner").

At this stage of the proceedings, Plaintiff Francis' burden to establish traceability is "relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171 (1997).  Although a close call, the Court

finds that Plaintiff Francis has established standing to challenge the places-of-worship provision

of the CCIA; and, therefore, this aspect of Defendant James' motion to dismiss is denied.

**G.      Standing to Challenge Majority of the CCIA's Sensitive Place Restrictions**

Defendant James argues that, although the Second Amended Complaint seeks to

invalidate all of section 265.01-e of the Penal Law, it does not allege that any of the Individual

Plaintiffs seek to carry a concealed weapon while visiting the following locations: (1) "any

location providing ... behavioral health[ ] or chemical dependence care or services"; (2) childcare

programs, as well as nursery schools or preschools; (3) programs licensed, regulated, certified,

operated, or funded by the State's Office for People with Developmental Disabilities, Office of

Addiction Services and Supports, Office of Mental Health, and Office of Temporary and

Disability Assistance; (4) "homeless shelters, runaway homeless youth shelters, family shelters,

shelters for adults, domestic violence shelters, and emergency shelters, and residential programs

for victims of domestic violence"; (5) educational institutions; (6) any establishment that is

licensed for on-premise consumption of cannabis; (7) "stadiums, racetracks, museums,

amusement parks, performance venues, concerts, exhibits, conference centers, banquet halls, and

gaming facilities and video lottery terminal facilities as licensed by the gaming commission"; (8)

polling places; or (9) "any gathering of individuals to collectively express their constitutional

rights to protest or assemble." Dkt. No. 66-1 at 18.  In their response, the Individual Plaintiffs

concede that none of them have standing to challenge these provisions of the CCIA, but argue

that the NYSRPA has organizational standing to pursue these claims.  *See* Dkt. No. 68 at 13-14.

Based on Plaintiffs' acknowledgment that none of the Individual Plaintiffs have standing

to pursue the challenge to these provisions of the CCIA, and because the Court has already

determined that the NYSRPA lacks standing to pursue these claims on behalf of its members, the Court grants this aspect of Defendant James' motion to dismiss.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendant James' motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 66) is **GRANTED in part and DENIED in part**;[6] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 18, 2025
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[6] Defendant James' motion is denied insofar as it (1) seeks dismissal of Plaintiffs Stirnweis and Francis' challenge to the renewal requirement on ripeness grounds; and (2) seeks dismissal of Plaintiff Francis' challenge to the places-of-worship provision for lack of standing.