# EXHIBIT 12

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 1

NYS Rifle v James, et al – 9-26-25 – Brandon Koch

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE & PISTOL

ASSOCIATION, INC., ROBERT NASH,

BRANDON KOCH, THOMAS STIRNWEIS

WAYNE FRANCIS, KHOURY PORTER,

AND SCOTT NOREN,

    Plaintiffs,

V                                   Index No.:  22-CV-907

STEVEN G. JAMES, IN HIS OFFICIAL

CAPACITY AS SUPERINTENDENT OF THE

NEW YORK STATE POLICE, RODNEY K.

HARRISON, IN HIS OFFICAIL CAPACITY

AS COMMISSIONER OF THE SUFFOLK

COUNTY POLICE DEPARTMENT,

    Defendants.

_____X (Cont'g.)

DEPOSITION OF: BRANDON KOCH

DATE:              September 26, 2025

TIME:              10:03 a.m. to 1:05 p.m.

VENUE:             MS Teams

Reported by Annette Lainson

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 2

NYS Rifle v James, et al – 9-26-25 – Brandon Koch (Cont'g.)

AND LICENSING OFFICER FOR SUFFOLK

COUNTY, AND PATRICK J. RYDER, IN

HIS OFFICIAL CAPACITY AS COMMISSIONER

OF THE NASSAU COUNTY POLICE DEPARTMENT,

AND LICENSING OFFICER FOR NASSAU

COUNTY,

    Defendants.

_____X

800-523-7887                              ARII@courtsteno.com

Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 67

NYS Rifle v James, et al – 9-26-25 – Brandon Koch

Q.    And let me know when you've read it.

A.    Okay.

Q.    Great.  So, what do you mean by the first sentence, if not for the C.C.I.A., I would carry a handgun in privately owned places open to the public where the owners do not otherwise prohibit me from carrying a firearm?

A.    That I would carry my firearm in -- in areas that are privately owned but open to the public if that was allowed.

Q.    And so, isn't it actually allowed if you have permission?

A.    If permission is given, yes.

Q.    So, do you ask permission or do you ask whether places open to the public permit firearms?

A.    I use the signage that -- again, my understanding was the signs indicate whether that is allowed.

Q.    But we talked about how the law also allows for express consent, correct?

A.    Yes.

Q.    So, why not ask permission of the

Associated Reporters Int'l., Inc.                    www.courtsteno.com

NYS Rifle v James, et al – 9-26-25 – Brandon Koch paragraph nine B?

A.   Yes.

Q.   So, do you see the last full sentence on page three, I intend to continue visiting privately owned places, both those opens to the public and those which are not open to the public at least weekly, if not more often.

Can you explain what you meant by that?

A.   Oh, yes, that the public places that allow the carrying of firearms, that's where I would go.  Those are the places I would visit.

Q.   And would you -- would you carry your firearm to non-public places, private businesses or on other people's residences?

A.   For private -- private residences, no.

Q.   So, when you think of the kinds of places that you would like to carry a gun without getting the owner's consents, what sort of places are you considering?

A.   Places that are open to the public, in stores -- grocery stores, places that I go on a normal basis.

800-523-7887                               ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Page 95

NYS Rifle v James, et al – 9-26-25 – Brandon Koch

case is about then.  Because if you only want to carry your gun where it's permitted, why are you challenging the law?

A.   Well, the reason I'm challenging the law is that -- when my -- I'll say it like this.  If I was issued my permit and the law didn't exist, then I could safely knowingly carry around the building, my work, in all of the other locations mentioned in -- in the document and that would be fine.  But since the law was passed, even though I was issued a permit, I can't carry in any of those places.  So, effectively is even though I was issued the permit, I can't use it.

Q.   So, let me ask the question in another way.  Like, when you think about your -- your work, your building, place of government administration, where is it and -- and what parts of the building or grounds do you want to carry your gun?

A.   On the outside and publicly open areas and -- in the inside of the building.

Q.   And you testified that there are no publicly open areas inside the building, correct?  You need a -- a key fob to get in?

