# EXHIBIT 13

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 1

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE & PISTOL

ASSOCIATION, INC., ROBERT NASH,

BRANDON KOCH, THOMAS STIRNWEIS

WAYNE FRANCIS, KHOURY PORTER,

AND SCOTT NOREN,

    Plaintiff,

V                                    Docket No.:  22-CV-907


STEVEN G. JAMES, IN HIS OFFICIAL CAPACITY AS

SUPERINTENDENT OF THE NEW YORK STATE POLICE,

RODNEY K. HARRISON, IN HIS OFFICIAL CAPACITY

AS COMMISSIONER OF THE SUFFOLK COUNTY POLICE

DEPARTMENT,

Defendants.

_____X (Cont'g.)

DEPOSITION OF: THOMAS J. STIRNWEIS

DATE:          October 22, 2025

TIME:          10:12 a.m. to 5:09 p.m.

VENUE:         MS Teams




Reported by Becky Foster


800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 2

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

(Cont'g.)

AND LICENSING OFFICER FOR SUFFOLK

COUNTY, AND PATRICK J. RYDER, IN HIS OFFICAL

CAPACITY AS COMMISSIONER OF THE NASSAU COUNTY

POLICE DEPARTMENT, AND LICENSING OFFICER FOR

NASSAU COUNTY,

        Defendants.

_____X

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 134

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

everybody.

COURT REPORTER:  Okay.  I'll take us off the record.

(Off the record; 12:56 p.m.)

(On the record; 01:50 p.m.)

MR. THOMPSON:  Okay, great.  I think we're ready to go back on the record.

COURT REPORTER:  All right.  You are back on the record.

MR. THOMPSON:  Thanks very much.  Hope everybody had a good lunch.

BY MR. THOMPSON:  (Cont'g.)

Q.    So, Mr. Stirnweis, I'd like to ask you about some of the sensitive locations that you're challenging in this case.  Let me put up a document here.  And let me know if you can see it.

A.    I can see it.

Q.    And I'll -- I'll represent that this is the response to the interrogatories that we marked earlier as Exhibit One.  Does that seem right?

A.    Yes.

Q.    Great.  So, I'm going down to interrogatory number three on page three, and this has a list of sensitive places.

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 135

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

A.    Okay.

Q.    Is this the accurate list of sensitive places that you're challenging in this action?

A.    Yes, some of these represent examples of types of places I was -- obviously, not all inclusive.

Q.    Is there anything --

A.    I did -- I -- I didn't list every park in New York State.

Q.    Do you go to every park in New York State?

A.    No.  Like I said, these are examples.

Q.    But are -- are these the parks that you go to?

A.    Some of them, yes.

Q.    Got it.  Which -- which ones do you not go to?

A.    I've been to all of these.

Q.    Have you been to -- let me ask a different question.  Which ones of these have you been to in the last year?

A.    Most of them.

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 136

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

Q.   Can I ask which ones?

A.   (B) Melody Hill State Park, (C) Harriman, (D) Adirondack, (E) Rocky Point, (F) Sunken Meadow, (G) Nissequogue, (H) Caleb Smith, (I) Blydenburgh, (G) Paul T. Given (M) Heckscher, (N) Arthur Kunz.

Q.   So, that means your testimony is that you've been to all of these parks except for Indian Island and Hubbard County in the last year?

A.   Yes.

Q.   When was the last time you went to Indian Island?

A.   I don't recall.  Sometime during the process of this lawsuit.

Q.   So, within the last -- within the last three or four years?

A.   Yes, yes, absolutely.

Q.   When was the last time you went to Hubbard County Park?

A.   Same time period, since the lawsuit.

Q.   All right.  So, is there any location that is missing from this list?

A.   Probably.

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 140

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

you're going to be marking these and appending them to the transcript, right?

COURT REPORTER:  Correct.

MR. THOMPSON:  Okay.  I think -- so, let's -- let's keep it Eleven so that it'll be sequential in the order that -- that we went through them at the deposition, that'll probably be easier for everybody.

