# EXHIBIT 14

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 1

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE & PISTOL

ASSOCIATION, INC., ROBERT NASH,

BRANDON KOCH, THOMAS STIRNWEIS

WAYNE FRANCIS, KHOURY PORTER,

AND SCOTT NOREN,

    Plaintiff,

V                                          Docket No.:  22-cv-907

STEVEN G. JAMES, IN HIS OFFICIAL CAPACITY AS

SUPERINTENDENT OF THE NEW YORK STATE POLICE,

RODNEY K. HARRISON, IN HIS OFFICIAL CAPACITY

AS COMMISSIONER OF THE SUFFOLK COUNTY POLICE

DEPARTMENT,

Defendants.

_____X (Cont'g.)

    DEPOSITION OF: WAYNE A. FRANCIS

    DATE:          October 24, 2025

    TIME:          10:03 a.m. to 2:06 p.m.

    VENUE:         MS Teams

Reported by Annette Lainson

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis (Cont'g.)

AND LICENSING OFFICER FOR SUFFOLK

COUNTY, AND PATRICK J. RYDER, IN HIS OFFICAL

CAPACITY AS COMMISSIONER OF THE NASSAU COUNTY

POLICE DEPARTMENT, AND LICENSING OFFICER FOR

NASSAU COUNTY,

         Defendants.

_____X

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 57

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

you.  Is that right?

A.    That is correct.

Q.    How often do you carry a weapon with you?

A.    Never.

Q.    Why not?

A.    I choose not to.

Q.    And can you explain why you made that choice?

A.    Well, first, I believe that when one chooses to carry a firearm, that you have to first be mentally prepared to do so.  Then, you have to be trained in order to properly be able to go from conceal to presenting if the need were to arise.  You also have to feel fundamentally comfortable, comfortable in your skin, comfortable knowing that that firearm is on you, knowing that if, God forbid, the need were to arise and you needed to use it that you could, and all those boxes aren't checked for me.  So therefore, I'm not in the place yet where I feel comfortable enough to do so.

I want to be able to -- I want to be able to do so.  I want to be able to have my right to do so.  But I don't -- have not reached a point where

800-523-7887                                ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 58

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

all my boxes are checked.  I've been training, I've been trying to mentally prepare all the things, but I'm not there yet to feel comfortable enough to carry outside of my home.

Q.    Got you.  Can I ask you to tell me which of those boxes aren't checked and why -- why you don't feel they're checked?

A.    Good question.  All right.  So, if I'm being totally transparent where the -- the society, the world that we're living in right now, you know, makes it very challenging for people of color in general, black men specifically, to feel comfortable with carrying firearms.  Even though I might be legal, even though I might be trained, you know, I run into a wrong law enforcement officer, God forbid, on a stop or you know, in any type of a situation.  And it's like when you're black, you're -- you're guilty and then proven innocent.

So that's part of the -- the challenge, having to deal with just the society that we live in that presume black men are generally guilty of something or dangerous or at risk.  Like, they don't stop to take the time to think, well, maybe he's law enforcement or maybe, you know, he's

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 59

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

an instructor or maybe he's licensed or maybe he's trained. It's like we get the doubt before the benefit. So that's a big box as far as the comfort level is concerned.

And then the -- the -- the whole notion of, you know, carrying a firearm, which is essentially a deadly weapon, and being able to know that if you could, you know, in defense of yourself or a loved one, you know, be put in a position and you had to utilize it, I'm -- I'm not there either in regards to thinking that I'm confident enough to be able to take someone's life. Even if I had to, I would -- I would hope in the defense of my own life, I could, but I'm not -- let's say a hundred percent sure because obviously that's a very serious thing. We can assume human instinct and survival instincts will kick in, but you don't really know what you'll do in a situation.

I've had a gun stuck in my stomach and then when I refused to cooperate, I got pistol whipped -- you know, but no one could have told me I would've refused to cooperate when I had a gun stuck in my stomach before, you know. I didn't think I would be defiant. And I was, even though it was

800-523-7887                                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Page 60

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

stupid and I was eighteen years old and probably could have got killed.  But you know, you live and learn.

