# EXHIBIT 16

Associated Reporters Int'l., Inc.                     www.courtsteno.com

Page 1

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE & PISTOL

ASSOCIATION, INC., ROBERT NASH,

BRANDON KOCH, THOMAS STIRNWEIS

WAYNE FRANCIS, KHOURY PORTER,

AND SCOTT NOREN,

    Plaintiff,

V                                    Docket No.:   22-CV-907

STEVEN G. JAMES, IN HIS OFFICIAL CAPACITY AS

SUPERINTENDENT OF THE NEW YORK STATE POLICE,

RODNEY K. HARRISON, IN HIS OFFICIAL CAPACITY

AS COMMISSIONER OF THE SUFFOLK COUNTY POLICE

DEPARTMENT, AND LICENSING OFFICER FOR SUFFOLK

_____X (Cont'g.)

DEPOSITION OF: SCOTT NOREN

DATE:          October 27, 2025

TIME:          10:15 a.m. to 1:36 p.m.

VENUE:         Zoom

Reported by Howard Hubbard

800-523-7887                                    ARII@courtsteno.com

Serving all of New York State

Associated Reporters Int'l., Inc.                www.courtsteno.com

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren (Cont'g.)

COUNTY, AND PATRICK J. RYDER, IN HIS OFFICAL CAPACITY AS COMMISSIONER OF THE NASSAU COUNTY POLICE DEPARTMENT, AND LICENSING OFFICER FOR NASSAU COUNTY,

        Defendants.

_____X

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 61

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

and asked them if there's anything going on.  They said I had some email and that was it.

Q.   Okay.  You would like to carry a firearm when you are at healthcare facilities, is that right?

A.   No.  No big desire to carry when going to like, let's say a hospital or -- yeah, I mean that's the basic one.  Not -- I really don't have a real desire there, although I wish they had better security.  But in my own business, not having an ability to do that and have my own safety plan that I want to do is not fun.

Q.   Okay.  So before we talk about your own business, I want to just scroll down a little bit.  Are there any healthcare facilities where you think you would, if you got an injunction in this case, carry a gun?

A.   I just -- like I said, my own.

Q.   Understood.

A.   I would -- I would think about maybe private clinics.  But as far as I can tell you, some carve outs that I probably wouldn't necessarily -- and mostly hospitals, like especially like let's say the V.A. Hospital or the local hospital here, I

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 62

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

just think they -- they need better security.  They don't even have a security guard at the door, which is stupid -- any of the entrances.

Q.    Okay.

A.    So that needs to be improved. But yeah, I mean, as far as my own -- my -- my basic choice is, I want to be able to protect my own facility the way that I feel that it's safe to do so because safety is like the big -- is the big thing. Having a plan -- having a disaster plan, you know, it's just -- it's not good.

Q.    So to return to my question, are there any other facilities where you know you would like to carry a gun if there is an injunction entered in this case?

A.    Probably mostly private clinics, you know, that don't have very good security, that kind of thing.  I don't -- they're probably the only other healthcare kind of facility that I would, you know, consider something like that.  Yeah.

Q.    Any private clinics in particular?

A.    Just where I go to the doctor. Like if -- for I'm going for the doctor, for myself

Associated Reporters Int'l., Inc.                          www.courtsteno.com

Page 89

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

just refuse to pay.

Q. So if we could turn to -- we talked about whether you'd allow patients to carry. In fact, you've said that you would like to attend -- go to other doctors' offices as a patient maybe carrying. Do you understand that the relief you've sought in this case would allow patients to carry in your practice?

A. I mean, the restriction that I'm -- I'm really mostly talking about like if -- like if somebody wanted to concealed carry and they were in the lobby and they were an escort, friend -- a friend in the family, family member, they came for the consultation, I have no problem with that, zero problem.

But when the patient comes in to be sedated, it's like, are you going to be concealed carry when you go to the operating room? Of course not. No patient is going to be concealed carry going to an operating room. So in the same token, if a patient came in for surgery and wanted to concealed carry, I'd say no, it's not safe.

