# EXHIBIT 72

Page 51

PATRICK J. CHARLES

Q.    And have you reviewed the CCIA?

A.    I have before.  But not before this meeting, or any time recently, no.

Q.    Okay.  So, the CCIA itself does not form any basis of your opinion in the case?

MR. THOMPSON:  Object to the form of the question.

You can answer.

A.    No.  I did not read the law when I was writing my Declaration.  No.

Q.    Okay.

A.    After the next question, can we take a break?

Q.    Sure.  Let's take a break now. Is that okay?

A.    Yeah.  Can we take ten?

Q.    Ten minutes is fine with me.

MR. PORTER:  James, is that okay with you?

MR. THOMPSON:  That's fine.

(A recess was taken.)

CONTINUED EXAMINATION BY

MR. PORTER:

PATRICK J. CHARLES

intoxicated, or inebriated, and having access to firearms.  So that's all I can give you.

Q.  Let me represent to you, Mr. Charles, that one of the provisions of the law being disputed in this case, being challenged in this case, is a complete prohibition on the carry of firearms inside any place that serves alcohol.

So if you assume that to be the case, other than the Oklahoma law that we discussed, do you have any examples of prior laws that would support that restriction, from a historical basis?

MR. THOMPSON:  Object to the form of the question.

You can answer.

A.  I think your question is kind of a repeat of do I have any examples in my Declaration that prohibit firearms in a place that sells intoxicating liquors. And I think I asked and answered that. No.  I don't see any one here.

Q.  I'm duly chastised.  If I were a