**James W. Porter, III**
Partner
jporter@bradley.com
205.521.8000



May 7, 2026

<u>**VIA CM/ECF**</u>
Hon. Paul J. Evangelista, U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, NY 12207

> **RE:**    Response to Defendant James' Letter Motion of Apr. 28, 2026
> *New York State Rifle & Pistol Ass'n, Inc., et al. v. James, et al.*,
> 1:22-cv-907 (MAD / PJE)

Dear Judge Evangelista,

Plaintiffs oppose Defendant James' request for an order requiring Dr. Ross Larsen, one of Plaintiffs' two rebuttal experts, "to disclose the AI prompts and responses used by [Dr. Larsen] in preparing his report and deposition responses." (Doc. 131).

Dr. Larsen is a rebuttal expert to Dr. Paul Reeping, one of Defendant James' experts. (*See* Larsen Decl. at 4, attached as **Exhibit A**). But Dr. Reeping's opinions—and, thus, Dr. Larsen's rebuttal opinions—are not relevant to any substantive issue before this Court. Dr. Reeping relies on various empirical studies to offer opinions about "the effect of sensitive place laws and gun-free zones on gun violence and public safety in the United States," (Reeping Decl. ¶ 1, attached as **Exhibit B**), that are entirely irrelevant to this Second Amendment lawsuit, which turns on this Court's exposition of the historical tradition of firearms regulation. Dr. Larsen, in rebuttal, prepared a 40-page declaration identifying Dr. Reeping's methodological defects, and Defendant James' counsel deposed Dr. Larsen about his findings and opinions for more than six hours. Defendant James now contends that Dr. Larsen should be required to produce "all" of "the prompts and responses of any generative AI platform" throughout the entirety of his work on this case, based on nothing more than conclusory and wrong assertions that these materials are "plainly 'facts or data'" and are "not protected by work product privilege." (Doc. 131 at 2). There are several independent reasons why Defendant James' request should be denied.

*First*, Dr. Larsen's AI prompts and results are not relevant to the substantive issues before this Court. Dr. Larsen is a rebuttal expert to Dr. Reeping, whose opinions concern only the empirical effect of location-based firearms restrictions. (Reeping Decl. ¶ 1). The Supreme Court in *Bruen* made clear that the effectiveness of a regulation is irrelevant to its constitutionality and rejected "means-end scrutiny in the Second Amendment context." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 19 (2022). Because Dr. Reeping's opinions are not "relevant to the task at hand," Dr. Larsen's rebuttal opinions are also irrelevant. *See Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 728 (E.D.N.Y. 2016). Both experts' opinions should be excluded as irrelevant. Defendant James' request should be denied because it is irrelevant to this lawsuit, and his 2-page letter lacking any meaningful legal argument does not show otherwise.

May 7, 2026
Page 2

---

***Second***, Dr. Larsen's AI prompts and results are not "facts or data" that Dr. Larsen is required to disclose—much less to produce. Federal Rule of Civil Procedure 26 requires experts to produce a report containing, among other things, "the facts or data considered by the witness in forming [his opinions]." Fed. R. Civ. P. 26(a)(2)(B)(ii). The Advisory Committee notes explain that this rule "require[s] disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26, Advisory Committee Notes to the 2010 amendment. The "facts or data" relevant to Dr. Larsen's opinions are the scientific principles contained in his report, on which he has already been the subject of extensive deposition questioning. In addition to his declaration, Dr. Larsen also produced a "Cheat Sheet" to help him prepare for his deposition, which was the first time he had ever been deposed. (Cheat Sheet, attached as **Exhibit C**). The Cheat Sheet included research on opposing counsel and how to comport himself during the deposition. Dr. Larsen produced the Cheat Sheet to opposing counsel, and he was questioned extensively about it during the deposition. The Cheat Sheet did not even exist at the time Dr. Larsen prepared his report that contains his opinions.

Dr. Larsen's AI prompts and results are research tools, not "factual ingredients" that Dr. Larsen is required to disclose. *See In re Elysium Health-ChromaDex Litig.*, 2021 WL 1249223, at \*2–4 (S.D.N.Y. Apr. 5, 2021) (collecting cases and denying motion to compel expert's production of "draft and unreported calculations" because, among other things, the materials did not "constitute 'facts or data'"); *see also Nike, Inc. v. By Kiy LLC*, 2023 WL 8520486, at \*3 (S.D.N.Y. Dec. 8, 2023) (denying motion to compel production of expert's "pilot study results" because the results "were not 'facts or data considered by'" the expert). Defendant James cannot argue that Dr. Larsen's AI prompts and results are discoverable to see whether anything was omitted from his report. Parties cannot require an expert to produce documents reflecting "what alternative methodologies [the expert] explored in his draft work, what results those methodologies might have yielded, and why [the expert] chose not to adopt those methodologies," because "[t]hat material does not constitute 'facts or data.'" *See In re Elysium*, 2021 WL 1249223, at \*4. Dr. Larsen's AI prompts and results are not discoverable. All relevant facts and data are included in his report.

