

**Office of the New York State
Attorney General**

**Letitia James
Attorney General**

May 12, 2026

The Honorable Paul J. Evangelista, U.S. Magistrate Judge
James T. Foley U.S. Courthouse
445 Broadway, Room 441
Albany, NY 12207

> Re: *New York State Rifle & Pistol Association, Inc., et al. v. Steven G. James, et al.* (Case No. 1:22-cv-00907) (MAD / PJE)

Dear Judge Evangelista,

This office represents Steven G. James, in his official capacity as Superintendent of the New York State Police. Given the Plaintiffs' lengthy response to our request for a Local Rule 37.1 Conference (ECF No. 133), which included numerous citations to caselaw, we felt it would be helpful to respond in writing in advance of the conference.

In addition, we write to inform the Court that Plaintiffs' other rebuttal witness, F. Lee Francis, testified at his deposition on Monday that he too used a generative artificial intelligence platform ("genAI") to find sources for his Rule 26(a)(2)(B) expert report. We therefore seek disclosure, under Rule 26(a)(2)(B), of Professor Francis's prompts and responses to ChatGPT.

Plaintiffs make five arguments, which we address in the order they were made.

*First*, Plaintiffs argue that the information we seek is "not relevant" because *Bruen* "'rejected means-end scrutiny in the Second Amendment context.'" ECF No. 133 at 1. While Plaintiffs are correct that the *Bruen/Rahimi* test does not involve means-ends scrutiny, that does not mean that consideration of modern laws is irrelevant or inappropriate. To the contrary, "[w]hy and how the [modern] regulation burdens the [Second Amendment] right are central to this inquiry." *United States v. Rahimi*, 602 U.S. 680, 692 (2024). Moreover, Plaintiffs' claims are not limited to the Second Amendment. *See* ECF No. 63 at ¶¶113-149 (causes of action asserting violations of First, Fourth, and Fourteenth Amendments to U.S. Constitution). Dr. Reeping's testimony (and thus, Plaintiffs' rebuttal expert's testimony) is plainly relevant to these claims. Additionally, to the extent that Plaintiffs seek to argue that Dr. Reeping's testimony should be excluded as irrelevant, that argument can be made in the *Daubert* motions that the parties are scheduled to file in July. ECF No. 129.

*Second*, Plaintiffs argue that Dr. Larsen's prompts to two non-confidential genAI platforms and responses received from those platforms are "not 'facts or data' that Dr. Larsen is required to disclose" under FRCP 26(a)(2)(B)(ii). As Plaintiffs note, the relevant language was revised in 2010. The Advisory Committee Notes for the relevant amendment provide that "the intention is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." FRCP 26 Advisory Committee Notes to the 2010 Amendment. Moreover: "The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id*. There can be no doubt that Dr. Larsen considered genAI outputs in forming his opinions, because in his deposition, he admitted that his "thesis statement" had been drafted by the genAI platforms. ECF No. 131-1 at 46:11-18, 149:19-23; ECF No. 131-2.

Plaintiffs rely upon *In re Elysium Health – ChromaDex Litigation* to argue that the genAI materials their expert relied upon are not "facts or data," but that case involved an expert's damages spreadsheet, and whether the underlying formulas used to calculate the spreadsheet amounts were "facts or data." 2021 WL 1249223 at *1 (S.D.N.Y. 2021). The court concluded that these were "draft and unreported calculations," that the expert was not required to produce. *Id*. at *3. Here, the genAI platforms' responses are not "drafts of the report" because they were not created by the report's author. They are a third party's answer to questions posed by the expert. *See Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 591 (2016) ("Spreadsheets, graphs, presentations, and charts are protected under Rule 26(b)(4)(B), *so long as the documents were prepared by the testifying expert* to be included in draft expert reports." (emphasis added)). And though Plaintiffs claim that the State seeks protected "drafts" of the Dr. Larsen's report, the materials that the State is seeking were not prepared by him—but rather, were generated by a third party for his consideration in developing his opinions. To the extent that Dr. Larsen uploaded drafts of his report to these genAI platforms, the State does not seek those drafts, per FRCP 26(b)(4)(B).

