UNITED STATES DISTRIST COURT
NORTHERN DISTRICT OF NEW YORK

_____

NEW YORK STATE RIFLE & PISTOL ASSOCIATION,
INC., ROBERT NASH, BRANDON KOCH, THOMAS
STIRNWEIS, WAYNE FRANCIS, KHOURY PORTER
and SCOTT NOREN,

                  Plaintiffs,

v.

STEVEN G. JAMES, in his official capacity as Acting
Superintendent of the New York State Police, RODNEY
K. HARRISON, in his official capacity as Commissioner
of the Suffolk County Police Department, and Licensing
Officer for Suffolk County and PATRICK J. RYDER, in
his official capacity as Police Commissioner of the Nassau
County Police Department, and Licensing Officer for
Nassau County,

                  Defendants.

_____

Civil Case No. 1:22-cv-00907

## **MEMORANDUM OF LAW**

**GOLDBERG SEGALLA LLP**
Jonathan M. Bernstein, Esq.
Kevin M. Cannizzaro, Esq.
*Attorneys for Defendant*
*Patrick J. Ryder*
8 Southwoods Blvd., Suite 300
Albany, New York 12211
(518) 463-5400
jbernstein@goldbergsegalla.com
kcannizzaro@goldbergsegalla.com

56906717.v4

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 4

STANDARD OF REVIEW ............................................................................................... 6

ARGUMENT ..................................................................................................................... 8

    (I)    Plaintiff's Monell claim as to the County of Nassau is fatally flawed as no distinct local policy of Nassau County is responsible for Plaintiff's alleged violations .................................. 8

    (II)    Commissioner Ryder's implementation of the mandatory provisions of the CCIA related to licensing schemes cannot alone form the basis for a *Monell* claim against Nassau County ................................................................................................................................ 11

    (III)    Plaintiff has failed to establish that the CCIA is facially unconstitutional as it related his claims according to binding Second Circuit precedent ........................................................ 15

    (IV)    The Nassau County Defendant should be permitted to Amend their Answer to assert a viable standing defense and have this matter fully adjudicated on the merits ......................... 17

    (V)    Defendants should be granted summary judgment here as Plaintiff Francis lacks standing to sustain his claims .................................................................................................. 20

    (VI)    Plaintiffs' Motion for Summary Judgment Should Be Denied And The Action against Commissioner Ryder Dismissed for Failure to State a Claim. ................................................ 25

CONCLUSION .................................................................................................................. 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...........................................................................................6, 7

*Antonyuk v. Chiumento*,
  89 F.4th 271 (2d Cir. 2023) .....................................................................................17

*APWU v. Potter*,
  343 F.3d 619 (2d Cir. 2003) ....................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 ...........................................................................................................7

*Ashcroft v. Iqbal*,
  566 U.S. 662 [2009] ............................................................................................7, 8

*Bardwell v. Graham, Index No. 12-cv-1433(TJM/CFH)*,
  2014 U.S. Dist. LEXIS 192106 (N.D.N.Y. 2014) .....................................................17

*Batista v. Rodriguez*,
  702 F.2d 393 (2d Cir. 1983) ....................................................................................9

*Bd. of Cty. Comm'rs v. Brown*,
  520 U.S. 397 (1997) ...............................................................................................9

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
  769 F.2d 919 (2d Cir.1985) ....................................................................................7

*Celotex v. Catrett*,
  477 U.S. 317–24 (1986) ..........................................................................................6

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016) ......................................................................................21

*Church of Am. Knights of the Ku Klux Klan v. Kerik*,
  356 F.3d 197 (2d Cir. 2004) ....................................................................................29

*Conseillant v. Lafontant*,
  2009 U.S. Dist. LEXIS 61795 (NDNY 2009) ...........................................................8

*DeCarlo v. Fry*,
  141 F.3d 56 (2d Cir. 1998) ......................................................................................9

*Drawbridge v. Schenectady Cnty. Dep't of Soc. Servs.*,
  2024 U.S. App. LEXIS 6381 [2nd Cir. 2024] ...........................................................1

*Eagan v. Glassbrenner*,
   No. 14-CV-507S, 2015 WL 3637410 (W.D.N.Y. June 10, 2015) ......................................18, 19

*Estate of D.B. v Thousand Islands Cent. Sch. Dist.*,
   169 F.Supp.3d 320 [NDNY 2016] ...............................................................................28

*Fair v. Tope*,
   2025 U.S. Dist. LEXIS 277073 (N.D.N.Y. 2025) ....................................................18

*Freedom Holdings, Inc. v. Spitzer*,
   357 F.3d 205 (2d Cir. 2004) .......................................................................................29

*Giambalvo v. Suffolk Cnty.*,
   155 F.4th 163 (2d Cir. 2025) ......................................................................................13

*Giambalvo*,
   155 F.4th ......................................................................................................................15

*Giambalvo*,
   155 F.4th 172, Fn.3 (2d Cir. 2025) ............................................................................13

*Green v. Bauvi*,
   46 F.3d 189 (2d Cir. 1995) .........................................................................................27

*Griffin v. City of N.Y.*,
   880 F. Supp. 2d 384 [E.D.N.Y. 2012] ......................................................................27

*Guzman v. Westchester County Bd. of Legislature*,
   80 Misc. 3d 403 ...........................................................................................................13

*Hahn v. JetBlue Airways Corporation*,
   738 F. Supp. 3d 229 at 247-48 (E.D.N.Y. 2024) ...............................................20, 21

*Hsin v. City of New York*,
   779 Fed. Appx. 12 (2d Cir. 2019) ..............................................................................29

*Hu v. City of New York*,
   927 F.3d 81 (2d Cir. 2019) ...................................................................................29, 30

*K.I.*
   2026 U.S. Dist. LEXIS 41763 .....................................................................................22

*K.I. v. Sullivan, 1:25-CV-00264 (MAD/ML)*,
   2026 U.S. Dist. LEXIS 41763 (N.Y.N.D. 2026) ......................................................20

*K.I. v. Sullivan:25-CV-00264 (MAD/ML)*,
   2026 U.S. Dist. LEXIS 41763 (N.Y.N.D. March 2, 2026) ........................................22

*Kerzer v. Kingly Mfg.*,
   156 F.3d 396 (2d Cir.1998) ...........................................................................................7

iii

*Levine*,
  2022 U.S. Dist. LEXIS 100188, 2022 WL 1987845 [EDNY 2010] .........................................30

*Locurto v. Safir*,
  264 F.3d 154 (2d Cir. 2001) ...............................................................................................28

*Lore v. City of Syracuse*
  Lore v. City of Syracuse, 670 F.3d 127 (2d Cir. 2012) ..........................................................8

*McDaniels v Mertens*,
  2022 U.S. Dist. LEXIS 21691 [NDNY 2022] .......................................................................28

*McMillian v. Monroe County*,
  520 U.S. 781 (1997) ...........................................................................................................12

*Mfon v. Cty. Of Dutchess*,
  2017 WL 946303 at *3 (S.D.N.Y.) ........................................................................................7

*Milner-Koonce v. Albany City Sch. Dist., 1:21-CV-1271 (LEK/CFH)*
  2025 U.S. Dist. LEXIS 192715 (N.D.N.Y. 2025) ..................................................................20

*Monell v. Department of Social Services*,
  436 U.S. 658  (1978) ............................................................................................................9

*N.Y. State Rifle & Pistol Ass'n v. James*,
  2025 U.S. Dist. LEXIS 28731  ...........................................................................................2, 5

*Neary v. Weichert*,
  489 F. Supp. 3d 55 (E.D.N.Y. 2020) ..................................................................................22

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
  597 U.S. 1 (2022) ....................................................................................................1, 15, 16

*Nolan v. Cnty. of Erie, No. 1:19-CV-01245*,
  2020 U.S. Dist. LEXIS 72729, 2020 WL 1969329 (W.D.N.Y. Apr. 24, 2020) .......................28

*NRP Holdings LLC v. City of Buffalo*,
  916 F.3d 177 (2d Cir. 2019) ..............................................................................................29

*Oklahoma City v. Tuttle*,
  471 U.S. 808 (1985) ..........................................................................................................12