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 96

NYS Rifle v James, et al - 9-26-25 - Brandon Koch

A.   In my -- in my current building, yes.

Q.   So, are you referring to just the public areas around the building?

A.   Yes.  At -- at 500 Patroon Creek, yes.

Q.   So, let me ask you, do you know whether the law prohibits you from carrying a weapon outside of the building?

A.   It's my understanding that it is now considered a sensitive area, so I don't want to, you know, I don't want to have the firearm with me.

Q.   Do you know is -- do you know -- does the law prohibit you carrying a weapon on the sidewalk?

A.   Well, I -- I mean just generally that it's a sensitive area because it's a govern -- it's a building that contains government administration, so you're not allowed to have or carry firearms in that area.

Q.   Sure.  But I think -- correct me if I'm wrong, you testified that you don't want to carry your weapon into the building, correct?

A.   Yes, that's correct.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 104

NYS Rifle v James, et al – 9-26-25 – Brandon Koch

Q.   That's all right.  So, can you take a look at the last paragraph here, the final paragraph, beginning at the bottom of page three and extending to -- into page four?  Can you read that and let me know when you're done?

A.   Okay, finished.

Q.   So, can you sort of summarize what it is that you are and are not challenging here?

A.   I -- what I'm not challenging is in the spaces that are controlled by the Unified Court System behind locked doors or suites, space that they rent or lease, I'm not challenging that aspect of it.  I'm challenging the aspect of when there's a public building that the Unified Court System, other government entity leases a -- like a suite-in that the entire building becomes restricted.

Q.   And so we're -- oh, I'm sorry.  Don't let me stop you.  Please continue

A.   That -- that -- that's it.

Q.   And so for your -- for your building on Patroon Creek Boulevard, there's no public access inside the building, correct?

A.   That's correct.

Q.   And you're not asking to carry a

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 105

NYS Rifle v James, et al - 9-26-25 - Brandon Koch gun inside the building, only on the sidewalks and the outdoor property in the parking lot around it, correct?

A.    Yes.

Q.    And you don't know whether this is currently prohibited by New York law, correct?

A.    That's correct.

Q.    All right.  I'm going to take this down real quick.

So, you testified earlier that you have a safe in your car, right?

A.    It's not in my car right now, but I have a -- the metal lockbox safe.

Q.    Sure.  Can you describe that lockbox to me a little bit more?

A.    Yes.  It's a rectangular shaped metal box, roughly a foot long, nine, ten inches wide, two, three inches tall that opens up like a clamshell?  Right, to the two metal halves.  And then there is a cylinder key lock that you use to -- you close it and then lock the box.  And there is a cable that runs through the box that can be mounted to a fix -- fixed the object.

Q.    Got you.  And do you usually keep

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 108

NYS Rifle v James, et al – 9-26-25 – Brandon Koch

Q. So, I'm going to scroll down to paragraph eleven. Do you see that there?

A. Yes.

Q. And you write, if not for the C.C.I.A., I would ensure that any firearm left in my vehicle unattended would be stored in a safe responsible manner without first removing ammunition from my firearm and without utilizing a safe storage depository.

Do you see that?

A. Yes.

Q. And what did you mean by that?

A. So, the -- so in order to remove my firearm from my person, I would not remove the firearm from the holster. I can actually remove the entire holster because that's the safest way to do so because that way the trigger is always protected. That way I don't have to touch really anything on the firearm, and then I would place that into a container.

Q. And when you say place that into a container, which one? Which container do you mean?

A. Either my center console or if I -- If I do have the -- security container, I put it

800-523-7887                                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 109

NYS Rifle v James, et al – 9-26-25 – Brandon Koch in there.

Q.   So, do you -- so let me see if I can restate that correctly.  Is -- is it your testimony that what you want is the ability to just take the holster and put that into a safe storage container?

A.   The -- the tuck -- the firearm and the holster together all as one unit.

Q.   And you would not remove the ammunition from the firearm, correct?

A.   Correct.

Q.   Do you generally walk around with your -- sorry.  Let me rephrase that.  When you carry a firearm, do you generally carry it loaded?

A.   Yes.

Q.   Do you generally carry a round in the chamber?

A.   Yes.

Q.   And so is it correct to say that you don't object to a requirement that there be a safe storage container and you just want to be able to put the gun in while it's still loaded?

A.   If I have a safe -- safe available, I would put it in there, but if it's not