COURT REPORTER:  Okay.  That is marked.

MR. THOMPSON:  Thank you so much Ms. Foster.

COURT REPORTER:  You're welcome.

BY MR. THOMPSON:  (Cont'g.)

Q.  So, I'm scrolling down to page three, paragraph nine A.  And it's -- it extends a little bit into page four.  The paragraph starts government administration buildings.

A.  I'm there.

Q.  Do you see that?

A.  Yes, I see it.

Q.  So, you identified the receiver of Texas office in the Smithtown Town Hall as a place where you'd like to carry a gun, correct?

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 141

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

A.   Yes.

Q.   Can you describe the building and -- and where the Receiver of Taxes office is located in it?

A.   It's either a two or three story brick building, you know, I had a maybe a hundred years old at this point.  The Receiver of Taxes office is on the first floor towards the rear of the building.

Q.   And do you have to go through the building to get to the Receiver of Taxes office?

A.   Yes.

Q.   And what else is located in the building, are there other offices?

A.   The Town Supervisor's Office is in there, the Town Clerk's Office is in there.  I'm sure there must be other administrative offices in the building.

Q.   And is there a mayor or a town council of Smithtown?

A.   Yeah, again, there's a supervisor and a town council.

Q.   Okay.  And do -- does the -- does the supervisor work in that building?

800-523-7887                              ARII@courtsteno.com

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 178

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

afterwards.  Yeah, we did have a dinner before.

Q.    Do you remember where you had dinner?

A.    No, I don't.

Q.    How about prior to 2023, when was the previous time that you went to Time Square?

A.    Again, most likely the holiday seasons.

Q.    Is there any specific time you can think of?

A.    Well, we normally do in December before -- before Christmas or shortly thereafter.

Q.    Apologies.  Rather than a specific time, is there a specific incident that you can think of?

A.    No, no.  Again, general tourist things that people in New York do, you know, these are run-of-the-mill activities that normal people participate in.  They're not memorable.  They're just how we live our life.

Q.    Why do you want to take a gun into Times Square?

A.    To protect myself for -- in case of confrontation.

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                        www.courtsteno.com

Page 187

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

Q.   Do you have any reason to believe that the N.Y.P.D. or the state police interpret it that way?

A.   Yes.

Q.   And what reason is that?

A.   The lack of the word buildings in the statute.

Q.   So, other than having read the statute, do you have any information about how the State police or the N.Y.P.D. interpret the law?

A.   No.

Q.   Is there any particular reason why you say you need -- the need for quote, Self-defense and the defense of my family and friends at J.F.K. Airport?

A.   Well, that's just an overarching statement.  That applies to everywhere.

Q.   But the security at J.F.K. Airport is very, very high, isn't it?

A.   Some places, yes.  Others, no.

Q.   Can you explain which is which?

A.   I don't think there's a lot of security in the cell phone parking lot.  And much more inside the terminals.

800-523-7887                                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 196

NYS Rifle v Steven James – 10-22-25 – Thomas Stirnweis

in any of these restaurants?

A.   Yes, currently, yes.

Q.   And so, do other people, right?

A.   Yes.

Q.   You write, I would carry a firearm at the bars and restaurants I visit while remaining responsible, law-abiding, and sober if not for the C.C.I.A.'s carry restrictions.  Can you explain to me what do you mean by that?

A.   As I go about my normal everyday life, again, I don't want the burden of disarming and arming going through normal everyday activities, including, having lunch someplace at a pizza place or -- or an Italian restaurant or -- or similar type places.

Q.   So, is it your testimony that if you could carry a gun into these places, you would never drink when you have a gun?

A.   Yes.

Q.   Do you think everyone else who had a gun would be as responsible as you?

MR. PORTER:  Object to the form of the question.  You can answer.

A.   Absolute questions always have to

800-523-7887                                ARII@courtsteno.com
Serving all of New York State