Q.   So a couple of follow-up questions for that.  First is, you know, I -- I hear you with your with -- with the concerns about you know, the history of -- of racial disparities in law enforcement.  We represent Steven James, Superintendent of the State Police.  Do you have any concerns about the State Police in particular, separate and apart from law enforcement in general?

A.   No.

Q.   Secondly, can you tell me a little bit more about the incident where you had a -- a -- a pistol stuck at your stomach?

A.   Sure.  It's okay to answer that attorney?  Counsel?

MR. PORTER:  You can answer anything unless I tell you not to answer it.

THE WITNESS:  Okay.

MR. PORTER:  And I'm not instructing you not to answer, so please go ahead.

THE WITNESS:  Okay.  Thank you.  So again, teenager, young adult hanging out with friends

Associated Reporters Int'l., Inc.                      www.courtsteno.com

Page 74

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.    Have you ever tried to buy a firearm and had a background check denied?

A.    No.

Q.    All right.  So, just very broadly about this lawsuit, can you tell me why you're suing New York?

A.    Well, as you know, the intent of the Bruen case was to be able to allow those individuals who were interested in doing so to be able to have the right to conceal carry.  Some might argue a right that was always there, but for various reasons and various laws and restrictions in New York State, it was a prohibition until then.

However, subsequent to that, the -- the N.Y.C.C.A chose to restrict the intent of Bruen by adding a group of onerous restrictions on the state -- members of the state, which I felt were a further infringement and an attempt to undermine the intent of Bruen.

And so in an effort to try to right the wrong, if you will, to allow people to be the -- have the fullest expression of our Second Amendment rights, I felt that it was important to address this matter and to attempt to have the restrictions that

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 75

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

are there and need not be there.  Certainly, if you compare us to other states around the country and I'm not saying we have to go as far as some other states have gone, as far as how liberal, so to speak, they are with the right to carry.

But the additional restrictions and impositions that have been placed on New York State residents, I feel are excessive and need to be addressed.

Q.    Understood.  So, you were not a party to this lawsuit when it was first filed, correct?

A.    Correct.

Q.    Without asking into any conversations between you and Mr. Porter or the Bradley Firm, can you tell me how you became involved in this lawsuit?

A.    I believe it was through my affiliation with NAAGA, the National African American Gun Association, who in addition to wanting to ensure that people are becoming responsible legal firearm owners, they do advocacy work in the area of the Second Amendment.  And any state that has onerous and overly restrictive laws, I believe they attempt to

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Page 143

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   And so you go in approximately once a week, is that -- is that right?

A.   Three times a week it says here.

Q.   Okay.  And so is it safe to say that when you take the L.I. double R to the city, you also ride the New York City subway?

A.   Not always.  I -- I work near Penn Station.

Q.   Okay.  So, why do you want to take a gun onto the Long Island Railroad and the New York City subway system?

A.   I don't necessarily want to take a firearm into the subway system or the railroad.  I don't want to be prohibited from taking a firearm if I chose to do so.

Q.   And so if you win this case, would you take a firearm onto the L.I. double R and the New York City subway?

A.   I believe you all call that asked and answered because we spoke about that at length earlier in regards to my intent.  Is -- does -- this case is not affected by my mindset and my decisions around training and waiting until I -- I feel that I'm actually ready for that.

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 147

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   Operate it.

A.   Like as transit employees?

Q.   Do any of the defendant -- let me try to rephrase it.  Do any of the Defendants in this case oversee or control the operations of the New York City subway or the Long Island Railroad?

A.   I wouldn't know that.

Q.   Okay.  I'd also like to talk a little bit about the Place of Worship law that you're challenging.  Can you tell me why you're bringing that legal challenge?

A.   For the same as the others, that if there was not a prohibition, I would want to be able to have the right and ability to carry my firearm wherever I go, which would include church if I chose to carry one.

Q.   And so what are you hoping to accomplish with this lawsuit in regards to the Place of Worship law?

A.   That people not be prohibited or unduly restricted from carrying their firearms to places that they would normally go.

Q.   I'm going to show one more document and I've scrolled down a little bit.  Mr.

800-523-7887                              ARII@courtsteno.com
Serving all of New York State