Q. Would they have to tell you?

A. I mean I suppose somebody could

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

it.  And but we -- again, we just -- we try to -- we try not to advertise it because again, it's a -- it's a spectrum of people, like students -- some students are very, I guess pro-Second Amendment, if you want to call it that even.  But you know, definitely for security.  And then there's others that have, you know, like -- this family member one -- actual family member that, you know, is just very -- doesn't feel really comfortable with that.  But that's more of the exception I would say.

Q.  Okay.  I want to talk next about privately-owned places that are open to the public.  So I'd just like you to tell me where -- what privately-owned places that are open to the public where you would like to carry a gun?

A.  One of them is a little comical in some ways, I guess.  You know, I'm sure I -- I don't know how old you are.  I'm a lot older.  But you've heard of the term going postal?

Q.  Yes.

A.  Okay.  Well as far as I can remember, any newspaper column that I've ever -- ever seen, it'd always referred to somebody in -- worked for the post office who decompensated and shot the

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 100

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

place up, got fired, blah, blah, blah.  As far as somebody going into a post office and just opening up on a -- on postal workers.  I've never -- and maybe it's happened, but I've never heard of it.

So it's again, an example of one of those in between, like, oh I got to go over lunch to, you know, blah, blah, blah, and then can't carry there because you can't carry it.  It's not allowed. Those are kind of places where it's like you're in there for two seconds, you know, whatever.  I mean -- and if -- and it's just -- it's very inconvenient to -- to -- to change courses.  Like when you're doing that.  It's just not -- not fun.  And there's no real reason there.

Again, there's -- there's never been historically a -- any -- there is historical evidence, you know, to support that there's attacks on churches and synagogues and mosques and things like that, houses of worship, which is why when that whole thing -- that limitation came up, which everybody that wanted security was very upset about. But like a post office or something like that, you know, that's an example of a place.  It's an in-between place for a two second errand.  And yeah, it

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 101

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

would be nice if it was, you know, basically a -- a concealed carry allowable place.

There are other stores and things like that. You know, many places don't post, like specifically, we don't want firearms in here. The only place that's really blatantly has any opinion whatsoever is Walmart, like I said. And then on their doorway, they have a decal and part of that says, please don't open carry, which obviously implies we don't care if you have concealed carry. We just don't want you to -- we don't want you to open carry here because it's obnoxious. And it is a little obnoxious. But I think it makes some people feel uncomfortable, so.

Q.   Okay.  Are there other stores aside from Walmart where you'd like to carry?

A.   Stores?

Q.   Uh-huh.

A.   I just would say in general -- anywhere there -- where there's -- anywhere where it's a public -- like if it was a private -- I'm trying to even think of an example. Yeah I mean if it was a private enterprise, like a daycare center or stuff like that, I mean I think that would be

800-523-7887                              ARII@courtsteno.com

Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 102

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

sensitive.  But like stores in general where the public goes to, malls, that's another example where many -- you know, I don't go to the mall.  Like I -- I really don't go to malls anymore pretty much.  But mall -- a mall is an example of another place that sometimes they have security, but I think should be concealed carry, movie theaters.

You know, there have been shootings in those places, specifically malls and movie theaters.  And I think you should be able to protect yourself if you had to.  Again, the responsibility of a concealed carry person, it's just -- it has to be perfect.  You -- you can't -- there's no -- there's no wiggle room because you've got so many people there and you don't want the Wild West.

But on the other hand, I think if you were vetted and you had -- you had requirement that you had to have additional training, maybe they had specific courses for concealed carry in public places, I -- I would be all for that.  Mandated -- you know, even if it's a classroom thing that you had to go for like three classes or something, I think that would be useful.  But I think ultimately that should be allowed.

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                                    www.courtsteno.com

Page 104

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

situation.  But it's difficult and -- but you -- but it requires that, and that's -- there's no requirement written like for concealed carry currently, like you know, training on de-escalation kind of stuff like that.  And I think it should be part of the training for sure.  I -- I -- I -- I -- on the one hand, I don't want things so onerous that it's completely discourages anybody from the ability to -- to do -- to be concealed carry.  But there are some things that are not being addressed at this point, which I think should be addressed and -- and, you know, to be safe.

Q.    We talked a few minutes ago about signs posted on property?

A.    Uh-huh.

Q.    Do you find it useful when property owners post signs that specify whether someone can carry a gun on their property?