Defendant James' conclusory suggestion that Dr. Larsen's AI prompts and results are "plainly 'facts or data'" suffers an even deeper flaw: His expansion of the traditional definition of "facts or data" has no limiting principle. If Defendant James were correct (which he is not), then every single expert would have an affirmative obligation to disclose the content and result of every single inquiry, in any repository of information—whether in physical form, electronic form, or otherwise—throughout the entirety of their work as an expert. In other words, experts would have an obligation to disclose the substance and result of any search through an online repository of scholarly literature or any Google search, and they would be required to list every single article or book that they opened while working as an expert. That would also apply to Defendant James' experts. But Defendant James' reading of Rule 26 is both unprecedented and unsupportable. Regardless, even if it were true that Dr. Larsen's AI prompts and results were "facts or data," he still would only be required to "*disclose* the facts or data he considered," not "to *produce* the documents containing that factual material." *See U.S. Magnesium, LLC v. ATI Titanium, LLC*, 2021 WL 615412, at \*13 (D. Utah Feb. 17, 2021). And Dr. Larsen's testimony already satisfies any supplemental disclosure obligation. *See* Fed. R. Civ. P. 26(e).

May 7, 2026
Page 3

***Third***, Dr. Larsen's AI prompts and results are not discoverable because they are protected expert work product. The Federal Rules of Civil Procedure unambiguously protect from disclosure "drafts of any report or disclosure," "regardless of the form in which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B). Litigants cannot seek production of "the initial or rough draft analysis of th[e] facts and data that ultimately results in the report." *In re Elysium*, 2021 WL 1249223, at *2. Nor can they seek "notes setting out in detail the content and structure of [his] report, or even just a section of [his] report," *Deangelis v. Corzine*, 2016 WL 93862, at *4 (S.D.N.Y. Jan. 7, 2016) (denying motion to compel materials used in draft report), or other materials like "spreadsheets, graphs, presentations, and charts," "so long as the documents were prepared by the testifying expert to be included in draft expert reports." *In re Elysium*, 2021 WL 1249223, at *2 (quoting *Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 591 (Fed. Cl. 2016)).

Defendant James has demanded "all . . . prompts and responses from the date Dr. Larsen was first contacted by plaintiffs' counsel." (Doc. 131 at 2). As Defendant James acknowledges, Dr. Larsen "used A.I. to revise his expert report." (*Id.* at 1). The prompts and results that Defendant James seeks would require Dr. Larsen to produce protected drafts of his declaration and opinions. Rule 26(b)(4)(B) protects those "drafts," "regardless of the form in which the draft is recorded." *See Nike, Inc.*, 2023 WL 8520486, at *3 (holding that pilot study results were "drafts" of which "Rule 26 does not require disclosure").

Defendant James contends that Dr. Larsen's "communications with the generative AI platforms were not protected by work product privilege, largely for the reasons stated in *United States v. Heppner*." (Doc. 131 at 2). But *Heppner* is inapposite, unpersuasive, and wrong.

For one, while *Heppner* was a criminal case, "this is a civil case governed by the Federal Rules of Civil Procedure," which "protects the work product of a party," *see Morgan v. V2X, Inc.*, 2026 WL 864223, at *4 (D. Colo. Mar. 30, 2026) (rejecting *Heppner* in the context of a pro se party's creation of trial-preparation materials), and an expert, Fed. R. Civ. P. 26(b)(4)(B) (protecting expert work product). The court in *Heppner* did not evaluate privilege or work product protections under rules applicable in civil cases. In the civil context, for example, work product is protected regardless of whether it was "prepared by or at the direction of an attorney." *Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 572, 574 (S.D.N.Y. 2021) (holding that documents were protected by Rule 26(b)(3) as trial preparation material). Regardless, unlike *Heppner*, Dr. Larsen was working under the direction of Plaintiffs' counsel to prepare his expert declaration as a rebuttal witness. *Morgan*, 2026 WL 864223, at *4 (rejecting *Heppner*, in case involving pro se party, where there was no "gap between the party and the attorney").