Nor is this akin to the "result of any search through an online repository of scholarly literature or any Google search," as Plaintiffs contend. The two genAI platforms that Dr. Larsen used create responses that often take the form of reports. Gemini Deep Research for instance, indicates that it "explores complex topics for you and delivers its finding in a comprehensive, detailed report."[1] Similarly, Claude Opus 4.6, performs "a range of everyday work tasks: running financial analyses, doing research, and using and creating documents, spreadsheets, and presentations."[2] The State is not asking to see the underlying calculations performed by the genAI, but rather the documents, reports, and analysis that these platforms created for Dr. Larsen and that he considered in forming his opinions. *See Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Markets Corp.*, 2024 WL 5074923 at *2-*3 (S.D.N.Y. 2024) (concluding that algorithms were "facts or data" considered by expert).

*Third*, the expert's communications with a third-party, non-confidential genAI system are not work product and—even if they were—any privilege has been waived. "A claim of work-product has three elements: [t]he material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his

---

[1] https://blog.google/products-and-platforms/products/gemini/tips-how-to-use-deep-research/
[2] https://www.anthropic.com/news/claude-opus-4-6

representative." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 293 F.R.D. 568, 573 (S.D.N.Y. 2013) (citations and internal quotation marks omitted). Here, the work product privilege does not protect these communications because "they were prepared neither by the attorney nor his agents"—insomuch as Plaintiffs do not contend that they had an agent relationship with Gemini or Claude. *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 384 (2d Cir. 2003); *accord United States v. Heppner*, __ F.Supp.3d__, 2026 WL 436479 at *3 (S.D.N.Y. 2026) ("The AI Documents do not merit protection under the work product doctrine because, even assuming, *arguendo*, that they were prepared in anticipation of litigation, they were nevertheless not prepared by or at the behest of counsel, nor did they reflect defense counsel' s strategy." (cleaned up)). Additionally, the protection does not apply because "the material is otherwise discoverable"—though it would be more time consuming, the State could subpoena Google and Anthropic for this material. *In re MBTE Prods. Liab. Litig.*, 293 F.R.D. at 573.

Should the Court conclude that these protections may apply, any work product protections here have been waived, because "a party [has made] testimonial use of work product materials." *BNP Paribas v. Bank of New York Tr. Co.*, 2013 WL 2434686 at *4 (S.D.N.Y. 2013). Indeed, Dr. Larsen read out loud text generated by genAI platforms as he testified. *Compare* ECF No. 131-1at 46:11-18 *with* ECF No. 131-2. Moreover, courts have held that "furnishing work-product of a factual nature to a testifying expert constitutes implied waiver of work product protection to the extent that the expert considers the facts or data disclosed in forming her opinion." *In re MTBE Prods. Liab. Litig.*, 293 F.R.D. at 574 (distinguishing between communications between a party's attorney and an expert witness and "facts or data" that the attorney provides and that informed the expert's opinions).

Plaintiffs seek to distinguish *United States v. Heppner*, and they also argue that it was wrongly decided. Though that case was criminal in nature, its reasoning is not so limited (and in both the civil and criminal contexts, the work product doctrine is the same). *See In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d at 383. And though the Plaintiffs argue that under *Heppner*, an attorney could not use "Westlaw, Google, or even Microsoft Word products without waiving privilege and work product protection," this argument ignores the ways in which genAI products function as well as the fact that prompts and responses are not private. *See Heppner*, 2026 WL 436479 at *2 ("AI users do not have substantial privacy interests in their conversations with [a] . . . publicly accessible AI platform which users voluntarily disclosed to the platform and which the platform retains in the normal course of its business." (cleaned up)). *Heppner* is applicable, and it was rightly decided.

*Fourth*, the State is not seeking "disproportionate" discovery, but rather the bare minimum of what is required to be disclosed under FRCP 26(a)(2)(B). Any proportionality inquiry is not appropriate in this context. And, even if such an inquiry were appropriate, Defendants have not shown that the production of these materials constitutes a burden. To the contrary: Defendants can easily gather chatlog transcripts on a discrete topic during a discrete time period. Moreover, the State offered to negotiate search terms, if that would reduce any burden associated with gathering these materials.

And *fifth*, the State's request was not untimely, as the State made the request as soon as it learned that the materials that Plaintiffs were required to disclose under FRCP 26(a)(2)(B) had not been disclosed.

Respectfully submitted,

Molly Thomas-Jensen
Special Counsel
NDNY Bar Roll No. 705119
28 Liberty Street, New York, NY 10005
212-416-8679
Molly.Thomas-Jensen@ag.ny.gov