*Owen*,
  445 U.S. 622 (1980) ..........................................................................................................12

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) ..........................................................................................................12

*Pitts v. Onondaga Cty. Sheriff's Dep't*,
  2009 WL 3165551 (N.D.N.Y.  2009) .....................................................................................7

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ....................................................................................21

*Ruotolo v. City of New York*,
  514 F.3d 184 (2d Cir. 2008) ...................................................................................7

*Second Amendment.*
  120 F. 4th at 991 n.43.4 ...............................................................................16, 17

*Segal v. City of New York*,
  459 F.3d 207 (2d Cir. 2006) ..................................................................................11

*SM Kids, LLC v. Google LLC*,
  963 F.3d 206 (2d Cir. 2020) .................................................................................20

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .........................................................................................20, 21

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ..............................................................................................20

*Susman*,
  2025 U.S. Dist. LEXIS 31844, 2025 WL 575515 ................................................22

*Town of Castle Rock, Colo., v. Gonzales*,
  545 U.S. 748  (2005) .............................................................................................10

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ..............................................................................................21

*United States v. Rahimi*,
  602 U.S. 680 (2024) ..............................................................................................16

*Village of Willowbrook v. Olech*,
  528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) ........................................30

*Vives v. City of New York*,
  524 F.3d 346 (2d. Cir. 2008) ...............................................................10, 11, 12, 14

*Wheatley v. New York State United Teachers, New Hartford Employees Union*,
  629 F. Supp. 3d 18 (N.D.N.Y. 2022) ...............................................................12, 13

*Yankovich v. Applus Technologies, Inc.*,
  621 F. Supp. 3d 269 (D. Conn 2022) ....................................................................20

*Young v. Suffolk County*,
  705 F. Supp. 2d 183 (E.D.N.Y. 2010)  ..................................................................28

**Statutes**

42 USC 1983 ..................................................................................................1, 9

County Law §2 ...................................................................................................................13

NY Penal Law §400 ...........................................................................1, 10, 12, 13, 14

NY Penal Law §265 ...........................................................................................................10

**Other**

Article VII, §801 ...............................................................................................................13

Fed. R. Civ. P. 56 ..........................................................................................................6, 7

Federal Rule 12 ...........................................................................................................7, 28

FRCP 15 ...............................................................................................................................18

Rule 12 ..........................................................................................................7, 25, 26

Rule 8 ...................................................................................................................................8

U.S. Const. Amend. II .....................................................................................................15

## **PRELIMINARY STATEMENT**

Plaintiffs assert a lengthy motion for summary judgment regarding their various challenges to several statutory provisions that New York State adopted, following the United States Supreme Court landmark decision in <u>New York State Rifle & Pistol Association, Inc. v. Bruen</u>, 597 U.S. 1 (2022)(striking down New York's requirement of "proper cause" related to the licensing scheme needed to carry a concealed firearm in public).   In response to that decision the State of New York adopted a new statutory scheme which was intended to both address the Supreme Court's holding in <u>Bruen</u> and to ensure they had a standardized scheme in place related to local licensing of concealed firearm licenses in the State of New York.[1]   The new law represents a significant shift in terms of NYS penal law related to the issuance of concealed carry firearm permits.   The licensing components of the State law remain the sole focus of Plaintiff's current action, as well as the basis for their comprehensive motion for summary judgment. (<u>See</u> Dkt. 130).

However, something is conspicuously absent throughout the Plaintiff's motion for summary judgment: any substantive reference to the alleged Nassau County municipal policy or policy maker that Plaintiffs argue to be the root of the constitutional violation. This element is obviously at the heart of any Monell claim against the Nassau County defendant.[2]  Yet, Plaintiff's references to the sole Nassau County Plaintiff, Wayne Francis, any  alleged Nassau County policy are few and far between in the terms of the substance of their arguments.   It should be noted that

---

[1] Chapter 371 of the New York Laws of 2022, the Concealed Carry Improvement Act (hereinafter the "CCIA") which implements mandatory, nondiscretionary provisions of the New York State Penal law related to licensing of firearms (<u>See</u> NY Penal Law §400).

[2] Just about fifty years ago, the United State Supreme Court noted that local governments were susceptible to suit under 42 USC 1983 pursuant to Monell.    Since then, the Supreme Court has created a significant body of precedent surrounding the applicable scope of that precedent.  One thing is clear, even in a case which is primarily founded in a challenge to an overriding NYS statute , the Plaintiff must still meet the basic requirements of Monell, which mandates that they identify a distinct local municipal policy that is allegedly responsible for the harm (See *Drawbridge v. Schenectady Cnty. Dep't of Soc. Servs.*, 2024 U.S. App. LEXIS 6381, *3 [2nd Cir. 2024]).

1

the Plaintiff's failure to point to a discrete Nassau County policy, allegedly causing constitutional harm, is not surprising.   The discovery as to the Nassau County Defendant, Police Commissioner Patrick J. Ryder (hereinafter "Commissioner Ryder") which has occurred to date clearly shows that no local municipal policy is operating which can be alleged to cause Plaintiff Francis' harms. As Plaintiff Francis cannot identify an independent municipal policy or action, that is distinct from the requirements found in New York State Penal Law, Plaintiff's arguments fall short from a Monell perspective, and actually, it is Commissioner Ryder that should be granted summary judgment here and plaintiffs' motion denied.

Plaintiffs cannot evade the impact of failing to identify a local action by pointing to Commissioner Ryder' decision, as is his obligation, to enforce the mandatory, nondiscretionary provisions of the New York State Law related to firearm licensing requirements applicable to all municipalities.  The United States Supreme Court and Second Circuit Court of Appeals have made clear that, unless Plaintiffs can point to a discrete and distinct Nassau County policy, that in and of itself furthers an independent constitutional violation in this case, the local municipality has no liability.  In other words, Plaintiffs cannot ascribe liability to the Nassau County Defendant simply by alleging that they have enforced New York State Law.  Yet, that is precisely what they have done in this case, and the reason that Commissioner Ryder is entitled to summary judgment here.

Plaintiff Wayne Francis' claims also have another fundamental flaw: he lacks individual standing.  The Court previously addressed standing earlier in this litigation, but not as it relates to the Nassau County Defendant directly.  In light of the discovery that has occurred, it is clear that Plaintiff Wayne Francis lacks standing to challenge the CCIA in several critical respects.  His own testimony, as discussed below, undermines his claims that the local licensing scheme represented a constitutional violation independent from the state law.  Mr. Francis admits that he has never

2

applied for a renewal of his concealed carry license under the new scheme currently in place in Nassau County. His next renewal is not until June of 2026.  Therefore, in reality, he has not been constitutionally affected by Nassau County's licensing scheme to date.   Finally, Plaintiff Francis explicitly admits that his claims here will not be remedied by a favorable decision and order of this Court, as he has no intention of carrying a concealed firearm in Nassau County for the foreseeable future, in any location.   Given that standing goes to the heart of this Court's subject matter, its absence is fatal to Plaintiff's claims against Commissioner Ryder, and the Nassau County defendant is entitled to summary judgement here.