A.    I -- for the same reasons that I feel about my own practice, even let's say they reverse by injunction and said, you know, you can concealed carry now in your own healthcare practice, whatever.  I -- I don't -- like the one at Walmart is okay, it's fine.  It kind of implies, you know we're

800-523-7887                                    ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                www.courtsteno.com

Page 105

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

okay with concealed carry, but we just don't want open carry.

I don't think -- I think probably anybody walking in there either -- probably either doesn't read the sign or if they do, they're like, oh, okay.

I think the sign is -- the sign requirement or whatever, is kind of potentially restrictive -- overly restrictive because I think some businesses have different opinions.  Some -- some don't want people to con -- concealed carry.  But some of them are okay with it, but they don't necessarily want to advertise, A, because some people as customers might be like, oh, this person is like this pro-Second Amendment person, maybe I don't want to shop there, just politically.  They don't -- they -- just like you don't want to talk politics as much as you can in -- in the workplace, you know, it's a similar kind of thought process.  And I -- I just don't find it helpful.

I -- if there was a -- truly, like if you have a courthouse and it -- and it says, no firearms permitted, blah, blah, that's appropriate, I feel.  But as far as like everywhere else, you should

800-523-7887                                ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 106

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

-- as the public, you should say, I don't know if there are people here that are concealed carry, yes or no.  I -- you know -- and it's -- and it is the way it is.  But there's no specific sign saying we allow concealed carry here.  I -- I -- my personal opinion is it's a little bit overly restrictive.

Q.   Sure.  I guess what I was asking was more -- is it useful information for you to have -- for you personally?

A.    If there's current laws on the books, for sure.  Like if they -- if the -- if the law says -- if they post, well, I guess it's a reverse.  If they -- if they don't post that concealed carry is per -- is -- is permitted in this place, then you shouldn't be concealed carrying.  I'm not in agreement with that at all.

Q.   I'm not asking about whether or not you agree with it.  I'm asking about the signs themselves.  Are they useful?

A.    I -- I don't -- I -- the only -- the only -- again, the only useful place for a sign would be when it's restricted because it's truly a sense that we've all universally agreed that it's a - - a universally sensitive place.  But as far as --

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 126

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

something or --

MS. THOMAS-JENSEN:  Okay, let's do that.  And let's come back on -- it's twelve forty-three.  Let's come back on at twelve fifty.  Everybody can get up, stretch, get a drink a water, or use the facilities and we'll be back on in seven minutes.  Does that work?

MR. PORTER:  Sounds good.

MS. THOMAS-JENSEN:  All right, thanks.

COURT REPORTER:  Okay.  And I'll take us off the record here.

(Off the record at 12:44 p.m.)

(On the record at 12:52 p.m.)

COURT REPORTER:  Okay.  I do have us back on the record.

MS. THOMAS-JENSEN:  Thank you.

BY MS. THOMAS-JENSEN:  (Cont'g.)

Q.  Dr. Noren, you are challenging New York's law require -- that requires -- safe storage of firearms and vehicles, is that right?

A.  Yeah.  I mean I do feel that you -- you should have a way to conveniently store a firearm, like let's say you're in transit or something like that.  But I don't -- I personally

800-523-7887                              ARII@courtsteno.com
Serving all of New York State

Associated Reporters Int'l., Inc.                    www.courtsteno.com

Page 127

NYS Rifle v Steven James, et al – 10-27-25 – Scott Noren

don't agree with the whole thing about removing a magazine from a gun and then putting it separately and doing this whole -- there's -- there's several reasons for that because -- especially when you're out in public -- oh I'm looking over and this guy is opening his trunk and he just pulled something out, look -- looked like a gun from his waist and he's -- and he's taking the magazine out and he's doing this. I don't -- what is he up to?

I'm not -- I'm just -- I'm just not a big fan of the layers of things that we're required. I do agree with, you know, safely storing firearms because firearms get stolen from vehicles every year. And it's a -- and it's a problem. It's a real problem. But as far as some of the layers of rules, I don't agree with all of them.

Q. Okay. And I'd like to start with -- to accept --

A. And can I -- can I -- can I say one thing as far as regards to that too?

Q. Sure.

A. I am absolutely one hundred percent an advocate for concealed carry nationwide in -- in respect because I think that, again, even just

800-523-7887                              ARII@courtsteno.com
Serving all of New York State