For another, *Heppner* failed to consider that "nearly all electronic interaction passes through third-party systems." *Id.* If Defendant James' argument, and *Heppner*, were correct, then the attorney-client privilege and work product doctrine could not exist in the modern technological era. In such case, attorneys generally could not operate Westlaw, Google, or even Microsoft Word products without waiving privilege and work product protection. That is not the law. Like with other forms of modern technologies, "given how AI tools function, it is entirely reasonable for a person to expect some privacy and confidentiality when interacting with these tools, even though they understand a third party is behind the tool collecting and storing their information." *Id.* at *5.

May 7, 2026
Page 4

Regardless, *Heppner* did not apply the rule for work product waiver that governs here. Work product protections are waived only through "disclosure of work product to an adversary," *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993), or to a third party in a manner that "substantially increase[s] the opportunity for potential adversaries to obtain the information," *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *5 (S.D.N.Y. Oct. 4, 2024); *see also Williams v. Bridgeport Music, Inc.*, 300 F.R.D. 120, 124 (S.D.N.Y. 2014) (applying these waiver principles to an expert's work product). Dr. Larsen did not disclose any of his work product to an adversary. Nor did his use of AI increase the likelihood that the defendants would obtain access to his work product. His disclosure of work product to third-party AI platforms did not make anything public, much less destroy the confidentiality of his work product in a manner that waives work product protections. *See Morgan*, 2026 WL 864223, at *5 (holding that "AI interactions do not automatically compromise work product protections" under adversary-disclosure rule); *Warner v. Gilbarco, Inc.*, 2026 WL 373043, at *4 (E.D. Mich. Feb. 10, 2026) (similar).

**Fourth**, Defendant James' request should be denied because it is disproportionate to the needs of the case and is an improper fishing expedition. *See Warner*, 2026 WL 373043, at *4 (denying motion to compel AI-related documents as "not relevant," "not proportional," and "a fishing expedition"). The Court has "discretion" on whether to grant Defendant James' motion to compel. *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999). Defendant James asks this Court to wade into uncharted territories concerning the overlap between privilege, work product protection, and artificial intelligence, as applied to the scope of protections given experts' preparation of their opinions in a case. He makes that request despite the fact that it has nothing to do with the substantive issues before this Court. This Court's discretion is best exercised by denying Defendant James' motion.

Dr. Larsen has already produced an extensive declaration. He also produced a copy of his Cheat Sheet to opposing counsel. And Defendant James' counsel deposed Dr. Larsen for more than six hours, including extensive questioning on his use of AI and his Cheat Sheet. To the extent that Defendant James disagrees with Dr. Larsen's opinions and findings, he has every opportunity to express those disagreements in a *Daubert* motion. *White v. Cnty. of Suffolk*, 2024 WL 2274450, at *7 (E.D.N.Y. May 20, 2024) ("To the extent Defendants seek to challenge the [Expert] Report's findings, they have the ability to do so at a later point through a *Daubert* motion."). Defendant James' request for Dr. Larsen to produce all AI prompts and results is disproportionate, because he has already produced his declaration and Cheat Sheet, he has already been deposed on those subjects, and his AI prompts and results bear no relevance to the issues before this Court.

**Fifth**, regardless of the reasons why Defendant James' request is substantively improper, his request should be denied because it is procedurally improper and untimely. He never requested production of any expert's materials in any request for production. Nor did he request any documents in his deposition notice for Dr. Larsen or issue a subpoena to Dr. Larsen. The opportunity to do so—if it ever existed—has passed. Discovery has closed except for agreed-upon depositions of the parties' experts. (Doc. 94 ¶ 7; Doc. 110–11; Doc. 123). "Expert discovery is narrowly construed to include the disclosure of experts and their reports, rather than the documents that could form the basis of an expert's report in the future." *White*, 2024 WL 2274450, at *6 (citation omitted, collecting cases). All "facts or data" which Dr. Larsen considered or relied on

May 7, 2026
Page 5

were disclosed in his declaration, and Defendant James has already deposed Dr. Larsen on his opinions and findings. There is no basis for Defendant James' untimely effort to compel production of materials that he should have requested long ago.

* * *

For the reasons above, the Court should deny Defendant James' request for an order requiring Dr. Larsen to produce any AI prompts and results generated in connection to this lawsuit. Should this Court nevertheless grant Defendant James' motion, Plaintiffs respectfully request an opportunity to review and redact material that is irrelevant, privileged, or protected. Further, if this Court grants Defendant James' motion, then Plaintiffs respectfully request an order compelling Defendant James' four experts to produce any prompts and results from any generative AI, and any other research concerning their opinions, in this case and any other case in which they have offered similar opinions as an expert.

Respectfully,

/s/ *James W. Porter, III*
James W. Porter, III
Counsel for Plaintiffs

CC: All counsel of record (via CM/ECF)