In a similar vein, Plaintiff New York State Rifle & Pistol Association, Inc. (NYSRPA), also does not have standing as against Commissioner Ryder as its Complaint is tied to plaintiff Francis as a member of the organization.  NYSPRA is relying on Francis as the means to premise a claim against Commissioner Ryder.  Since Francis has no standing, NYSRPA, and his fellow Plaintiff's in turn have no standing to assert Francis' alleged claims.  The two are attached at the hip.  The Court has previously ruled on the associational standing of the NYSRPA (See Dkt. No. 81 at pp.9-11) and those holding are binding here.[3]

Finally, Commissioner Ryder is sued here in his official capacity, which is in reality a claim against the County of Nassau only.   As noted above, Plaintiff bases his claim against Nassau County based Soley on Commissioner Ryder's enforcement of a law that was facially

---

[3] It goes without saying but several key holdings by this Court reflected in its prior Decision and Order should apply to the Nassau County defendants in the same way as they did to the NYS defendants, though they did not join the State in its initial motion to dismiss. (See Dkt. No. 81, generally).  For example, for purposes of the licensing scheme challenges, Plaintiff's have already conceded that no Individual Plaintiff has standing to challenge many of the sensitive places where it is prohibited to carry guns, such as at nursery schools and homeless shelters. (See Dkt. No. 68 at 14-16, 24-25). Likewise, as relevant to the claims against Nassau County, Plaintiffs previously conceded that "no Individual Plaintiff has a justiciable challenge to the safety course and training requirements," but contended that NYSRPA could assert such a challenge on behalf of its members. See id. at 13.  The Court rejected that argument. (See Dkt. No. 81 at pp.10-11).

constitutional law at the time Plaintiff brought suit.   At that time, Commissioner Ryder and his staff were acting merely as agents of the State of New York, bound by the New York State Municipal Home Rule Law.  As such, the claims against Ryder cannot survive defendants' cross motion here

Commissioner Ryder therefore respectfully submits the following Memorandum of Law in opposition to Plaintiff's motion for summary judgment and in support of his cross motion for summary judgment, to amend his Answer to the Second Amended Complaint to add an affirmative regarding Plaintiff's lack of standing, and his cross-motion for Judgment on the Pleadings to dismiss Plaintiff's Complaint in light if his clear failure to state a plausible claim, and respectfully requests that this Court issues a decision and order dismissing  Plaintiff's Second Amended Complaint in its entirety, on the merits and with prejudice.

## STATEMENT OF FACTS

Commissioner Ryder respectfully refers the Court and Plaintiff to his Response to Plaintiff's Statement of Material Facts and corresponding Counterstatement of Material Facts with related Exhibits, and the Statement of Material Facts of co-defendant James for a full recitation of the relevant facts.

Notably, this Court previously addressed defendant James's motion to dismiss (2025 U.S. Dist. LEXIS 28731 [NDNY 2025]/ Dkt. 81).  As a result of that decision, NYSRPA is no longer a plaintiff in this case as it lacks organizational standing, which should apply to defendant Ryder as the reasoning it lacks standing remains no matter which defendant.  The Court also dismissed as moot the social media requirement due to the injunction in *Antonyuk.*  That should apply to Ryder for the same reasons stated in this Court's prior decision.

4

Similarly, this Court dismissed, based on plaintiffs' concession, the majority of sensitive place restrictions. In particular, the Court dismissed

> (1) "any location providing ... behavioral [*28] health[ ] or chemical dependence care or services"; (2) childcare programs, as well as nursery schools or preschools; (3) programs licensed, regulated, certified, operated, or funded by the State's Office for People with Developmental Disabilities, Office of Addiction Services and Supports, Office of Mental Health, and Office of Temporary and Disability Assistance; (4) "homeless shelters, runaway homeless youth shelters, family shelters, shelters for adults, domestic violence shelters, and emergency shelters, and residential programs for victims of domestic violence"; (5) educational institutions; (6) any establishment that is licensed for on-premise consumption of cannabis; (7) "stadiums, racetracks, museums, amusement parks, performance venues, concerts, exhibits, conference centers, banquet halls, and gaming facilities and video lottery terminal facilities as licensed by the gaming commission"; (8) polling places; or (9) "any gathering of individuals to collectively express their constitutional rights to protest or assemble." Dkt. No. 66-1 at 18. In their response, the Individual Plaintiffs concede that none of them have standing to challenge these provisions of the CCIA"

(*N.Y. State Rifle & Pistol Ass'n v. James,* 2025 U.S. Dist. LEXIS 28731, *27-28). Those claims should remain dismissed.

Currently, there exist several causes of action against Commissioner Ryder which have not yet been specifically addressed by the Court. Plaintiff alleges claims for: (a) violations of his rights under the Second and 14th Amendments based on the alleged unconstitutional licensing scheme enforced by Commissioner Ryder (Count One); (b)violations of Plaintiff's First Amendment rights (Count Two); (c) violations of their rights to privacy under the 4th & 14th Amendments (Count Three); (d) violations of their rights to substantive and procedural due process under the 14th Amendment (Counts Four); (e) violations of their Equal Protection rights under the 14th Amendment (Count Five); and (f) violations of their rights to privacy under the 14th Amendment (Count Six). For the reasons noted below, not only should Plaintiff's motion for summary judgment be denied, but summary judgment/dismissal should be granted in favor of Commissioner Ryder here.

5

Although this Court addressed standing as to plaintiff Francis's claims against James, it did not address his claims as against Ryder, which warrant dismissal. The Court allowed the individual defendants to challenge the statute, as against James in his capacity as Superintendent of the New York State Police, which is really a claim against the State of New York, the originator of the statute. What the Court did not address is whether standing exists as to the County of Nassau, which is not the originator of the statute and is only charged with applying the law to the renewal of an applicant's permit. That issue is now presented before the Court and Ryder submits that standing does not exist as no plaintiff has been formally denied renewal by Ryder or his office or is materially affected by a discrete local policy.

## STANDARD OF REVIEW

To begin, summary judgment is warranted if the pleadings, depositions, answers to interrogatories, evidence and admissions on file, together with the affidavits, if any, "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. "[The moving party] bears the initial responsibility of informing the district court of the basis for its motion,and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323–24 (1986). When the moving party has met this initial responsibility, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed.R.Civ.P. 56(e)(2).

In opposing the motion, the factual dispute[s] asserted by the non-moving party must be "material". Id. This materiality element is satisfied only if factual disputes exist which "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a particular issue of fact is not considered to be "material" if the

6

facts at issue are "irrelevant or unnecessary" to the resolution of a particular legal argument.  Id.

The Court's goal is "to isolate and dispose of factually unsupported claims" which have no support

in the record.   Mfon v. Cty. Of Dutchess, 2017 WL 946303 at *3 (S.D.N.Y.).

Factual disputes must also be "genuine" for the non-moving party to prevail in opposing

a motion for summary judgment.  Pitts v. Onondaga Cty. Sheriff's Dep't, 2009 WL 3165551, at

*2–3 (N.D.N.Y.  2009). "[T]he [record] evidence [must be] such that a reasonable jury could return

a verdict for the nonmoving party."  Anderson, 477 U.S. 242 at 248.  Significantly, "[c]onclusory

allegations, conjecture, and speculation ... are insufficient to create a *genuine* issue of fact." Kerzer

v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998) [citation omitted; emphasis added]; see also,

Fed.R.Civ.P. 56(e)(2). Similarly, inadmissible hearsay is insufficient to create a genuine issue of

fact, "absent a showing that admissible evidence will be available at trial." Burlington Coat Factory

Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir.1985) (citations omitted).

On the other hand, should the Court be inclined to agree with Commissioner Ryder as to

Plaintiff's failure to state a cause of action, which it should, the standard under Federal Rule 12(c)

is still applicable here, even late in this litigation.   When considering a motion to dismiss on the

pleadings, the Court applies the Rule 12(b) "plausibility standard," which is guided by "[t]wo

working principles" (Ashcroft v. Iqbal, 556 U.S. 662, 678).  In order to survive a Motion to

Dismiss, the Plaintiff's Complaint must "plead 'enough facts to state a claim for relief that is

plausible on its face'" (Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544 [2007]). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged". (Ashcroft v. Iqbal, 566 U.S. 662, 678 [2009]).

While the Court should construe the factual allegations in the light most favorable to the Plaintiff,

7

"the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" (Id.). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" (Id. [citing Twombly, supra, 550 U.S. at 555]). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief'" (Id. at 679 [citing Fed. R. Civ. P. 8(a)(2)]). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (Id. at 678). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. (Id. [internal citations and alterations omitted]). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal (See Conseillant v. Lafontant, 2009 U.S. Dist. LEXIS 61795, *3-4 (NDNY 2009) (citing Sheehy v. Brown, 335 Fed. Appx. 102, 104 [2d Cir. 2009]).

## ARGUMENT

**(I)    Plaintiff's Monell claim as to the County of Nassau is fatally flawed as no distinct local policy of Nassau County is responsible for Plaintiff's alleged violations**

Plaintiff's claims against Police Commissioner Patrick Ryder in his official capacity are simply a straightforward claim against Nassau County. (See Dkt. No. 63, generally/ ¶17; Lore v. City of Syracuse, 670 F.3d 127, 164 (2d Cir. 2012) ( "A claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself . . . for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55, (1978). Plaintiff Wayne Francis, and all the Plaintiffs for that matter, cannot tie their alleged constitutional deprivations to a separate Nassau County policy, distinct from the NYS Penal Law. Accordingly, the Court should deny their motion for summary judgment, grant the defendant's

8

cross-motion and dismiss all claims asserted against Commissioner Ryder as Mr. Francis has failed to establish the existence of an actual policy, or local policy actor responsible for his alleged constitutional violations.

The Supreme Court has long noted that the that the constitutional violation underpinning a § 1983 claim against a municipality *must* result from a governmental policy, custom or practice *of that entity*. See Monell v. Department of Social Services, 436 U.S. 658 (1978).  It has endorsed four methods of demonstrating the policy, custom or practice requirement. Id.  First, and most obviously, a plaintiff can allege that a formal unconstitutional policy exists subjecting the municipality to liability. Monell, 436 U.S. at 690.  Second, a plaintiff can attempt to show that a policy-making official for the municipality caused a deprivation of her constitutional rights. Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404-06 (1997).  Third, a plaintiff can demonstrate that a practice was so consistent and widespread that it constitutes a tacit approval of a unconstitutional custom that "is so widespread as to have the force of law." Id. at 404.  Fourth and finally, a plaintiff can meet their burden under Monell by proving that local policymakers failed to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the constitutional rights of those who interact with municipal employees. Id. at 407.

Under any of these methods of ascribing liability for a constitutional violation to a municipality, a plaintiff must also plausibly establish a direct causal link between the policy and the alleged injury. Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Given the assorted hurdles to municipal liability, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (citing Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)).  "It is the settled policy of the [Second Circuit Court of Appeals] not to

9

review the exercise of discretion by public officials in the enforcement of State statutes, in the absence of a clear [independent local] violation of some constitutional mandate." Vives v. City of New York, 524 F.3d 346, 354 (2d. Cir. 2008); see also Town of Castle Rock, Colo., v. Gonzales, 545 U.S. 748  (2005) (declining to find a property right in the enforcement of a restraining order in part because of "[t]he deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands")

Plaintiff Wayne Francis is the sole Plaintiff who has brought a claim directly geared toward the Nassau County Defendant. (See Dkt. No. 63 at ¶¶8-14 & ¶¶44-103).  The remaining plaintiffs have no ties to Nassau County as they are not residents of that county (See id. at ¶¶44-103).  It is undeniable, that at its root, his entire Monell claim here is based almost exclusively on his, and his fellow Plaintiffs' challenges to the NYS Concealed Carry Improvement Act. (See Dkt. No. 63 ¶¶1-4 & ¶¶ 18-35).  Plaintiff Francis makes no qualms about this. (Francis Declaration, Dkt. 130-8).  Notably, Plaintiffs have entirely failed to supply evidence as to the Nassau County Defendant which would assist in establishing that Plaintiff's alleged constitutional violations are casually related to a conscious policy choice or decision of Commissioner Ryder or Nassau County itself.

As such, Plaintiff Francis cannot connect his claims asserted against New York State Penal Law §265 & §400 to a unique, and discrete policy decision of Nassau County or establish that a local policy actually caused his alleged constitutional violation. (Cannizzaro Declaration, Exhibit "A" at pp.45-100; see also Dkt. No. 63, generally). Similarly, the record in this case fails to establish admissible evidence to show that a final policy maker of Nassau County, least of which Commissioner Ryder, is responsible for implementing a distinct local policy that has contributed to the alleged constitutional violation. (See Dkt. No. 130 and accompanying Exhibits). In short,

10

Plaintiff has no admissible evidence which creates a material issue of fact sufficient to service summary judgment here.  As a matter of law, Plaintiff Francis, and any of the remaining Plaintiff's, have no admissible evidence, sufficient for a jury to consider at trial, which could reasonably be read to indicate that a local policy, or decision of a local policy maker even exist here which is unconstitutional.

Accordingly, given that Plaintiffs have failed to link a discrete local municipal policy or decision to the substantive constitutional claims here, plaintiff Francis' municipal liability claim against the Commissioner Ryder must be granted summary judgment in the municipality's favor. See Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization only where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation).

> **(II)     Commissioner Ryder's implementation of the mandatory provisions of the CCIA related to licensing schemes cannot alone form the basis for a *Monell* claim against Nassau County**

Plaintiff Francis cannot rely merely on the fact that Commissioner Ryder has a licensing scheme in place which tracks the requirements of the NYS Penal Law.  The Second Circuit has made clear that a local municipalities general enforcement of New York State's Penal laws does not establish a local "policy" which a Plaintiff can rely on to their form the basis for a Monell violation. Vives v. City of New York, 524 F.3d 346, 352 (2d Cir. 2008).  Plaintiff is doing exactly that in this matter.  Because Nassau County's general enforcement of the mandatory, nondiscretionary provisions of the NYS penal law cannot, in and of itself, form the basis of any *Monell* claims against it, the claims against Commissioner Ryder and the County should be granted summary judgement here.

11

"[T]he word 'policy' generally implies a course of action consciously chosen from among various alternatives." Oklahoma City v. Tuttle, 471 U.S. 808 (1985). Policy, in the Monell sense, may of course be made by the municipality's legislative body, see Owen, 445 U.S. 622, 628-29 (1980), but it also may be made by a municipal official "possess[ing] final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). In identifying the official having authority with respect to a particular issue, federal courts must analyze state law.  See McMillian v. Monroe County, 520 U.S. 781, 786 (1997). However, in either case freedom to act, on the part of the policy-maker, is inherent in the concept of determining whether a "choice" actually exists for the local official.  See Vives, 524 F.3d at 352.

In addressing the conscious choice requirement, the Second Circuit in Vives ultimately decided the matter in alignment with many other Circuit courts and found that a Monell violation cannot be based solely on a municipality's decision to honor this obligation to enforce a state law which is not a *"conscious choice" of the municipality.* Id.  As a result, the municipality cannot be liable under Monell in this circumstance.  This is especially true where the state law mandates enforcement of a particular law or regulatory scheme. Id.; See also New York State Penal Law §400.00 (noting that the provisions of the state licensing scheme are mandatory and necessarily must be implemented by local jurisdictions).

In Vives, the Second Circuit further spoke to the causation requirement related to a 1983 claim against a local municipality and noted, "a policy will ordinarily be the result of a conscious choice. . . and [that] the policy must actually cause the constitutional violation." Wheatley v. New York State United Teachers, New Hartford Employees Union, 629 F. Supp. 3d 18, 30 (N.D.N.Y. 2022); Vives, at 352 (citing *Tuttle*, 471 U.S. at 823, 105 S. Ct. 2427). In addressing the conscious-

12

choice requirement, the Second Circuit held that "a municipality's 'decision' to fulfill a mandatory obligation does not constitute a 'choice[.]'" *Id.* at 353 n.4.

One recent case that the Court of Appeals for the Second circuit has considered, which is certainly relevant to the claims against Commissioner Ryder is Giambalvo v. Suffolk Cnty., 155 F.4th 163, 170 (2d Cir. 2025).  There the Court considered a myriad of challenges to the licensing scheme in place in the County which largely tracked NYS Penal Law §400.00 (1)(b) through NYS Penal Law 400.00 (1)(o)(i)- (v).   The Second Circuit explicitly noted that the Vives "conscious choice" standard applies to the type of case against a municipality who is simply enforcing the state law. Giambalvo, 155 F.4th 172, Fn.3 (2d Cir. 2025)(noting that it agreed with the County Defendant's arguments that it "cannot be considered a violator of plaintiff's rights" in the case due to it merely "implementing mandatory state law by carrying out the CCIA" and similarly cannot be enjoined because it exercises no discretion).

Commissioner Ryder is, under the explicit terms of the Nassau County Charter, the head of the Department of Police. (See Exhibit "B"—Charter, Article VII, §801 /Exhibit "C" at ¶¶1-7).[4] He possesses all of the powers imbued on him through the Charter, and "as provided by the laws of [the] [S]tate" and applicable to his role. (Id. at §802).  In short, he is the chief law enforcement officer in place in the County of Nassau responsible for enforcing the law of both the County of Nassau and the State of New York.  (See id.).  Among the many laws that Commissioner Ryder enforces and maintains is the recently adopted Concealed Carry Improvement Act ("CCIA"), and particularly those requiring specific licensing schemes to be maintained on the local level. (See

---

[4] Where a county, as Nassau County has done long ago, has adopted its own form of government, the provisions of that county's duly adopted local laws apply instead of those of the general NYS County Law. This is so even if the County Law provisions are inconsistent with those of the County Law, unless the County Law expressly indicates that its provisions should apply notwithstanding County Law §2(b). (See Guzman v. Westchester County Bd. of Legislature, 80 Misc. 3d 403, 413 (Putnam Cnty Sup. Ct.)(interpreting NYS County Law).

13

NYS Penal Law §400.00; Exhibit "C" at ¶¶3-5/ Exhibit "D" ).   The New York State statute at issue in this matter is unequivocal and leaves no discretion to Commissioner Ryder who in terms of mandatory provisions of the licensing schemes related to the carrying of firearms in their municipalities. (NYS Penal Law at §400.00(1) [noting that the language of the statute is mandatory and phrased as all local licensing schemes "shall" comport with the necessary components of the New York State Law]).  These requirements are reflected in the Nassau County licensing scheme Commissioner Ryder enforces. He has enforced those standards to the letter, while at the same time has not implemented a local policy which go beyond those requirements, or exhibits a conscious choice to expand on State Law. (See Exhibit "C" at ¶¶ 3-7/ Exhibit "D").  Plaintiff has no admissible evidence in his motion papers which would refute this.

As the Court in Vives reiterated, in line with its sister Circuits across the Country the enforcement of a state statute in and of itself is not enough to form the basis of the Monell claim against Commissioner Ryder, in regard to any of the causes of action that currently exist against him.  (See Vives, 524 F.3d at 352-353[ noting that a locality's enforcement of a mandatory state statute does not provide the degree of "conscious choice" sufficient to ascribe liability to that municipality under Monell and its progeny]).   Plaintiff Francis has entirely failed to provide evidence of genuine and material disputes in the form of admissible evidence, which would show that the County of Nassau itself has a separate discrete policy in place, distinct from the New York State Law, which in and of itself if causing the alleged violation of Francis' rights.  For those reasons alone, the Court should deny Plaintiff's motion for summary judgment as to the Nassau County Defendant, and grant the same to Commissioner Ryder as a matter of law in this matter on all remaining causes of action.

**(III)    Plaintiff has failed to establish that the CCIA is facially unconstitutional as it related his claims according to binding Second Circuit precedent**

Because Plaintiff has failed to derive admissible evidence establishing that the County of Nassau maintains a discrete policy or actor which has contributed to the alleged violations, Commissioner Ryder could reasonably stop here and be entitled to summary judgment as a matter of law.

However, in the interest of completeness, and ensuring that Nassau County is granted summary judgment here, Commissioner Ryder explicitly adopts and incorporates the arguments asserted by the State of New York defendant, as they relate to the facial constitutionality of the CCIA.  They are equally applicable to the causes of action asserted against the Nassau County Defendants as to the underlying constitutionality of the law. For the reasons stated by the State defendants, and further argued herein, the constitutionality of several of the provisions of the CCIA should be confirmed by this Court, and summary judgment should be granted to all Defendants.

The Second Amendment, made applicable to the states through the Fourteenth Amendment, provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  The Supreme Court  has articulated a two-step framework to evaluate Second Amendment challenges.   First, a court must ask whether "the Second Amendment's plain text covers an individual's conduct." Bruen, 597 U.S. at 24.   If the activities of the Plaintiffs at issue do not fall within the scope of the Second Amendment, the constitutional inquiry ends, and the challenge to the law fails. Giambalvo, 155 F.4th at 170.   If the individual's conduct is covered, then "the Constitution presumptively protects that conduct," and "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Bruen, 597 U.S. at 24.

15

In considering the second inquiry, Court must ascertain whether the regulations and laws at issue regulating the right to bear arms are "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances." *Id.* at 29 & n.7. "Why and how the regulation burdens the right are central to this inquiry." United States v. Rahimi, 602 U.S. 680, 692 (2024). "[W]hen a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. The law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Id.*. At bottom, the test does not require state and local gun regulations to be "trapped in amber." *Id.* at 691.

In *Antonyuk II*, the Second Circuit further delineated the proper legal contours of this analytical approach so as, in the wake of *Bruen*, to "offer[] further guidance for how to assess the historical record" in analyzing firearm regulations under the Second Amendment. 120 F. 4th at 991 n.43.4.  It made clear that "[t]he absence of a distinctly similar historical regulation in the presented record, though undoubtedly relevant, can only prove so much." *Id.* at 969.  As the Court noted "[r]easoning from historical silence is . . . risky," because "[t]here are many reasons why the historical record may not evidence statutory prohibitions on a given practice," such as the existence of "custom, universal practice, or private warning." *Id.* at 969-70. In other words, "[t]he paucity of eighteenth century gun control laws might have reflected a lack of political demand rather than constitutional limitations." *Id.* at 970 (internal quotation marks and citation omitted).

The Court of Appeals have noted that "[b]ecause the CCIA is a state law, the prevailing understanding of the right to bear arms in 1868 and 1791 are both focal points of [its] analysis." *Id.* Moreover, "[w]hile we recognize that evidence nearest to 1791 can differ from that nearest to 1868, such discrepancy does not mean that the right to keep and bear arms was calcified

16

in either 1791 or 1868. Rather, 1791 and 1868 are both fertile ground, and the adjacent and intervening periods are likewise places in the historical record to seek evidence of our national tradition of firearms regulation." *Id.* at 974.

Significantly, the Second Circuit and this Court have already ruled on several of the remaining causes of action related to this matter. (See Dkt. No. 81; Antonyuk v. Chiumento, 89 F.4th 271 (2d Cir. 2023). For example, in its decision which came just over a year ago, this Court noted that Plaintiffs have conceded that they have no claims as to several provisions of the NYS Penal Law related to training requirements. (Dkt. No. 81 at pp.9-11). The same is true as too many of the sensitive locations. (See id). In the same vein, the Second Circuit has previously ruled on the social media requirements found in the NYS Penal law, rendering the challenge moot here, as Plaintiff has no admissible evidence that Commissioner Ryder is currently enforcing that provision (See Antonyuk, 89 F.4th at 331-33; Dkt. No. 81 at p.16).

In sum, in the interest of not restating the arguments of the New York State defendants in their entirety, in light of the case law which has been issued by the Supreme Court and Second Circuit Court of Appeals since Plaintiff began their litigation, it is clear that the licensing scheme maintained by Nassau County, as contained in the NYS Penal Law, is facially constitutional and should be upheld. All defendants are entitled to summary judgment here.

**(IV)    The Nassau County Defendant should be permitted to Amend their Answer to assert a viable standing defense and have this matter fully adjudicated on the merits**

The undersigned counsel entered into this matter, and confirmed their representation approximately seven weeks ago, on or about April 7th, 2026. In that time, it has identified a necessary amendment to Commissioner Ryder's Answer which will allow the case to be decided on the merits. See Bardwell v. Graham, Index No. 12-cv-1433(TJM/CFH)**,** 2014 U.S. Dist. LEXIS

192106, *5 (N.D.N.Y. 2014)(noting that freely granting leave to amend a pleading is appropriate and "facilitate[s] a proper decision on the merits" and identifies the material issues of the case). The Nassau County Defendant submits its cross-motion for permission to amend its Answer to Plaintiff's Second Amended Complaint so that it can assert Plaintiff's lack of standing as an Affirmative defense in this matter, and additionally cross- move for summary judgment in relation to Plaintiff Francis' lack of standing. (See Dkt. No. 67).

"A party may amend its pleading only with the opposing party's written consent or the court's leave" however, "[t]he court should freely give leave [to][amend] when justice so requires." FRCP 15(a)(2); Fair v. Tope, 2025 U.S. Dist. LEXIS 277073, *5 (N.D.N.Y. 2025). "Leave to amend 'should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility.'" Eagan v. Glassbrenner, No. 14-CV-507S, 2015 WL 3637410, at *8 (W.D.N.Y. June 10, 2015) (quoting Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir.2001). ("Where, as here a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides leave to amend shall be freely given, must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.") (internal quotations and citations omitted). The party opposing a motion to amend bears the burden of establishing that the amendment should be denied. See Joinnides v. Floral Park-Bellerose Union Sch. Dist., No. 12-CV-5682(JS)(AKT), 2015 U.S. Dist. LEXIS 42933, 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015) ("With respect to the Rule 15(a) factors, '[t]he party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile.'"); quoting Cummings-Fowler v. Suffolk Cnty. Cmty. Coll., 282 F.R.D. 292, 296 (E.D.N.Y. 2012). Finally, the decision of whether to permit leave to supplement a pleading is addressed to the sound discretion of the Court. *United*

18

States v. Continental Illinois Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1254 (2d Cir. 1989).

Here, leave to amend the Nassau County defendant's Answer should be granted by the Court. Commissioner Ryder certainly now possesses a valid affirmative defense, at the close of discovery, based on the fact that it is clear that Plaintiff Francis's testimony establishes that he lacks standing to prosecute his claim. (See Point V, below). The standing defense was properly asserted for the first time in the Nassau County defendant's initial Answer which was asserted when this case began, over four years ago. (See Dkt. No. at 24 [First Affirmative Defense]; Exhibit "E", Declaration of Nassau County Chief Deputy County Attorney Hiller, at ¶¶4-7). In fact, for the first two years of this lawsuit, Plaintiff's presumably were on notice and preparing for that defense to eventually be asserted in dispositive motion practice and there is no prejudice to the proposed amendment here. (See Exhibit "E at ¶¶3-5). As the Nassau County Attorney's Office noted in support of the cross-motion to amend in this matter, the inadvertent omission of the standing defense in the Answer to the Second Amended Complaint appears to have occurred simply because of an internal oversight made by the prior counsel who was employed by their office. (See Id. at ¶¶6-7). This non-prejudicial error should not be allowed to deprive the County of Nassau of an applicable affirmative defense, based on Plaintiff's clear lack of admissible evidence showing his standing. (Cannizzaro Declaration, generally/ Exhibit "E" at ¶¶8-14).

Commissioner Ryder therefore respectfully requests that the Court allow it to amend its Second Answer in order to assert the standing defense as applicable here. (See Exhibits "E" & "F"- Redlined Proposed Amended Answer containing standing affirmative defense & Exhibit "G") The amendment would be consistent with allowing the parties to adjudicate the issue on the merits.

19

There is both good cause under Rule 16(b), and more than sufficient record evidence before the Court to allow it to grant to proposed amendment, which is non-prejudicial and appropriate here.

**(V)    Defendants should be granted summary judgment here as Plaintiff Francis lacks standing to sustain his claims**

Standing is an evolving concept that can evolve over the life of a case, and through the course of discovery.   Based on his unambiguous testimony, which has to date been unrebutted by any kind of evidence, it is clear that Plaintiff Francis lacks standing to pursue his challenges as against Nassau County.  His own testimony in his examination before trial shows contradictions which eliminate and triable issue of fact, now that we have critical context derived from discovery in this matter. (Exhibit "A" at pp. 45-100).

As this Court has rightly noted, "Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of the federal courts to 'Cases' and 'Controversies'." K.I. v. Sullivan, 1:25-CV-00264 (MAD/ML), 2026 U.S. Dist. LEXIS 41763, *15 (N.Y.N.D. 2026); SM Kids, LLC v. Google LLC, 963 F.3d 206, 211 (2d Cir. 2020); citing Dhinsa v. Krueger, 917 F.3d 70, 77 (2d Cir. 2019)).  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014)."The Plaintiff as the party invoking federal jurisdiction bears the burden of establishing [standing]." Milner-Koonce v. Albany City Sch. Dist., 1:21-CV-1271 (LEK/CFH) 2025 U.S. Dist. LEXIS 192715, *33-34 (N.D.N.Y. 2025); Yankovich v. Applus Technologies, Inc., 621 F. Supp. 3d 269, 273 (D. Conn 2022). In fact, this is the case "[f]or each form of relief sought.'" Hahn v. JetBlue Airways Corporation, 738 F. Supp. 3d 229 at 247-48 (E.D.N.Y. 2024); quoting Nicosia v. Amazon.com, Inc., 834 F.3d 220, 239 (2d Cir. 2016).

The Supreme Court has elaborated "that the 'irreducible constitutional minimum' of standing consists of three elements." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016);

quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).   "[T]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. (citing Lujan, 504 U.S. at 560-61)."To satisfy Article III's injury in fact requirement, the harm cited by a plaintiff must be actual or imminent not speculative — meaning that the injury must have already occurred or be likely to occur soon." Hahn, 738 F. Supp. 3d at 248; quoting Food & Drug Admin. V. All. For Hippocratic Med., 602 U.S. 367, 381 (2024)). It must also be "concrete and particularized." Spokeo, Inc. v. Robins, 578 U.S. 330 (2016); citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

Concrete injuries are those that "actually exist... [are] real, and not abstract." Spokeo, 578 U.S. at 340.   Indeed, the Supreme Court has stated that a concrete harm for the purposes of Article III, is one that has a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American Courts." TransUnion LLC v. Ramirez, 594 U.S. 413, 422 (2021) (citing Spokeo, 578 U.S. at 341).   These include both "tangible harms, such as physical harms and monetary harms" and intangible harms, such as "reputational harms, disclosure of private information, and intrusion upon seclusion." Id. at 425.   Finally, when a plaintiff seeks injunctive relief, the plaintiff must additionally "establish a sufficient likelihood of future injury." Hahn, 738 F. Supp. 3d at 248 (quoting Food & Drug Admin v. All. For Hippocratic Med., 602 U.S. 367, 381(2024)).

"The traceability requirements for Article III standing means that 'the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury.'" Chevron Corp. v. Donziger, 833 F.3d 74, 121 (2d Cir. 2016) (citation omitted). However, the causal nexus that must be demonstrated is something "lower than that of proximate cause." Rothstein v. UBS AG, 708

21

F.3d 82, 91 (2d Cir. 2013). "Such a nexus is most easily shown if there is a direct relationship between the plaintiff and the defendant with respect to the conduct at issue." Id. But, "an 'indirect[ ]' relationship between the injury and the challenged conduct does not necessarily mean that the plaintiff lacks standing, although it may make the showing required 'substantially more difficult.'" Susman, 2025 U.S. Dist. LEXIS 31844, 2025 WL 575515, at *7 (quoting Rothstein, 708 F.3d at 91).

"The third element, called 'redressability,' refers to 'a non-speculative likelihood that the injury can be remedied by the requested relief.'" Id. at *8 ; K.I. 2026 U.S. Dist. LEXIS 41763, *16-17 quoting W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 107 (2d Cir. 2008)). "There is no redressability where such depends on an independent actor who retains 'broad and legitimate discretion [that] the courts cannot presume either to control or to predict.'" Neary v. Weichert, 489 F. Supp. 3d 55, 67 (E.D.N.Y. 2020) (quoting ASARCO, Inc. v. Kadish, 490 U.S. 605, 615 (1989)).  When standing is challenged,  a "[P]laintiff bear[s] the burden of 'showing by a preponderance of the evidence that [it] exists.'" K.I. v. Sullivan, 1:25-CV-00264 (MAD/ML), 2026 U.S. Dist. LEXIS 41763, *13-14 (N.Y.N.D. March 2, 2026); APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).

As of the close of discovery in this matter, it is clear that Plaintiff Wayne Francis' claims fail under all three elements of the applicable standing test.  To begin, Plaintiff Francis admits in his deposition that he was never denied a concealed carry license by the County of Nassau. (See Exhibit "A", Francis EBT at pp.45-51[noting that Mr. Francis currently maintains a valid firearms license which was converted to a concealed carry license and issued by Nassau County, which remains valid to June 30, 2026]).   Mr. Francis testified thoroughly regarding his prior experience

22

being licensed through the licensing scheme that Nassau County maintains. (Id. at pp.77-100). The first licensing process that he participated in occurred around 2021. (Id. at p. 77-78). At that time, Mr. Francis met with Nassau County's licensing officer at the police department and paid the required fees. (Id. at pp. 78-79). He submitted character references and found that the process was not onerous or difficult in any way. (Id. at p.80). The firearms license that he applied for was previously granted by the Nassau County licensing officer. (Id. at p. 86). In other words, Francis fails the first component of the standing test because he has yet to be adversely affected by the Nassau County Licensing scheme itself.

Next, in discussing his next licensing process that he will have to go through he noted some significant facts that go to his standing him this matter. (Id. pp.87-88). Mr. Francis made clear that he has no reason to believe that he would not be found to have the "good moral character" necessary for the renewed license. (Id. at p.90). This admission demonstrates that he is not aggrieved by the character reference provision of the CCIA. He indicated that the renewal would be relatively, in his mind at least, non-invasive as he already provided much of the information needed for the license including the necessary course work and 16-hour training course which were preconditions for his previous licensing. (Id. at pp. 90 at lines 16-25[in which Plaintiff agrees that the renewed licensing would not be onerous for him]). Mr. Francis clarifies that the moral character provision of New York State Law would not prevent him from ever having a concealed carry license. (Id. at p.98, lines 21-24). Nor does he believe the contents of the law will affect him in any meaningful way. (Id. at p.99). Taken together it is clear that Mr. Francis has not been directly affected by the actual licensing scheme at issue and he actually believes that it will not have a detrimental impact on his ability to obtain a license in the future. (Id. at pp. 98-99).

23

Accordingly, Plaintiff Francis lacks admissible evidence sufficient to establish the first two elements of the standing test noted above.

Further, Plaintiff has a problem as it related to proving the redressability element of his claim. Francis made clear in his deposition that he does not believe a decision by this Court will remedy his situation. (Id. at p.63).    He made clear that he does not intend to carry a firearm even if the case were won tomorrow. (Id. at pp.65-66 [noting that Mr. Francis indicated "I wouldn't carry anywhere to be clear"]). He testified that he never carries anywhere because he chooses not to (See id. at 57). He does not feel comfortable carrying a gun outside of his house (See id. at 57-58, 63).

Plaintiff was previously granted a license from Nassau County back in 2021 (See id. at 77-78, 86). At that time, he met with a licensing officer when he was fingerprinted and paid the fees to be licensed, which was 88 dollars (See id. at 78-79). He submitted character references and it was not onerous or difficult at all for him to find people to vouch for him (See id. at 80). He had no reason to believe that the people who attested to his character could not do that today (See id. at 81). He did not see the character reference requirement as onerous and does not see anything wrong with it (See id. at 81). Plaintiff testified that his current license does not expire until June 30th, 2026 (See id. at 87). Thus, he has no standing when the County previously supplied a license and that license does not even expire until June 2026. At this time plaintiff entered this suit and currently he has no standing as his license is valid and has not expired. He has no reason to believe he will be denied a license in the future (See id. at 90-110).

Finally, since Francis lacks standing so too does NYSRPA as it is relying on Francis as the means to premise a claim against Commissioner Ryder. (See Dkt. No.81 at pp.9-11). Since Francis

24

has no standing, NYSRPA in turn has no standing. (See id).  The two are attached at the hip warranting and summary judgment in Commissioner Ryder's favor is warranted here.

**(VI)    Plaintiffs' Motion for Summary Judgment Should Be Denied And The Action against Commissioner Ryder Dismissed for Failure to State a Claim.**

Commissioner Ryder's cross-motion for summary judgment should be granted along with, defendant Ryder's cross-motion to dismiss, pursuant to Rule 12(c), as plaintiff never set out a viable claim in the first place against the sole Nassau County Defendant.[5]  As mentioned, five out of the six individual defendants do not reside in Nassau County so there is no basis for them to assert any claim against Ryder. (See Dkt. No. 63 at ¶¶8-14 & ¶¶44-103/ Dkt. No. 130).  They will not go through the licensing application process in Nassau County. (See Dkt. No. 81).  Thus, these five have no claim against Ryder.

As for plaintiff Wayne Francis, he too has no claim because currently and at the time this action was filed, his pistol permit has not yet expired so he has not gone through the renewal process with the County of Nassau (See Dkt. No 63, ¶54/ Exhibit "A" at pp.77-100).   In other words, Plaintiffs allege that Francis will be subject to the CCIA renewal license process at some future date, not that he has been involved in that process and received an unfavorable result from the County. (See Dkt No. 63 at ¶¶51-56 & ¶¶98-103).   In fact, the complaint alleges that only one plaintiff was deterred from completing the application process for and/or renewing a Handgun Carry License, which is not Francis since he indicates intending to timely renew his license, so plaintiff yet again fails to show standing as to Francis when nothing is inhibiting him from renewing.  There simply is no injury in fact and case in controversy as related to Francis and Commissioner Ryder because his office has never negatively applied the CCIA to Francis since he has not renewed his license.  To date no one from the County of Nassau has treated Francis

---

[5] Ryder did not initially move to dismiss on the pleadings instead it filed an answer.

differently from others similarly situated.   Also, the CCIA's limitations on carrying a firearm do not apply since Francis does not intend to carry outside of his home so there is no case in controversy.

Notably, as to the Automobile Storage Requirements, plaintiffs allege in their complaint that plaintiffs "Nash, Koch, Stirnweis, Porter and Noren would safely and responsibly secure their firearms in their unattended automobiles without first removing ammunition from their firearms and without utilizing a safe storage depository" (Dkt. No. 63, ¶ 43).   Noticeably absent is any reference to Francis. (Id.)   Accordingly, this part of the claim challenging the storage requirements apparently has no application to Wayne Francis.

As for each of the remaining causes of action alleged, those also do not state a cause of action against Commissioner Ryder.  As for Count One, Ryder did not violate Francis's Second and Fourteenth Amendment right to bear arms outside the home since he has yet to be subject to the renewal process, has not been denied a permit, and the location prohibitions do not apply when Frances does not even plan to carry a firearm outside of his home and most have already been dismissed. (See Exhibit "A" at pp.57-63).

Count Two alleging violation of Francis's First and Fourteenth Amendment rights is not viable when his speech has not in any way been chilled.  He has yet to make the disclosures to a County of Nassau licensing officer and fails to show how such disclosures would cause him to be aggrieved.  There is nothing presented in his private life and social media that he indicates would cause harm if he had to disclose to obtain a permit. There is no intimate relationship impacted by such disclosures.  As for Count Three, there is no Fourth and Fourteenth Amendment violation as what Francis complains about is no different than the First Amendment claim.  The claims are

26

duplicative warranting dismissal.  Also, these claims are barred since this Court already dismissed the challenge to the social media requirement. (See Dkt. No. 81).

As for Count Four, there is no Fourteenth Amendment due process violation.  Again, plaintiff contests the requirements to show good moral character and disclosure of social media account, which have been dismissed.  All items Plaintiff has admittedly not been subject to or undergone with the County of Nassau. Also, plaintiff contents that sensitive and restricted locations restrictions, which again do not pertain to someone such as Plaintiff Francis that does not carry outside of the home and have been dismissed.  Plaintiff also fails to set forth if the challenge is based on substantive or procedural due process.   Either way, the claim fails.

As for substantive due process, plaintiff cannot rely upon a substantive due process claim since his makes a more particularized claim under the Second Amendment (See Griffin v. City of N.Y., 880 F. Supp. 2d 384 [E.D.N.Y. 2012] ["[W]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." Id. (affirming motion to dismiss because "plaintiff's substantive due process claim is . . . subsumed in her more particularized allegations"; quoting Velez v. Levy, 401 F.3d 75, 93-94 (2d Cir. 2005)).  There also is no viable substantive due process claim as there is no conscious shocking conduct by Commissioner Ryder (See Hurd v. Fredenburgh, 984 F.3d 1075, 1087 [2nd Cir. 2021]).

As for procedural due process, in evaluating a claim for a denial of procedural due process, a court must consider two questions: (1) "whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or . . . [by] statute[]"; and if so, (2) "what process was due before the plaintiff could be deprived of that interest" (Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995). Again, Commissioner Ryder did not deprive plaintiff is anything.

27

The clear allegations in the Second Amended Complaint, and Plaintiff's concessions to date make clear that he has never been subjected to a procedural due process violation, because he has yet to go through the licensing application process since his initial firearms license was approved in 2022/2023.

Moreover, if plaintiff believed he was deprived or treated arbitrarily during the application process then he could commence an Article 78 proceeding, which would satisfy due process (See Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes."); Nolan v. Cnty. of Erie, No. 1:19-CV-01245, 2020 U.S. Dist. LEXIS 72729, 2020 WL 1969329, at *11 n.7 (W.D.N.Y. Apr. 24, 2020). Count Four simply fails to state a claim under Federal Rules of Civil Procedure 12(c).

As for Count Five, there is no Fourteenth Amendment equal protection violation. Plaintiff claims that there exists a disparity between former police officers and civilians. Again, plaintiff Francis has not even gone through the process with the County of Nassau to even demonstrate that he would be deprived of a license. In any event, there is no viable equal protection claim.

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat all similarly situated individuals alike" (Young v. Suffolk County, 705 F. Supp. 2d 183, 204 (E.D.N.Y. 2010) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). "[I]n stating a claim for a violation of equal protection rights, 'it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently" (McDaniels v Mertens, 2022 U.S. Dist. LEXIS 21691 [NDNY 2022] [quoted case omitted]). To state a claim under the Equal Protection Clause, a plaintiff may allege discrimination based on a membership

28

to a protected class, or allege a class of one claim (See <u>Estate of D.B. v Thousand Islands Cent.</u> <u>Sch. Dist.</u>, 169 F.Supp.3d 320, 334 [NDNY 2016]).

For a selective enforcement claim in order to "prevail on such a claim, a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person'" (<u>Hu v. City of New York</u>, 927 F.3d 81, 91 (2d Cir. 2019) (quoting <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 683 (2d Cir. 1995)); *see* *also* <u>Freedom Holdings, Inc. v. Spitzer</u>, 357 F.3d 205, 234 (2d Cir. 2004).

A plaintiff asserting a selective enforcement claim must present evidence of similarly situated comparators (<u>See</u> <u>Church of Am. Knights of the Ku Klux Klan v. Kerik</u>, 356 F.3d 197, 210 (2d Cir. 2004) ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated"). The Second Circuit has held that

> To satisfy this standard, "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance." <u>Brown v.</u> <u>Daikin Am. Inc.</u>, 756 F.3d 219, 230 (2d Cir. 2014) (internal quotation marks omitted). They need not, however, be "identical." *Id.* A plaintiff can prevail by showing that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Graham v. Long Island Rail Road], 230 F.3d [34,] 39 [(2d Cir. 2000)] (internal quotation marks omitted).

(<u>Hu</u>, 927 F.3d at 96; *see also* <u>Hsin v. City of New York</u>, 779 Fed. Appx. 12, 15 (2d Cir. 2019).

When a plaintiff does not allege an equal protection violation due to their membership in a protected class, they may still prevail on their claim under a "class-of-one" theory (<u>See</u> <u>NRP</u> <u>Holdings LLC v. City of Buffalo</u>, 916 F.3d 177 (2d Cir. 2019) ("[T]he Supreme Court has . . .

29

endorsed a class-of-one theory for equal protection claims, under which a single individual can claim a violation of her Equal Protection rights based on arbitrary disparate treatment." (internal quotation marks and citations omitted)); see also Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). To succeed under a class-of-one theory, a plaintiff must demonstrate "[1] that []he has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment" (Hu v. City of New York, 927 F.3d 81, 91 (2d Cir. 2019) (citation omitted).

Here, plaintiff fails to show comparators as required to support his equal protection claim regardless of whether premised upon class of one or selective enforcement (See Levine, 2022 U.S. Dist. LEXIS 100188, 2022 WL 1987845, at *11 (dismissing equal protection claim brought under class-of-one theory where plaintiff "failed to allege facts regarding any comparator, much less one that is prima facie identical to him" (internal quotation marks and citations omitted); See also MacPherson v Town of Southhampton, 738 F.Supp. 2d 353, 371 [EDNY 2010]; Essex One, LLC v Town of Essex-Town of Essex Planning Bd., 2020 U.S. Dist. LEXIS 151553 [NDNY 2020]). Since no comparators exist, under either theory his equal protection claim fails.

Also, there is no viable claim as former law enforcement and the general public seeking a firearm permit are not similarly situated.  Typically, former law enforcement went to the academy and firearms arms training as part of their employment and career.  They are in a much better position to know how to handle a firearm as compared to a civilian.  There is nothing discriminatory about the difference in the process.  Such differences based on experience are common.

For instance, in New York, town and village justices can be attorneys and non-attorneys. Both must complete continuing legal judicial education, but the non-attorneys must take an exam

after each CLE while attorneys do not (See New York Uniform Court System, Part 17. 2 https://www.nycourts.gov/rules/part-17-judicial-education-and-training).    Since the attorneys went to law school and took the bar examination the distinction between attorneys and non-attorney justices makes sense.  The scenario is no different for former law enforcement officers who are trained to carry a firearm and while civilians are not.  Nothing bars common sense distinctions in the law.  Regardless, CCIA does not bar obtaining a license, it simply defines the means to obtain one.   Thus, Count Five should be dismissed.

As for Count Six, plaintiff claims a right to privacy violation pursuant to the Fourteenth Amendment.  Again, Francis has not undergone the renewal process. (See Exhibit "A" at pp.45-100).  He does not show in the pleadings what if any information he would have to disclose would violate his right to privacy.  Also, plaintiff does not show how finding four character references is somehow conscious shocking.  He again fails to show lack of a case in controversy between plaintiff and Ryder. Thus, this claim should be dismissed.

Furthermore, as noted extensively above, there is simply no viable Monell claim alleged against this moving defendant.  Defendant has previously demonstrated that the elements to sustain a Monell claim do not exist and are not present in the complaint.  Dismissal is warranted.

Because there are no viable claims against Ryder, plaintiffs' motion for summary judgment should be denied. Also, the summary judgment motion papers supplied by plaintiffs do not address any argument specific to Ryder further warranting denial of that motion.

**CONCLUSION**

For the reasons stated above, plaintiffs' motion for summary judgment should be denied and moving defendant's cross motion to amend the answer granted and cross motion for summary

31

judgment and for dismissal  failure to state a claim granted dismissing this case with prejudice and

on the merits, together with such other and further relief that the Cout deems just and proper.

Dated: May 27, 2026

                                          Respectfully submitted,

                                          **GOLDBERG SEGALLA LLP**


                                          _____
                                          Kevin M. Cannizzaro, Esq.
                                          Jonathan M. Bernstein, Esq.
                                          *Attorneys for Defendant*
                                          *Patrick J. Ryder*
                                          8 Southwoods Blvd., Suite 300
                                          Albany, New York 12211
                                          (518) 935-4240
                                          kcannizzaro@goldbergsegalla.com
                                          jbernstein@goldbergsegalla.com

TO:   **BRADLEY ARANT BOULT CUMMINGS**
      James W. Porter, Esq.
      *Attorneys for Plaintiff*
      1819 Fifth Avenue North
      Birmingham, AL 35203
      (205) 521-8285
      jporter@bradley.com


CC:   **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**
      Molly Thomas-Jensen, Esq.
      James Thompson, Esq.
      *Attorneys for Defendant*
      *Steven G. James*
      The Capitol
      Albany, New York 12224
      (518) 776-2581
      molly.thomas-jensen@ag.ny.gov
      james.thompson@ag.ny.gov

      **SUFFOLK COUNTY ATTORNEY'S OFFICE**
      Arlene S. Zwilling, Esq.
      *Attorneys for Defendant*
      *Rodney K. Harrison*
      100 Veterans Memorial Hwy
      Hauppauge, New York 11788

33

(631) 853-4055
arlene.zwilling@suffolkcountyny.gov