

EXHIBIT A

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

NEW YORK STATE RIFLE & PISTOL

ASSOCIATION, INC., ROBERT NASH,

BRANDON KOCH, THOMAS STIRNWEIS

WAYNE FRANCIS, KHOURY PORTER,

AND SCOTT NOREN,

    Plaintiff,

V                                          Docket No.:  22-cv-907


STEVEN G. JAMES, IN HIS OFFICIAL CAPACITY AS

SUPERINTENDENT OF THE NEW YORK STATE POLICE,

RODNEY K. HARRISON, IN HIS OFFICIAL CAPACITY

AS COMMISSIONER OF THE SUFFOLK COUNTY POLICE

DEPARTMENT,

Defendants.

_____X (Cont'g.)

DEPOSITION OF: WAYNE A. FRANCIS

DATE:           October 24, 2025

TIME:           10:03 a.m. to 2:06 p.m.

VENUE:          MS Teams




Reported by Annette Lainson

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis (Cont'g.)

AND LICENSING OFFICER FOR SUFFOLK

COUNTY, AND PATRICK J. RYDER, IN HIS OFFICAL

CAPACITY AS COMMISSIONER OF THE NASSAU COUNTY

POLICE DEPARTMENT, AND LICENSING OFFICER FOR

NASSAU COUNTY,

Defendants.

_____X

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

APPEARANCES:

   FOR THE PLAINTIFF:

      BRADLEY, ARANT, BOULT, CUMMINGS, LLP

      BY:  JAMES W. PORTER III, ESQ.

      One Federal Place 1819 5th Avenue North

      Birmingham, Alabama 35203

   FOR THE DEFENDANT:

      OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL

      BY:  JAMES THOMPSON, A.A.G.

        MOLLY THOMAS JENSEN, A.A.G

      28 Liberty Street, 18th Floor

      New York, New York 10005

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

I N D E X   O F   P R O C E E D I N G S

WAYNE A. FRANCIS; Sworn

Direct Examination by Mr. Thompson                    12

R E Q U E S T   L I S T

. Photo of new concealed carry license            47

. Photo of Semi-automatic rifle permit            48

. PowerPoint                                      105

. Test and any written quiz's given by Mr. Francis  113
   in his class.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

E X H I B I T   I N D E X

Marked as

Described as

One 39

Plaintiff Wayne Francis response to defendant James

Interrogatories

Two 40

Nassau County Pistol License (front & back)

Three 45

Plaintiff Wayne Francis response to Defendant James'

first request for protection document

Four 115

U.S. Concealed Carry.com website certificate

Five 141

Declaration of Wayne Francis

Six 148

Second Amended Complaint for declaration

Seven 158

PDF of Hope City Church website

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and between counsel for the respective parties hereto that:

All rights provided by the Civil Practice Law and Rules, including the right to object to any question, except as to form, or to move to strike any testimony at this examination is reserved. And, in addition, the failure to object to any question or to move to strike testimony at this examination shall not be a bar or waiver to make such motion at, and is reserved for the trial of this action;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that this examination may be sworn to by the witness being examined before a Notary Public, other than the Notary Public before whom this examination was begun, but the failure to do so, or to return the original of this examination to counsel, shall not be deemed a waiver of the rights provided by Rule 3116 and 3117 of the Civil Practice Law and Rules, and shall be controlled thereby;

IT IS FURTHER STIPULATED AND AGREED by

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

and between counsel for the respective parties hereto, that this examination may be utilized for all purposes as provided by the Civil Practice Law and Rules;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that the filing and certification of the original of this examination shall be, and the same hereby are waived;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that a copy of the within examination shall be furnished to counsel representing the witness testifying without charge;

IT IS FURTHER STIPULATED AND AGREED by and between counsel for the respective parties hereto, that all rights provided by the Civil Practice Law and Rules, and Part 221 of the Uniform Rules for the Conduct of Depositions, including the right to object to any question, except as to form, or to move to strike any testimony at this examination, is reserved.  And, in addition, the failure to object to any question, or to move to strike any testimony, at this examination, shall not

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

be a bar or waiver to make such motion at, and is reserved to, the trial of this action.

IT IS HEREBY STIPULATED AND AGREED by and between counsel for all parties present that pursuant to CPLR section 3113(d) this deposition is to be conducted by video conference, that the court reporter, all counsel, and the witness are all in separate remote locations (except the witness and his counsel are in the same physical location) and participating via videoconference meeting under the control of Associated Reporters International, Inc. (ARII), that the officer administering the oath to the witness need not be in the place of the deposition and the witness shall be sworn in remotely by the court reporter after confirming the witness's identity, that this videoconference will not be recorded in any manner and that any recording without the express written consent of all parties shall be considered unauthorized, in violation of law, and shall not be used for any purpose in this litigation or otherwise.

IT IS FURTHER STIPULATED that exhibits may be marked by the attorney presenting the exhibit to the witness, and that a copy of any exhibit

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

presented to a witness shall be e-mailed to or otherwise in possession of all counsel prior to any questioning of a witness regarding the exhibit in question.  Unless otherwise agreed upon, all parties shall bear their own costs in the conduct of this deposition by video conference, notwithstanding the obligation by CPLR to supply a copy of the transcript to the deposed party by the taking party in civil litigation matters.

CPLR § 3113 Conduct of Examination (d) states:

(d) The parties may stipulate that a deposition be taken by telephone or other remote electronic means and that a party may participate electronically. The stipulation shall designate reasonable provisions to ensure that an accurate record of the deposition is generated, shall specify, if appropriate, reasonable provisions for the use of exhibits at the deposition; shall specify who must and who may physically be present at the deposition; and shall provide for any other provisions appropriate under the circumstances. Unless otherwise stipulated to by the parties, the officer administering the oath shall be physically present at

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

the place of the deposition and the additional costs of conducting the deposition by telephonic or other remote electronic means, such as telephone charges, shall be borne by the party requesting that the deposition be conducted by such means.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

(The deposition commenced at 10:03 a.m.)

COURT REPORTER:  And we are on the record.  So, before I ask the attorneys to note appearances, I will just say that I am training today.  Kristen is here with me.  Kristen, state your last name.

MS. LAWLER:  Lawler.

COURT REPORTER:  Kristen Lawler is here with me.  And then we also have Natalie Johnson here, and she is observing.  She'll be on for probably a half-hour, and then she will just drop off the Teams meeting.  So with that, if I could ask the attorneys to note their appearance for the record, please?

MR. THOMPSON:  Sure.  I'll start.  I'm James Thompson with the Office of the New York State Attorney General, 28 Liberty Street, New York, New York 10005 for the Superintendent of State Police.  And my colleague, Molly Thomas Jensen, will be joining us later on -- from the same address.

COURT REPORTER:  Thank you.

MR. PORTER:  And -- and good morning.  My name is James Porter.  I'm with the Law Firm of

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis Bradley, Arant, Boult, Cummings, L.L.P., One Federal Place, 1819 5th Avenue, North Birmingham, Alabama 35203, and I represent the Plaintiffs in this case, and we'll be defending Mr. Francis' deposition today. And no one else from my -- from my end will be here.

COURT REPORTER: Thank you. And Mr. Francis, if I could get you to raise your right hand, please? Do you swear or affirm that the testimony you're going to give will be the truth, the whole truth, and nothing but the truth?

MR. FRANCIS: Yes, I do.

WITNESS; WAYNE A. FRANCIS; Sworn.

COURT REPORTER: Okay. You can put your hand down. Could you please state and spell your full name for the record, please?

THE WITNESS: Wayne Anthony Francis. That's W-A-Y-N-E, A-N-T-H-O-N-Y, F-R-A-N-C-I-S.

COURT REPORTER: Thank you. The Witness has been sworn.

DIRECT EXAMINATION

BY MR. THOMPSON:

Q. Great. Thank you very much Mr. Francis for taking the time to talk with us today. My name is James Thompson, I'm a lawyer at the Office

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis of the New York Attorney General.  And we represent Superintendent Steven James of the New York State Police in this lawsuit.

So during the deposition, it's sort of a Q and A format.  I'm going to ask you a number of questions, and there's a handful of things that are important to remember for the aid of Annette and the transcript.

The first is that the worst thing for a transcript is when there's more than one person talking at the same time.  So, if I could ask you to please wait until the end of my question before you begin your answer, and I'll do the best to wait -- my best to wait until the end of your answer before beginning the next question.  And if I ever start to talk before you're done with your answer, I'll -- I'll do my best to shut right up and let you keep going.

If I ask you a question that you don't understand, please ask me to clarify it.  If you give me an answer, I'll assume that you understood the question.  Does that make sense?  And that takes us right to the next stage of --

MR. PORTER:  And if that's the case --

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q. -- the list --

A. Yes. Audio responses. Yes, I'll stay off mute. I was trying to wait, but.

MR. PORTER: Just don't mute -- don't mute at all until we go to a break. Okay, Wayne?

THE WITNESS: Okay.

MR. THOMPSON: Yeah.

BY MR. THOMPSON: (Cont'g.)

Q. Yeah. I mean, it's probably just going to be you and me talking unless -- unless there is an objection. So, it's best not to mute. I think we'll, you know, hopefully go quickly enough.

Similarly, you gave a thumbs up to that last answer, but given that this is being recorded on a transcript, it's important to make sure that all of your answers are verbal. In real regular life in conversation, you -- you know, we do the thumbs up, we shrug, you nod your head, you say uh-huh or uh-uh. All of that doesn't necessarily come through on the transcript. So if you can just please make sure that you give a verbal answer to every question. Is that all right?

A. Yes, sir.

Q. Okay. Don't call me sir, save

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

that for someone respectable.  So from time to time, your attorney may make an objection.  Unless your attorney ask -- instructs you not to answer based on a claim of privilege, and I'll do my best to make sure that I don't ask any questions that call for a privileged answer, you should still answer the question that I've asked.

And if at any time you need to take a break, just ask me and we'll take one.  I may ask you to finish responding to the question that's been presented or to the line of questioning, but I'm always happy to take five or ten if you need to.  Does that all make sense?

A.   It does.

Q.   Great.  So, Mr. Francis, have you ever been in a deposition before?

A.   No, this is my first time.

Q.   And do you -- do you understand that you're under oath?

A.   I do.

Q.   Have you ever given testimony in a court proceeding other than a deposition?

A.   Yes.

Q.   Can I ask which one?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   It was for an order of protection.

Q.   And was that an order of protection that you were seeking or -- or seeking or that was sought against you?

A.   Mutual.

Q.   And what court was that in?

A.   It was in Brooklyn, Kings Court -- Kings County.  Yeah, I believe it was criminal court in Brooklyn.

Q.   And do you remember approximately when that was?

A.   That was approximately 2004.

Q.   And can -- can I ask, what was the -- the sum and substance of that proceeding?  Mr. Francis, did we lose you?  Mr. Francis, you appear to be frozen -- oh.

A.   Hello?

Q.   Hi, Mr. Francis.

A.   Yeah, I'm not sure what happened there.  It seems like I lost the connection.  Was it just me?

MR. PORTER:  Yeah.  You -- you -- you dropped off and now you're doubled up.  Before we get

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis started, Annette, can you -- can you kick out the old version of him so we don't end up echoing over each other, please?

COURT REPORTER: I'm going to try to figure out which is the old version of him. Let's --

MR. PORTER: Well, one of them is moving.

COURT REPORTER: Yeah. I can't do it that way though. I have to go a different way. Can you mute yourself, Mr. Francis?

THE WITNESS: Yes.

COURT REPORTER: Okay. There we go. That works. And to help his feed, I'm going to turn my camera off and see if that helps.

MR. PORTER: Okay.

BY MR. THOMPSON: (Cont'g.)

Q. Okay. This is -- don't worry about that stuff. This is just doing depositions in the virtual age. There's always a couple of hiccups and pains in the tail, but it's better than dragging Jay up from Alabama just to sit around a conference room with the five of us.

So I -- I'm not sure if you've heard the last question. I'll -- please Annette, if you'd

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

mark it withdrawn.  The question was just what was the -- the sum and substance of -- of that proceeding?

A.    Okay, so at the time I was in the midst of getting ready to enter into a divorce with my ex-wife, Tara Jones, Tara Francis previously.  And her sister and I got into an altercation at the home, and she assaulted me.  I ended up calling the police.  And because my sister-in-law is what they call a member of service, she was working as a school safety officer, my wife informed her that if, you know, this charge or this me pressing charges against her went through that she could end up losing her job.

So she let her know that I was pursuing the order of protection, and so in turn, the sister-in-law pursued an order of protection against me.  And we went to court in order to be able to do that.  So I had to go through a process where I was subsequently arrested as part of that.  And you know, I was unsuccessful in my order of protection and she was.  But of course, it was dismissed on -- you know, as a -- a C.D.

Q.    And was the order of protection ultimately vacated or --

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A. Yes.

Q. -- ended?

A. Yes, sir.

Q. And was your testimony at that proceeding any -- anything other than truthful?

A. Definitely not, everything was truthful.

Q. And have you ever given testimony in any court proceeding other than that?

A. No, sir. Well, actually now I that think back, I was a part of a grand jury many years -- I want to say this goes back to like ninety -- '93-ish, something around then, where I was -- I was robbed by gunpoint and -- thinking -- and when they caught the gentleman that robbed me -- well, actually before that, I'm not sure what the order was, but I had to go in and you know, speak to a grand jury to explain what happened with the robbery. And they ultimately used that to charge him, and he was ultimately incarcerated.

Q. And same question there, was your testimony there anything other than truthful?

A. Purely truthful.

Q. And so other than those two

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
instances, any time that you've given testimony in
court or a court proceeding?

A.    No.

Q.    And so is there anything that you
have today that could affect your ability to answer
questions or to give truthful testimony?

A.    No, sir.  I'm -- no.

Q.    And are you represented by
counsel today, Mr. Francis?

A.    Yes, I am.

Q.    And who is that?

A.    James Porter.

Q.    And without asking into the
substance of anything that you might have said with
counsel, what did you do to prepare for today's
deposition?

A.    Me personally?

Q.    Yes.

A.    Reviewed the documents that was
sent, had conversations with my attorney in regards
to what to expect in this experience in regards who
would be there and what the experience would be like
for me, how much time it would take to go through and
just sort of like procedural kinds of things.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q. And can I ask you what documents did you review in connection with this deposition?

A. I don't remember the exact name of it right now, but it was -- it was the document that is related to the case as far as the -- the New York State versus myself. The most recent one, if James could clarify, but it was the -- yeah.

Q. Was this your -- your declaration?

A. I believe that's what it was -- was -- was -- is that what we would call it, James? The declaration was the --

MR. PORTER: I can't -- I can't answer for you.

THE WITNESS: I can pull it up for you -- sorry.

MR. PORTER: Just if you can pay -- you just answered. Just listen to his question, answer his question. And you -- you -- you'll do fine.

THE WITNESS: Do you want me to pull it up?

MR. THOMPSON: No, no.

MR. PORTER: Don't pull up anything.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Just answer his question, which is what did you look at.  And if you don't know, just say I don't know.  That's fine.

THE WITNESS:  Okay.  Got it.  So sorry, I don't recall the exact name of the document, but it was the one related to this case.

BY MR. THOMPSON:  (Cont'g.)

Q.  All right.  And other -- other than yourself and Mr. Porter, was anyone present for this conversation?

A.  Yes.  Mason Cruz.

Q.  And who is Mason Cruz?

A.  He's an employee of the firm as well.

Q.  Of -- of -- of the Bradley Firm?

A.  Yes, sir.  Yes.

Q.  And other than with your attorney or employees of the Bradley Firm, have you discussed this deposition with anybody else?

A.  No.

Q.  And so, this deposition is taking place virtually.  We're not actually all in the same room.  Can I ask, where are you physically located now?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.    Right now, I'm physically located in Ocoee, Florida.

Q.    And I -- I have to ask, where is Ocoee Florida?

A.    It's suburb of Orlando.  I'm at my mother's house.  She's celebrating her birthday, and I'm here spending time with her.

Q.    Got you.  Is anybody there with you today?

A.    No, not at the present.

Q.    Do you have any documents with you as you're speaking with me today?

A.    No, I do not.

Q.    And are you taking any notes as you're speaking with me today?

A.    No, I'm not.

Q.    All right.  So Mr. Francis, can you tell me a little bit about yourself?

A.    Okay.  So I'm a resident of Nassau County, which is Long Island.  I live particularly -- I'm -- I'm currently residing in Baldwin but getting ready to move to Freeport shortly.  And I'm a family man, father of four.  So my wife and I -- my wife, Kareen (phonetic), and I

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

have four children.

Professionally, I serve as a Chief Operating Officer for a non-profit organization serving older adults throughout New York City. I've been doing that for a little over three years, but I've been a -- an operations executive or leader for the better part of about twenty years serving various non-profit organizations throughout New York City, from youth development organizations to working with the formerly incarcerated, to working with training teachers to become educators in urban schools. So pretty much dedicated my life to the field of non-profit management.

Also I consider myself a civic leader of sorts because I'm involved with various fraternal organizations that also serve the community, you know, college fraternity as well as the Masonic Lodge, both the things that I'm very active in as my ways to give back to the community.

I was educated at Brooklyn College where I got my master's in guidance and counseling and did undergrad at Hunter College in Manhattan. And I think that's a good overview of -- of who I am, unless there's something more specific you'd like to

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

hear.

Q.    No, that's -- that's great.  So a couple questions from that.  You mentioned that you're currently at a non-profit organization.  What organization do you work for?

A.    The organization is called JASA.

Q.    And can you spell that for me?

A.    J-A-S-A, it used to be an acronym for Jewish Association Serving the Aging.  But we just go by JASA now.

Q.    Got you.  And what does the organization do?

A.    The organization services older adults throughout the four boroughs of New York City, everywhere except for Staten Island.  And basically, there's three main divisions.  There's an affordable housing division, where we have about -- about twelve apartment buildings that house over two thousand older adults.

Then there's the home care division that services several hundred, maybe close to like eight hundred, close to a thousand older adults in their homes, providing home care for them to assist them with any of their daily, you know, medical needs

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis and physical needs.

Then there's a services division that provides a myriad of social services from legal services to mental health clinics to older adult centers which used to be referred to as senior citizen centers in the community that serves as recreational and social outlets for them.

And what's also what's known as NORC, N-O-R-C -- N-O-R-C, Naturally Occurring Retirement Communities where -- which is public housing developments or what you would call projects, where seniors also congregate at facilities that we run for them.  So that -- that's the main services that the organization provides.

Q.   And as an -- as an operation executive, am I getting the title right, operations executive?

A.   Correct.  I'm a C.O.O., Chief Operating Officer.

COURT REPORTER:  Mr. -- I'm sorry, Mr. Thompson, you're -- you're kind of faint at times.  I don't know if it's the way you're sitting or --

MR. THOMPSON:  Is this any better?

COURT REPORTER:  Yes, I can hear you

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

perfectly now.

MR. THOMPSON:  I -- I will tell you, I had my notes on top of the speaker.

COURT REPORTER:  And I'm sorry for interrupting.

MR. THOMPSON:  No -- no.  Much appreciated.  But -- and feel free to interrupt if anything like that comes up again.

MR. THOMPSON:  (Cont'g.)

Q.  And so as -- as Chief Operating Officer, what are your duties for the organization?

A.  Okay.  So I'm responsible for overseeing essentially the infrastructure of the organization.  That would include H.R., I.T., general counsel, risk and compliance, and facilities management.  Those are the main back-office departments, if you will, that support the client facing part of our organization.  And so I serve as the executive liaison to the -- to the -- to the executive team -- between the executive team and my direct reports who oversee those various departments.

Q.  And I have to ask.  Are you now or have you ever been a lawyer or an attorney?

A.  No, I have not.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.    Probably a good decision.  So in -- in your work with JASA, does JASA have a position or policy related to firearms?

A.    No.

Q.    Does it have a position or policy related to firearms in its buildings and properties?

A.    I would imagine -- let me think about that for a second.  I can't think of any formal policies that speak specifically to firearms.  No -- no.

Q.    And you mentioned a couple of fraternal organizations.  Can you tell me what those are?

A.    Sure.  So, I'm a member of international fraternity known as Phi Beta Sigma Fraternity Incorporated.  And I'm also a member of a Prince Hall Lodge -- Prince Hall Grand Lodge of the State of New York, which is also a fraternity of sorts, a Masonic Lodge.

Q.    And do either of those organizations have policy related to firearms?

A.    Not that I am aware of.

Q.    And do you know are firearm is permitted inside -- withdrawn.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Do does the Masonic organization have a -- a lodge or a temple?

A.    Yes.

Q.    And do you know, are guns allowed in there?

A.    I'm not aware of any policy for or against.

Q.    Have you ever had any discussions with the -- the leadership of the Masonic organization regarding guns in the lodge or the temple?

A.    No.

Q.    And do you carry a gun inside the lodge or the temple?

A.    No.

Q.    Why not?

A.    I don't carry at all.

Q.    So, let's put a pin in that for a second.  Are you a member of NYSRPA?

A.    Yes.

Q.    And what is NYSRPA?

A.    New York State Rifle and Pistol Association -- Rifle and Firearm Pistol Association.  NYSRPA, that's Rifle -- Rifle Pistol Association.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Yeah.

Q.    And is NYSRPA related to the National Rifle Association?

A.    Not that I'm aware of specifically.  When you say related, what do you mean?

Q.    Are they part of the same organization or connected or affiliated?

A.    Not other than I'm aware of as far as -- other than being proponents of the Second Amendment.  I'm not aware of any formal relationships per se.

Q.    And how long have you been a member of NYSRPA?

A.    I've been a several -- a couple of months here, if I recall correctly.

Q.    Do you know approximately when you joined?

A.    This summer.

Q.    This summer of 2025?

A.    Correct.

Q.    Why did you join?

A.    Well, I'm a part of several different organizations that are also pro Second

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
Amendment organizations and that was one that I had forgotten to check off on my list, so to speak.  So that was just to kind of round out my different affiliations.

Q.    And so what other second Amendment organizations are you part of?

A.    I'm a part of the N.R.A. as far as a member, as well as an instructor.  I'm a part of the National African American Gun Association, also that as well as -- started a chapter related to that organization.

I'm a part of the New York State Environment -- was it D.E.C, I think Department of Environmental Conservation Consortium.  I might be messing up the -- the -- the name there.  But it's like a wildlife organization that it -- when you are looking to be insured for your business as a firearm instructor or as a firearm club, you need to be a part of that association as well.  So, I'm a part of that also.

And I think those are -- you're not counting firearm clubs?  I'm a member of the -- the - - the Freeport Rifle and Pistol Club as well in Freeport.  But I don't know if you're counting that

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

as the same thing.

Q. Sure. And do you have a leadership position in any of these organizations?

A. I do.

Q. And can I ask which and what position?

A. In the National African American Gun Association, I have a state director position, which is a volunteer position that helps the organization basically start clubs in different parts of the respective states that one is servicing.

Q. And are you part of a group called Diasporans Four Defense?

A. Yes.

Q. Can you tell me a little bit about Diasporans Four Defense?

A. So Diasporans Four Defense is actually my L.L.C. that I started several years ago as a business to be able to assist people who are interested in becoming trained on firearm safety, firearm handling, firearm education in general, how to become law abiding citizens who own firearms and or if they choose to possess them or carry them, as well as you know, just general safety education. So,

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis promoting an environment of firearm education throughout the -- the urban community is basically our mission.

Q. And what's your position within Diasporans Four Defense?

A. I'm the founder of the club -- I mean not the club, of the business. I'm the managing -- managing member of the L.L.C.

Q. And what kinds of activities does Diasporans Four Defense put on?

A. Primarily training. I do once a month. I do classes when -- if there's enough interest, I do classes. These days, I've been focused primarily on the concealed carry permit to teach people using the D.C.J.S. curriculum that has been approved and -- and is on record at the Nassau County Police Department.

So I teach that class, the D.C.J.S. class, to interested individuals who want to get their pistol permits and or their concealed carry permits.

Q. And the name Diasporans Four Defense, does that refer to the African diaspora?

A. Primarily, yes. But it could be

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

the human diaspora as well. I mean, there -- we're not exclusionary to any group.

Q. And about how many members does Diasporans Four Defense have?

A. Diasporans Four Defense, if you remember I said earlier is the L.L.C. So it's a business, it's not a club. So, that's the distinction I want to make. So it's -- it's just me, it's just my business. I file my taxes as a Diasporans Four Defense, L.L.C.

Q. And no other employees or shareholders?

A. Correct. I'm a sole proprietor, if you will. And that's why I use the term managing member because it's just me. That's the term for L.L.C. is, if you know you're a sole proprietor, essentially.

Q. And so Mr. Francis, do you use email?

A. Do I use email?

Q. Yes.

A. Yes.

Q. Have you ever, sorry --

withdrawn.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Excluding any conversations with Mr. Porter or anybody from any firm that represents you, have you emailed anybody about this case?

A.    No.

Q.    And excluding conversations with Mr. Porter or any of the law firms that represent you, have you emailed anybody about the -- the laws that are at issue in this case?

A.    No.

Q.    Similar question.  Do you have any accounts on social media?

A.    I do.

Q.    Which social media platforms do you use?

A.    I use LinkedIn, Facebook, WhatsApp.  I just joined Instagram like a week ago. I believe that is it.

Q.    And can I ask you, what is your username on LinkedIn?

A.    It's Wayne -- Wayne A. Francis, M.S.E.D.

Q.    And on Facebook, do you have a username on Facebook?

A.    I don't recall.  It would be my

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

name.  Yeah.  Nothing fancy, yeah, just my name.  But I don't know like what the U.R.L. might be.

Q.    And do you have a username on Instagram?

A.    Yes.  But it's that new that I have to think for a second.  It would probably be my name, but I don't -- I don't remember exactly.  I literally just created it.  So -- but it would be something like Wayne -- I think it's Wayne A. Francis, if I'm not mistaken.

Q.    And excluding any conversations with Mr. Porter or the Bradley Firm -- did we just lose somebody on the --

A.    Yeah, she mentioned she would be dropping off.

Q.    Right, right.  So -- question withdrawn.

Excluding conversations with him, Mr. Porter or anybody from the Bradley firm, have you discussed this case on any of these social media sites?

A.    No.

Q.    Have you sent a personal or direct message on any of these sites regarding this

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
case?

A.    No.

Q.    And have you either posted or
used a personal or direct message about any of the
laws that you're challenging in this case?

A.    No.

Q.    Have you ever had any
interactions with the New York State Police?

A.    New York State Police.  Nothing
outside of maybe getting pulled over.  I -- I'm
trying to think.  Is that New York State?  I can't
think of -- I feel I'm -- let me see.  New York
State.  No, I don't think so.  Not that I could
recall.

Q.    And have you ever had any
conversations with any member of the New York State
Police about any of the laws at issue in this case?

A.    No.

Q.    Have you ever been threatened by
any member of the New York State Police?

A.    No.

Q.    And have you ever been a member
of the New York State Police or worked for the New
York State Police?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   No.

Q.   All right.  So, Mr. Francis, do you own any firearms?

A.   Yes.

Q.   What firearms do you own?

A.   An array -- an array of them.

Q.   Do you know approximately how many?

A.   Approximately, I would say between ten and twelve.

Q.   So I'm going to put up the document on the screen as -- as quickly as Microsoft Teams will let me.  And let me know if you can see it.

A.   Yes, I can see it.

Q.   So, do you recognize this document?

A.   Can you scroll up a little bit higher?  Can you scroll down some more?

Q.   Sure.

A.   This is six pages.  I believe this is the document that I was alluding to earlier.

Q.   Is this your response to the interrogatories in this case?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   Yes.

Q.   And I'm scrolling down to page four it's marked.  Did you verify this document?

A.   Yes.

MR. THOMPSON:  And Annette, can I ask that this be marked as State Exhibit One?

COURT REPORTER:  Of course.

BY MR. THOMPSON:  (Cont'g.)

Q.   So, turning to page -- bottom of page two, top of page three.  So we asked to identify each gun, firearm or rifle that you own or possess. And here at the top of page three, you -- it says, subject to and without waiving his objections, Plaintiff Francis refers Defendant to the copy of his New York concealed carry license produced with Plaintiff's responses.

A.   Correct.

Q.   So, let me stop sharing this for a moment, and I'm going to put up another document and let me know when you can see it.

A.   I see it.

Q.   And so do you recognize this document?

A.   Yes, I do.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.    And what is it?

A.    That is my Nassau County Concealed Carry Permit License -- pistol license.

Q.    And I'm going to scroll down to the second page.  So there's two sides of this, right?

A.    Yes.

MR. THOMPSON:  And Annette, can I ask that this be marked as Exhibit Two?

COURT REPORTER:  Sure.

BY MR. THOMPSON:  (Cont'g.)

Q.    So first let me ask, as far as I know the two sides of this document are the only documents you've produced in this case.  Is that right?

A.    Only documents, I don't know.  I have to think about that because I was asked to produce this, but I'm trying to remember.  I imagine I was asked for other things as well, but I don't know, if -- if beyond my license that you -- what kind of a document you are referring to.

Q.    Sure.  Let me stop sharing this for a second.  I'm going to put up a different document.  And Annette, I'm sorry.  This is not one

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis of the listed Exhibits, but James should be familiar with it.  Mr. Francis, let me know when you see the document.

A.   I see it.

Q.   Have you seen this document before?

A.   It -- it looks like the one that we just looked at, but I see this one is longer.  So, I'm not sure what the distinction is between the two.  Can you clarify what the -- the distinction is between this one being nine pages and the other one being six pages, because they fairly looks similar if I'm just looking at the header there?

Q.   Sure.  This is your response to the -- the -- Superintendent James' request for production of documents.  Do -- do you recall seeing or ever looking at the requests for documents that the Superintendent served?

A.   Yes, I do recall that.

Q.   And without -- without inquiring into any questions that you've had with Mr. Porter or the Bradley firm, did you review the request and -- and make a diligent search for documents?

A.   Well, the ones related to my

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

pistols, which again are on my pistol license, that encapsulates the information related to which pistols that I have.

Q.   Yes.  But, so the request is a little broader.  So if you take a look at the document in front of you, we asked for any documents containing notes or other writings memorializing any events or occurrences relating to any of the allegations in the complaint.  And the response was, Plaintiff Francis does not have any responsive documents within his possession, custody, or control. Do you see that?

A.   No.  Could you like -- put your cursor where you read it?

Q.   Sure.  Very bottom of page two and top of page three.  I tried to highlight that. Let me know if you can see it.

A.   I see it.

Q.   So, did you make a search for documents relevant to this litigation?

A.   What kind of documents are you referring to, I'm asking?

Q.   I'd say any document in your possession or control that's relevant to the

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis Concealed Carry Improvement Act and -- and your challenges to the law?

A.    I would say I pretty much --

MR. PORTER:  Hold on, hold on, hold on.  I'm going to object to the form of the question.  You highlighted once specific request for production and your characterization of that request in this question is different than what the request says.  It's broader.  So I -- I -- will you please clarify James, exactly the question you're asking?

BY MR. THOMPSON:  (Cont'g.)

Q.    Sure.  I'm asking in connection with you -- you're right that the question is a little broader.  I'm asking in connection with this litigation or these document requests, did you make a search of the documents that you have in your possession for anything relevant?

A.    Yes.

Q.    And do you have any documents relevant to this litigation other than your license?

A.    No.

Q.    Okay.

A.    If I'm understanding correctly, no.  I produced my license to provide what

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
verification of firearms that I have for pistols as
it relates to pistols specifically.

Q.   Do you have any documents in your
possession that are relevant to the Concealed Carry
Improvement Act?

A.   No, not that's not public.

Q.   Okay.  Now when you say public,
do you -- can you tell me what you mean by that?

A.   Meaning like, if you Google the
New York State Concealed Carry Act, you can get a
document that says what it is.  So outside of that,
nothing.

Q.   Got you.  And -- and to be clear,
I'm only asking about documents that you have not
documents that --

A.   Okay.

Q.   -- the State Police has or the
D.C.J.S. has or some other body has.

A.   I understand now.

Q.   And do you have any such
documents?

A.   No.

MR. THOMPSON:  Okay.  And Annette,
when -- when we get to that -- and actually, before

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

we stop, Annette, can I ask that this be marked as Exhibit Three?  And I'll send it around to each of you.

COURT REPORTER:  Sure.

MR. THOMPSON:  Give me just a second to do that.

COURT REPORTER:  Would it be possible to take a five-minute break?

MR. THOMPSON:  Absolutely.

(Off the record; 10:43 a.m.)

(On the record; 10:48 a.m.)

COURT REPORTER:  Back on.

BY MR. THOMPSON:  (Cont'g.)

Q.   All right.  So Mr. Francis, I'm going to put Exhibit Two back up and go to the second page.  So, this lists seven firearms on the back of the license.  Correct?

A.   Correct.

Q.   And is this the only license that you have?

A.   I have a new one as far as it's been updated since this.  And then I also have a -- a semi -- a semi-automatic rifle license as well.  And I have a base -- well, I -- I don't know if you would

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

still count the -- the -- what you call it, the -- the -- the -- no, the -- the concealed carry.  There was a regular pistol version of this license you have now, but then it got upgraded to concealed carry.  So, I guess that would cancel out the previous one.  And then I also have a semi-automatic rifle license.

Q.   Sure.  So let's -- let's take these one at a time.  So did you say there was a previous version of this license?

A.   Yeah.  When I -- before Bruen, the -- this was basically -- it didn't say concealed carry on it, the exact same license, but of course it didn't say concealed carry on it.

Q.   Got you.  And did that license have restrictions on it?

A.   Yeah.  You couldn't conceal carry.

Q.   Was it -- was it like a sportsman's license or a premises license?

A.   Yeah, correct.  Exactly.

Q.   Can I -- can I ask which one?

A.   Premises.

Q.   Premises.  And the -- the physical license that you had before, do you still

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

have that?

A. No, they -- they -- when you upgrade or even when you get a new firearm added, they give you a new license every time.

Q. And did they take the old one?

A. Correct.

Q. And did -- did I hear you say that you have a -- a newer version of the license than the one that we're looking at?

A. Yes, I do. I -- I've since received a gift from my wife, if you will, another one that I added purchased recently.

Q. Okay. Can I ask -- well, first of all, can I ask you to produce a -- a copy or a photo of that license?

A. Yes. No problem.

MR. PORTER: Wait, just -- just send it -- just send it to me, and I'll produce it to Mr. Thompson.

THE WITNESS: Okay.

BY MR. THOMPSON: (Cont'g.)

Q. And how is the newer license different from this one?

A. It has a revolver that's been

Associated Reporters Int'l., Inc.  www.courtsteno.com

Page 48

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis added.

Q.   And does it still have the same expiration date as the current license?

A.   I believe so.

Q.   And other than the addition of the revolver, is it different from the current license in any way?

A.   No.

Q.   And you said you had a -- a semi-automatic rifle permit.  Is that a separate document from the new license or from this one?

A.   Yes.

Q.   So it's a -- a separate plastic license?

A.   Yes.

MR. THOMPSON:  And can I ask for a copy of that to be produced?

Yes.

MR. PORTER:  Same thing, just send it to me.

THE WITNESS:  Will do.

BY MR. THOMPSON:  (Cont'g.)

Q.   Yeah.  And to be clear, that --

COURT REPORTER:  I'm -- I'm sorry.

800-523-7887  ARII@courtsteno.com

Serving all of New York State

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

What was -- what was that request again, the second one?

MR. THOMPSON:  A request that for the production of his semi-automatic rifle permit.

COURT REPORTER:  Thank you.

BY MR. THOMPSON:  (Cont'g.)

Q.    And when did you get the semi-automatic rifle permit?

A.    I would say it was the same -- around the same time that I upgraded my permit to conceal carry, so it would have to be a couple of years at this point.  Right.  2022 is when the law was, so 2023.

Q.    So this permit says it was issued March 30th, 2021.  Is that not when you got your concealed carry permit?

A.    No.  Remember, concealed carry was only in effect in New York State as of Bruen.  So this is the date from when I received my original premises permit that I -- I just spoke about.  So you -- you don't -- they didn't change the origin date of when I first got my license.  They basically -- once post Bruen only added concealed carry to the same license.  And that's what you're looking at now.  Do

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

you understand what I'm saying?

Q.    Yeah.  Let me try and summarize it.  So would it be correct to say that when Nassau County amends a license, they keep the same issue date?

A.    Correct.

Q.    Okay.

A.    The issue date and the expiration date don't necessarily change.  So yeah, that's -- although let me see, 6/30/26, I -- I think the -- the expiration date might have changed when I -- when I upgraded, if I'm not mistaken.

MR. THOMPSON:  So if I could ask -- and I guess I already have -- but Jay, if I could just ask you to produce that when you get it, I'd appreciate it.

BY MR. THOMPSON (Cont'g.)

Q.    Do you know what the expiration date is?

MR. PORTER:  Hold -- hold on.  I'm not sure I understood the difference between what you've already asked for and -- and this.  What are you asking for?

MR. THOMPSON:  I -- I -- sorry.  I'm

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

not asking for anything beyond what I've asked -- what I've already asked for.  Just --

MR. PORTER:  Okay.

MR. THOMPSON:  -- repeating the same thing I already said, which I --

MR. PORTER:  Okay.  Sorry, I thought I misunderstood you.

BY MR. THOMPSON:  (Cont'g.)

Q.   So Mr. Francis, what is the current expiration date of your license?

A.   No, this -- I -- I -- I believe it's the same, it is current.  What I was saying is that it was originally -- when I originally received the permit 3/30/21, right, the -- the original issue date, if -- if I'm not mistaken when I went back to get it upgraded to conceal carry, I think the expiration date changed at that time.  But I'd have to go back and look.  I -- I -- you know, I'm -- I'm not a hundred percent sure about that, which I guess I shouldn't say it then since I'm not.  But generally, it was originally five years -- a five-year license, but the concealed carry is only good for three when they -- as -- as you probably already know.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   And so the -- the updated license that you -- that you mentioned, does that still expire on June 30th, 2026?

A.   I believe so.  I'd have to go look.

Q.   Okay.

A.   I have it with me if you want me to go look now.

Q.   Do you have it with you, you know, close to hand or --

A.   Yes, it's right in my bedroom.

Q.   No, that's all right.  If you're going to produce it, then we can -- we can take a look when you do.

A.   Okay.

Q.   So moving to page two, so these are all handguns.  Correct?

A.   No, I mentioned that I have a revolver that was added since.  I believe I produced this as much as a year ago or so.

Q.   Got it.  So that's not -- not quite my question.  What I was saying is that these guns that are listed here on this license are all handguns.  Right?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.    Yes.  Correct.  Those are all pistols.

Q.    And you have the additional revolver that's also a handgun, that's also listed on your updated license.  Correct?

A.    Correct, yes.

Q.    So, do you own any firearms or guns in addition to what's listed on the back of your current license?

MR. PORTER:  Wayne, hold on.  Before you -- Wayne, hold on.  I object to the form of the question.  We objected to your discovery request regarding this.  I maintain that objection.  However, Mr. Francis, please go ahead and answer the question.

A.    Yes, I do.

Q.    And what guns do you own in addition to the ones listed on the back of your license?

MR. PORTER:  James, may I please have a standing objection to form for this line of -- of questioning so I don't have to object to form for all of this?

MR. THOMPSON:  I think that's fine.

MR. PORTER:  Thank you.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

MR. PORTER:  Go ahead Wayne, you can answer.

THE WITNESS:  Rifles.

BY MR. THOMPSON:  (Cont'g.)

Q.   And how many rifles?

A.   I want to say three rifles and a shotgun.

Q.   So let's -- let's start with the shotgun.  Can you describe that?

A.   So, the shotgun is a duke steel with a round grip, and it's a pump shotgun.

Q.   And can you describe the three rifles for me?

A.   I have two A.R. fifteens, one blue, one black and I have a Savage bolt action rifle -- Savage one ten bolt action rifle.

Q.   And the two A.R. fifteens, do -- do you know whether they are -- fall under the definition of an assault weapon under New York Law?

A.   Under the New York City or -- I -- I don't know.  I'm not sure what you're asking.

Q.   Sure.  Are you familiar with the New York law regarding an assault weapon?

A.   New York State or New York City,

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

are you referring to?

    Q.   New York State.

    A.   I'm not familiar with it to the extent that I could quote it in any way.

    Q.   Okay.  So the two semi-automatic rifles or -- I'm sorry, question withdrawn.

    Are the two A.R. fifteen rifles semi-automatic?

    A.   Yes, they are.

    Q.   And do they accept a detachable magazine?

    A.   Yes, they do.

    Q.   And do they have a pistol grip?

    A.   No.

    Q.   Do either of them have a telescoping stock?

    A.   No.

    Q.   Or a thumbhole stock?

    A.   No.

    Q.   Do either of them have a bayonet mount?

    A.   No, they -- they're New York State compliant.  If we could just get to that point.  There's nothing illegal about them from -- I

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis purchased them at federal firearm licenses -- licensed dealers on Long Island, and of course, they wouldn't have released them to me if they weren't New York State compliant.

Q.   Got you.  Yeah, that's the question that I'm getting at.  So -- and -- do you own any weapons that you keep outside the State of New York?

A.   No.

Q.   And do the magazines on those weapons extend longer than ten rounds?

A.   No.

Q.   Do you have any firearms licenses or permits issued by any state other than New York?

A.   No.

Q.   And do you have a special carry permit for New York City?

A.   No.

Q.   Okay.  So that I think is the end of this line of questioning.  Jay, if you're going to make an objection beyond that, let me know.

MR. PORTER:  Will do.  Thank you.

Q.   So Mr. Francis, you mentioned earlier that you usually don't carry a weapon with

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

you.  Is that right?

A.    That is correct.

Q.    How often do you carry a weapon with you?

A.    Never.

Q.    Why not?

A.    I choose not to.

Q.    And can you explain why you made that choice?

A.    Well, first, I believe that when one chooses to carry a firearm, that you have to first be mentally prepared to do so.  Then, you have to be trained in order to properly be able to go from conceal to presenting if the need were to arise.  You also have to feel fundamentally comfortable, comfortable in your skin, comfortable knowing that that firearm is on you, knowing that if, God forbid, the need were to arise and you needed to use it that you could, and all those boxes aren't checked for me.  So therefore, I'm not in the place yet where I feel comfortable enough to do so.

I want to be able to -- I want to be able to do so.  I want to be able to have my right to do so.  But I don't -- have not reached a point where

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

all my boxes are checked.  I've been training, I've been trying to mentally prepare all the things, but I'm not there yet to feel comfortable enough to carry outside of my home.

Q.   Got you.  Can I ask you to tell me which of those boxes aren't checked and why -- why you don't feel they're checked?

A.   Good question.  All right.  So, if I'm being totally transparent where the -- the society, the world that we're living in right now, you know, makes it very challenging for people of color in general, black men specifically, to feel comfortable with carrying firearms.  Even though I might be legal, even though I might be trained, you know, I run into a wrong law enforcement officer, God forbid, on a stop or you know, in any type of a situation.  And it's like when you're black, you're -- you're guilty and then proven innocent.

So that's part of the -- the challenge, having to deal with just the society that we live in that presume black men are generally guilty of something or dangerous or at risk.  Like, they don't stop to take the time to think, well, maybe he's law enforcement or maybe, you know, he's

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

an instructor or maybe he's licensed or maybe he's trained. It's like we get the doubt before the benefit. So that's a big box as far as the comfort level is concerned.

And then the -- the -- the whole notion of, you know, carrying a firearm, which is essentially a deadly weapon, and being able to know that if you could, you know, in defense of yourself or a loved one, you know, be put in a position and you had to utilize it, I'm -- I'm not there either in regards to thinking that I'm confident enough to be able to take someone's life. Even if I had to, I would -- I would hope in the defense of my own life, I could, but I'm not -- let's say a hundred percent sure because obviously that's a very serious thing. We can assume human instinct and survival instincts will kick in, but you don't really know what you'll do in a situation.

I've had a gun stuck in my stomach and then when I refused to cooperate, I got pistol whipped -- you know, but no one could have told me I would've refused to cooperate when I had a gun stuck in my stomach before, you know. I didn't think I would be defiant. And I was, even though it was

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

stupid and I was eighteen years old and probably could have got killed. But you know, you live and learn.

Q. So a couple of follow-up questions for that. First is, you know, I -- I hear you with your with -- with the concerns about you know, the history of -- of racial disparities in law enforcement. We represent Steven James, Superintendent of the State Police. Do you have any concerns about the State Police in particular, separate and apart from law enforcement in general?

A. No.

Q. Secondly, can you tell me a little bit more about the incident where you had a -- a -- a pistol stuck at your stomach?

A. Sure. It's okay to answer that attorney? Counsel?

MR. PORTER: You can answer anything unless I tell you not to answer it.

THE WITNESS: Okay.

MR. PORTER: And I'm not instructing you not to answer, so please go ahead.

THE WITNESS: Okay. Thank you. So again, teenager, young adult hanging out with friends

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

in a building lobby in Brooklyn.  And one of my neighbors, actually someone who I knew, but at the time in the eighties, I think this was late eighties, who was strung out on crack approached me.  I was wearing jewelry at the time, a necklace and a couple of rings.  And he approached me and he stuck what looked like a nine-millimeter pistol in my stomach and asked me to give -- give up my jewelry.

And I was -- you know, as you can imagine, a bit perplexed because it was someone that I knew from the block.  And I laughed at him and I was, you know, like kind of like brushed him off and told him to stop playing with me, you know, like, get out of my face, kind of a thing.  And then he pistol whipped me and said some expletives to make it very clear that he wasn't joking, that he was deadly serious and to remove my jewelry before he fires.

So at that point I complied and took off my head jewelry and you know, threw it down on the floor and he picked it up and ran off.

BY MR. THOMPSON:  (Cont'g.)

Q.    And a little earlier you mentioned a robbery case where you testified to the grand jury.  Is this that robbery?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.    Yes.  One and the same.

Q.    And so, this person was ultimately convicted and incarcerated.  Correct?

A.    Correct, correct.

Q.    Did you get jewelry back?

A.    Ironically enough, I did see it in a pawn shop in the neighborhood.

Q.    I'm sorry.  So you -- you also said that you -- you weren't at the point where you would be a hundred percent certain that you'd feel confident carrying.  How would you know when you're -- when you are at that point?

A.    I think a large part of it would have to do with my training.  You know, as an instructor, I certainly recognize the importance of training to get comfortable with anything.  And that's -- you know shooting is a perishable skill we like to tell people when we're training them, to not think that it's something that you could do well today, walk away from and six months from now, not touch a firearm arm and then six months from now, pick one up and think you'll do as well as you did six months ago.

So that being said, I don't train

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

often enough at this present time.  I just frankly don't have the time to train sufficiently to get myself to that comfort level.  And when I'm talking -- when I say train, you know, the whole action of -- of drawing from a holster, you know, safely and being able to re holster safely, that -- that takes a lot of practice.  And it's not something to be casual about or nonchalant about, coupled with what it -- what it would mean, all and -- all that goes into that from a legal standpoint, from a -- economic standpoint, from a, you know, human life standpoint of what all those things would mean once you get to the point where you would have to take that action.

Q.   So if you -- if you were to win this case tomorrow, and the court were to rule in your favor and join the laws, no appeal, would you be carrying your weapon the day after?

A.   Not -- not the day after, no.  Everything that I said would remain true until I get to the point that I feel comfortable enough.  I would certainly appreciate the court's recognition of my rights in enforcing them.  But it doesn't give me a reason to disrupt my philosophy and my mentality to do anything any differently.  I'm -- it's something I

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

take very seriously.  I mentioned I have children.

So I have to always consider, you know, my actions.

Like when I was younger, I used to drive fast.  But when I got older, I stopped speeding because I knew better and I had more to lose, you know.  So same thing with the firearm, you know.  I know better, so I do better.  So I'll wait until I'm in a position to be able to do better and feel comfortable enough before I was -- take that action.  Could you pause one second?  My job is calling.  Let me just see if this is something important or not.

Q.  Yeah, sure.

MS. JENSEN:  Hey folks, I can also put in an appearance --

COURT REPORTER:  Well --

MS. JENSEN:  -- until he is back.

COURT REPORTER:  Okay.  Do you want me to go off the record now while we're waiting?

MR. THOMPSON:  Yeah.  Why don't we do that?

COURT REPORTER:  Okay.

(Off the record at 11:17 p.m.)

(On the record at 11:18 a.m.)

COURT REPORTER:  Okay.  We're back on

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis the record.

MR. THOMPSON: Great. Thank you, Annette.

COURT REPORTER: Sure.

MR. THOMPSON: All right. Molly, do you want to put in your appearance now that you're with us?

MS. JENSEN: Absolutely. My name is Molly Thomas Jensen, and with Mr. Thompson, I'm an attorney at the Office of the New York State Attorney General, and I'm here on behalf of Superintendent James. It's nice to meet you, Mr. Francis. Good to see you, Jay. And thank you Ms. Lainson for -- for transcribing this. I'll go back off camera. Mr. Thompson will be the one continuing with questions, but I wanted to introduce myself.

MR. PORTER: Good morning, Molly.

MS. JENSEN: Good morning.

BY MR. THOMPSON: (Cont'g.)

Q. So thanks, Molly. Thanks Annette. So Mr. Francis, a slightly different version of the same question from before we went off the record. If you were to win this case tomorrow, and it were to be resolved in your favor and the

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Court were to put in a permanent injunction, would you carry your gun on public transportation or in church?

A.   I wouldn't carry it anywhere to just be clear.  Again, if -- if I'm not in the mental space and the emotional space and the -- you know, the physically trained space is -- is, you know, we can just address all of those possible implications that I would not do it until I got to that place.

And I'm just not there yet.  And I don't see it being something that I will get there overnight.  It'll still probably take many more months, if not longer for me to get to that place and to put in the time and the effort to train properly to get comfortable enough to take that action.

Q.   Understood.  And so have -- Mr. Francis, have you ever been involved in a situation where you needed to use your firearm for self-defense?

A.   No.

Q.   Have you ever been in a situation where you drew or brandished a firearm?

A.   No.

Q.   And are you currently under any

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis particular threat that would mean you anticipate the need to use a firearm for self-defense?

A. Other than being a black man walking around New York City? No.

Q. And so I know we talked about a couple of proceedings, but let me ask, have you ever been a party to any lawsuit other than this one?

A. As far as me suing someone or being sued?

Q. Either.

A. Yes.

Q. And can I ask which proceedings?

A. It was a car accident that I -- my vehicle that was on loan was in an accident, and I got sued.

Q. And do you recall what course -- what court that was in?

A. I don't recall the Court, but it happened in Queens. So I don't know specifically because it was settled, and so I didn't have to get involved. The insurance company took care of everything.

Q. And do you remember approximately when that was?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.     It would have -- it would be an approximation but let me see. I would have to speculate between 2016 -- 2015 and 2016 thereabouts. Excuse me?

Q.     I'm sorry. I accidentally hit the -- I accidentally hit the mute button. So like -- like me and Jay, you have two very common names. So if you don't mind, there are a number of proceedings out there involving Wayne Francis's. And I'm going to go down through a couple of them and ask if you're the Wayne Francis involved.

A.     Okay.

Q.     So Mr. Francis, were you ever involved in a mortgage foreclosure proceeding in Kings County?

A.     No.

Q.     Were you involved in a matrimonial proceeding in Kings County involving someone named Karrien Walker Francis?

A.     No.

Q.     Were you involved in a motor vehicle torque case in Kings County involving a crash in 2017?

A.     In Kings County?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   In Kings County.

A.   No.  I'm pretty sure that accident is just -- I'm only thrown off because I told you 2017 with that a car accident, but I -- I want to say it happened in Queens.  I'm pretty sure it happened in Queens.

Q.   Okay.  There's also a -- a motor vehicle personal injury case in Queens County involving a woman named Janel Snow -- Stone and one --

A.   Yeah, that's the one.

Q.   -- involving J.P.  Okay.

A.   That's the one.  Yeah.

Q.   Were you involved --

A.   What year was that by the way, if you don't mind me asking, just to test my memory?

Q.   I -- I would tell you except I don't have it in my notes.

A.   Oh, okay.

Q.   Were you ever convicted of robbery in Kings County?

A.   No.

Q.   Were you involved in a contract case in Nassau County against an entity called

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
Central Nassau Guidance and Counseling Services, Inc.
about a property in Massapequa?

A.    No.

Q.    Were you ever involved in a
mortgage foreclosure case involving either J.P.
Morgan Chase or the Federal National Mortgage
Association?

A.    No.

Q.    Were you ever convicted of
identity theft in Nassau County Court?

A.    No.

Q.    Are you the plaintiff in the
Torts case against the City of New York and the New
York City Department of Corrections?

A.    No.

Q.    Are you involved in a civil case
involving two companies called Argus Funding
Solutions, L.L.C. and R.E.I. Holdings, L.L.C.?

A.    No.

Q.    Have you ever commenced a small
claims action against Nassau County about property
taxes?

A.    Small claims, you said?

Q.    Yeah. SCAR, S.C.A.R.  Does that

NYS Rifle v Steven James - 10-24-25 - Wayne A. Francis ring a bell?

A.   No.  Other than grieving my property taxes, that's -- I don't think that's what you're talking about, no, I wouldn't think so.

Q.   It may be -- what I'm -- it -- it may be the same thing.  Can you tell me about grieving your property taxes?

A.   So in Nassau County, there's a thing where if -- basically you sign up with a law firm and these are law firms that specialize in real estate.  And basically every year, you know, you could re-up on your retainer with them.  Every year, what they'll do is they'll petition the county to reduce your property taxes, and they make a whole legal case for why that should be based on a variety of variables from the way the house is constructed or positioned in the -- and on the block to, you know, whatever else might be going on in the county.  And then, if the county agrees to reduce your taxes, then they're able to get a thirty percent or whatever of the money that they save you.

Q.   Got you.

A.   So that's something that, you know, is quite standard in home ownership out in

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Nassau County because our taxes can be high.  And so, you -- you do what's called grieve them and then the tax collector issues it to some and sometimes they don't or you know, they'll take a thousand dollars off or so, something like that.

Q.   And did anything happen in any of those proceedings that bears at all on this one?

A.   Not at all.

Q.   Lastly, were you ever involved in a landlord tenant case in Bronx County involving an entity called twelve twenty-nine twelve seventy-three Realty, L.L.C.?

A.   No.

Q.   And were you ever involved in a landlord tenant case in Kings County involving an entity called K.B.L. Three Five Four, L.L.C.?

A.   No.

Q.   All right.  Have you ever been --

MR. PORTER:  Have you ever considered changing your name from Wayne Francis to something more -- with something less common?

THE WITNESS:  Yes.

MR. PORTER:  You may need to.

THE WITNESS:  I have.  And it's Wayne

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A. Francis.  I actually make it a point to use my middle initial whenever I can for the very purpose of what we're going through, because you can only imagine what it was like getting through an airport, at a certain point in time.  When I traveled outside the country, coming back was always a challenge for the reasons you're stating.

MR. THOMPSON:  I definitely can sympathize, and I'm sure James Porter can as well.

THE WITNESS:  Could you hang on one second again?  I just need to run to the restroom. Please hold.

MR. THOMPSON:  Yeah, sure.  Let's go off the record, Annette.

(Off the record at 11:28 a.m.)

(On the record at 11:32 a.m.)

COURT REPORTER:  We're back on the record.

BY MR. THOMPSON:  (Cont'g.)

Q.  So, a couple more quick questions on this line of questioning.  Have you ever been part of an administrative proceeding before any administrative agency?

A.  No.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   Have you ever tried to buy a firearm and had a background check denied?

A.   No.

Q.   All right.  So, just very broadly about this lawsuit, can you tell me why you're suing New York?

A.   Well, as you know, the intent of the Bruen case was to be able to allow those individuals who were interested in doing so to be able to have the right to conceal carry.  Some might argue a right that was always there, but for various reasons and various laws and restrictions in New York State, it was a prohibition until then.

However, subsequent to that, the -- the N.Y.C.C.A chose to restrict the intent of Bruen by adding a group of onerous restrictions on the state -- members of the state, which I felt were a further infringement and an attempt to undermine the intent of Bruen.

And so in an effort to try to right the wrong, if you will, to allow people to be the -- have the fullest expression of our Second Amendment rights, I felt that it was important to address this matter and to attempt to have the restrictions that

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

are there and need not be there. Certainly, if you compare us to other states around the country and I'm not saying we have to go as far as some other states have gone, as far as how liberal, so to speak, they are with the right to carry.

But the additional restrictions and impositions that have been placed on New York State residents, I feel are excessive and need to be addressed.

Q. Understood. So, you were not a party to this lawsuit when it was first filed, correct?

A. Correct.

Q. Without asking into any conversations between you and Mr. Porter or the Bradley Firm, can you tell me how you became involved in this lawsuit?

A. I believe it was through my affiliation with NAAGA, the National African American Gun Association, who in addition to wanting to ensure that people are becoming responsible legal firearm owners, they do advocacy work in the area of the Second Amendment. And any state that has onerous and overly restrictive laws, I believe they attempt to

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

advocate and try to address.

So the Regional State Director of NAAGA reached out to me to say, hey, would you be interested in being a part of something greater than yourself, so to speak, in regards to, you know, joining a case that's looking to address the overly restrictive laws that have been put in place in New York. And I saw it as something that I could do to be able to represent the underrepresented.

Q. And who is the Regional Director that you spoke with?

A. His name is Damon Finch.

Q. And do you know -- is Mr. Finch an attorney?

A. He is not.

Q. And did you exchange any emails or -- or social media messages about -- with Mr. Finch about this case?

A. No.

Q. And was it Mr. Finch who put you in touch with the Bradley Firm?

A. I believe one way or they -- they -- he put them in touch with me, yeah. I -- I don't even remember if he gave me their number or they gave

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

me -- he gave them my number.  But he facilitated the introduction, yes.

Q.   And Mr. Francis, are you paying for your lawyers in this lawsuit?

A.   I am not.

Q.   Do you know who is?

A.   I'm not sure.  No.

Q.   And do you know where the money is coming from to pay for your lawyers in the lawsuit?

A.   I do not.

Q.   Okay.  So, I'd like to talk a little bit about your challenge to the licensing laws.  And I'm going to bring up Exhibit Two again here.  Let me know when you can see it.

A.   I can see it.

Q.   So, you mentioned that you had previously obtained a license before this one, correct?

A.   Correct.

Q.   And was that in 2021 or was that before?

A.   Yes, it was 2021.

Q.   Okay.  And was that the first

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

time that you obtained a pistol license?

A.    Yes.

Q.    And was the license issued by Nassau County?

A.    Yes.

Q.    Can you tell me a little bit about the application process and how it went for you?

A.    Okay.  So it's -- basically you could go online and download a paper form.  They do still have a paper process versus an online process in Nassau and you complete the form.  There's a money order I think at that time for two hundred dollars.  And then there's a fingerprinting fee for, I believe, eighty-eight dollars.  This is 2001 prices.

They -- it might not be the same now.  And you have to -- I believe you have to also provide references, character references as part of the process.  What else?  I think that was it.  You submit the paperwork.  They do a background check as part of the process, bring you in for the fingerprinting.  And then, you know, a couple months after that, the license is issued.

Q.    Got you.  And did you meet with

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

any licensing officer in connection with that application process?

A.   Yes, when I got fingerprinted.

Q.   And can you tell me about the meeting?

A.   It's not a really a meeting per se.  They bring you in, and then if there's any questions or concerns about your application, they address it at that time.  I had none.  So, my process was pretty smooth.  Once I was fingerprinted, you know, I was able to advance through the process.

Q.   And they didn't have any follow up questions for you at that time?

A.   None.

Q.   And --

A.   Oh, I forgot to mention.  Providing a copy of your New York State driving abstract is also a part of the requirement.  Sorry for cutting you off because I know you said to wait till you're finished, but it just occurred -- occurred to me.  May I continue?

Q.   Oh, of course.

A.   Yeah.  You also have to provide your New York State driving abstract so they could

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

see your driving history from -- I believe it's from the inception of getting licensed.  And then there's also -- there were some affidavits also that needed to be provided that speak to anything that might be in your background -- to explain anything that might be in your background as it relates to arrests, prior arrests or convictions.

And -- and also to get -- I -- I don't know if approval is the right word but basically provide an affidavit saying that your spouse or a significant other in your household also authorizes or -- or agrees for you to be able to bring a -- a firearm into the home.

So yeah, there were a couple of those affidavits as well that were part of the process that I just remembered.

Q.   Got you.  So let's talk about a couple of the -- the items there.  The -- you said you submitted character references, correct?

A.   Correct.

Q.   Was it difficult to find people who were willing to attest your character?

A.   Not at all.

Q.   Could you have found more people

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

to attest to your character if you needed to?

A. Absolutely.

Q. And is there any reason to think any of the people who attested to your character before couldn't attest to your character today?

A. There is no reason to believe that.

Q. Do you see that requirement as onerous?

A. I do not.

Q. -- for our Constitution?

A. I don't see anything wrong with it.

Q. Okay. And --

A. Although --

Q. Are you --

A. -- I might add, that because it was easy for me, doesn't mean it will be easy for everyone and anyone because there is the point that if -- let's say someone -- and I'll use the case of Nassau County, which again shows you the whole disparate process that exists. In the case of Nassau County, it has to be a Nassau County resident that is your reference.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

So let's say I didn't know four people in Nassau County because I'm new to Nassau County, I haven't built community yet. And therefore, because these four reference requirements is in place, it could be onerous for someone who is not as connected or as established in the community. So perhaps, something more general, like a -- and I think this is how New York City does it, something more general like a New York State resident rather than a county specific resident would be less of an imposition on -- on -- on one's rights to be exercised here.

Q. But this is -- that would be another hypothetical person, not you. Correct?

A. Correct. Probably there's more people like that than there is me.

Q. And do you know, that requirement that the person, given the reference being Nassau County, do you know if that's a Nassau County requirement or a state requirement?

A. I believe it's a Nassau County requirement, not don't -- as not in -- as in Nassau as the only county that has it. But again, I don't believe New York City has that requirement. They don't require someone living in the Five Boroughs.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

It could be a Nassau resident, a Westchester resident, anyone that resides in New York State.  So it's my position that Nassau County should actually do what New York City is doing and make it broader.

MR. THOMPSON:  Everyone, can you hear me?

THE WITNESS:  Now we can.  Were you saying something before?

MR. THOMPSON:  No, I didn't say anything.  I was just listening to you give your response and -- and cut out after a while.  But I think, because you all froze, I think the problem was on my end.  But seems like it's working now.  So -- so let's keep going.

BY MR. THOMPSON:  (Cont'g.)

Q.  Similarly, the requirement to disclose your spouse and your -- and the people who live with you, at that time, did you live with anybody other than with your spouse?

A.  My children.

Q.  And so you disclosed their names and contact information in connection with the application, correct?

A.  I believe the requirement was for

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

disclosing adults in the household, if I'm not mistaken.  And so my wife was the only adult.

Q.   Did you disclose that there were minor children in your house?

A.   I believe I did as well.  I believe it was part of what had to be disclosed.  But I don't know if names had to be given, just that they were minors, if I recall.  That was a couple of years ago.

Q.   Yeah.  Did you by any chance save a copy of your paperwork from back then?

A.   I wouldn't know where to put my hands on it.  I wish I could because I tried looking for it.  But it was turned in.  So you said a copy.  Yeah, I don't recall saving a copy, which is my -- to my chagrin, but yeah.  I don't think I have that.

Q.   Understood.  And you said that the disclosure regarding your spouse indicated that the spouse could approve or not approve of the -- the firearms application.  Is that correct?

A.   Correct.

Q.   Do you know is that dispositive meaning, you know, if the spouse says no, they don't want it, does that mean that you can't get the

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis application?

A.   I don't know that to be a hundred percent the case, but I would imagine it would heavily inform the decision making of the authorizing entity.

Q.   But the licensing officer could grant the application even if the spouse said, no, I don't think you should.  Right?

MR. PORTER:  Object to the form of the question.  You can answer.

A.   I can only speculate on that, on what they could do.  I -- I mean, it -- it's a discretionary process to some extent.  Your paperwork is there, but at the end of the day, you know, it's a human being that's making decision on approving or disapproving.  So who knows if someone had domestic violence in their background or childhood, that might weigh a lot.  You know, in the case of where that wasn't the case, you know, then it might not.

Q.   Doesn't that make sense to talk to the person's spouse or domestic partner is -- isn't that person going to know a lot about the applicant?

A.   Well, if -- if a disagree -- if a

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis -- if a -- if a -- if consent was withheld, then yes, it would make sense absolutely to talk to the person and found out why they were withholding.  One shouldn't go by just a piece of paper because, you know, that could be -- it could be something vindictive happening there in the relationship.  You never know.

So yes, it -- it -- it would make sense to have a conversation, but I don't -- again, I don't know what the county's process is when they get that paperwork in, how do they treat it and who do they feel the need to speak to beyond the references provided.

Q.    And when you -- when you applied, was your application ultimately granted?

A.    Yes.  You're looking at it, the license.  It's on the screen.

Q.    And was -- and your application was granted by Nassau County, correct?

A.    Yes.

Q.    Did the state police have any role in making that decision?

A.    I don't know.

Q.    Are you aware of any role that

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis the state police had in making that decision?

A.  I'm not.

Q.  And so, your license expires on -- on June 30th, 2026, correct?

A.  Yes.

Q.  And at that point it'll have to be renewed.

A.  Yes.

Q.  So, what's your understanding of the renewal process?

A.  So another application, physical application, another fee and that should be it.  I've already taken the course -- to concealed carry course.  That's a one-time requirement, the same one I mentioned earlier, the sixteen plus two course. And for renewal, I believe that would be it.

Q.  And -- oh, I'm sorry.  Don't let me talk over you.

A.  No, I -- I -- if I'm not mistaken, that would be -- be it because all the other records are there.  They have my fingerprints if they want to do another background check or whatever, which I imagine they would, you know.  So that's -- that's all that would be required on my end

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis is the application and a fee.

Q.   So do you know -- would there be an in-person meeting required in connection with the renewal?

A.   I -- I'm not sure.

Q.   Do you know if there would be character references required in connection with the renewal?

A.   I don't think so.

Q.   Do you know -- would you have to resubmit the names of family members and cohabitants in connection with the renewal?

A.   I don't think so.

Q.   And when you were given this -- or sorry, withdrawn.

This -- the permit that was issued in March of 2021, was there a good moral character requirement at that time?

A.   What do you mean by that?

Q.   Do you know if in 2021 a licensing officer was required to find that an applicant has good moral character?

A.   You said prior to 2021?

Q.   In 2021, prior to the C.C.I.A.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   I don't -- I don't know what the process was prior, only once I started pursuing it. Because -- and then -- that was a first-time experience for me.

Q.   And your license has been amended since the C.C.I.A., correct?

A.   Yes.  Or since wait -- since Bruen.  I'm not sure what time period you're using to delineate when that was.  But it was post the Bruen decision, that's when I went and got my new license, and I think C.C.I.A. might have been after that.

Q.   Yeah, sure.  So maybe I can help. I'll -- I'll represent that the C.C.I.A. was signed by the Governor on July 1st, 2022, and most of the relevant provisions went into effect on September 1st, 2022.  And so have you had an application granted after that?

A.   Well, if you want to count the upgrade of my -- of my license from premises to concealed carry, then I guess you would say -- I would say yes in that case because it is two different licenses.

Q.   And so there was a good moral character requirement at that time, correct?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.    When I did the upgrade you're talking about?

Q.    Yes, when you had the restrictions removed then to get the concealed carry?

A.    Trying to remember if that was part of the paperwork.  I want to say yes, but I don't remember a hundred percent.

Q.    Okay.  Do you understand that you were found to have good moral character at the time that you were issued the concealed carry permit after Bruen?

A.    Yes.

Q.    Do you have good moral character?

A.    Absolutely.

Q.    Do you have any reason to think that you wouldn't be found to have good moral character when you renew the license?

A.    Not at all.

Q.    And will you have to do a training course in connection with the renewal?

A.    No.

Q.    All right.  So do you think that the renewal process is onerous or unconstitutional?

A.    No.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   And isn't it -- would you agree that a person's circumstances can change in three years, and it may make sense to check into them?

A.   Yes.

Q.   So you're challenging the good moral character law requirement in this lawsuit, correct?

A.   Yes.

Q.   And is that on behalf of yourself or on behalf of others?

A.   Collectively.

Q.   Are you part of the collective?

A.   Well, I don't have the same challenge in the sense of having my character called into question.  But I'm a part of a collective of black men, black people, people of color, who tend to have onerous restrictions placed on us by the laws.

Q.   Understood.  But you're not a part of any African American organization that's a party due to this case, correct?

A.   No.  Wait, I'm -- I'm not sure I understand the question.

Q.   Sure.

A.   You already know I'm part of --

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis of NAAGA.  Are you talking about aside from the National African American Gun Association?

Q.   So, my question's a little different.  Let me try to rephrase it.  So you're a part of the National African American Gun Association.  But is that organization a plaintiff in this case?

A.   No.

Q.   And are you a part of any African American gun club or gun organization that is a plaintiff in this case?

A.   No.

Q.   So I guess the question is, when you challenge the good moral character requirement, are you doing it on behalf of yourself or are you doing it on behalf of other people it'll be subject to?

A.   I -- I mean, my answer is still the same.  I -- I -- I see myself as part I -- I don't -- I don't distinguish myself from being a part of the other people that are being impacted just because my particular character is in order.  So in other words, I -- I don't see myself as any different from anyone else who is having this requirement

NYS Rifle v Steven James - 10-24-25 - Wayne A. Francis imposed upon them. Nowhere in the Second Amendment does it say that you have to prove good moral character in order to be able to exercise your right to become a ow -- a gun owner.

And again, if I'm of good moral character, it still doesn't make me any better than someone else who has the requirement imposed upon them. I just happen to be an exemption in a sense.

Q. Sure. So a couple questions for that. You said the Second Amendment doesn't involve good moral character, but it does say that people carrying weapons should be well-regulated, doesn't it?

A. It does.

Q. Doesn't that reg, you know, well-regulated language involves making sure that the people who are carrying weapons are law abiding responsible people?

MR. PORTER: Object to the form of the question. You can answer.

Q. And just to be clear, do you believe that Nassau County in its licensing process applies it in a discriminatory fashion?

A. Could you rephrase the question?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   Sure.  Sorry.  Do you believe that Nassau County has been racially discriminatory in the way that it administers handgun licensing?

A.   No, not that I could prove.

Q.   And do you have any reason to believe that the New York State Police is racially discriminatory in any aspect of its involvement in pistol licensing?

A.   Not that I can prove.

Q.   So, I'll represent to you that under New York law, good moral character is defined as meaning, quote having the essential character, temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger one-self or others.  Does that sound right?

A.   Yes.

Q.   And so that's basically a question of dangerousness, correct?

A.   Of what?

MR. PORTER:  Object to the form of the question.  You can answer.

A.   I didn't hear the last word.

Q.   Dangerousness.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

MR. PORTER: Object to the form of the question. You can answer.

A. Could you just rephrase the whole question again?

Q. Sure.

A. Restate, not rephrase.

Q. So the -- let me see if I can summarize a little more. So the good moral character standard is really about finding whether someone is potentially dangerous -- is potentially -- sorry. I just fell all over myself there. Withdrawn.

The good moral standard -- character standard is about finding whether the applicant is potentially dangerous, correct?

MR. PORTER: Object to the form of the question. You can answer.

A. I -- I actually don't necessarily agree with that because it's -- it's -- that's kind of broad and it's -- it's presumptive as well, in my opinion. That's not like a cure all, so to speak, way to be able to determine someone's eligibility, so to speak. There's more than their character that has to go into play in the scenario.

Q. Can you explain to me a little

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
more what you mean by that?

A.   But so overall, right, there's -- there's a whole lot of steps, requirements, expectations from fees to paperwork, to affidavits to, you know, a class, all -- all those various things collectively make up what a worthy and well qualified candidate is.  If you pluck one thing out and say this thing is the thing that is supposed to be able to determine whether they're eligibility or whether they're eligible or of good enough repute to bear a firearm or not, I don't think it's that one thing in isolation.  I think it's a combination of things that have to be considered.

Because also, I mean there is a possibility that again, similar to what I -- my testimony earlier, where someone just may not have the community or not have the network in order to be able to find enough people to be able to speak to that character.  Does that mean that they don't have good character just because they don't have a network?

So, you know, you -- you -- you -- you can't just put it all in this sort of like, catchall bucket and make it seem like, oh, if you can't find

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

four people that'll speak to your character, then you must be bad.

Q. Got you. But the -- the basic question of whether this person has the essential character temperament and judgment necessary to be entrusted with a weapon and use it only in a manner that does not endanger oneself or others, isn't that relevant to the question of whether someone should have a gun license?

A. It's relevant. I was just saying it's not a -- a catchall. It is not something that, let's say that should be weighted necessarily more than the other things. It's a combination of things that would need to be considered.

Q. Got you. And is it your understanding that under New York law good moral character question is just a part of the process?

A. Yes.

Q. And would you agree that some people don't have the essential character temperament and judgment necessary to be entrusted with a weapon and to use it only in a manner that does not endanger oneself or others?

A. Yes.

NYS Rifle v Steven James - 10-24-25 - Wayne A. Francis

Q. Would you agree that those people shouldn't have guns?

A. It's not my decision to make, really.

Q. Sure. But would you agree that people who don't have that character temperament or judgment should not have guns?

A. There might be exceptions on other considerations. I don't know if again, I would make a -- a blanket statement because I -- I imagine there's people out there that by that strict definition, one could say easily, yeah, they should be omitted, but then if it's at the expense of sacrificing their rights, then I don't know if it's necessarily worth it to just jump all in with that.

Q. And just to be clear, this is about potential other people rather than you personally, correct?

A. Correct.

Q. And do you have any reason to think that the good moral character provision would prevent you from ever having a license?

A. I do not.

Q. And is there ever any reason to

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

think that the good moral character provision will impact you in any way?

A.   No.  Other than it being another requirement that is being imposed that could potentially -- if someone was to look at a situation subjectively, you know -- you know, that could always be a possibility.

Q.   And so when the licensing officer is trying to figure all this out, does it make sense for the licensing officer to meet with the applicant in-person?

A.   Yes.

Q.   Do you think that's unconstitutional?

A.   To meet with the person?

Q.   Yeah.

A.   As part of the licensing requirement?  No, I don't think that's necessarily unconstitutional.

Q.   And does it make sense for the licensing officer to be able to ask follow up questions if there's something in the application that they don't fully understand?

A.   Yes.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   All right.  So, let me -- I'd like to ask a little bit about the training requirements in the law.

A.   Okay.

Q.   You said that you are a certified instructor, correct?

A.   Yes.

Q.   And you teach the course, the -- the New York State course, correct?

A.   That is right.

Q.   Can you describe the training course a little bit for me?

A.   Okay.  So, the course is -- it's -- it's sometimes referred to as the eighteen hour, sometimes referred to as the sixteen plus two.  Some just call it sixteen, you know.  But it's all essentially the -- the D.C.J.S. course and curriculum that has to be approved by the local police department, in my case, N.C.P.D., prior to being able to administer it, where you have to turn in your -- your curriculum, your certificate, your N.R.A. credentials, everything.

So the course in and of itself is a two-day course because it's eighteen hours, so you

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

have to spread it -- and some do it more like, you know, in the evenings or whatever over multiple days. But the easiest way to do it is a Saturday and a Sunday from nine to six.

There's sixteen hours of classroom that covers Article Four hundred, Article Two sixty-five, suicide prevention, engagement with law enforcement, nomenclature and architecture, firearms, safety principles, marksmanship. Range safety is the other two hours when they say sixteen plus two. The two hours is range safety education, as well as live fire to allow someone to demonstrate the application of the information that was taught in the classroom. So they would have to fire approximately, give or take twenty rounds and four to five rounds of that need to fall within a certain area.

The -- the target that's used is generally the same F.B.I. qualification target. That's standard. And yeah, once somebody scores at least eighty percent or above on the tests, as well as meet the live fire qualification, then they're able to be certified by an N.R.A. certified instructor.

Q. And do you teach both halves of

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
the course, the classroom and the range part?

A.   Well, it's not a half.  It's more
of a sixteen and two, which is like what ninety ten.
But yes, I -- I -- I do both.

Q.   Okay.  Sorry, both -- both
portions of the course.

A.   Uh-huh.

Q.   And can you tell me a little bit
about the curriculum that you cover -- the topics
that you cover in the classroom portion?

A.   I just did.  Those were the
topics that I were running down suicide prevention,
Article Thirty-five, marksmanship, architecture of a
firearm, those are the topics that I just -- I've
learned.

Q.   And do the topics include a
discussion of the New York State Firearms laws?

A.   Yes.

Q.   And do they include a discussion
of the Sensitive Places laws?

A.   Yes.

Q.   Can you talk to me a little bit
about how you teach those issues?

A.   Well, let's start with -- well,

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

first of all, I have a -- a PowerPoint deck that I use for the trainings.  It's a -- again, it mirrors the curriculum that was approved by the state.  So, it's the exact same content that I spread out over the course of the two days.  And in the case of the sensitive places, I have the full -- arguably the full listing or -- or of all the sensitive places listed on about two to three slides in the deck.  And we go over them one by one, you know.  And when questions come up about, well, why this place versus that place and you know, we -- we have the conversations.

But essentially, we cover all the sensitive places from public transportation to houses of worship with the exceptions that were later modified, you know, Times Square -- you know, all the places that are considered sensitive or restricted, schools, et cetera, we go over all of that.

And then in regards to the New York State Laws, that's also covered.  We do the renewal process, the application process, Article Two sixty-five, Article Four hundred are -- are -- the -- the -- the different laws specifically as it relates to the application process.  And how one goes about,

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

whether it's a new application or renewal, we actually parse it out to make it clear for people because some people may already be owners and just looking to renew.

And as I understand it, when you're renewing, they want you to take the course as well. So that way, everybody is kind of wrapped in, not just people who are newly applying for the first time. And so safety education, obviously is a very important thing that I'm a proponent of, and I'm happy to play a part in making sure we have responsible owners out there.

Q. Sure. So do -- couple of quick follow up questions. Do you also teach the -- the vehicle storage laws?

A. Yes. That's part of it, storage. There's a whole piece on the different forms of storage. What I was sharing with you -- with you was not an exhaustive list. Because again, it's two days of training. I was giving you a general overview. But absolutely, we cover all the different forms of storage. Not just vehicle, but you know, home safe, cable locks, trigger locks, biometrics, you know, we go over it all.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.    And you mentioned a PowerPoint deck.

MR. THOMPSON:  Can I -- can I request and -- and from -- from you, Jay, a copy of the PowerPoint deck and any other materials that you give out to your students?

MR. PORTER:  Yes.

BY MR. THOMPSON:  (Cont'g.)

Q.    So, I'm going to show you a document here as soon as I can get Microsoft Teams to do it.  And do you -- let me know when you can see it.

A.    I can see it.

Q.    All right.  Do you recognize this?

A.    Yes, I do.

Q.    Is this your page from the usconcealedcarry.com site?

A.    Yes, it is.

Q.    And so you have been certified with the U.S.C.C.A. since May 1st, 2021, correct?

A.    Correct.

Q.    Can you tell me a little bit about what went into getting that certification?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   So with the U.S.C.C.A., I had to take a -- a course as well, a U.S.C.C.A. instructor course.  Took it in Upstate New York.  It was a full -- was it one day or two day?  I'm trying to remember how long it was.  I think it might have been a two day as well.  Well, yeah -- I think it was a two-day training if I'm not mistaken.

And it involved a lot of the same things that the current curriculum involves, in regards to safe handling and use of firearms, range safety.  There was basic instruction as far as how to teach the course, and then there was a live fire requirement as well, as I recall, as part of this instructor course.

Q.   And is that a separate certification from your -- your N.R.A. instructor certification?

A.   Yes.

Q.   And so this is -- I see the -- the symbol here, you've got the Diasporans Firearms Club -- the Firearm Club, sorry.  Is that related to Diasporans Four Defense L.L.C.?

A.   It was.  The Diasporans Firearms Club is a club that I started in 2021.  But I've

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

since have stepped down as President, but I'm still a member of the club.

Q. And does it continue even though you're no longer the president?

A. Yes, it does.

Q. So you are a five-star instructor, correct?

A. That I am.

Q. And I'm scrolling down to page two. I see a current class available Saturday, October 25th, 2025, nine a.m. So are you going to be teaching this course tomorrow morning?

A. No, that class was actually canceled, and I never got around to canceling on the website. I didn't have people signed up for it on the U.S.C.C.A. website anyway, so I forgot to close it there.

Q. Got you. But will you be teaching this course again soon?

A. I will, I plan to teach it in November.

Q. And when's the last time you taught?

A. Last month. September. Yeah,

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis September.

Q. And so scrolling down, we have -- I'm down on page six. These are reviews of your courses, correct?

A. Correct.

Q. And they are a bunch of five-star reviews mostly or I think all of them, correct?

A. Correct, yes.

Q. So I'm down at the bottom of page nine and the top of page ten. And -- actually, wait. Am I in the right place? Sorry. Give me a moment. Sorry. Give me a -- give me just a second to find the part that I wanted to ask about.

A. Okay.

Q. Oh, here it is. Sorry. The bottom of page seven and the top of page eight, the review by Calixto, P. (phonetic). She says --

A. It's a he.

Q. Oh, he says, sorry, apologies. And there's a -- a bit that's cut off here by the chat bubble and the page break. But he writes, that they challenged you on the material to enforce the training lesson is great. Handouts were given to learn more at home and study for the next day. By

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

the time it's time to take the test, you will pass it.  Or sorry, by the time it's take -- time to take the test, you feel confident that you'll pass it.

So can you tell me about the handouts that you give in addition to the PowerPoint deck?

A.    So, D.C.J.S. allows a lot of flexibility as it relates to how the course is instructed, meaning you can -- as long as you follow the curriculum that they require, you can add whatever supplemental materials that you want.  You can pull from other curriculums, such as the N.R.A., basic pistol curriculum, the U.S.C.C.A. home defense and firearm fundamentals curriculum.

So ultimately, you -- you just have to follow the -- follow their blueprint, so to speak. But then how you ultimately execute it is up to you. As far as, you know, making -- just making sure that the content is -- is accurate, complete and appropriate.

So I -- in order to make my class appealing and to also give people good value for the class, I have a lot of supplemental handouts, which I know you're going to ask for, so yes, I'll provide them to Jay, that I've compiled from my various walks

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

of life, you know.  So, it comes from, you know, various public sources.  It comes from just research that I've done.  It comes from the Nassau County website, as far as the Nassau County Pistol Division and New York City Pistol Division websites.  Yeah, so that's what is -- those handouts mostly encompass.

Q.   And do you think that the curriculum and flexibility is a good one?

A.   Yeah.  I -- I think it is.  As long as again, people are -- are following it, you know, and -- and making sure that people get everything that the state expects them to get, I think it's important to have structure.  So that's a good guideline.

And -- and the flexibility allows people to introduce additional bodies of knowledge because -- and -- and -- and that's why I do it again, just to make it more enriching, more helpful to people.  So, I'm not just talking about the five safety rules, but I actually have a physical handout that I give them, even before the class.  I send it out in advance.  And then on our first day, I'm like, okay, who -- who knows the five safety rules?  I sent it, so let's run it down.  And of course, many people

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

are not ready.  But by the end of the weekend, they can spit them out, you know, from memory almost verbatim.

Q.   And so that leads into my next question, which is, Calixto writes about how you challenge your students on the material.  Can you tell me how you do that?

A.   Well, there's quizzes intermittently.  I stop during the teaching.  You know, you learn from -- there's a -- there's an actual N.R.A. basic instructor training course that teaches you about teaching techniques that you can use.  And then, you know, I have a bit of pedagogy in my background as well.  So you know, I'm comfortable presenting and speaking in front of groups.

And so, I try to make it a truly didactic experience where I'm not just spinning out or reciting stuff from the slides, but I'm stretching the people.  And when I ask a question and they answer, I was like, well, why is that?  And what are you leaving out?  And okay, you said this, but what about this?  So I think that's what he's talking about in regards to challenging them.

And then -- then of course, there's a

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

test that has to be taken and passed with at least an eighty percent. You don't just sit there and listen and then leave. You know, you have to be able to demonstrate the knowledge, and the test has some nuanced questions on it where if you're not paying attention or you're not -- or you don't understand the distinction that's being made in when physical force versus deadly physical force, for example, could be used, it could trip you up. So we -- we have those kinds of conversations, so that way people are very clear about the implications of Article Thirty-five. Yeah. So I think that's what they're mostly alluding to with that.

Q. And the test that's given, do you design that, or is it designed by somebody else?

A. There's flexibility on that as well. So, we can design our own tests.

Q. And do you design your own tests?

A. Yeah. I've been using the same test since the beginning. So it was -- I'm part of like, an instructors group, you know, and so we share information and resources with each other that we feel works for helping us to be the best instructors we can be.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   And does the test -- well, first of all, can I ask that you include a copy of the test in -- in the material?

A.   Yeah.  That will be part of the material.  Yes.

Q.   As well as any written quizzes.

A.   Uh-huh.  Well, no, the quizzes aren't written.  They're verbal.

Q.   Okay.  And does the test include portions on the New York State Firearms laws?

A.   Yes.

Q.   Do they include portions on the Sensitive Places laws?

A.   I don't recall at the moment if it does.  I don't recall.

Q.   Do you know if -- does it include portions on the vehicle storage laws?

A.   Not necessarily vehicle per se. Because again, we cover all forms of storage, but not specific to vehicle.  What's there -- I recall --

Q.   Does it --

A.   Go ahead.  I'm sorry.

Q.   Oh, no, don't let me talk over you.  And does the test include questions on the

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

licensing and renewal laws?

A.   It does.

Q.   And whether or not it's on the test, do your students come out with a strong understanding of these laws?

A.   That's a very subjective statement, because it's -- it's hard to evaluate how strong an individual's understanding is over the course of just the weekend.  I think I do everything that I can to impart the information in a -- in a very intentional and conscientious and coherent manner.

But that's not to say somebody might not be sitting there and you know, spacing out, you know, after two days of training, you know.  So I -- I -- I don't know if I want to be able to characterize how strong someone's comprehension level is, but everyone does get at least an eighty percent in order to consider passing the course, coupled with having to demonstrate the -- the live fire component accurately in order for me to pass them.

Q.   Sure.  Let me ask the same question a slightly different way.  Do you think your students in general come away with a good

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis understanding of these laws?

A.    I do.

Q.    And that includes the Sensitive Places laws, the Vehicle Storage laws, and the Licensing laws, correct?

A.    Yes.  I go over those things ad nauseam.

Q.    And this -- in the document that we're looking at here, this response to Calixto P., was that written by you?

A.    Yes.

MR. THOMPSON:  And Annette, I realize -- I don't think I ever asked you to mark this.  So can I ask you to mark this Exhibit as Exhibit Four?

COURT REPORTER:  Sure.

BY MR. THOMPSON:  (Cont'g.)

Q.    Great.  So let me go down to page nine.  There's a review of -- from Robert R. from February of 2025 saying, Wayne and Gar -- the class was outstanding.  Wayne and Gary are very knowledgeable and answered all of our questions and we learned so much about the laws and correct use of firearms.  I'm recommending this course to anyone thinking about getting a firearm.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Is that correct?

A.   Yes.

Q.   So what kind of questions do you usually get about the laws?

A.   Well, I mean it can vary from why are they so restrictive to, I mean, laws are the kind of thing, right, that we -- we as -- as just law-abiding citizens, we -- we fundamentally understand and know why they're in place, right?  It's just a question of when it feels like it might be too onerous.

But people, by and large, once they understand and learn what the laws are, it's not a question by and large about why this or why that.  They understand it.  Like, for example, Article Thirty-five, use of deadly physical force, people understand why there has to be certain criteria that are fundamentally met in order to be able to use deadly physical force.  It's not something that stupefies anyone to say, oh, why should it be reasonable for us?  And why should -- you know, I feel fear for my life.  Why can't I just -- you know, no one is going to speculate that.  It shouldn't be some criteria involved with making sure that people

NYS Rifle v Steven James - 10-24-25 - Wayne A. Francis

are accountable to the law.

So by and large, believe it or not, I don't get a lot of questions about why this or why that. Mainly people just want to clarify in regards to -- okay, so if I'm Upstate my renewal is every five years, but if I'm Downstate, it's three years. Why -- why is there a difference if we all live in one state? And that's arguably a question I can't answer because it's a question I have myself. Why is the laws in New York City different from the laws of Nassau County, different from the laws in New York -- Upstate New York, if we're all one state? That's -- that's illogical to most. And -- you know, but people will ask questions like that, you know.

But fundamentally, people understand why -- why the laws are in place and why we must follow them. And so, it's not about, you know, if this -- or -- or -- or why that. It's more about just understanding what regulations and requirements there are to ensure that you stay within the law.

Q. And is that also the case with the Sensitive Places and Vehicle Storage laws?

A. Yes.

Q. So, let me scroll down to -- the

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

page just changed up on me.  Give me just a second. Oh, here we are, page eight.  For some reason, it's page ten in my notes.  But on page eight of this review by Leo M.  He -- he notes, I think this is the last sentence.  The instructor found opportunities to bring levity and humor while presenting very serious content, which allowed participants to manage their anxieties and retain the topics in the curriculum.  I would highly recommend this course to my family and friends.  Correct?

A.   Yes.

Q.   Can you tell me a little bit about managing anxieties for the students?

A.   So if you have never fired a firearm before and it's your first time coming into this type of a training and knowing that at the end of it, you're going to be expected to fire a firearm safely utilizing all the safety rules that you've been taught, as well as the -- the manual training in regards to how to load a magazine, how to be able to discharge that firearm, how to draw safely from a holster.  And just to be clear, we don't require drawing from a holster at the range, but we do go over it in the classroom as part of the curriculum,

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

as you'll see.

So when someone that hasn't done it before, primarily and even if pe -- for people who've done it, you know, knowing that a firearm is -- I'm going to use the -- a general term, quote unquote a deadly weapon that can come with some anxiety for people, you know, because they don't necessarily know what to expect either when you pull the trigger or, you know, they may fear that something could go wrong, which in an environment where there are firearms, yes, things can go wrong, especially if you don't follow the safety rules.

But, you know, I let them know that as long as we do follow the safety rules and that's why I go over it ad nauseam and the -- the, you know, it comes up about four or five times throughout the -- the slide deck to constantly go back and reinforce the safety rules, I try to allay their anxiety by reminding them of the importance of those rules.

And as we're training, demonstrating examples of safety and pointing out any errors that they might be making that they're not conscious of that could compromise safety.  So that way, by the time they get in the range, they're -- you know, I

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis have a hundred percent pass rate as far as people who have qualified at the range.

And I believe it's because of all the effort and the time that we take and put into the classroom portion, so that way, by the time they get to the range and then we also -- you know, we have two people in the range at all times to ensure safety as well. You know, I think by the time they get there and certainly by the time they fire those first couple of shots and get the willies out, you know, they're -- they're usually good after that, you know.

So just -- you know, it's -- it's like anything else, the fear of the unknown or the anxiety of the unknown, when you haven't done something before, whether it's ride a rollercoaster or -- or you know, fire a -- a -- a Glock, you know, you don't know necessarily what to expect. So people get anxious about that and because they want to make sure that they don't mess up or hurt themselves or hurt someone else.

Q. So, one more review I want to look at and then a couple quick questions. And then -- if that works, do you mind if we take a quick lunch break after that?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   Sure.

Q.   I say -- I say quick, I actually don't mean all that quick.

A.   I'm fine.

Q.   So let me go down to page -- are we page twelve -- review by -- I apologize if I pronounce this wrong, Worokya, D. from December 16th, 2024.  And Worokya, D. talks about Mr. Francis and quote his interactive teaching style incorporating real world examples and case studies, which fostered a dynamic and stimulating environment.

Is that correct?

A.   Yes.

Q.   So can you tell me a little bit about how you incorporate real world examples and case studies in discussing the sensitive places laws?

A.   Specific to sensitive places?

Q.   If -- if you can.  Sure.

A.   So -- so we talk about -- let's use Time Square as an example.  So, we'll share -- people know Time Square to be essentially the intersection of 42nd and Broadway.  That's what most New Yorkers know to be Time Square.  However, in the new definition of Time Square, it runs much further

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

south and much further north and east to west, encompassing a much wider footprint.

So you know, in the past I've shown diagram of what we used to know Time Square to be and what it is as part of what is now defined as a sensitive place in order to paint a visual picture, because if I say to somebody, meet me at Time Square, nine out of ten people would probably show up somewhere along 42nd Street, right? Almost nobody would meet me anywhere in the fifties, anywhere in the thirties, right?

And -- and so it's important for people to understand that in spite of what they might believe or know historically to be the geographic areas that encompass the traditional Time Square that by the new measures, it's a much broader defined boundary. So that would be one way.

The other way is asking -- let's say for example, if anyone goes to a church or a faith-based organization. And then if they do, you know, crystallizing it to say, well, just so you know, if you want to be able to carry inside there, and assuming there's no sign posted to say no firearms permitted, in order for you to be able to carry

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

inside there, you have to go to the leadership or the security of that faith-based organization, get permission, have it granted, documented, et cetera, in order for you to be able to legally carry inside that space.

So making it a real-world application if they are someone that attends a faith-based organization, talking them to that process. So imagine, you have to go to your pastor, explain the situation to them. Then then have to submit to you something in writing that you could verify and hold up and say, yes, I'm authorized to carry my pistol on me in there. So just having that as a conversation in -- in regards to a real-world application.

Q. And do you have real world examples or -- or case studies about Vehicle Storage laws?

A. Yeah. We do. And we talk about on the storage, we -- we definitely talk about -- okay, let's say after the range, you plan to go out to eat. What does that look like? Right? And then first of all, actually -- the curriculum also covers the intersection of firearms and alcohol and drugs and -- what is it? It's alcohol and firearms and --

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

what is it?  Alcohol and firearms and -- I'm -- I'm forgetting the other one.  But basically not mixing drugs and alcohol is one of the things.

So I bring it back to that to say, okay, if you're going to hang out at Applebee's or whatever, you can't drink.  Second -- secondly, if it's a restricted place like a bar would be, then you can't take your firearm inside.  So how do you handle that?  What would you have to do?  Excuse me.

So before you even leave the range, you have to secure your firearm in a lockbox in your vehicle, being sure to keep the ammo separate from the firearm for the safety not only of yourself, but of the -- if -- if you were to be pulled over by law enforcement.  So it's for their safety as well.  We talk about that.  And then you know, you go in and you have your meal and proceed on your way.

So having that sort of like, walkthrough of what it would actually take, so they don't think, oh, I could just go have -- throw one back and, you know, get back in my car and it's all good.  No.  I let them know, you know, you -- you might have got stopped for a moving violation, which is a misdemeanor because you changed lanes without

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

signaling.  But if that law enforcement officer finds out you have firearms in the car and now you know -- or you were drinking and you have firearms in the car, you know, you just ratcheted things up because firearms are regulated by the federal government.

And so you know, it's not just city laws, there's state laws, there's federal laws.  You have to make sure you're in compliance with its county laws, you know, you have to make sure you're in compliance with every level of regulation that's in there is part of how we talk about it as well.

Q.   Couple more quick questions and then let's -- and then let's grab lunch.  So do you think that the training requirement is a good idea?

A.   I do.

Q.   And do you think that the training requirement is Constitutional?

A.   I feel like that's a trick question.

Q.   It -- it's a -- it's not a trick, I swear. It's a very straightforward question.

A.   It's not straightforward to answer though because while it's a good idea and it makes sense, it still can represent yet another

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis hurdle or imposition on one to be able to exercise a right that does not come with those restrictions that have been manmade, so to speak, or -- or added later on depending on who is in office.

Q. So do you think that it's not -- do you think that the Constitution forbids any kind of training requirement?

A. Not that it forbids it, but it doesn't specif -- specifically require it. So when you make something that's not overtly stated a requirement, then that's subjective again.

Q. But it talks about a well-regulated militia, right?

A. It does, yes.

Q. And didn't militia members get a lot of training back in the day?

MR. PORTER: Object to the form of the question. You can answer.

A. I imagine so.

MR. THOMPSON: All right. So do you guys want to take -- it's -- what is it? It's twelve forty. Do you guys want to take lunch break and meet up again, what do you guys think, one twenty?

THE WITNESS: Can we do one fifteen?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

MR. THOMPSON:  Sure.

THE WITNESS:  You know how much longer we can expect to go?

COURT REPORTER:  Do you want to go off the record?

MR. THOMPSON:  Oh, yeah, sure.

COURT REPORTER:  Okay.

(Off the record at 12:40 p.m.)

(On the record at 1:16 p.m.)

COURT REPORTER:  We're on the record.

BY MR. THOMPSON:  (Cont'g.)

Q.    Thanks very much.  Mr. Francis, while we were on break, did you discuss the substance of your testimony with anybody?

A.    No.

Q.    All right.  So, I would like to talk a little bit about some of the Sensitive Locations laws that you're challenging.  Can you tell me a little bit about why you're suing over them?

A.    For the same reason I've stated in regards to my belief that the Second Amendment does not impose places that are intended to be restricted.  It's in -- it's fairly loose, if you will, or open right that has been granted.  And once

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

the state starts to cherry pick locations that they believe is to be considered restricted, then that, you know, is an infringement I believe on the right.

Q.   Do you think there's any location where it's Constitutional to prohibit people from carrying guns?

A.   I don't know if it's a matter of necessarily constitutionality per se, but your question is, are there places that guns should not be permitted?  I do believe that there are places that guns should not be readily permissible.

Q.   Got it.  I -- I think it's a slightly different question.  Not a question -- not a normative question of whether there are places where guns should be prohibited, but whether it's Constitutional to prohibit them.  So for instance, do you think it's Constitutional to prohibit people from carrying guns in schools?

A.   No.

Q.   Do you think it's Constitutional for law to prohibit people carrying guns at polling places and elections?

A.   To prohibit them?  No, I don't think it's Constitutional to prohibit them from

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
carrying anywhere that is otherwise acceptable or --
or that they -- the -- the right to carry should
allow them to.

Q.   Do you think it's Constitutional
to prohibit people from carrying guns in courthouses
while court is in session?

A.   No, because people carry firearms
into these places for all kinds of reasons,
right?  So these are very broad-based questions, and
it's not taking into consideration the nuances
because it's not -- for example, a -- a law
enforcement officer, a parole officer, probation
officer, you know, they certainly would be considered
acceptable and then someone who's licensed to carry
should also have the same right.

Q.   So -- fair point.  Let me clarify
the question a little bit.  Do you think that it's
Constitutional to prohibit people who are licensed to
carry -- to carry guns in any of these places,
schools, polling places and courthouses?

A.   No.

Q.   Do you think it would be
disruptive to the things that go on in these places
to have guns in them?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

MR. PORTER:  Object to the form of the question.  You can answer.

A.　If they were no longer concealed, yes.  But are we talking about concealed carry or are we just talking about people doing whatever?

Q.　Either one.

A.　Well, whatever is certainly not acceptable, because the whole point of getting trained and understanding what the laws are and what's acceptable and what's not is to also exercise the discretion and the decorum that would be expected to carry.  For example, when I talk to my students, I -- I talk to them about how easily one can go from concealed if they're not careful, to printing or even be accused of brandishing once their firearm is no longer concealed.

And so as long as the firearm is concealed and no one knows you have it, which is the intent, it -- it would not be disruptive because no one would know or have a need to know unless there was a crisis that warranted it coming out.

Q.　Do people ever sometimes find out that someone's concealed carrying without the person carrying intending them to?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A. It can happen.

Q. And isn't it going to scare people if that happens in the context of a school?

A. Well, it depends. Again, if it's someone that's licensed to carry someone that's a law enforcement officer, then I would hope it promotes a sense of safety, not -- not of fear.

Q. And to be clear, all of these questions, none of them are concerning law enforcement officers or security at the locations. They're talking about civilians.

A. Okay.

Q. Does that make sense?

A. It does.

Q. You know, I'll just tell you, I'm like you, I'm a parent. I have three kids who are in school. If somebody else, even somebody with a connection to the school, even if ano -- another one of the dads, but a stranger, somebody I don't know is carrying a gun into my kids' school, I'd be terrified. I'd want --

A. How would you know?

Q. I think whether I know or not, I'd want to stop that.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   Well, we -- we should probably making the distinction also between someone carrying a firearm into a school for some nefarious reason versus someone just carrying it for their own self-protection.

Q.   Sure.  But how does everybody else know what reason someone's carrying a firearm into school?

A.   Exactly.  So there could be absolutely nothing wrong with the reason why they're carrying it other than the personal fear or concern.

MR. PORTER:  Go ahead.

Q.   I guess what I'm asking is, at the point where someone is carrying a gun into a school, doesn't that show a lack of concern with the people around them?

A.   With as many school shootings as we have in America?  Sounds like you can't be too careful.  Not even when you're at a school.

Q.   What are the kids going to think if they see somebody they don't know with a gun?

A.   That that person hopefully has a right to carry it and they not have --

Q.   I'm not sure -- I -- I'm not sure

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

if that's a distinction that elementary school kids are making.

A.    Perhaps not at the elementary school level, but again, a blanket assumption cannot and should not be made about the intent of why that person's carrying.  And -- and again, we're speculating because there's no reason why anyone should know that the firearm is on the person if they're maintaining it concealed as expected.  If they don't, then they deserve whatever they get after that.

Q.    Let me ask you another question.  Do you think that it's constitutional to prohibit -- to prohibit open carry of guns?

A.    To prohibit open carry?

Q.    Yeah.

A.    That's a good one.  I understand the logic in dense po -- densely populated city such as New York why open carry would not be practical.  And if we're talking philosophically in general, any prohibition that infringes upon the Second Amendment is something that I would think should not happen.  But as far as practicality and -- and where one lives and the circumstances, you know,

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
open carry would not necessarily be a -- a -- a good
practice.

Q. Got it. But I'm -- I'm not
asking if it's a good practice. I'm asking if you
think it's constitutional to prohibit it.

A. No, I don't think it's
constitutional. Wait, I -- I don't think it's
constitutional to prohibit it.

Q. So now you're talking about
people being able to walk into a school or a
courtroom with a clearly visible gun.

A. But we're also talking about a
city where -- that's not socialized to see or
experience that. We don't -- we don't live in a
state for that matter. Not a city, but a state. We
don't live in a state where that's socialized. In
states where it is socialized and it's a normal
practicing thing to see, like when I went to -- to a
range in Texas, for example, I was very surprised
when someone walked into the range with an A.R.
fifteen in their hand and I was ready to duck for
cover. And they laughed at me and -- and -- and was
asking, well, what's the problem? And I was like,
well, he doesn't have his firearm enclosed. And they

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

was like, oh, that's a New York thing.  That's not required here. You know, people do it all the time as long as it's pointing in a safe direction and not loaded.

So my orientation and socialization caused that to be a -- a disturbing sight to me.  But they looked at me as the person that was unusual or -- or sort of out of sorts because I found something wrong, which is a normal everyday practice for them where they live.

Q.    Fair enough.  But in the world that we live in now, if you carry a gun into some places -- actually let's withdraw and let me rephrase the question.

If you carry a gun onto public transportation, for instance, and it's not concealed or people know that it's there, isn't that going to terrify people?

A.    In our current society the way things are in New York, yes, it would.  It -- it could potentially, because people are just not used to seeing that in New York.

Q.    And how are people going to react?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A. They'd be cautious by and large, I would imagine.

Q. Do you think people could run or duck and cover?

A. When someone just walking by minding their own business, not actually pointing it at them or being threatening in any way?

Q. Taking a gun onto the subway?

A. People may be surprised, yes. But if -- if I'm speaking for myself, I'm going to assume if that person is carrying a firearm open, if -- that they have the other -- some kind of right to do so. And I know you're saying law enforcement isn't included in that or security, but that would be my initial assumption, that they -- given what the laws are in New York, that they're authorized to do so. So I -- I -- I personally would not panic or -- or be concerned, but I'm also not unreasonable to think that other people might not do so.

Q. Let me ask, do the other people who don't carry guns have any right to have a space in a school or a courtroom or a subway train that's safe from guns?

MR. PORTER: Object to the form of the

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

question.  You can answer.

A.  I don't know.  Yeah, I -- I -- I take issue with the framing of that state -- question as well when you tie it to the question of safety, because having a firearm in its face does not automatically make it unsafe.  In fact, depending on time and place, it could potentially make it safer.

Q.  Don't many people feel the presence of strangers with a firearm makes a place less safe?

MR. PORTER:  Object to the form of the question.  You can answer.

A.  Not necessarily.  Not less safe.  I don't think so.  That's like saying, you know, part -- you know, someone crashes -- you know, could crash a car tomorrow.  Does that mean a car is less safe than -- than, you know, another means that can be used to kill someone?  We still get in cars every day even though they cause car accidents if driven unsafely.  But a car by and large is not an unsafe vehicle.

So a firearm is not an unsafe tool unless it's used inappropriately or for, as I mentioned earlier, nefarious reason.  People hunt,

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

you know, trap, skit, shooting. There's all kind of safe things that one can do with firearms that there shouldn't be an automatic assumption of an absence of safety just because a firearm is present.

Q. But the nature of a firearm is such that if someone does want to do something nefarious, in your words, they can do it in seconds, right?

A. That is true.

Q. And I want to ask about some of these locations because there are things that go on there that are important. So for instance, at a polling place in an election, if there's a stranger president -- present with a gun, don't you think that's going to affect how people vote and how safe people feel in voting?

MR. PORTER: Object --

A. We're talking --

MR. PORTER: -- to the form of the question. You can answer.

A. If -- if we're talking New York, yeah. But in places where concealed carry, open carry, Constitutional carry are all acceptable, then it's just another day.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q. And similarly, at a courthouse, if there are people in the courthouse, in the gallery with guns, isn't that going to affect how safe the judge feels to make a ruling or how safe the jury feels to make a verdict?

A. We can only speculate on how safe someone feels because of the presence of guns. It depends on their belief and how they view the presence of those firearms a -- and the purpose of them.

Q. Do you think some people would feel intimidated in issuing a ruling if they're a judge or reaching a verdict if they're a juror if there are people with guns present?

A. If there are what people?

Q. If there are people with guns present.

A. It can -- it's a possibility.

Q. Do you think that witnesses might be intimidated if there are strangers with guns present in the gallery and feel like they couldn't give truthful testimony?

A. It's a possibility.

Q. So, let me pull up the

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis document.  Just a moment.  And Mr. Francis, let me know when you can see it.

A.    Okay.  Exhibit Six.

Q.    Exhibit Six.

A.    Uh-huh.

Q.    And let me go down to the next page.  Do you recognize this document?

A.    Is this the same one from earlier?

Q.    No, it's a different one.

A.    I'd have to see more --

COURT REPORTER:  I'm s -- I'm sorry to interrupt, but is this going to be marked as Exhibit Six?

MR. THOMPSON:  No.  I think we've -- I think we've changed the Exhibit order.

COURT REPORTER:  Oh, okay.

MR. THOMPSON:  We've added in at least --

MR. PORTER:  Yeah, I've added the -- hey, sorry.  The confusion is because it's Exhibit Six to a filing that was made.  It's not Exhibit Six to today's deposition.

COURT REPORTER:  Okay.  Thank you.  I

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
appreciate that.

MR. PORTER: But when he said Exhibit -- when he said Exhibit Six, he wasn't asking you to mark it as Exhibit Six for the deposition.

COURT REPORTER: Thank you.

BY MR. THOMPSON: (Cont'g.)

Q. Correct. Thank you, Jay. So Mr. Francis, do you recognize this document? And I can scroll down if it's helpful?

A. Yes.

Q. Is this the declaration that you put in in connection with the recent summary judgment motion?

A. Yes.

Q. And we're on page five. Is that your signature here?

A. Yes.

MR. THOMPSON: All right. And Annette, can I ask this be marked as the -- the next Exhibit in sequence, which I think is Exhibit Five?

COURT REPORTER: Yes. That's why I was confused. Thank you.

MR. THOMPSON: And just to confuse you further, the file name is going to say Exhibit

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Eight.  But it'll be Exhibit Five in our end.

COURT REPORTER:  Now -- now that I know what it is, not a problem.

BY MR. THOMPSON:  (Cont'g.)

Q.   So I'm going to head down to paragraph nine B, which is at the bottom of page three and the top of page four.  Do you see that?

A.   I do.

Q.   So you write, public transportation and transit, including for example, the Long Island Railroad in the New York City subway system.  I ride in the Long Island Railroad at least three times each week for work and intend to continue doing so.  I ride the New York City subway system about once each month to attend business meetings and to travel to New York City for recreation.

So is that still the case?

A.   Yes, sir.

Q.   When's the last time you rode the L.I. double R?

A.   About a week ago.

Q.   And when before that?

A.   The week before that, weekly.  I work in the city.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   And so you go in approximately once a week, is that -- is that right?

A.   Three times a week it says here.

Q.   Okay.  And so is it safe to say that when you take the L.I. double R to the city, you also ride the New York City subway?

A.   Not always.  I -- I work near Penn Station.

Q.   Okay.  So, why do you want to take a gun onto the Long Island Railroad and the New York City subway system?

A.   I don't necessarily want to take a firearm into the subway system or the railroad.  I don't want to be prohibited from taking a firearm if I chose to do so.

Q.   And so if you win this case, would you take a firearm onto the L.I. double R and the New York City subway?

A.   I believe you all call that asked and answered because we spoke about that at length earlier in regards to my intent.  Is -- does -- this case is not affected by my mindset and my decisions around training and waiting until I -- I feel that I'm actually ready for that.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.    So is that a no?

A.    That is a no.

Q.    So, are you familiar with the fact that there was a mass shooting on the Long Island Railroad where six people were killed and twenty-one people were wounded?

A.    When are you referring to?

Q.    It was back in the nineties.

A.    If you're talking about Larry Davis, that case, I'm a little --

Q.    I think -- I think it's a different one.  But given -- given that, would you understand why people wouldn't want guns on the Long Island Railroad?

A.    I can understand why they wouldn't want someone with nefarious intent with a firearm on the Long Island Railroad, yes.  Because it's just as easy if someone licensed to carry legally was there, they could have perhaps prevented that many people from getting killed.

Q.    And there's no way to know a stranger's intent, is there?

A.    There's not -- not.  No.

Q.    And there's no way to know

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

whether a stranger is licensed, is there?

A.    No.  Not publicly, no.

Q.    The Long Island Railroad is frequently crowded, correct?

A.    Correct.

Q.    Can you safely defend yourself with a gun on a crowded train?

A.    How do you define safely?

Q.    Without causing a particular risk to innocent people.

A.    That can't be a hundred percent guaranteed on a crowded train, no.

Q.    And so if someone were to try to defend themself with a gun on a crowded train, there's going to be a danger to innocent people, right?

A.    A danger what?

Q.    To innocent people on the train.

A.    There's a risk that innocent people could get hurt on a crowded train.  Yes.

Q.    Would you ever want to defend yourself with a gun on a crowded train?

A.    If my life was in jeopardy and that of a loved one, then I would want to be able to

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

have that ability to save our lives.

Q.    And similarly, a -- a train is an enclosed space, correct?

A.    Correct.

Q.    At least when -- when it's not in the station, there's no way to get off of it and nowhere to run to.  Correct?

A.    Well, it's relative, because the doors of the cars can open.  And in between cars is a way to egress, but certainly not on a moving train if that's what you're intimating.

Q.    That is.  And similarly, like -- like the L.I. double R, the New York City subway is similarly crowded, correct?

A.    Correct.

Q.    And when it's moving with the exception of potentially of doors at the end of the car, there's no way to run or to escape a moving subway train, correct?

A.    Fair to say, yes.

Q.    And lastly, do any of the Defendants in this case run the New York City subway or the L.I. double R?

A.    You said run it?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q. Operate it.

A. Like as transit employees?

Q. Do any of the defendant -- let me try to rephrase it. Do any of the Defendants in this case oversee or control the operations of the New York City subway or the Long Island Railroad?

A. I wouldn't know that.

Q. Okay. I'd also like to talk a little bit about the Place of Worship law that you're challenging. Can you tell me why you're bringing that legal challenge?

A. For the same as the others, that if there was not a prohibition, I would want to be able to have the right and ability to carry my firearm wherever I go, which would include church if I chose to carry one.

Q. And so what are you hoping to accomplish with this lawsuit in regards to the Place of Worship law?

A. That people not be prohibited or unduly restricted from carrying their firearms to places that they would normally go.

Q. I'm going to show one more document and I've scrolled down a little bit. Mr.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Francis, do you recognize this document?

A.   I believe so.

Q.   And this is the Second Amendment complaint in this case, correct?

A.   Correct.

MR. THOMPSON:  And Annette, can I ask that this be marked as the next exhibit in order, which I think is number Six?

COURT REPORTER:  Yes.

MR. THOMPSON:  Thank you very much.

BY MR. THOMPSON: (Cont'g.)

Q.   So, I am going to go down to paragraph ninety-nine.  Just a moment.  So, here we are at the bottom of page thirty-one and the top of page thirty-two.  So, it says, Mr. Francis is a member of Union Baptist Church place of worship in Hempstead, New York.  He attends church weekly and intends to continue doing so.  Prior to the C.C.I.A.'s enactment, his church permitted worshipers like Mr. Francis to carry handguns concealed.  Mr. Francis is not responsible for security at his church and lacks the authority to designate himself as a person responsible for security.  He would but for the enactment and enforcement of the C.C.I.A., carry

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

a handgun concealed at his church for self-defense.

Do you see that?

A.   I do.

Q.   Is that paragraph correct?

A.   At the time, that's the church I was attending, yes.  But I'm not currently attending that church as of today.

Q.   Are you attending a different church?

A.   Yes, I am.

Q.   And what church is that?

A.   That is Hope City Church in Baldwin.

Q.   Okay.  And can you tell me a little bit about the Hope City Church?

A.   So, it's a small storefront type of a church that's a branch off of a bigger church that has -- is located in Brooklyn.  So, this is the -- the Long Island branch, if you will.  Small church, probably only about twenty, thirty active members.  Pastored by Pastor Tyrone Stevenson.  He's been a clergy leader in Brooklyn for the better part of the past twenty plus years.

And around the time of COVID, they

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

decided to open up a branch in Baldwin.  And subsequent to COVID, you know, it -- it a -- closed down for a little while and then experienced a resurgence within the past couple of years, which was around the time that I became a member.

Q.    And is -- is Pastor Stevenson the pastor of both the Baldwin location and the Brooklyn location?

A.    Yes.

Q.    And is the church affiliated with any larger organization like the National Baptist Convention or Southern Baptist Convention?

A.    I'm not sure.

Q.    So who makes decisions for the church?

A.    The pastor, I would say by and large.

Q.    Is there any board or a body of lay people that also has authority over the church?

A.    There's a group of deacons that are leaders in the church as well, yes.

Q.    And does the church have a policy on guns?

A.    Not a written one that I'm aware

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis of.

Q. Do you know if the Hope City Church permitted concealed carry prior to the C.C.I.A.?

A. My understanding is the pastor is Second Amendment friendly and there was no prohibition in place then or now.

Q. And what's the basis of your understanding that the pastor is Second Amendment friendly?

A. Conversations I've had with him and expressing his interest in taking my class, as well as eventually introducing the training to other members of the congregation.

Q. Any other discussions you've had with him about firearms and the Second Amendment?

A. Just that it's something that is important for people to be able to exercise their Second Amendment right.

Q. Has he ever talked with you about parishioners having guns in the church?

A. No, not directly about that.

Q. Have you ever talked to him about it?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   No, we never got that far in our conversation.  It was mostly about pursuing training for himself and member --

Q.   I'm sorry.  Don't let me cut you off.

A.   I was saying it was mostly -- the conversations were mostly about pursuing training for himself and for members.

Q.   And when I asked you about whether you had spoken with Pastor Stevenson about carrying guns in church, you said not directly.  Have you ever discussed it indirectly or discussed anything similar or related?

A.   No, not -- not in regards to bringing them into the church.

Q.   Have you ever wanted to ask him?

A.   Not necessarily because his train -- his interest similar to mine is more so about training than it is about carrying.  It's about getting licensed and knowing the laws.  So in other words, being armed quote unquote with the information in order to know how to handle yourself and how to navigate a city that has highly restrictive laws.

Q.   If you did ask Pastor Stevenson

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

if you could carry concealed in the church, what do you think he'd say?

A.    I think he would say yes.

Q.    So why not ask him?

A.    Because as we've asked and answered previously, I'm not interested in carrying anywhere.

Q.    Oh, understood.  Sorry.  Let me try to rephrase the question.  If you came to the time when you were confident in carrying a gun, would it burden you or infringe your rights to ask him if it was okay to carry in church?

A.    Would it burden me?  No, it would not be a burden to ask.

Q.    And if he said no, would you respect that decision?

A.    I believe I would.

Q.    So, the church is private property, correct?

A.    Correct.

Q.    And the building and land belong to the Hope City Church rather than to you or to any other parishioner, correct?

A.    Correct.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.   So doesn't a property owner have a right to determine if he wants guns on the property?

A.   Well, it depends on which rights we're talking about.  You're talking about the individual right, then, yes.  But if we're talking about Constitutional rights, then their -- their position may be an in -- infringement on that right.  So that has to be taken into consideration.  It's not like a blanket right so to speak for them to prohibit you if you are permitted by the Constitution to be able to.

Q.   So isn't control over your private property also constitutional?

A.   I would say so.

Q.   And doesn't -- shouldn't that constitutional invite -- sorry.  Let me withdraw.  Let me rephrase that.

Shouldn't that constitutional right of a property owner to control his or her property also mean that they should be able to know and decide if someone carries a gun onto it?

A.   Well, to an extent, because again, an individual right that you are afforded as

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

whether it's a -- a -- a landowner, a homeowner or -- or a private citizen, is second to the broader laws and rights that we all are subjected to in our society, whether it's by the county, the city, the state or the federal government.  Those laws typically tend to supersede our private preferences and desires.

Q.   But if a private property owner says, no, you can't bring guns on my property, that's not the government saying you can't carry guns on his property, right?  That's a private person making that decision.

A.   Correct.  That's the point I was making that that's a private decision for the individual, but we're all subject to laws that are greater than our private preferences.  We're all subjected to the laws of the state, the laws of the federal government, and those are -- they -- those take precedence by and large over one's individual rights.  There's laws that we all are -- are held to.  Not just someone's personal preference or whim.

Q.   So, let me ask a slightly different version of that question.  Is -- is what you're saying that your Second Amendment right to

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis carry a gun trumps the private property owner's right to exclude people from their property?

A.    Yes.   That's what I'm saying.

Q.    And is that the case in -- is that the case in a residence as well as in property that's open to the public?

A.    I would say it's the case in any place, because there are no inherent restrictions in the Constitution that say, you can't carry a firearm anywhere.   That's state determined.

Q.    Would you want other people to carry a gun onto your property without telling you?

A.    Is it their right to do so, I wouldn't have a problem with it.   I wouldn't want to infringe on their right.

Q.    So let me ask a hypothetical question.   Suppose your dishwasher breaks down and you call a repairman and -- to come fix your dishwasher and he wants to bring a gun.   Do you think that he should let you know that he's carrying a gun and ask if it's okay?

A.    I don't -- I wouldn't expect that -- that he should, no.   It's none of my business really.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q. Even in your own home?

A. Even in my own home. I mean, we're talking about concealed carry, right? I wouldn't know that he has it on him. There's just no reason for him to show it to me or expose it. So, there's no reason for it to even come up as a concern.

MR. THOMPSON: All right. If you don't mind, let's take a quick five-minute break. You guys want to reconvene at two o'clock?

MR. PORTER: Okay.

THE WITNESS: Okay.

MR. THOMPSON: Thanks everybody.

(Off the record at 1:54 p.m.)

(On the record at 2:02 p.m.)

COURT REPORTER: We're on the record.

MR. THOMPSON: Great. So I'm about to put up an Exhibit. And Annette, this was not on the initial list, but I sent it to you guys about three or four minutes ago, so hopefully you go -- got it.

COURT REPORTER: I got it.

BY MR. THOMPSON: (Cont'g.)

Q. And let me bring this up. Mr. Francis, let me know when you can see this.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.    Yes, I can see it.

Q.    And do you recognize this?

A.    I do.

Q.    I'll -- I'll represent that this is a P.D.F. of the Hope City Church website.  Does that seem right?

A.    Yes.

MR. THOMPSON:  And Annette, can I ask that this be marked as the next Exhibit?  I think it's Exhibit Seven.

COURT REPORTER:  Yes.

BY MR. THOMPSON: (Cont'g.)

Q.    So, I am scrolling down to the bottom of page three, and there's a -- and there's an entry there that says, security.  Our security team serves as a welcoming, yet protective and active presence in the church, ensuring all members and guests are safe and secure at all services, meetings, churchwide and community events.

Do you see that, Mr. Francis?

A.    I do.

Q.    And can you tell me what do you know about the security team at Hope City Church?

A.    Not much.

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

Q.    Do you know anybody on it?

A.    I've met the head of security.

Q.    And what's -- who -- who is he or she?

A.    I forget his name off the top of my head.  I would have to look it up.

Q.    Do you know how big the team is?

A.    I don't.

Q.    Have you ever discussed firearms with the head of security?

A.    Firearm training, yes.

Q.    And so what was the sum and substance of that discussion?

A.    Pretty much the -- similar to that of the discussion that I had with the pastor to see how I could support their interest in having members of the security team and or congregation trained.

Q.    So, was the head of the security team licensed to carry a firearm?

A.    I -- I'm not sure.  I don't recall specifically if he -- if we discussed that.

Q.    Do you know whether anybody else in the security team was licensed to carry a firearm?

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

A.   I don't personally know that.

Q.   Do you know if anybody on the security team does carry a firearm in the church?

A.   I don't know.

Q.   Did they or anybody else ever ask you to join the security team?

A.   No.

Q.   Would you like to?

A.   It's not an interest of mine.  No, not necessarily.

Q.   If you wanted to join the security team, do you think that they would let you?

A.   I think so.

Q.   And do you know, is there generally a member of the security team present for all the services?

A.   Yes.

Q.   All right.  I think that's about it.  Mr. Francis, is there any other topic you think that we should discuss in order to understand what you're trying to accomplish in this lawsuit?

A.   I believe everything that's been submitted should suffice to cover.

Q.   And -- and is there anything that

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

you said in your previous testimony today that you'd like to correct or expand on?

A.　No.

Q.　All right.　Then I think no further questions from us.

MR. PORTER:　I don't have any questions.　Wayne, we would like to read and sign.　Wayne, I -- I thank you for your time.

MR. THOMPSON:　As do we.

THE WITNESS:　Thanks to you.

MR. THOMPSON:　Thank you for sharing your time with us.

MR. PORTER:　Do you have any -- do you have any questions for Wayne?　Any spelling or anything like that or can I cut him loose?

(The deposition concluded at 2:06 p.m.)

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

STATE OF                )

COUNTY OF               )

I, WAYNE A. FRANCIS, have read the foregoing record of my testimony taken at the time and place noted in the heading hereof and do hereby acknowledge:

(Please check one)

( ) That it is a true and correct transcript of same.

( ) With the exceptions noted in the attached errata sheet, it is a true and correct transcript of same.

X_____

WAYNE A. FRANCIS

Sworn to before me this

_____day of _____, 2025.

X_____

NOTARY PUBLIC

My Commission Expires:

_____

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis

I, ANNETTE LAINSON, do hereby certify that the foregoing testimony of WAYNE A. FRANCIS was taken by me, in the cause, at the time and place, and in the presence of counsel, as stated in the caption hereto, at Page 1 hereof; that before giving testimony said witness was duly sworn to testify the truth, the whole truth and nothing but the truth; that the foregoing typewritten transcription, consisting of pages number 1 to 161, inclusive, is a true record prepared by Associated Reporters Int'l., Inc. from materials provided by me.

ANNETTE LAINSON, Reporter

NYS Rifle v Steven James – 10-24-25 – Wayne A. Francis
        ASSOCIATED REPORTERS INTERNATIONAL, INC.
                    (800) 523-7887

Date:
Case Name:  NYS Rifle v Steven James, et al
Index Number:  22-CV-907
Deponent:  Wayne A. Francis
Deposition Date:  10-24-25
Examining Attorney:  James Thompson, A.A.G.
Dear Mr. Francis:

Please read and make any changes and/or corrections in your testimony and sign the transcript in the presence of a notary public.  Please do so within thirty (30) days.  If you fail to sign the transcript within thirty (30) days, it will be delivered to the appropriate parties without signature.  Return the transcript with corrections, if any, to:

            OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL
            BY:  JAMES THOMPSON, A.A.G.
            28 Liberty Street, 18th Floor
            New York, New York 10005

CORRECTIONS:

_____        Word or phrase: _____
                Corrected to:   _____

_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____
                Corrected to:   _____
_____        Word or phrase: _____

                Corrected to:   _____
_____

Date Signed                     _____
                                WAYNE A. FRANCIS

| | | |
|---|---|---|

**A**

**A-N-T-H-O-N-Y** 12:18
**A.A.G** 3:10,11 164:6,13
**a.m** 1:21 11:3 45:11,12 64:24
  73:16,17 107:12
**A.R** 54:15,18 55:8 134:21
**abiding** 32:23 93:18 116:9
**ability** 20:6 146:2 147:15
**able** 18:18 32:20 57:14,23,24
  57:24 59:8,13 63:7 64:9
  71:21 74:9,11 76:10 79:12
  80:13 93:4 95:22 96:10,19
  96:19 99:22 100:20 101:23
  112:4 114:17 116:19
  118:21 122:23,25 123:5
  126:2 134:11 145:25
  147:15 151:19 154:13,22
**absence** 138:4
**absolutely** 45:10 65:9 81:3
  86:3 90:15 104:22 132:11
**abstract** 79:19,25
**accept** 55:11
**acceptable** 129:2,15 130:9
  130:11 138:24
**accident** 67:14,15 69:4,5
**accidentally** 68:6,7
**accidents** 137:20
**accomplish** 147:19 160:22
**accountable** 117:2
**accounts** 35:12
**accurate** 9:17 109:19
**accurately** 114:22
**accused** 130:16
**acknowledge** 162:4
**acronym** 25:9
**Act** 43:2 44:6,11
**action** 6:14 8:3 54:16,17
  63:5,14 64:10 66:16 70:22
**actions** 64:3
**active** 24:19 149:21 158:17
**activities** 33:10
**actual** 111:12
**ad** 115:7 119:16
**add** 81:18 109:10
**added** 47:4,13 48:2 49:24
  52:20 126:4 140:19,21

**adding** 74:17
**addition** 6:10 7:23 48:6 53:9
  53:18 75:21 109:6
**additional** 10:2 53:4 75:7
  110:17
**address** 11:22 66:9 74:24
  76:2,7 79:10
**addressed** 75:10
**administer** 100:21
**administering** 8:13 9:25
**administers** 94:4
**administrative** 73:23,24
**adult** 26:5 60:25 84:3
**adults** 24:5 25:15,20,23 84:2
**advance** 79:12 110:23
**advocacy** 75:23
**advocate** 76:2
**affect** 20:6 138:16 139:4
**affidavit** 80:11
**affidavits** 80:4,16 96:5
**affiliated** 30:9 150:11
**affiliation** 75:20
**affiliations** 31:5
**affirm** 12:9
**affordable** 25:17
**afforded** 154:25
**African** 31:10 32:8 33:24
  75:20 91:20 92:3,6,10
**age** 17:20
**agency** 73:24
**Aging** 25:10
**ago** 32:19 35:17 52:21 62:24
  84:10 142:22 157:21
**agree** 91:2 95:19 97:20 98:2
  98:6
**agreed** 6:3,15,25 7:6,11,16
  8:4 9:5
**agrees** 71:20 80:13
**ahead** 53:15 54:2 60:23
  113:23 132:13
**aid** 13:8
**airport** 73:5
**al** 164:4
**Alabama** 3:7 12:3 17:22
**alcohol** 123:24,25 124:2,4
**allay** 119:19

**allegations** 42:10
**allow** 74:9,22 101:13 129:4
**allowed** 29:5 118:8
**allows** 109:7 110:16
**alluding** 38:23 112:14
**altercation** 18:8
**amended** 5:18 89:6
**Amendment** 30:12 31:2,7
  74:23 75:24 93:2,11 127:22
  133:23 148:4 151:7,10,17
  151:20 155:25
**amends** 50:5
**America** 132:19
**American** 31:10 32:8 75:20
  91:20 92:3,6,11
**ammo** 124:13
**and/or** 164:8
**Annette** 1:25 13:8 17:2,25
  39:6 40:9,25 44:24 45:2
  65:4,22 73:15 115:13
  141:20 148:7 157:19 158:9
  163:2,13
**ano** 131:19
**answer** 13:14,15,17,22 14:15
  14:22 15:4,7,7 20:6 21:14
  21:20 22:2 53:15 54:3
  60:17,19,20,23 85:11 92:19
  93:21 94:23 95:3,17 111:21
  117:10 125:24 126:19
  130:3 137:2,13 138:21
**answered** 21:19 115:22
  143:21 153:7
**answers** 14:17
**Anthony** 12:17
**anticipate** 67:2
**anxieties** 118:9,14
**anxiety** 119:7,19 120:14
**anxious** 120:19
**anybody** 22:20 23:9 35:3,4,8
  36:20 83:20 127:15 159:2
  159:24 160:3,6
**anyway** 107:17
**apart** 60:12
**apartment** 25:19
**apologies** 108:20
**apologize** 121:7

appeal 63:17
appealing 109:22
appear 16:17
appearance 11:15 64:15 65:7
appearances 3:2 11:6
Applebee's 124:6
applicant 85:24 88:23 95:14 99:11
application 78:8 79:3,9 83:24 84:21 85:2,8 86:16 86:19 87:12,13 88:2 89:17 99:23 101:13 103:22,25 104:2 123:7,15
applied 86:15
applies 93:24
applying 104:9
appreciate 50:17 63:22 141:2
appreciated 27:8
approached 61:5,7
appropriate 9:19,23 109:20 164:10
approval 80:10
approve 84:20,20
approved 33:17 100:19 103:4
approving 85:16
approximately 16:12,14 30:18 38:8,10 67:24 101:15 143:2
approximation 68:3
Arant 3:4 12:2
architecture 101:9 102:14
area 75:23 101:17
areas 122:16
arguably 103:7 117:9
argue 74:12
Argus 70:18
ARII 8:13
arm 62:22
armed 152:22
array 38:7,7
arrested 18:20
arrests 80:7,8
Article 101:7,7 102:14

103:22,23 112:12 116:16
aside 92:2
asked 15:8 39:11 40:18,20 42:7 50:23 51:2,3 61:9 115:14 143:20 152:10 153:6
asking 20:14 42:23 43:11,13 43:15 44:15 50:24 51:2 54:22 69:17 75:15 122:19 132:14 134:5,5,24 141:4
aspect 94:8
assault 54:20,24
assaulted 18:9
assist 25:24 32:20
Associated 8:12 163:10 164:2
association 1:5 25:10 29:24 29:24,25 30:4 31:10,20 32:9 70:8 75:21 92:3,7
assume 13:22 59:17 136:12
assuming 122:24
assumption 133:5 136:16 138:4
attached 162:6
attempt 74:19,25 75:25
attend 142:16
attending 149:7,7,9
attends 123:8 148:18
attention 112:7
attest 80:23 81:2,6
attested 81:5
attorney 3:9 8:24 11:19 13:2 15:3,4 20:21 22:18 27:24 60:18 65:11,11 76:15 164:6 164:12
attorneys 11:5,15
Audio 14:3
authority 148:23 150:20
authorized 123:13 136:17
authorizes 80:12
authorizing 85:5
automatic 48:11 49:9 55:9 138:4
automatically 137:7
available 107:11
Avenue 3:6 12:3

aware 28:23 29:7 30:5,10,12 86:25 150:25

**B**

B 5:2 142:7
back 5:9 19:12,13 24:20 45:13,16,17 51:16,19 53:9 53:18 62:6 64:17,25 65:15 73:7,18 84:12 119:18 124:5 124:22,22 126:17 144:9
back-office 27:17
background 74:3 78:21 80:6 80:7 85:18 87:23 111:15
bad 97:3
Baldwin 23:23 149:14 150:2 150:8
Baptist 148:17 150:12,13
bar 6:12 8:2 124:8
base 45:25
based 15:4 71:16 122:21
basic 97:4 106:12 109:13 111:12
basically 25:16 32:11 33:3 46:12 49:23 71:10,12 78:10 80:10 94:19 124:3
basis 151:9
bayonet 55:21
bear 9:6 96:12
bears 72:8
becoming 32:21 75:22
bedroom 52:12
beginning 13:16 112:21
begun 6:20
behalf 65:12 91:10,11 92:16 92:17
belief 127:22 139:9
believe 16:10 21:11 35:18 38:22 48:5 51:12 52:5,20 57:11 75:19,25 76:23 78:15 78:18 80:2 81:7 82:21,24 83:25 84:6,7 87:17 93:23 94:2,7 117:3 120:4 122:15 128:3,4,11 143:20 148:3 153:18 160:23
bell 71:2
belong 153:22

**benefit** 59:4
**best** 13:14,15,18 14:12 15:5
  112:24
**Beta** 28:16
**better** 17:21 24:8 26:24 64:6
  64:8,8,9 93:7 149:23
**beyond** 40:21 51:2 56:22
  86:13
**big** 59:4 159:8
**bigger** 149:18
**biometrics** 104:24
**Birmingham** 3:7 12:3
**birthday** 23:7
**bit** 23:19 32:16 38:19 60:15
  61:11 77:14 78:7 100:3,13
  102:9,23 105:24 108:21
  111:14 118:13 121:15
  127:18,20 129:18 147:10
  147:25 149:16
**black** 54:16 58:13,18,22 67:4
  91:17,17
**blanket** 98:11 133:5 154:11
**block** 61:12 71:18
**blue** 54:16
**blueprint** 109:16
**board** 150:19
**bodies** 110:17
**body** 44:19 150:19
**bolt** 54:16,17
**borne** 10:5
**boroughs** 25:15 82:25
**bottom** 39:10 42:16 108:10
  108:17 142:7 148:15
  158:15
**Boult** 3:4 12:2
**boundary** 122:18
**box** 59:4
**boxes** 57:20 58:2,7
**Bradley** 3:4 12:2 22:16,19
  36:13,20 41:23 75:17 76:22
**branch** 149:18,20 150:2
**brandished** 66:23
**brandishing** 130:16
**BRANDON** 1:6
**break** 14:6 15:10 45:9
  108:22 120:25 126:23

127:14 157:11
**breaks** 156:18
**bring** 77:15 78:22 79:8 80:13
  118:7 124:5 155:10 156:20
  157:24
**bringing** 147:11 152:16
**broad** 95:20
**broad-based** 129:10
**broader** 42:6 43:10,15 83:5
  122:17 155:3
**broadly** 74:5
**Broadway** 121:23
**Bronx** 72:11
**Brooklyn** 16:9,11 24:21 61:2
  149:19,23 150:8
**Bruen** 46:11 49:19,24 74:9
  74:16,20 89:9,10 90:12
**brushed** 61:13
**bubble** 108:22
**bucket** 96:25
**building** 61:2 153:22
**buildings** 25:19 28:7
**built** 82:4
**bunch** 108:7
**burden** 153:12,14,15
**business** 31:18 32:20 33:8
  34:8,10 136:7 142:16
  156:24
**button** 68:7
**buy** 74:2

---
**C**

**C** 4:2
**C.C.I.A** 88:25 89:7,12,14
  148:25 151:5
**C.C.I.A.'s** 148:20
**C.D** 18:23
**C.O.O** 26:19
**cable** 104:24
**Calixto** 108:18 111:6 115:10
**call** 14:25 15:6 18:10 21:12
  26:12 46:2 100:17 143:20
  156:19
**called** 25:7 32:14 69:25
  70:18 72:3,12,17 91:15
**calling** 18:9 64:11

**camera** 17:15 65:15
**can't** 116:23
**cancel** 46:6
**canceled** 107:15
**canceling** 107:15
**candidate** 96:8
**CAPACITY** 1:12,14 2:5
**caption** 163:5
**car** 67:14 69:5 124:22 125:3
  125:5 137:17,17,20,21
  146:19
**care** 25:21,24 67:22
**careful** 130:15 132:20
**carries** 154:23
**carry** 4:7 29:14,18 32:24
  33:15,21 39:16 40:4 43:2
  44:5,11 46:3,5,13,14,18
  49:12,17,18,24 51:17,23
  56:17,25 57:4,12 58:4 66:3
  66:5 74:11 75:6 87:14
  89:21 90:5,11 122:23,25
  123:5,13 129:3,8,15,20,20
  130:5,13 131:6 132:24
  133:15,16,20 134:2 135:13
  135:16 136:22 138:23,24
  138:24 144:19 147:15,17
  148:21,25 151:4 153:2,13
  155:11 156:2,10,13 157:4
  159:21,25 160:4
**Carry.com** 5:14
**carrying** 58:14 59:7 62:12
  63:18 93:13,18 128:7,19,22
  129:2,6 130:24,25 131:21
  132:3,5,8,12,15 133:7
  136:12 147:22 152:12,20
  153:7,11 156:21
**cars** 137:19 146:10,10
**case** 12:4 13:25 21:6 22:7
  35:4,9 36:21 37:2,6,18
  38:25 40:15 61:24 63:16
  65:24 68:23 69:9,25 70:6
  70:14,17 71:16 72:11,16
  74:9 76:7,19 81:21,23 85:4
  85:19,20 89:22 91:21 92:8
  92:12 100:20 103:6 117:22
  121:11,17 123:17 142:18

143:17,23 144:11 146:23
147:6 148:5 156:5,6,8
164:4
**casual** 63:8
**catchall** 96:24 97:12
**caught** 19:16
**cause** 137:20 163:4
**caused** 135:7
**causing** 145:10
**cautious** 136:2
**celebrating** 23:7
**centers** 26:6,7
**Central** 70:2
**certain** 62:11 73:6 101:17
116:18
**certainly** 62:16 63:22 75:2
120:10 129:14 130:8
146:11
**certificate** 5:14 100:22
**certification** 7:8 105:25
106:17,18
**certified** 100:6 101:23,23
105:21
**certify** 163:2
**cetera** 103:19 123:4
**chagrin** 84:17
**challenge** 58:21 73:7 77:14
91:15 92:15 111:7 147:12
**challenged** 108:23
**challenges** 43:3
**challenging** 37:6 58:12 91:6
111:24 127:19 147:11
**chance** 84:11
**change** 49:22 50:10 91:3
**changed** 50:12 51:18 118:2
124:25 140:17
**changes** 164:8
**changing** 72:21
**chapter** 31:11
**character** 78:19 80:20,23
81:2,5,6 88:8,18,23 89:25
90:10,14,18 91:7,15 92:15
92:23 93:4,7,12 94:12,13
95:9,13,23 96:20,21 97:2,6
97:18,21 98:7,22 99:2
**characterization** 43:8

**characterize** 114:18
**charge** 7:15 18:13 19:20
**charges** 10:4 18:13
**Chase** 70:7
**chat** 108:22
**check** 31:3 74:3 78:21 87:23
91:4 162:5
**checked** 57:20 58:2,7,8
**cherry** 128:2
**Chief** 24:3 26:19 27:11
**childhood** 85:18
**children** 24:2 64:2 83:21
84:5
**choice** 57:10
**choose** 32:24 57:8
**chooses** 57:12
**chose** 74:16 143:16 147:17
**church** 5:20 66:4 122:20
147:16 148:17,18,20,22
149:2,6,8,10,12,13,16,18
149:18,21 150:11,16,20,22
150:23 151:4,22 152:12,16
153:2,13,19,23 158:6,18,24
160:4
**churchwide** 158:20
**circumstances** 9:23 91:3
133:25
**citizen** 26:7 155:3
**citizens** 32:23 116:9
**city** 5:20 24:5,9 25:15 54:21
54:25 56:18 67:5 70:14,15
82:9,24 83:5 110:6 117:11
125:7 133:19 134:14,16
142:12,15,17,25 143:6,7,12
143:19 146:14,23 147:7
149:13,16 151:3 152:24
153:23 155:5 158:6,24
**civic** 24:15
**civil** 6:6,23 7:4,18 9:9 70:17
**civilians** 131:12
**claim** 15:5
**claims** 70:22,24
**clarify** 13:21 21:8 41:11
43:10 117:5 129:17
**class** 4:11 33:19,20 96:6
107:11,14 109:21,23

110:22 115:20 151:13
**classes** 33:13,14
**classroom** 101:6,14 102:2,11
118:25 120:6
**clear** 44:14 48:24 61:17 66:6
93:22 98:17 104:3 112:12
118:23 131:9
**clearly** 134:12
**clergy** 149:23
**client** 27:18
**clinics** 26:5
**close** 25:22,23 52:11 107:17
**closed** 150:3
**club** 31:19,24 33:7,8 34:8
92:11 106:22,22,25,25
107:3
**clubs** 31:23 32:11
**cohabitants** 88:12
**coherent** 114:12
**colleague** 11:21
**collective** 91:13,16
**collectively** 91:12 96:7
**collector** 72:4
**college** 24:18,21,23
**color** 58:13 91:17
**combination** 96:13 97:14
**come** 14:20 103:11 114:5,25
119:7 126:3 156:19 157:7
**comes** 27:9 110:2,3,4 119:17
**comfort** 59:4 63:4
**comfortable** 57:16,17,17,22
58:4,14 62:17 63:21 64:10
66:16 111:15
**coming** 73:7 77:10 118:16
130:22
**commenced** 11:2 70:21
**Commission** 162:12
**COMMISSIONER** 1:15 2:5
**common** 68:8 72:22
**Communities** 26:11
**community** 24:17,20 26:7
33:3 82:4,7 96:18 158:20
**companies** 70:18
**company** 67:22
**compare** 75:3
**compiled** 109:25

complaint 5:18 42:10 148:5
complete 78:13 109:19
compliance 27:16 125:9,11
compliant 55:24 56:5
complied 61:19
component 114:21
comprehension 114:18
compromise 119:24
conceal 46:17 49:12 51:17
  57:15 74:11
concealed 4:7 5:14 33:15,21
  39:16 40:4 43:2 44:5,11
  46:3,5,12,14 49:17,18,24
  51:23 87:14 89:21 90:5,11
  130:4,5,15,17,19,24 133:10
  135:17 138:23 148:21
  149:2 151:4 153:2 157:4
concern 132:12,16 157:8
concerned 59:5 136:19
concerning 131:10
concerns 60:7,11 79:9
concluded 161:17
conduct 7:20 9:6,11
conducted 8:7 10:6
conducting 10:3
conference 8:7 9:7 17:22
confident 59:12 62:12 109:4
  153:11
confirming 8:16
confuse 141:24
confused 141:23
confusion 140:22
congregate 26:13
congregation 151:15 159:18
connected 30:9 82:6
connection 16:22 21:3 43:13
  43:15 79:2 83:23 88:4,8,13
  90:21 131:19 141:13
conscientious 114:12
conscious 119:23
consent 8:19 86:2
Conservation 31:15
consider 24:15 64:3 114:20
consideration 129:11 154:11
considerations 98:10
considered 8:20 72:20 96:14

97:15 103:18 128:3 129:14
consisting 163:9
Consortium 31:15
constantly 119:18
Constitution 81:12 126:7
  154:13 156:10
constitutional 125:18 128:6
  128:17,18,21,25 129:5,19
  133:14 134:6,8,9 138:24
  154:8,15,18,20
constitutionality 128:9
constructed 71:17
Cont'g 14:9 17:17 22:8
  27:10 39:9 40:12 43:12
  45:14 47:22 48:23 49:7
  51:9 54:5 61:22 65:20
  73:20 115:17 127:12 141:7
  142:5 148:12 157:23
  158:13
Cont'g 1:18 2:2 50:18 83:16
  105:9
contact 83:23
containing 42:8
content 103:5 109:19 118:8
context 131:4
continue 79:22 107:4 142:14
  148:19
continuing 65:16
contract 69:24
control 8:12 42:12,25 147:6
  154:14,21
controlled 6:24
Convention 150:13,13
conversation 14:18 22:11
  86:10 123:14 152:3
conversations 20:21 35:2,6
  36:12,19 37:17 75:16
  103:13 112:11 151:12
  152:8
convicted 62:4 69:21 70:10
convictions 80:8
cooperate 59:21,23
copy 7:13 8:25 9:8 39:15
  47:15 48:18 79:18 84:12,15
  84:16 105:5 113:3
correct 26:19 30:22 34:14

39:18 45:18,19 46:21 47:7
  50:4,7 52:18 53:2,6,7 57:3
  62:4,5,5 75:13,14 77:20,21
  80:20,21 82:14,15 83:24
  84:21,22 86:20 87:5 89:7
  89:25 91:8,21 94:20 95:15
  98:19,20 100:7,10 105:22
  105:23 107:8 108:5,6,8,9
  115:6,23 116:2 118:11
  121:13 141:8 145:5,6 146:4
  146:5,8,15,16,20 148:5,6
  149:5 153:20,21,24,25
  155:14 161:3 162:5,7
Corrected 164:16,18,19,20
  164:21,22,23
corrections 70:15 164:8,11
  164:15
correctly 30:17 43:24
costs 9:6 10:2
counsel 6:4,16,21 7:2,7,12,14
  7:17 8:5,8,10 9:3 20:10,16
  27:16 60:18 163:5
counseling 24:22 70:2
count 46:2 89:19
counting 31:23,25
country 73:7 75:3
county 1:15 2:4,5,7 5:9
  16:10 23:21 33:18 40:3
  50:5 68:16,19,23,25 69:2,9
  69:22,25 70:11,22 71:9,14
  71:19,20 72:2,11,16 78:5
  81:22,24,24 82:3,3,10,19
  82:19,21,23 83:4 86:20
  93:23 94:3 110:4,5 117:12
  125:10 155:5 162:2
county's 86:11
couple 17:20 25:4 28:12
  30:16 49:12 60:5 61:6 67:7
  68:11 73:21 78:23 80:15,19
  84:9 93:10 104:14 120:11
  120:23 125:13 150:5
coupled 63:9 114:20
course 18:22 39:8 46:13 56:3
  67:17 79:23 87:14,15,16
  90:21 100:9,10,13,14,18,24
  100:25 102:2,7 103:6 104:7

106:3,4,13,15 107:13,20
109:8 110:25 111:12,25
114:10,20 115:24 118:10
**courses** 108:5
**court** 1:2 8:7,16 11:4,10,23
12:7,14,19 15:23 16:8,9,11
17:5,9,13 18:18 19:10 20:3
20:3 26:21,25 27:5 39:8
40:11 45:5,8,13 48:25 49:6
63:16 64:16,18,22,25 65:5
66:2 67:18,19 70:11 73:18
115:16 127:5,8,11 129:7
140:13,18,25 141:6,22
142:3 148:10 157:17,22
158:12
**court's** 63:22
**courthouse** 139:2,3
**courthouses** 129:6,21
**courtroom** 134:12 136:23
**cover** 102:10,11 103:14
104:22 113:20 134:23
136:5 160:24
**covered** 103:21
**covers** 101:7 123:23
**COVID** 149:25 150:3
**CPLR** 8:6 9:8,11
**crack** 61:5
**crash** 68:23 137:17
**crashes** 137:16
**created** 36:9
**credentials** 100:23
**criminal** 16:10
**crisis** 130:22
**criteria** 116:18,25
**crowded** 145:5,8,13,15,21,23
146:15
**Cruz** 22:12,13
**crystallizing** 122:22
**Cummings** 3:4 12:2
**cure** 95:21
**current** 48:4,7 51:11,13
53:10 106:10 107:11
135:20
**currently** 23:22 25:5 66:25
149:7
**curriculum** 33:16 100:18,22

102:10 103:4 106:10
109:10,13,14 110:9 118:9
118:25 123:23
**curriculums** 109:12
**cursor** 42:15
**custody** 42:12
**cut** 83:12 108:21 152:5
161:16
**cutting** 79:20

**D**

**d** 4:2,2 5:2 9:11,13 121:8,9
**D.C.J.S** 33:16,19 44:19
100:18 109:7
**D.E.C** 31:14
**dads** 131:20
**daily** 25:25
**Damon** 76:13
**danger** 145:16,18
**dangerous** 58:23 95:11,15
**dangerousness** 94:20,25
**date** 1:20 48:4 49:20,22 50:6
50:9,10,12,20 51:11,16,18
164:3,5,24
**Davis** 144:11
**day** 63:18,19 85:15 106:5,5,7
108:25 110:23 126:17
137:20 138:25 162:10
**days** 33:14 101:3 103:6
104:20 114:16 164:9,10
**deacons** 150:21
**deadly** 59:8 61:17 112:9
116:17,20 119:7
**deal** 58:21
**dealers** 56:3
**Dear** 164:7
**December** 121:8
**decide** 154:22
**decided** 150:2
**decision** 28:2 85:5,16 86:23
87:2 89:11 98:4 153:17
155:13,15
**decisions** 143:23 150:15
**deck** 103:2,9 105:3,6 109:6
119:18
**declaration** 5:16,18 21:10,13

141:12
**decorum** 130:12
**dedicated** 24:13
**deemed** 6:22
**defend** 145:7,15,22
**defendant** 3:8 5:6,11 39:15
147:4
**Defendants** 1:17 2:8 146:23
147:5
**defending** 12:5
**defense** 32:14,17,18 33:6,11
33:24 34:5,6,11 59:9,14
66:20 106:23 109:13
**defiant** 59:25
**define** 145:9
**defined** 94:12 122:6,17
**definitely** 19:7 73:9 123:20
**definition** 54:20 98:13
121:25
**delineate** 89:10
**delivered** 164:10
**demonstrate** 101:13 112:5
114:21
**demonstrating** 119:21
**denied** 74:3
**dense** 133:19
**densely** 133:19
**department** 1:16 2:6 31:14
33:18 70:15 100:20
**departments** 27:18,22
**depending** 126:5 137:7
**depends** 131:5 139:9 154:5
**Deponent** 164:5
**deposed** 9:9
**deposition** 1:19 8:6,15 9:7
9:14,18,20,21 10:2,3,6 11:2
12:5 13:5 15:17,23 20:17
21:3 22:20,22 140:24 141:5
161:17 164:5
**depositions** 7:20 17:19
**describe** 54:10,13 100:12
**Described** 5:4
**deserve** 133:11
**design** 112:16,18,19
**designate** 9:16 148:23
**designed** 112:16

desires 155:8
detachable 55:11
determine 95:22 96:10 154:3
determined 156:11
development 24:10
developments 26:12
diagram 122:5
diaspora 33:24 34:2
Diasporans 32:14,17,18 33:6
   33:11,23 34:5,6,11 106:21
   106:23,24
didactic 111:18
difference 50:22 117:8
different 17:10 30:25 31:4
   32:11 40:24 43:9 47:24
   48:7 65:22 89:23 92:5,24
   103:24 104:18,22 114:24
   117:11,12 128:14 140:11
   144:13 149:9 155:24
differently 63:25
difficult 80:22
diligent 41:24
direct 4:4 12:21 27:22 36:25
   37:5
direction 135:4
directly 151:23 152:12
director 32:9 76:3,11
disagree 85:25
disapproving 85:17
discharge 118:22
disclose 83:18 84:4
disclosed 83:22 84:7
disclosing 84:2
disclosure 84:19
discovery 53:13
discretion 130:12
discretionary 85:14
discriminatory 93:24 94:3,8
discuss 127:14 160:21
discussed 22:19 36:21
   152:13,13 159:10,23
discussing 121:17
discussion 102:18,20 159:14
   159:16
discussions 29:9 151:16
dishwasher 156:18,20

dismissed 18:22
disparate 81:23
disparities 60:8
dispositive 84:23
disrupt 63:24
disruptive 129:24 130:20
distinction 34:9 41:10,11
   112:8 132:3 133:2
distinguish 92:21
DISTRICT 1:2,3
disturbing 135:7
division 25:18,21 26:3 110:5
   110:6
divisions 25:17
divorce 18:6
Docket 1:10
document 5:12 21:5 22:6
   38:13,18,23 39:4,20,24
   40:14,22,25 41:4,6 42:7,24
   43:16 44:12 48:11 105:11
   115:9 140:2,8 141:9 147:25
   148:2
documented 123:4
documents 20:20 21:2 23:12
   40:15,17 41:17,18,24 42:7
   42:12,21,22 43:17,20 44:4
   44:15,16,22
doing 17:19 24:6 74:10 83:5
   92:16,17 130:6 142:15
   148:19
dollars 72:5 78:14,16
domestic 85:17,22
don't 14:25 21:25 36:3 69:17
   113:16
doors 146:10,18
double 142:21 143:6,18
   146:14,24
doubled 16:25
doubt 59:3
download 78:11
Downstate 117:7
dragging 17:21
draw 118:22
drawing 63:6 118:24
drew 66:23
drink 124:7

drinking 125:4
drive 64:5
driven 137:21
driving 79:18,25 80:2
drop 11:13
dropped 16:25
dropping 36:16
drugs 123:24 124:4
duck 134:22 136:5
due 91:21
duke 54:11
duly 163:6
duties 27:12
dynamic 121:12

**E**

E 4:2,2,2,6,6 5:2,2
e-mailed 9:2
earlier 34:7 38:23 56:25
   61:23 87:16 96:17 137:25
   140:10 143:22
easiest 101:4
easily 98:13 130:14
east 122:2
easy 81:19,19 144:19
eat 123:22
echoing 17:3
economic 63:11
educated 24:21
education 32:22,25 33:2
   101:12 104:10
educators 24:12
effect 49:19 89:16
effort 66:15 74:21 120:5
egress 146:11
eight 25:23 108:17 118:3,4
   142:2
eighteen 60:2 100:15,25
eighties 61:4,4
eighty 101:21 112:3 114:19
eighty-eight 78:16
either 28:21 37:4 55:16,21
   59:11 67:11 70:6 119:9
   130:7
election 138:14
elections 128:23

**electronic** 9:15 10:4
**electronically** 9:16
**elementary** 133:2,4
**eligibility** 95:22 96:10
**eligible** 96:11
**email** 34:20,21
**emailed** 35:4,8
**emails** 76:17
**emotional** 66:7
**employee** 22:14
**employees** 22:19 34:12 147:3
**enactment** 148:20,25
**encapsulates** 42:3
**enclosed** 134:25 146:4
**encompass** 110:7 122:16
**encompassing** 122:3
**endanger** 94:16 97:8,23
**ended** 18:9 19:3
**enforce** 108:23
**enforcement** 58:16,25 60:9
　60:12 101:9 124:16 125:2
　129:13 131:7,11 136:14
　148:25
**enforcing** 63:23
**engagement** 101:8
**enriching** 110:19
**ensure** 9:17 75:21 117:21
　120:8
**ensuring** 158:18
**enter** 18:6
**entity** 69:25 72:12,17 85:6
**entrusted** 94:14 97:7,22
**entry** 158:16
**environment** 31:14 33:2
　119:11 121:12
**Environmental** 31:15
**errata** 162:7
**errors** 119:22
**escape** 146:19
**especially** 119:12
**ESQ** 3:5
**essential** 94:13 97:5,21
**essentially** 27:14 34:18 59:8
　100:18 103:14 121:22
**established** 82:7
**estate** 71:12

**et** 103:19 123:4 164:4
**evaluate** 114:8
**evenings** 101:3
**events** 42:9 158:20
**eventually** 151:14
**everybody** 104:8 132:7
　157:14
**everyday** 135:10
**ex-wife** 18:7
**exact** 21:4 22:6 46:13 103:5
**exactly** 36:8 43:11 46:21
　132:10
**examination** 4:4 6:9,12,17
　6:19,21 7:3,9,13,23,25 9:11
　12:21
**examined** 6:18
**Examining** 164:6
**example** 112:9 116:16
　121:21 122:20 129:12
　130:13 134:20 142:11
**examples** 119:22 121:11,16
　123:17
**exception** 146:18
**exceptions** 98:9 103:16
　162:6
**excessive** 75:9
**exchange** 76:17
**exclude** 156:3
**excluding** 35:2,6 36:12,19
**exclusionary** 34:3
**Excuse** 68:5 124:10
**execute** 109:17
**executive** 24:7 26:17,18
　27:20,21,21
**exemption** 93:9
**exercise** 93:4 126:2 130:11
　151:19
**exercised** 82:12
**exhaustive** 104:20
**exhibit** 8:24,25 9:4 39:7
　40:10 45:3,16 77:15 115:15
　115:15 140:4,5,14,17,22,23
　141:3,4,5,21,21,25 142:2
　148:8 157:19 158:10,11
**exhibits** 8:23 9:20 41:2
**exists** 81:23

**expand** 161:3
**expect** 20:22 119:9 120:18
　127:4 156:23
**expectations** 96:5
**expected** 118:18 130:12
　133:10
**expects** 110:13
**expense** 98:14
**experience** 20:22,23 89:5
　111:18 134:15
**experienced** 150:4
**expiration** 48:4 50:9,12,19
　51:11,18
**expire** 52:4
**expires** 87:4 162:12
**explain** 19:19 57:9 80:6
　95:25 123:10
**expletives** 61:16
**expose** 157:6
**express** 8:19
**expressing** 151:13
**expression** 74:23
**extend** 56:12
**extent** 55:5 85:14 154:24

---

**F**

**F** 4:2
**F-R-A-N-C-I-S** 12:18
**F.B.I** 101:19
**face** 61:15 137:6
**Facebook** 35:16,23,24
**facilitated** 77:2
**facilities** 26:13 27:16
**facing** 27:19
**fact** 137:7 144:5
**fail** 164:10
**failure** 6:10,20 7:24
**faint** 26:22
**fair** 129:17 135:12 146:21
**fairly** 41:13 127:24
**faith-** 122:20
**faith-based** 123:3,8
**fall** 54:19 101:17
**familiar** 41:2 54:23 55:4
　144:4
**family** 23:24 88:12 118:10

**fancy** 36:2
**far** 21:6 30:11 31:8 40:13 45:22 59:4 67:9 75:4,5 106:12 109:18 110:5 120:2 133:24 152:2
**fashion** 93:24
**fast** 64:5
**father** 23:24
**favor** 63:17 65:25
**fear** 116:23 119:10 120:14 131:8 132:12
**February** 115:20
**federal** 3:6 12:2 56:2 70:7 125:6,8 155:6,19
**fee** 78:15 87:13 88:2
**feed** 17:14
**feel** 27:8 37:13 57:16,21 58:4 58:8,13 62:11 63:21 64:9 75:9 86:13 109:4 112:24 116:23 125:19 137:9 138:17 139:13,22 143:24
**feels** 116:11 139:5,6,8
**fees** 96:5
**fell** 95:12
**felt** 74:18,24
**field** 24:13
**fifteen** 55:8 126:25 134:22
**fifteens** 54:15,18
**fifties** 122:11
**figure** 17:6 99:10
**file** 34:10 141:25
**filed** 75:12
**filing** 7:8 140:23
**Finch** 76:13,14,19,21
**find** 80:22 88:22 96:19,25 108:13 130:23
**finding** 95:10,14
**finds** 125:2
**fine** 21:21 22:4 53:24 121:5
**fingerprinted** 79:4,11
**fingerprinting** 78:15,23
**fingerprints** 87:22
**finish** 15:11
**finished** 79:21
**fire** 101:13,15,22 106:13 114:21 118:18 120:10,17

**firearm** 28:24 29:24 31:18 31:19,23 32:21,22,22 33:2 39:12 47:4 56:2 57:12,18 59:7 62:22 64:7 66:19,23 67:3 74:3 75:22 80:14 96:12 102:15 106:22 109:14 115:25 118:16,18 118:22 119:5 124:9,12,14 130:16,18 132:4,8 133:9 134:25 136:12 137:6,10,23 138:5,6 143:14,15,18 144:18 147:16 156:10 159:12,21,25 160:4
**firearms** 28:4,7,10,22 32:23 38:4,6 44:2 45:17 53:8 56:14 58:14 84:21 101:9 102:18 106:11,21,24 113:11 115:24 119:12 122:24 123:24,25 124:2 125:3,4,6 129:8 138:3 139:10 147:22 151:17 159:10
**fired** 118:15
**fires** 61:18
**firm** 11:25 22:14,16,19 35:3 36:13,20 41:23 71:11 75:17 76:22
**firms** 35:7 71:11
**first** 5:12 13:10 15:18 40:13 47:14 49:23 57:11,13 60:6 75:12 77:25 103:2 104:9 110:23 113:2 118:16 120:10 123:23
**first-time** 89:4
**five** 5:15 15:13 17:23 51:22 72:17 82:25 101:8,16 103:23 110:20,24 117:7 119:17 141:16,21 142:2
**five-** 51:22
**five-minute** 45:9 157:10
**five-star** 107:7 108:7
**fix** 156:19
**flexibility** 109:8 110:9,16 112:17
**floor** 3:12 61:21 164:13
**Florida** 23:3,5

**focused** 33:15
**folks** 64:14
**follow** 79:13 99:22 104:15 109:9,16,16 117:18 119:13 119:15
**follow-up** 60:5
**following** 110:11
**footprint** 122:3
**forbid** 57:18 58:17
**forbids** 126:7,9
**force** 112:9,9 116:17,20
**foreclosure** 68:15 70:6
**foregoing** 162:3 163:3,8
**forget** 159:6
**forgetting** 124:3
**forgot** 79:17 107:17
**forgotten** 31:3
**form** 6:8 7:21 43:6 53:12,21 53:22 78:11,13 85:10 93:20 94:22 95:2,16 126:18 130:2 136:25 137:12 138:20
**formal** 28:9 30:12
**format** 13:6
**formerly** 24:11
**forms** 104:18,22 113:20
**forty** 126:23
**fostered** 121:11
**found** 80:25 86:4 90:10,17 118:6 135:9
**founder** 33:7
**four** 5:13 23:24 24:2 25:15 32:14,17,18 33:6,11,23 34:5,6,11 39:4 72:17 82:2,5 97:2 101:7,16 103:23 106:23 115:15 119:17 142:8 157:21
**framing** 137:4
**Francis** 1:1,7,19 2:1 3:1 4:1 4:3,10 5:1,6,11,16 6:1 7:1 8:1 9:1 10:1 11:1 12:1,8,12 12:13,17,24 13:1 14:1 15:1 15:16 16:1,17,17,20 17:1 17:11 18:1,7 19:1 20:1,10 21:1 22:1 23:1,18 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1,19 35:1

35:21 36:1,11 37:1 38:1,3 39:1,15 40:1 41:1,3 42:1,11 43:1 44:1 45:1,15 46:1 47:1 48:1 49:1 50:1 51:1,10 52:1 53:1,15 54:1 55:1 56:1,24 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1,13,22 66:1,18 67:1 68:1,12,14,20 69:1 70:1 71:1 72:1,21 73:1 73:2 74:1 75:1 76:1 77:1,4 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1,9 122:1 123:1 124:1 125:1 126:1 127:1,13 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1,2 141:1 141:9 142:1 143:1 144:1 145:1 146:1 147:1 148:1,2 148:16,21,22 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1,25 158:1 158:21 159:1 160:1,20 161:1 162:1,3,9 163:1,3 164:1,5,7,25

**Francis'** 12:5
**Francis's** 68:10
**frankly** 63:2
**fraternal** 24:16 28:13
**fraternity** 24:18 28:16,17,19
**free** 27:8
**Freeport** 23:23 31:24,25
**frequently** 145:5
**friendly** 151:7,11
**friends** 60:25 118:11
**front** 5:9 42:7 111:16
**froze** 83:13
**frozen** 16:18

**full** 12:16 103:7,8 106:4
**fullest** 74:23
**fully** 99:24
**fundamentally** 57:16 116:9 116:19 117:16
**fundamentals** 109:14
**Funding** 70:18
**furnished** 7:14
**further** 6:15,25 7:6,11,16 8:23 74:19 121:25 122:2 141:25 161:6

## G

**G** 1:12 4:2
**gallery** 139:3,22
**Gar** 115:20
**Gary** 115:21
**general** 3:9 11:19 13:2 27:15 32:22,25 58:13 60:12 65:12 82:8,9 104:21 114:25 119:6 133:22 164:12
**generally** 51:22 58:22 101:19 160:16
**generated** 9:18
**gentleman** 19:16
**geographic** 122:15
**getting** 18:6 23:23 26:17 37:11 56:7 73:5 80:3 105:25 115:25 130:9 144:21 152:21
**gift** 47:12
**give** 12:10 13:21 14:22 20:7 24:20 45:6 47:5 61:9,9 63:23 83:11 101:15 105:6 108:12,13,13 109:6,22 110:22 118:2 139:23
**given** 4:10 14:15 15:22 19:9 20:2 82:18 84:8 88:15 108:24 112:15 136:16 144:13,13
**giving** 104:21 163:6
**Glock** 120:17
**go** 14:6,13 17:10,13 18:19 19:18 20:24 25:11 45:16 51:19 52:5,9 53:15 54:2 57:14 60:23 64:19 65:15

68:11 73:14 75:4 78:11 86:5 95:24 103:10,19 104:25 113:23 115:7,18 118:24 119:10,12,16,18 121:6 123:2,10,21 124:17 124:21 127:4,5 129:24 130:14 132:13 138:12 140:7 143:2 147:16,23 148:13 157:21
**God** 57:18 58:16
**goes** 19:13 63:10 103:25 122:20
**going** 12:10 13:6,19 14:11 17:5,14 38:12 39:20 40:5 40:24 43:6 45:16 52:14 56:21 68:11 71:19 73:4 77:15 83:15 85:23 105:10 107:12 109:24 116:24 118:18 119:6 124:6 131:3 132:21 135:18,24 136:11 138:16 139:4 140:14 141:25 142:6 145:16 147:24 148:13
**good** 11:24 24:24 28:2 51:23 58:9 65:13,18,19 88:18,23 89:24 90:10,14,17 91:6 92:15 93:3,6,12 94:12 95:9 95:13 96:11,21 97:17 98:22 99:2 109:22 110:9,15 114:25 120:12 124:23 125:15,24 133:18 134:2,5
**Google** 44:10
**government** 125:6 155:6,11 155:19
**Governor** 89:15
**grab** 125:14
**grand** 19:12,19 28:18 61:25
**grant** 85:8
**granted** 86:16,20 89:18 123:4 127:25
**great** 12:23 15:16 25:3 65:3 108:24 115:18 157:18
**greater** 76:5 155:17
**grieve** 72:3
**grieving** 71:3,8
**grip** 54:12 55:14

**group** 32:13 34:3 74:17
  112:22 150:21
**groups** 111:16
**guaranteed** 145:13
**guess** 46:6 50:15 51:20 89:21
  92:14 132:14
**guests** 158:19
**guidance** 24:22 70:2
**guideline** 110:15
**guilty** 58:19,23
**gun** 29:14 31:10 32:9 39:12
  59:20,23 66:3 75:21 92:3,6
  92:11,11 93:5 97:10 131:21
  132:15,22 134:12 135:13
  135:16 136:9 138:15
  143:11 145:8,15,23 153:11
  154:23 156:2,13,20,21
**gunpoint** 19:15
**guns** 29:5,11 52:24 53:9,17
  98:3,8 128:7,10,12,16,19
  128:22 129:6,20,25 133:15
  136:22,24 139:4,8,15,17,21
  144:14 150:24 151:22
  152:12 154:3 155:10,11
**guys** 126:22,23,24 157:11,20

---

### H

**H** 5:2
**H.R** 27:15
**half** 102:3
**half-hour** 11:13
**Hall** 28:18,18
**halves** 101:25
**hand** 12:8,15 52:11 134:22
**handful** 13:7
**handgun** 53:5 94:4 149:2
**handguns** 52:18,25 148:21
**handle** 124:9 152:23
**handling** 32:22 106:11
**handout** 110:21
**handouts** 108:24 109:5,23
  110:7
**hands** 84:14
**hang** 73:11 124:6
**hanging** 60:25
**happen** 72:7 93:9 131:2

133:24
**happened** 16:21 19:19 67:20
  69:6,7
**happening** 86:7
**happens** 131:4
**happy** 15:13 104:12
**hard** 114:8
**HARRISON** 1:14
**head** 14:19 61:20 142:6
  159:3,7,11,20
**header** 41:14
**heading** 162:4
**health** 26:5
**hear** 25:2 26:25 47:8 60:6
  83:6 94:24
**heard** 17:24
**heavily** 85:5
**held** 155:21
**Hello** 16:19
**help** 17:14 89:13
**helpful** 110:19 141:10
**helping** 112:24
**helps** 17:15 32:10
**Hempstead** 148:18
**hereof** 162:4 163:6
**hereto** 6:4,17 7:3,8,13,18
  163:5
**hey** 64:14 76:4 140:22
**Hi** 16:20
**hiccups** 17:20
**high** 72:2
**higher** 38:20
**highlight** 42:17
**highlighted** 43:7
**highly** 118:10 152:24
**historically** 122:15
**history** 60:8 80:2
**hit** 68:6,7
**hold** 43:5,5,5 50:21,21 53:11
  53:12 73:13 123:12
**Holdings** 70:19
**holster** 63:6,7 118:23,24
**home** 18:8 25:21,24 58:5
  71:25 80:14 104:23 108:25
  109:13 157:2,3
**homeowner** 155:2

**homes** 25:24
**hope** 5:20 59:14 131:7
  149:13,16 151:3 153:23
  158:6,24
**hopefully** 14:13 132:23
  157:21
**hoping** 147:18
**hour** 100:15
**hours** 100:25 101:6,11,12
**house** 23:7 25:19 71:17 84:5
**household** 80:12 84:2
**houses** 103:15
**housing** 25:18 26:11
**huh** 14:20
**human** 34:2 59:17 63:12
  85:16
**humor** 118:7
**hundred** 25:22,23 51:20
  59:15 62:11 78:14 85:3
  90:8 101:7 103:23 120:2
  145:12
**hunt** 137:25
**Hunter** 24:23
**hurdle** 126:2
**hurt** 120:20,20 145:21
**hypothetical** 82:14 156:17

---

### I

**I.T** 27:15
**idea** 125:15,24
**identify** 39:11
**identity** 8:17 70:11
**III** 3:5
**illegal** 55:25
**illogical** 117:14
**imagine** 28:8 40:19 61:11
  73:5 85:4 87:24 98:11
  123:10 126:20 136:3
**impact** 99:3
**impacted** 92:22
**impart** 114:11
**implications** 66:9 112:12
**importance** 62:16 119:20
**important** 13:8 14:16 64:12
  74:24 104:11 110:14
  122:13 138:13 151:19

**impose** 127:23
**imposed** 93:2,8 99:5
**imposition** 82:11 126:2
**impositions** 75:8
**Improvement** 43:2 44:6
**in-person** 88:4 99:12
**inappropriately** 137:24
**incarcerated** 19:21 24:11
  62:4
**inception** 80:3
**incident** 60:15
**include** 27:15 102:17,20
  113:3,10,13,17,25 147:16
**included** 136:15
**includes** 115:4
**including** 6:7 7:20 142:11
**inclusive** 163:10
**incorporate** 121:16
**Incorporated** 28:17
**incorporating** 121:10
**Index** 164:4
**indicated** 84:19
**indirectly** 152:13
**individual** 154:7,25 155:16
  155:20
**individual's** 114:9
**individuals** 33:20 74:10
**inform** 85:5
**information** 42:3 83:23
  101:14 112:23 114:11
  152:22
**informed** 18:12
**infrastructure** 27:14
**infringe** 153:12 156:16
**infringement** 74:19 128:4
  154:9
**infringes** 133:22
**inherent** 156:9
**initial** 73:3 136:16 157:20
**injunction** 66:2
**injury** 69:9
**innocent** 58:19 145:11,16,19
  145:20
**inquiring** 41:21
**inside** 28:25 29:14 122:23
  123:2,5 124:9

**Instagram** 35:17 36:5
**instance** 128:17 135:17
  138:13
**instances** 20:2
**instinct** 59:17
**instincts** 59:17
**instructed** 109:9
**instructing** 60:22
**instruction** 106:12
**instructor** 31:9,19 59:2
  62:16 100:7 101:24 106:3
  106:15,17 107:8 111:12
  118:6
**instructors** 112:22,24
**instructs** 15:4
**insurance** 67:22
**insured** 31:18
**Int'l** 163:11
**intend** 142:14
**intended** 127:23
**intending** 130:25
**intends** 148:19
**intent** 74:8,16,20 130:20
  133:6 143:22 144:17,23
**intentional** 114:12
**interactions** 37:9
**interactive** 121:10
**interest** 33:14 151:13 152:19
  159:17 160:10
**interested** 32:21 33:20 74:10
  76:5 153:7
**intermittently** 111:10
**international** 8:12 28:16
  164:2
**interrogatories** 5:7 38:25
**interrupt** 27:8 140:14
**interrupting** 27:6
**intersection** 121:23 123:24
**intimating** 146:12
**intimidated** 139:13,21
**introduce** 65:17 110:17
**introducing** 151:14
**introduction** 77:3
**invite** 154:18
**involve** 93:11
**involved** 24:16 66:18 67:22

  68:12,15,18,22 69:15,24
  70:5,17 72:10,15 75:17
  106:9 116:25
**involvement** 94:8
**involves** 93:17 106:10
**involving** 68:10,19,23 69:10
  69:13 70:6,18 72:11,16
**Ironically** 62:7
**Island** 23:21 25:16 56:3
  142:12,13 143:11 144:6,15
  144:18 145:4 147:7 149:20
**isolation** 96:13
**issue** 35:9 37:18 50:5,9 51:15
  137:4
**issued** 49:15 56:15 78:4,24
  88:17 90:11
**issues** 72:4 102:24
**issuing** 139:13
**it'll** 66:13 87:7 92:17 142:2
**it's** 34:16 86:18 95:20 102:3
  117:19 123:25 124:22
  125:24 144:19
**items** 80:19

---

**J**

**J** 2:4
**J-A-S-A** 25:9
**J.P** 69:13 70:6
**James** 1:1,12 2:1 3:1,5,10
  4:1 5:1,6,11 6:1 7:1 8:1 9:1
  10:1 11:1,18,25 12:1,25
  13:1,3 14:1 15:1 16:1 17:1
  18:1 19:1 20:1,13 21:1,8,12
  22:1 23:1 24:1 25:1 26:1
  27:1 28:1 29:1 30:1 31:1
  32:1 33:1 34:1 35:1 36:1
  37:1 38:1 39:1 40:1 41:1,2
  42:1 43:1,11 44:1 45:1 46:1
  47:1 48:1 49:1 50:1 51:1
  52:1 53:1,20 54:1 55:1 56:1
  57:1 58:1 59:1 60:1,9 61:1
  62:1 63:1 64:1 65:1,13 66:1
  67:1 68:1 69:1 70:1 71:1
  72:1 73:1,10 74:1 75:1 76:1
  77:1 78:1 79:1 80:1 81:1
  82:1 83:1 84:1 85:1 86:1

87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 159:1 160:1 161:1 162:1 163:1 164:1,4,6,13

**James'** 41:16

**Janel** 69:10

**JASA** 25:7,11 28:3,3

**Jay** 17:22 50:15 56:21 65:14 68:8 105:5 109:25 141:8

**Jensen** 3:11 11:21 64:14,17 65:9,10,19

**jeopardy** 145:24

**jewelry** 61:6,9,18,20 62:6

**Jewish** 25:10

**job** 18:14 64:11

**Johnson** 11:11

**join** 30:23 63:17 160:7,12

**joined** 30:19 35:17

**joining** 11:22 76:7

**joking** 61:17

**Jones** 18:7

**judge** 139:5,14

**judgment** 94:14 97:6,22 98:8 141:13

**July** 89:15

**jump** 98:16

**June** 52:4 87:5

**juror** 139:14

**jury** 19:12,19 61:25 139:5

---

**K**

**K** 1:14

**K.B.L** 72:17

**Kareen** 23:25

**Karrien** 68:20

**keep** 13:18 50:5 56:8 83:15 124:13

**KHOURY** 1:7

**kick** 17:2 59:18

**kids** 131:17 132:21 133:2

**kids'** 131:21

**kill** 137:19

**killed** 60:3 144:6,21

**kind** 26:22 31:4 40:22 42:22 61:13,15 95:19 104:8 116:4 116:7 126:7 136:13 138:2

**kinds** 20:25 33:10 112:11 129:9

**Kings** 16:9,10 68:16,19,23 68:25 69:2,22 72:16

**knew** 61:3,12 64:6

**know** 14:13,18 18:12,15,20 18:22 19:18 22:3,3 24:18 25:25 26:23 28:24 29:5 30:18 31:25 32:25 34:17 36:3 38:8,14 39:21 40:14 40:17,21 41:3 42:18 45:25 50:19 51:19,25 52:11 54:19 54:22 56:22 58:12,16,17,25 59:7,8,9,10,18,22,24 60:3,6 60:8 61:10,13,14,20 62:12 62:15,18 63:5,6,12 64:3,7,7 64:8 66:7,8 67:6,20 71:12 71:18,25 72:5 74:8 76:6,14 77:7,9,16 78:23 79:12,20 80:10 82:2,17,19 84:8,13 84:23,24 85:3,15,19,20,23 86:6,8,11,24 87:24 88:3,7 88:11,21 89:2 91:25 93:16 96:6,23 98:10,15 99:7,7 100:17 101:3 103:10,12,17 103:17 104:23,24 105:12 109:18,24 110:2,2,12 111:3 111:11,14,15 112:4,22 113:17 114:15,16,16,17 116:10,22,23 117:14,15,18 119:5,8,8,10,14,14,16,25

120:7,9,11,12,13,17,17,18 121:22,24 122:4,5,15,21,22 124:17,22,23,23 125:3,5,7 125:10 127:3 128:4,8 129:14 130:21,21 131:16 131:20,23,24 132:8,22 133:9,25 135:3,18 136:14 137:3,16,16,16,18 138:2 140:3 142:4 144:22,25 147:8 150:3 151:3 152:23 154:22 156:21 157:5,25 158:24 159:2,8,24 160:2,3 160:5,15

**knowing** 57:17,18 118:17 119:5 152:21

**knowledge** 110:17 112:5

**knowledgeable** 115:22

**known** 26:9 28:16

**knows** 85:17 110:24 130:19

**KOCH** 1:6

**Kristen** 11:7,7,10

---

**L**

**L** 4:6

**L.I** 142:21 143:6,18 146:14 146:24

**L.L.C** 32:19 33:9 34:7,11,17 70:19,19 72:13,17 106:23

**L.L.P** 12:2

**lack** 132:16

**lacks** 148:23

**Lainson** 1:25 65:14 163:2,13

**land** 153:22

**landlord** 72:11,16

**landowner** 155:2

**lanes** 124:25

**language** 93:17

**large** 62:14 116:13,15 117:3 136:2 137:21 150:18 155:20

**larger** 150:12

**Larry** 144:10

**lastly** 72:10 146:22

**late** 61:4

**laughed** 61:12 134:23

**law** 6:7,23 7:4,19 8:20 11:25

32:23 35:7 43:3 49:13
54:20,24 58:16,25 60:8,12
71:10,11 91:7 93:18 94:12
97:17 100:4 101:8 117:2,21
124:15 125:2 128:22
129:12 131:6,10 136:14
147:10,20
**law-** 116:8
**Lawler** 11:9,9,10
**laws** 35:8 37:6,18 63:17
74:13 75:25 76:8 77:15
91:18 102:18,21 103:21,24
104:16 113:11,14,18 114:2
114:6 115:2,5,5,6,23 116:5
116:7,14 117:11,11,12,17
117:23 121:17 123:18
125:8,8,8,10 127:19 130:10
136:17 152:21,24 155:3,6
155:16,18,18,21
**lawsuit** 13:4 67:8 74:6 75:12
75:18 77:5,11 91:7 147:19
160:22
**lawyer** 12:25 27:24
**lawyers** 77:5,10
**lay** 150:20
**leader** 24:7,15 149:23
**leaders** 150:22
**leadership** 29:10 32:4 123:2
**leads** 111:5
**learn** 60:4 108:25 111:11
116:14
**learned** 102:16 115:23
**leave** 112:4 124:11
**leaving** 111:22
**legal** 26:4 58:15 63:11 71:16
75:22 147:12
**legally** 123:5 144:20
**length** 143:21
**Leo** 118:5
**lesson** 108:24
**let's** 17:6 29:19 46:8,8 54:9,9
59:15 73:14 80:18 81:21
82:2 83:15 102:25 110:25
121:20 122:19 123:21
125:14,14 135:14 157:10
**let's** 97:13

**level** 59:5 63:4 114:18
125:11 133:5
**levity** 118:7
**liaison** 27:20
**liberal** 75:5
**Liberty** 3:12 11:19 164:13
**license** 4:7 5:9 39:16 40:4,4
40:21 42:2 43:21,25 45:18
45:20,24 46:4,7,10,13,15
46:20,20,25 47:5,9,16,23
48:4,8,12,15 49:23,25 50:5
51:11,23 52:2,24 53:6,10
53:19 77:19 78:2,4,24
86:18 87:4 89:6,11,20
90:18 97:10 98:23
**licensed** 56:3 59:2 80:3
129:15,19 131:6 144:19
145:2 152:21 159:21,25
**licenses** 56:2,14 89:23
**licensing** 2:3,6 77:14 79:2
85:7 88:22 93:23 94:4,9
99:9,11,18,22 114:2 115:6
**life** 14:18 24:13 59:13,14
63:12 110:2 116:23 145:24
**line** 15:12 53:21 56:21 73:22
**LinkedIn** 35:16,20
**list** 14:2 31:3 104:20 157:20
**listed** 41:2 52:24 53:5,9,18
103:9
**listen** 21:19 112:3
**listening** 83:11
**listing** 103:8
**lists** 45:17
**literally** 36:9
**litigation** 8:21 9:10 42:21
43:16,21
**little** 23:19 24:6 32:16 38:19
42:6 43:15 60:15 61:23
77:14 78:7 92:4 95:9,25
100:3,13 102:9,23 105:24
118:13 121:15 127:18,20
129:18 144:11 147:10,25
149:16 150:4
**live** 23:21 58:22 60:3 83:19
83:19 101:12,22 106:13
114:21 117:8 134:15,17

135:11,13
**lives** 133:25 146:2
**living** 58:11 82:25
**LLP** 3:4
**load** 118:21
**loaded** 135:5
**loan** 67:15
**lobby** 61:2
**local** 100:19
**located** 22:24 23:2 149:19
**location** 8:10 128:5 150:8,9
**locations** 8:9 127:19 128:2
131:12 138:12
**lockbox** 124:12
**locks** 104:24,24
**lodge** 24:19 28:18,18,20 29:3
29:11,15
**logic** 133:19
**long** 23:21 30:14 56:3 106:6
109:9 110:11 119:15
130:18 135:4 142:12,13
143:11 144:5,14,18 145:4
147:7 149:20
**longer** 41:9 56:12 66:14
107:5 127:3 130:4,17
**look** 22:2 42:6 51:19 52:6,9
52:15 99:6 120:23 123:22
159:7
**looked** 41:9 61:8 135:8
**looking** 31:18 41:14,18 47:10
49:25 76:7 84:14 86:17
104:5 115:10
**looks** 41:8,13
**loose** 127:24 161:16
**lose** 16:17 36:14 64:6
**losing** 18:14
**lost** 16:22
**lot** 63:7 85:19,23 96:4 106:9
109:7,23 117:4 126:17
**loved** 59:10 145:25
**lunch** 120:25 125:14 126:23

**M**

**M** 118:5
**M.S.E.D** 35:22
**magazine** 55:12 118:21

**magazines** 56:11
**main** 25:17 26:14 27:17
**maintain** 53:14
**maintaining** 133:10
**making** 85:5,16 86:23 87:2
  93:17 104:12 109:18,18
  110:12 116:25 119:23
  123:7 132:3 133:3 155:12
  155:15
**man** 23:24 67:4
**manage** 118:8
**management** 24:14 27:17
**managing** 33:8,9 34:15
  118:14
**Manhattan** 24:23
**manmade** 126:4
**manner** 8:18 94:15 97:7,23
  114:13
**manual** 118:20
**March** 49:16 88:18
**mark** 18:2 115:14,15 141:5
**marked** 5:3 8:24 39:4,7
  40:10 45:2 140:14 141:20
  148:8 158:10
**marksmanship** 101:10
  102:14
**Mason** 22:12,13
**Masonic** 24:18 28:20 29:2,10
**mass** 144:5
**Massapequa** 70:3
**master's** 24:22
**material** 108:23 111:7 113:4
  113:6
**materials** 105:6 109:11
  163:11
**matrimonial** 68:19
**matter** 74:25 128:8 134:16
**matters** 9:10
**meal** 124:18
**mean** 14:10 30:7 33:8 34:2
  44:9 63:10,13 67:2 81:19
  84:25 85:13 88:20 92:19
  96:2,15,20 116:6,7 121:4
  137:17 154:22 157:3
**meaning** 44:10 84:24 94:13
  109:9

**means** 9:15 10:4,6 137:18
**measures** 122:17
**media** 35:12,14 36:21 76:18
**medical** 25:25
**meet** 65:13 78:25 99:11,16
  101:22 122:8,11 126:23
**meeting** 8:11 11:14 79:6,7
  88:4
**meetings** 142:16 158:19
**member** 18:11 28:15,17
  29:20 30:15 31:9,23 33:9
  34:16 37:17,21,23 107:3
  148:17 150:6 152:4 160:16
**members** 34:4 74:18 88:12
  126:16 149:22 151:15
  152:9 158:18 159:18
**memorializing** 42:8
**memory** 69:17 111:3
**men** 58:13,22 91:17
**mental** 26:5 66:6
**mentality** 63:24
**mentally** 57:13 58:3
**mention** 79:17
**mentioned** 25:4 28:12 36:15
  52:3,19 56:24 61:24 64:2
  77:18 87:16 105:2 137:25
**mess** 120:20
**message** 36:25 37:5
**messages** 76:18
**messing** 31:16
**met** 116:19 159:3
**Microsoft** 38:13 105:11
**middle** 73:3
**midst** 18:6
**militia** 126:14,16
**mind** 68:9 69:17 120:24
  157:10
**minding** 136:7
**mindset** 143:23
**mine** 152:19 160:11
**minor** 84:5
**minors** 84:9
**minutes** 157:21
**mirrors** 103:3
**misdemeanor** 124:25
**mission** 33:4

**mistaken** 36:11 50:13 51:16
  84:3 87:21 106:8
**misunderstood** 51:8
**mixing** 124:3
**modified** 103:17
**Molly** 3:11 11:21 65:6,10,18
  65:21
**moment** 39:20 108:12
  113:15 140:2 148:14
**money** 71:22 77:9 78:13
**month** 33:13 107:25 142:16
**months** 30:17 62:21,22,24
  66:14 78:23
**moral** 88:18,23 89:24 90:10
  90:14,17 91:7 92:15 93:3,6
  93:12 94:12 95:9,13 97:17
  98:22 99:2
**Morgan** 70:7
**morning** 11:24 65:18,19
  107:13
**mortgage** 68:15 70:6,7
**mother's** 23:7
**motion** 6:13 8:2 141:14
**motor** 68:22 69:8
**mount** 55:22
**move** 6:8,11 7:22,24 23:23
**moving** 17:8 52:17 124:24
  146:11,17,19
**multiple** 101:3
**mute** 14:4,5,6,12 17:11 68:7
**Mutual** 16:7
**myriad** 26:4

### N

**N** 4:2,2 5:2
**N-O-R-C** 26:10,10
**N.C.P.D** 100:20
**N.R.A** 31:8 100:22 101:23
  106:17 109:12 111:12
**N.Y.C.C.A** 74:16
**NAAGA** 75:20 76:4 92:2
**name** 11:8,25 12:16,25 21:4
  22:6 31:16 33:23 36:2,2,8
  65:9 72:21 76:13 141:25
  159:6 164:4
**named** 68:20 69:10

**names** 68:8 83:22 84:8 88:12
**NASH** 1:5
**Nassau** 2:5,7 5:9 23:21 33:17
  40:3 50:4 69:25 70:2,11,22
  71:9 72:2 78:5,13 81:22,23
  81:24 82:3,3,18,19,21,22
  83:2,4 86:20 93:23 94:3
  110:4,5 117:12
**Natalie** 11:11
**National** 30:4 31:10 32:8
  70:7 75:20 92:3,6 150:12
**Naturally** 26:10
**nature** 138:6
**nauseam** 115:8 119:16
**navigate** 152:24
**near** 143:8
**necessarily** 14:20 50:10
  95:18 97:13 98:16 99:19
  113:19 119:8 120:18 128:9
  134:2 137:14 143:13
  152:18 160:11
**necessary** 94:14 97:6,22
**necklace** 61:6
**need** 8:14 15:9,13 31:19
  57:15,19 67:3 72:24 73:12
  75:2,9 86:13 97:15 101:17
  130:21
**needed** 57:19 66:19 80:4
  81:2
**needs** 25:25 26:2
**nefarious** 132:4 137:25
  138:8 144:17
**neighborhood** 62:8
**neighbors** 61:3
**network** 96:18,22
**never** 57:6 86:8 107:15
  118:15 152:2
**new** 1:3,4,13 3:9,13,13 4:7
  11:18,19,19 13:2,3 21:6
  24:5,9 25:15 28:19 29:23
  31:13 36:6 37:9,10,12,13
  37:17,21,24,24 39:16 44:11
  45:22 47:4,5 48:12 49:19
  54:20,21,24,25,25 55:3,23
  56:4,9,15,18 65:11 67:5
  70:14,14 74:7,13 75:8 76:8

79:18,25 82:3,9,10,24 83:3
  83:5 89:11 94:7,12 97:17
  100:10 102:18 103:20
  104:2 106:4 110:6 113:11
  117:11,12,13 121:24,25
  122:17 133:20 135:2,21,23
  136:17 138:22 142:12,15
  142:17 143:7,11,19 146:14
  146:23 147:6 148:18
  164:12,14,14
**newer** 47:9,23
**newly** 104:9
**nice** 65:13
**nine** 41:12 101:5 107:12
  108:11 115:19 122:9 142:7
**nine-millimeter** 61:8
**nineties** 144:9
**ninety** 19:13 102:4
**ninety-nine** 148:14
**nod** 14:19
**nomenclature** 101:9
**non-** 24:13
**non-profit** 24:4,9 25:5
**nonchalant** 63:9
**NORC** 26:9
**NOREN** 1:8
**normal** 134:18 135:10
**normally** 147:23
**normative** 128:15
**north** 3:6 12:3 122:2
**NORTHERN** 1:3
**notary** 6:18,19 162:11 164:9
**note** 11:5,15
**noted** 162:4,6
**notes** 23:15 27:4 42:8 69:19
  118:4,5
**notion** 59:7
**notwithstanding** 9:7
**November** 107:22
**nuanced** 112:6
**nuances** 129:11
**number** 13:6 68:9 76:25 77:2
  148:9 163:9 164:4
**NYS** 1:1 2:1 3:1 4:1 5:1 6:1
  7:1 8:1 9:1 10:1 11:1 12:1
  13:1 14:1 15:1 16:1 17:1

18:1 19:1 20:1 21:1 22:1
  23:1 24:1 25:1 26:1 27:1
  28:1 29:1 30:1 31:1 32:1
  33:1 34:1 35:1 36:1 37:1
  38:1 39:1 40:1 41:1 42:1
  43:1 44:1 45:1 46:1 47:1
  48:1 49:1 50:1 51:1 52:1
  53:1 54:1 55:1 56:1 57:1
  58:1 59:1 60:1 61:1 62:1
  63:1 64:1 65:1 66:1 67:1
  68:1 69:1 70:1 71:1 72:1
  73:1 74:1 75:1 76:1 77:1
  78:1 79:1 80:1 81:1 82:1
  83:1 84:1 85:1 86:1 87:1
  88:1 89:1 90:1 91:1 92:1
  93:1 94:1 95:1 96:1 97:1
  98:1 99:1 100:1 101:1
  102:1 103:1 104:1 105:1
  106:1 107:1 108:1 109:1
  110:1 111:1 112:1 113:1
  114:1 115:1 116:1 117:1
  118:1 119:1 120:1 121:1
  122:1 123:1 124:1 125:1
  126:1 127:1 128:1 129:1
  130:1 131:1 132:1 133:1
  134:1 135:1 136:1 137:1
  138:1 139:1 140:1 141:1
  142:1 143:1 144:1 145:1
  146:1 147:1 148:1 149:1
  150:1 151:1 152:1 153:1
  154:1 155:1 156:1 157:1
  158:1 159:1 160:1 161:1
  162:1 163:1 164:1,4
**NYSRPA** 29:20,22,25 30:3
  30:15

**O**

**O** 4:2,2
**o'clock** 157:11
**oath** 8:13 9:25 15:20
**object** 6:7,10 7:21,24 43:6
  53:12,22 85:10 93:20 94:22
  95:2,16 126:18 130:2
  136:25 137:12 138:18
**objected** 53:13
**objection** 14:12 15:3 53:14

53:21 56:22
**objections** 39:14
**obligation** 9:8
**observing** 11:12
**obtained** 77:19 78:2
**obviously** 59:16 104:10
**occurred** 79:21,22
**occurrences** 42:9
**Occurring** 26:10
**Ocoee** 23:3,5
**October** 1:20 107:12
**OFFICAL** 2:4
**office** 3:9 11:18 12:25 65:11
    126:5 164:12
**officer** 2:3,6 8:13 9:24 18:12
    24:4 26:20 27:12 58:16
    79:2 85:7 88:22 99:9,11,22
    125:2 129:13,13,14 131:7
**officers** 131:11
**OFFICIAL** 1:12,14
**oh** 16:18 69:20 79:17,23
    87:18 96:25 108:16,20
    113:24 116:21 118:3
    124:21 127:7 135:2 140:18
    153:9
**okay** 12:14 14:6,7,25 17:13
    17:16,18 18:5 22:5 23:20
    27:13 43:23 44:8,17,24
    47:14,21 50:8 51:4,7 52:7
    52:16 55:6 56:20 60:17,21
    60:24 64:18,22,25 68:13
    69:8,13,20 77:13,25 78:10
    81:15 90:9 100:5,14 102:6
    108:15 110:24 111:22
    113:10 117:6 123:21 124:6
    127:8 131:13 140:4,18,25
    143:5,10 147:9 149:15
    153:13 156:22 157:12,13
**old** 17:2,6 47:6 60:2
**older** 24:5 25:14,20,23 26:5
    64:5
**omitted** 98:14
**once** 33:12 43:7 49:23 63:13
    79:11 89:3 101:20 116:13
    127:25 130:16 142:16
    143:3

**one's** 82:12 155:20
**one-self** 94:16
**one-time** 87:15
**onerous** 74:17 75:24 81:10
    82:6 90:24 91:18 116:12
**ones** 41:25 53:18
**oneself** 97:8,24
**online** 78:11,12
**open** 127:25 133:15,16,20
    134:2 136:12 138:23
    146:10 150:2 156:7
**Operate** 147:2
**Operating** 24:4 26:20 27:11
**operation** 26:16
**operations** 24:7 26:17 147:6
**opinion** 95:21
**opportunities** 118:6
**order** 16:2,4 18:16,17,18,21
    18:24 19:17 57:14 78:14
    92:23 93:4 96:18 109:21
    114:20,22 116:19 122:7,25
    123:5 140:17 148:8 152:23
    160:21
**organization** 24:4 25:5,6,7
    25:13,14 26:15 27:12,15,19
    29:2,11 30:9 31:12,17
    32:11 91:20 92:7,11 122:21
    123:3,9 150:12
**organizations** 24:9,10,17
    28:13,22 30:25 31:2,7 32:4
**orientation** 135:6
**origin** 49:22
**original** 6:21 7:9 49:20 51:15
**originally** 51:14,14,22
**Orlando** 23:6
**outlets** 26:8
**outside** 37:11 44:12 56:8
    58:5 73:6
**outstanding** 115:21
**overall** 96:3
**overly** 75:25 76:7
**overnight** 66:13
**oversee** 27:22 147:6
**overseeing** 27:14
**overtly** 126:11
**overview** 24:24 104:21

**ow** 93:5
**owner** 93:5 154:2,21 155:9
**owner's** 156:2
**owners** 75:23 104:4,13
**ownership** 71:25

---

**P**

**P** 4:2 108:18 115:10
**P.D.F** 158:6
**p.m** 1:21 64:23 127:9,10
    157:15,16 161:18
**page** 39:3,10,11,11,13 40:6
    42:16,17 45:17 52:17
    105:18 107:10 108:4,10,11
    108:17,17,22 115:18 118:2
    118:3,4,4 121:6,7 140:8
    141:16 142:7,8 148:15,16
    158:15 163:5
**pages** 38:22 41:12,13 163:9
**pains** 17:21
**paint** 122:7
**panic** 136:18
**paper** 78:11,12 86:5
**paperwork** 78:21 84:12
    85:14 86:12 90:7 96:5
**paragraph** 142:7 148:14
    149:5
**parent** 131:17
**parishioner** 153:24
**parishioners** 151:22
**parole** 129:13
**parse** 104:3
**part** 7:19 18:20 19:12 24:8
    27:19 30:8,24 31:7,8,9,13
    31:20,20 32:13 58:20 62:14
    73:22 76:5 78:19,22 79:19
    80:16 84:7 90:7 91:13,16
    91:20,25 92:6,10,20,21
    97:18 99:18 102:2 104:12
    104:17 106:14 108:14
    112:21 113:5 118:25 122:6
    125:12 137:16 149:23
**participants** 118:8
**participate** 9:15
**participating** 8:11
**particular** 60:11 67:2 92:23

145:10
**particularly** 23:22
**parties** 6:4,16 7:2,7,12,17
  8:5,19 9:5,13,24 164:10
**partner** 85:22
**parts** 32:11
**party** 9:9,9,15 10:5 67:8
  75:12 91:21
**pass** 109:2,4 114:22 120:2
**passed** 112:2
**passing** 114:20
**pastor** 123:10 149:22 150:7
  150:8,17 151:6,10 152:11
  152:25 159:16
**Pastored** 149:22
**PATRICK** 2:4
**pause** 64:11
**pawn** 62:8
**pay** 21:18 77:10
**paying** 77:4 112:6
**PDF** 5:20
**pe** 119:4
**pedagogy** 111:14
**Penn** 143:9
**people** 32:20 33:16 58:12
  62:19 74:22 75:22 80:22,25
  81:5 82:2,16 83:18 91:17
  91:17 92:17,22 93:12,18,19
  96:19 97:2,21 98:2,7,12,18
  104:3,4,9 107:16 109:22
  110:11,12,17,20,25 111:20
  112:11 116:13,17,25 117:5
  117:15,16 119:4,8 120:2,8
  120:18 121:22 122:9,14
  128:6,18,22 129:6,8,19
  130:6,23 131:4 132:17
  134:11 135:3,18,19,22,24
  136:4,10,20,21 137:9,25
  138:16,17 139:3,12,15,16
  139:17 144:6,7,14,21
  145:11,16,19,21 147:21
  150:20 151:19 156:3,12
**percent** 51:20 59:15 62:11
  71:21 85:4 90:8 101:21
  112:3 114:19 120:2 145:12
**perfectly** 27:2

**period** 89:9
**perishable** 62:18
**permanent** 66:2
**permissible** 128:12
**permission** 123:4
**permit** 4:8 33:15 40:4 48:11
  49:5,9,11,15,17,21 51:15
  56:18 88:17 90:11
**permits** 33:21,22 56:15
**permitted** 28:25 122:25
  128:11 148:20 151:4
  154:12
**perplexed** 61:11
**person** 13:11 62:3 82:14,18
  85:23 86:3 97:5 99:16
  130:24 132:23 133:9 135:8
  136:12 148:24 155:12
**person's** 85:22 91:3 133:7
**personal** 36:24 37:5 69:9
  132:12 155:22
**personally** 20:18 98:19
  136:18 160:2
**petition** 71:14
**Phi** 28:16
**philosophically** 133:21
**philosophy** 63:24
**phonetic** 23:25 108:18
**photo** 4:7,8 47:16
**phrase** 164:16,17,18,19,20
  164:21,22
**physical** 8:10 26:2 46:25
  87:12 110:21 112:8,9
  116:17,20
**physically** 9:21,25 22:24
  23:2 66:8
**pick** 62:23 128:2
**picked** 61:21
**picture** 122:7
**piece** 86:5 104:18
**pin** 29:19
**pistol** 1:4 5:9 29:23,24,25
  31:24 33:21 40:4 42:2 46:4
  55:14 59:21 60:16 61:8,15
  78:2 94:9 109:13 110:5,6
  123:13
**pistols** 42:2,3 44:2,3 53:3

**place** 3:6 8:14 10:2 12:3
  22:23 57:21 66:10,14 76:8
  82:5 103:11,12 108:12
  116:10 117:17 122:7 124:8
  137:8,10 138:14 147:10,19
  148:17 151:8 156:9 162:4
  163:4
**placed** 75:8 91:18
**places** 102:21 103:7,8,15,18
  113:14 115:5 117:23
  121:17,18 127:23 128:10
  128:11,15,23 129:9,20,21
  129:24 135:14 138:23
  147:23
**plaintiff** 1:9 3:3 5:6,11 39:15
  42:11 70:13 92:7,12
**Plaintiff's** 39:17
**Plaintiffs** 12:4
**plan** 107:21 123:21
**plastic** 48:14
**platforms** 35:14
**play** 95:24 104:12
**playing** 61:14
**please** 11:16 12:9,15,16
  13:13,21 14:21 17:4,25
  43:10 53:15,20 60:23 73:13
  162:5 164:8,9
**pluck** 96:8
**plus** 87:16 100:16 101:11
  149:24
**po** 133:19
**point** 49:13 55:24 57:25
  61:19 62:10,13 63:14,21
  73:2,6 81:20 87:7 129:17
  130:9 132:15 155:14
**pointing** 119:22 135:4 136:7
**police** 1:13,15 2:6 11:20 13:4
  18:9 33:18 37:9,10,18,21
  37:24,25 44:18 60:10,11
  86:22 87:2 94:7 100:19
**policies** 28:10
**policy** 28:4,6,22 29:7 150:23
**polling** 128:22 129:21
  138:14
**populated** 133:19
**Porter** 1:7 3:5 11:24,25

13:25 14:5 16:24 17:7,16 20:13 21:14,18,25 22:10 35:3,7 36:13,20 41:22 43:5 47:18 48:20 50:21 51:4,7 53:11,20,25 54:2 56:23 60:19,22 65:18 72:20,24 73:10 75:16 85:10 93:20 94:22 95:2,16 105:8 126:18 130:2 132:13 136:25 137:12 138:18,20 140:21 141:3 157:12 161:7,14
**portion** 102:11 120:6
**portions** 102:7 113:11,13,18
**position** 28:3,6 32:4,7,9,10 33:5 59:10 64:9 83:4 154:9
**positioned** 71:18
**possess** 32:24 39:12
**possession** 9:3 42:12,25 43:18 44:5
**possibility** 96:16 99:8 139:19 139:24
**possible** 45:8 66:9
**post** 49:24 89:10
**posted** 37:4 122:24
**potential** 98:18
**potentially** 95:11,11,15 99:6 135:22 137:8 146:18
**PowerPoint** 4:9 103:2 105:2 105:6 109:6
**practical** 133:21
**practicality** 133:24
**practice** 6:7,23 7:4,19 63:8 134:3,5 135:10
**practicing** 134:19
**precedence** 155:20
**preference** 155:22
**preferences** 155:7,17
**premises** 46:20,23,24 49:21 89:20
**prepare** 20:16 58:3
**prepared** 57:13 163:10
**presence** 137:10 139:8,10 158:18 163:4 164:8
**present** 8:5 9:21,25 22:10 23:11 63:2 138:5,15 139:15 139:18,22 160:16

**presented** 9:2 15:12
**presenting** 8:24 57:15 111:16 118:7
**president** 107:2,5 138:15
**pressing** 18:13
**presume** 58:22
**presumptive** 95:20
**pretty** 24:13 43:4 69:3,6 79:11 159:15
**prevent** 98:23
**prevented** 144:20
**prevention** 101:8 102:13
**previous** 46:6,10 161:2
**previously** 18:7 77:19 153:7
**prices** 78:16
**primarily** 33:12,15,25 119:4
**Prince** 28:18,18
**principles** 101:10
**printing** 130:15
**prior** 9:3 80:7 88:24,25 89:3 100:20 148:19 151:4
**private** 153:19 154:15 155:3 155:7,9,12,15,17 156:2
**privilege** 15:5
**privileged** 15:7
**pro** 30:25
**probably** 11:13 14:10 28:2 36:7 51:24 60:2 66:13 82:15 122:9 132:2 149:21
**probation** 129:13
**problem** 47:17 83:13 134:24 142:4 156:15
**procedural** 20:25
**proceed** 124:18
**proceeding** 15:23 16:16 18:4 19:6,10 20:3 68:15,19 73:23
**proceedings** 67:7,13 68:10 72:8
**process** 18:19 78:8,12,12,20 78:22 79:3,10,12 80:16 81:23 85:14 86:11 87:11 89:3 90:24 93:23 97:18 103:22,22,25 123:9
**produce** 40:19 47:15,19 50:16 52:14

**produced** 39:16 40:15 43:25 48:18 52:20
**production** 41:17 43:7 49:5
**Professionally** 24:3
**profit** 24:14
**prohibit** 128:6,17,18,22,24 128:25 129:6,19 133:15,15 133:16 134:6,9 154:12
**prohibited** 128:16 143:15 147:21
**prohibition** 74:14 133:22 147:14 151:8
**projects** 26:12
**promotes** 131:7
**promoting** 33:2
**pronounce** 121:8
**properly** 57:14 66:15
**properties** 28:7
**property** 70:3,22 71:4,8,15 153:20 154:2,4,15,21,21 155:9,10,12 156:2,3,6,13
**proponent** 104:11
**proponents** 30:11
**proprietor** 34:14,17
**protection** 5:12 16:3,5 18:16 18:17,21,24 132:6
**protective** 158:17
**prove** 93:3 94:5,10
**proven** 58:19
**provide** 9:22 43:25 78:18 79:24 80:11 109:24
**provided** 6:6,22 7:4,18 80:5 86:14 163:11
**provides** 26:4,15
**providing** 25:24 79:18
**provision** 98:22 99:2
**provisions** 9:17,19,22 89:16
**public** 6:18,19 26:11 44:7,8 66:3 103:15 110:3 135:16 142:10 156:7 162:11 164:9
**publicly** 145:3
**pull** 21:16,22,25 109:12 119:9 139:25
**pulled** 37:11 124:15
**pump** 54:12
**purchased** 47:13 56:2

**Purely** 19:24
**purpose** 8:21 73:3 139:10
**purposes** 7:4
**pursuant** 8:6
**pursued** 18:17
**pursuing** 18:16 89:3 152:3,8
**put** 12:14 29:19 33:11 38:12
  39:20 40:24 42:14 45:16
  59:10 64:14 65:7 66:2,15
  76:8,21,24 84:13 96:24
  120:5 141:13 157:19

**Q**

**qualification** 101:19,22
**qualified** 96:8 120:3
**Queens** 67:20 69:6,7,9
**question** 6:8,11 7:21,24 9:5
  13:13,16,20,23 14:23 15:8
  15:11 17:25 18:2 19:22
  21:19,20 22:2 35:11 36:17
  43:6,9,11,14 52:23 53:13
  53:15 55:7 56:7 58:9 65:23
  85:11 91:16,23 92:14 93:21
  93:25 94:20,23 95:3,5,17
  97:5,9,18 111:6,20 114:24
  116:11,15 117:9,10 125:20
  125:22 126:19 128:10,14
  128:14,15 129:18 130:3
  133:14 135:15 137:2,4,5,13
  138:21 153:10 155:24
  156:18
**question's** 92:4
**questioning** 9:4 15:12 53:22
  56:21 73:22
**questions** 13:7 15:6 20:7
  25:4 41:22 60:6 65:16
  73:21 79:9,14 93:10 99:23
  103:11 104:15 112:6
  113:25 115:22 116:4 117:4
  117:15 120:23 125:13
  129:10 131:10 161:6,8,15
**quick** 73:21 104:14 120:23
  120:24 121:3,4 125:13
  157:10
**quickly** 14:13 38:13
**quite** 52:23 71:25

**quiz's** 4:10
**quizzes** 111:9 113:7,8
**quote** 55:5 94:13 119:6
  121:10 152:22

**R**

**R** 4:2,6 115:19 142:21 143:6
  143:18 146:14,24
**R.E.I** 70:19
**racial** 60:8
**racially** 94:3,7
**railroad** 142:12,13 143:11
  143:14 144:6,15,18 145:4
  147:7
**raise** 12:8
**ran** 61:21
**range** 101:10,12 102:2
  106:11 118:24 119:25
  120:3,7,8 123:21 124:11
  134:20,21
**ratcheted** 125:5
**rate** 120:2
**re-up** 71:13
**reached** 57:25 76:4
**reaching** 139:14
**react** 135:25
**read** 42:15 161:8 162:3
  164:8
**readily** 128:12
**ready** 18:6 23:23 111:2
  134:22 143:25
**real** 14:17 71:11 121:11,16
  123:16
**real-world** 123:7,15
**realize** 115:13
**really** 59:18 79:7 95:10 98:5
  156:25
**Realty** 72:13
**reason** 63:24 81:4,7 90:16
  94:6 98:21,25 118:3 127:21
  132:4,8,11 133:8 137:25
  157:6,7
**reasonable** 9:17,19 116:22
**reasons** 73:8 74:13 129:9
**recall** 22:6 30:17 35:25 37:15
  41:17,20 67:17,19 84:9,16

106:14 113:15,16,21
  159:23
**received** 47:12 49:20 51:14
**reciting** 111:19
**recognition** 63:22
**recognize** 38:17 39:23 62:16
  105:15 140:8 141:9 148:2
  158:3
**recommend** 118:10
**recommending** 115:24
**reconvene** 157:11
**record** 9:18 11:5,15 12:16
  33:17 45:11,12 64:19,23,24
  65:2,24 73:15,16,17,19
  127:6,9,10,11 157:15,16,17
  162:4 163:10
**recorded** 8:18 14:16
**recording** 8:18
**records** 87:22
**recreation** 142:17
**recreational** 26:8
**reduce** 71:15,20
**refer** 33:24
**reference** 81:25 82:5,18
**references** 78:19,19 80:20
  86:13 88:8
**referred** 26:6 100:15,16
**referring** 40:22 42:23 55:2
  144:8
**refers** 39:15
**refused** 59:21,23
**reg** 93:16
**regarding** 9:4 29:11 36:25
  53:14 54:24 84:19
**regards** 20:21,22 59:12 76:6
  103:20 106:11 111:24
  117:5 118:21 123:15
  127:22 143:22 147:19
  152:15
**Regional** 76:3,11
**regular** 14:17 46:4
**regulated** 93:17 125:6
  126:14
**regulation** 125:11
**regulations** 117:20
**reinforce** 119:18

**related** 21:6 22:7 28:4,7,22
　30:3,6 31:11 41:25 42:3
　106:22 152:14
**relates** 44:3 80:7 103:24
　109:8
**relating** 42:9
**relationship** 86:7
**relationships** 30:12
**relative** 146:9
**released** 56:4
**relevant** 42:21,25 43:18,21
　44:5 89:16 97:9,11
**remain** 63:20
**remember** 13:8 16:12 21:4
　34:7 36:8 40:19 49:18
　67:24 76:25 90:6,8 106:5
**remembered** 80:17
**reminding** 119:20
**remote** 8:9 9:14 10:4
**remotely** 8:15
**remove** 61:18
**removed** 90:5
**renew** 90:18 104:5
**renewal** 87:11,17 88:5,9,13
　90:21,24 103:21 104:2
　114:2 117:6
**renewed** 87:8
**renewing** 104:7
**repairman** 156:19
**repeating** 51:5
**rephrase** 92:5 93:25 95:4,7
　135:14 147:5 153:10
　154:19
**Reported** 1:25
**reporter** 8:8,16 11:4,10,23
　12:7,14,19 17:5,9,13 26:21
　26:25 27:5 39:8 40:11 45:5
　45:8,13 48:25 49:6 64:16
　64:18,22,25 65:5 73:18
　115:16 127:5,8,11 140:13
　140:18,25 141:6,22 142:3
　148:10 157:17,22 158:12
　163:13
**Reporters** 8:12 163:11 164:2
**reports** 27:22
**represent** 12:4 13:2 35:7

60:9 76:10 89:14 94:11
　125:25 158:5
**represented** 20:9
**representing** 7:14
**represents** 35:3
**repute** 96:11
**request** 5:12 41:16,23 42:5
　43:7,8,9 49:2,4 53:13 105:4
**requesting** 10:5
**requests** 41:18 43:16
**require** 82:25 109:10 118:23
　126:10
**required** 87:25 88:4,8,22
　135:3
**requirement** 79:19 81:9
　82:17,20,20,22,24 83:17,25
　87:15 88:19 89:25 91:7
　92:15,25 93:8 99:5,19
　106:14 125:15,18 126:8,12
**requirements** 82:5 96:4
　100:4 117:20
**research** 110:3
**reserved** 6:9,13 7:23 8:3
**residence** 156:6
**resident** 23:20 81:24 82:10
　82:11 83:2,3
**residents** 75:9
**resides** 83:3
**residing** 23:22
**resolved** 65:25
**resources** 112:23
**respect** 153:17
**respectable** 15:2
**respective** 6:4,16 7:2,7,12,17
　32:12
**responding** 15:11
**response** 5:6,11 38:24 41:15
　42:10 83:12 115:10
**responses** 14:3 39:17
**responsible** 27:13 75:22
　93:19 104:13 148:22,24
**responsive** 42:11
**Restate** 95:7
**restrict** 74:16
**restricted** 103:18 124:8
　127:24 128:3 147:22

**restrictions** 46:16 74:13,17
　74:25 75:7 90:5 91:18
　126:3 156:9
**restrictive** 75:25 76:8 116:7
　152:24
**restroom** 73:12
**resubmit** 88:12
**resurgence** 150:5
**retain** 118:9
**retainer** 71:13
**Retirement** 26:10
**return** 6:20 164:11
**review** 21:3 41:23 108:18
　115:19 118:5 120:22 121:7
**Reviewed** 20:20
**reviews** 108:4,8
**revolver** 47:25 48:7 52:20
　53:5
**ride** 120:16 142:13,15 143:7
**rifle** 1:1,4 2:1 3:1 4:1,8 5:1
　6:1 7:1 8:1 9:1 10:1 11:1
　12:1 13:1 14:1 15:1 16:1
　17:1 18:1 19:1 20:1 21:1
　22:1 23:1 24:1 25:1 26:1
　27:1 28:1 29:1,23,24,25,25
　30:1,4 31:1,24 32:1 33:1
　34:1 35:1 36:1 37:1 38:1
　39:1,12 40:1 41:1 42:1 43:1
　44:1 45:1,24 46:1,7 47:1
　48:1,11 49:1,5,9 50:1 51:1
　52:1 53:1 54:1,16,17 55:1
　56:1 57:1 58:1 59:1 60:1
　61:1 62:1 63:1 64:1 65:1
　66:1 67:1 68:1 69:1 70:1
　71:1 72:1 73:1 74:1 75:1
　76:1 77:1 78:1 79:1 80:1
　81:1 82:1 83:1 84:1 85:1
　86:1 87:1 88:1 89:1 90:1
　91:1 92:1 93:1 94:1 95:1
　96:1 97:1 98:1 99:1 100:1
　101:1 102:1 103:1 104:1
　105:1 106:1 107:1 108:1
　109:1 110:1 111:1 112:1
　113:1 114:1 115:1 116:1
　117:1 118:1 119:1 120:1
　121:1 122:1 123:1 124:1

125:1 126:1 127:1 128:1
129:1 130:1 131:1 132:1
133:1 134:1 135:1 136:1
137:1 138:1 139:1 140:1
141:1 142:1 143:1 144:1
145:1 146:1 147:1 148:1
149:1 150:1 151:1 152:1
153:1 154:1 155:1 156:1
157:1 158:1 159:1 160:1
161:1 162:1 163:1 164:1,4
**rifles** 54:4,6,7,14 55:7,8
**right** 6:7 7:21 12:8 13:18,24
14:23 21:5 22:9 23:2,18
26:17 36:17,17 38:3 40:7
40:16 43:14 45:15 49:13
51:15 52:12,13,25 57:2,24
58:9,11 65:6 72:19 74:5,11
74:12,21 75:6 80:10 85:9
90:23 93:4 94:17 96:3
100:2,11 105:15 108:12
116:8,10 122:10,12 123:22
126:3,14,21 127:17,25
128:4 129:3,10,16 132:24
136:13,22 138:9 141:19
143:3 145:17 147:15
151:20 154:3,7,10,11,20,25
155:12,25 156:2,14,16
157:4,9 158:7 160:19 161:5
**rights** 6:6,22 7:18 63:23
74:24 82:12 98:15 153:12
154:5,8 155:4,21
**ring** 71:2
**rings** 61:7
**risk** 27:16 58:23 145:10,20
**robbed** 19:15,16
**robbery** 19:19 61:24,25
69:22
**Robert** 1:5 115:19
**rode** 142:20
**RODNEY** 1:14
**role** 86:23,25
**rollercoaster** 120:16
**room** 17:23 22:24
**round** 31:4 54:12
**rounds** 56:12 101:16,16
**rule** 6:22 63:16

**rules** 6:7,23 7:5,19,20 110:21
110:24 118:19 119:13,15
119:19,20
**ruling** 139:5,13
**run** 26:13 58:16 73:12
110:25 136:4 146:8,19,23
146:25
**running** 102:13
**runs** 121:25
**RYDER** 2:4

**S**

**s** 4:2,6,6 140:13
**S.C.A.R** 70:25
**sacrificing** 98:15
**safe** 104:23 106:11 135:4
136:24 137:11,15,18 138:3
138:16 139:4,5,7 143:5
158:19
**safely** 63:6,7 118:19,22
145:7,9
**safer** 137:8
**safety** 18:11 32:21,25 101:10
101:10,12 104:10 106:12
110:21,24 118:19 119:13
119:15,19,22,24 120:8
124:14,16 131:8 137:5
138:5
**Saturday** 101:4 107:11
**Savage** 54:16,17
**save** 14:25 71:22 84:11 146:2
**saving** 84:16
**saw** 76:9
**saying** 50:2 51:13 52:23 75:4
80:11 83:9 97:11 115:20
136:14 137:15 152:7
155:11,25 156:4
**says** 39:13 43:9 44:12 49:15
84:24 108:18,20 143:4
148:16 155:10 158:16
**SCAR** 70:25
**scare** 131:3
**scenario** 95:24
**school** 18:11 131:4,18,19,21
132:4,9,16,18,20 133:2,5
134:11 136:23

**schools** 24:12 103:19 128:19
129:21
**scores** 101:20
**SCOTT** 1:8
**screen** 38:13 86:18
**scroll** 38:19,20 40:5 117:25
141:10
**scrolled** 147:25
**scrolling** 39:3 107:10 108:3
158:14
**se** 30:13 79:8 113:19 128:9
**search** 41:24 42:20 43:17
**second** 5:18 28:9 29:20
30:11,25 31:6 36:7 40:6,24
45:6,16 49:2 64:11 73:12
74:23 75:24 93:2,11 108:13
118:2 124:7 127:22 133:23
148:4 151:7,10,17,20 155:3
155:25
**secondly** 60:14 124:7
**seconds** 138:8
**section** 8:6
**secure** 124:12 158:19
**security** 123:3 131:11 136:15
148:22,24 158:16,16,24
159:3,11,18,20,25 160:4,7
160:13,16
**see** 17:15 37:13 38:14,16
39:21,22 41:3,5,9 42:13,18
42:19 50:11 62:7 64:12
65:14 66:12 68:3 77:16,17
80:2 81:9,13 92:20,24 95:8
105:12,14 106:20 107:11
119:2 132:22 134:14,19
140:3,12 142:8 149:3
157:25 158:2,21 159:17
**seeing** 41:17 135:23
**seeking** 16:5,5
**seen** 41:6
**self-** 66:19 132:5
**self-defense** 67:3 149:2
**semi** 45:24
**semi-** 48:10 49:8 55:8
**semi-automatic** 4:8 45:24
46:7 49:5 55:6
**send** 45:3 47:18,19 48:20

110:22
**senior** 26:6
**seniors** 26:13
**sense** 13:23 15:14 85:21 86:3
   86:10 91:4,15 93:9 99:10
   99:21 125:25 131:8,14
**sensitive** 102:21 103:7,8,15
   103:18 113:14 115:4
   117:23 121:17,18 122:7
   127:18
**sent** 20:21 36:24 110:24
   157:20
**sentence** 118:6
**separate** 8:9 48:11,14 60:12
   106:16 124:13
**September** 89:16 107:25
   108:2
**sequence** 141:21
**serious** 59:16 61:18 118:7
**seriously** 64:2
**serve** 24:3,17 27:19
**served** 41:19
**serves** 26:7 158:17
**service** 18:11
**services** 25:14,22 26:3,4,5,14
   70:2 158:19 160:17
**servicing** 32:12
**serving** 24:5,8 25:10
**session** 129:7
**settled** 67:21
**seven** 5:19 45:17 108:17
   158:11
**seventy-three** 72:12
**share** 112:22 121:21
**shareholders** 34:13
**sharing** 39:19 40:23 104:19
   161:12
**She'll** 11:12
**sheet** 162:7
**shooting** 62:18 138:2 144:5
**shootings** 132:18
**shop** 62:8
**shortly** 23:24
**shotgun** 54:8,10,11,12
**shots** 120:11
**show** 105:10 122:9 132:16

147:24 157:6
**shown** 122:4
**shows** 81:22
**shrug** 14:19
**shut** 13:18
**sides** 40:6,14
**sight** 135:7
**Sigma** 28:16
**sign** 71:10 122:24 161:9
   164:8,10
**signaling** 125:2
**signature** 141:17 164:11
**signed** 89:14 107:16 164:24
**significant** 80:12
**similar** 35:11 41:13 96:16
   152:14,19 159:15
**similarly** 14:14 83:17 139:2
   146:3,13,15
**sir** 14:24,25 19:4,11 20:8
   22:17 142:19
**sister** 18:8
**sister-in-law** 18:10,17
**sit** 17:22 112:3
**site** 105:19
**sites** 36:22,25
**sitting** 26:23 114:15
**situation** 58:18 59:19 66:18
   66:22 99:6 123:11
**six** 5:17 38:22 41:13 62:21
   62:22,24 101:5 108:4 140:4
   140:5,15,23,23 141:4,5
   144:6 148:9
**sixteen** 87:16 100:16,17
   101:6,11 102:4
**sixty-** 101:7 103:22
**skill** 62:18
**skin** 57:17
**skit** 138:2
**slide** 119:18
**slides** 103:9 111:19
**slightly** 65:22 114:24 128:14
   155:23
**small** 70:21,24 149:17,20
**smooth** 79:11
**Snow** 69:10
**social** 26:4,8 35:12,14 36:21

76:18
**socialization** 135:6
**socialized** 134:14,17,18
**society** 58:11,21 135:20
   155:5
**sole** 34:14,17
**Solutions** 70:19
**somebody** 36:14 101:20
   112:16 114:14 122:8
   131:18,18,20 132:22
**someone's** 59:13 95:22
   114:18 130:24 132:8
   155:22
**soon** 105:11 107:20
**sorry** 21:17 22:6 26:21 27:5
   34:24 40:25 48:25 50:25
   51:7 55:7 62:9 68:6 79:19
   87:18 88:16 94:2 95:11
   102:6 106:22 108:12,13,16
   108:20 109:3 113:23
   140:13,22 152:5 153:9
   154:18
**sort** 13:5 20:25 96:24 124:19
   135:9
**sorts** 24:16 28:20 135:9
**sought** 16:6
**sound** 94:17
**Sounds** 132:19
**sources** 110:3
**south** 122:2
**Southern** 150:13
**space** 66:7,7,8 123:6 136:22
   146:4
**spacing** 114:15
**speak** 19:18 28:10 31:3 75:5
   76:6 80:5 86:13 95:21,23
   96:19 97:2 109:16 126:4
   154:12
**speaker** 27:4
**speaking** 23:13,16 111:16
   136:11
**special** 56:17
**specialize** 71:11
**specif** 126:10
**specific** 24:25 43:7 82:11
   113:21 121:18

specifically 28:10 30:6 44:3 58:13 67:20 103:24 126:10 159:23
specify 9:18,20
speculate 68:4 85:12 116:24 139:7
speculating 133:8
speeding 64:5
spell 12:15 25:8
spelling 161:15
spending 23:8
spinning 111:18
spit 111:3
spite 122:14
spoke 49:21 76:12 143:21
spoken 152:11
sportsman's 46:20
spouse 80:11 83:18,20 84:19 84:20,24 85:8,22
spread 101:2 103:5
Square 103:17 121:21,22,24 121:25 122:5,8,16
stage 13:24
standard 71:25 95:10,13,14 101:20
standing 53:21
standpoint 63:11,12,12
start 11:17 13:16 32:11 54:9 102:25
started 17:2 31:11 32:19 89:3 106:25
starts 128:2
state 1:4,13 3:9 11:7,18,20 12:15 13:3 21:7 28:19 29:23 31:13 32:9 37:9,10 37:12,14,17,21,24,25 39:7 44:11,18 49:19 54:25 55:3 55:24 56:5,8,15 60:10,11 65:11 74:14,18,18 75:8,24 76:3 79:18,25 82:10,20 83:3 86:22 87:2 94:7 100:10 102:18 103:4,21 110:13 113:11 117:9,13 125:8 128:2 134:16,16,17 137:4 155:6,18 156:11 162:2 164:12

stated 126:11 127:21 163:5
statement 98:11 114:8
Staten 25:16
states 1:2 9:12 32:12 75:3,4 134:18
stating 73:8
station 143:9 146:7
stay 14:4 117:21
steel 54:11
stepped 107:2
steps 96:4
Steven 1:1,12 2:1 3:1 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1,3 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1,9 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 159:1 160:1 161:1

162:1 163:1 164:1,4
Stevenson 149:22 150:7 152:11,25
stimulating 121:12
stipulate 9:13
stipulated 6:3,15,25 7:6,11 7:16 8:4,23 9:24
stipulation 9:16
STIPULATIONS 6:2
STIRNWEIS 1:6
stock 55:17,19
stomach 59:20,24 60:16 61:8
Stone 69:10
stop 39:19 40:23 45:2 58:17 58:24 61:14 111:10 131:25
stopped 64:5 124:24
storage 104:16,17,19,23 113:18,20 115:5 117:23 123:17,20
storefront 149:17
straightforward 125:22,23
stranger 131:20 138:14 145:2
stranger's 144:23
strangers 137:10 139:21
Street 3:12 11:19 122:10 164:13
stretching 111:19
strict 98:12
strike 6:9,11 7:22,25
strong 114:5,9,18
structure 110:14
strung 61:5
stuck 59:20,23 60:16 61:7
students 105:7 111:7 114:5 114:25 118:14 130:13
studies 121:11,17 123:17
study 108:25
stuff 17:19 111:19
stupefies 116:21
stupid 60:2
style 121:10
subject 39:14 92:17 155:16
subjected 155:4,18
subjective 114:7 126:12
subjectively 99:7

**submit** 78:21 123:11
**submitted** 80:20 160:24
**subsequent** 74:15 150:3
**subsequently** 18:20
**substance** 16:16 18:3 20:15
   127:14 159:14
**suburb** 23:6
**subway** 136:9,23 142:12,15
   143:7,12,14,19 146:14,20
   146:23 147:7
**sued** 67:10,16
**suffice** 160:24
**sufficiently** 63:3
**SUFFOLK** 1:15 2:3
**suicide** 101:8 102:13
**suing** 67:9 74:6 127:20
**sum** 16:16 18:3 159:13
**summarize** 50:3 95:9
**summary** 141:13
**summer** 30:20,21
**Sunday** 101:5
**Superintendent** 1:13 11:20
   13:3 41:16,19 60:10 65:12
**supersede** 155:7
**supplemental** 109:11,23
**supply** 9:8
**support** 27:18 159:17
**Suppose** 156:18
**supposed** 96:9
**sure** 11:17 14:16,22 15:6
   16:21 17:24 19:17 28:15
   32:3 38:21 40:11,23 41:10
   41:15 42:16 43:13 45:5
   46:8 50:22 51:20 54:22,23
   59:16 60:17 64:13 65:5
   69:3,6 73:10,14 77:8 88:6
   89:9,13 91:22,24 93:10,17
   94:2 95:6 98:6 104:12,14
   109:18 110:12 114:23
   115:16 116:25 120:19
   121:2,19 124:13 125:9,10
   127:2,7 132:7,25,25 150:14
   159:22
**surprised** 134:20 136:10
**survival** 59:17
**swear** 12:9 125:22

**sworn** 4:3 6:17 8:15 12:13,20
   162:10 163:7
**symbol** 106:21
**sympathize** 73:10
**system** 142:13,15 143:12,14

---

**T**

**T** 4:6,6 5:2
**tail** 17:21
**take** 15:9,10,13 20:24 42:6
   45:9 46:8 47:6 52:14 58:24
   59:13 63:14 64:2,10 66:13
   66:16 72:5 101:16 104:7
   106:3 109:2,3,3 120:5,24
   124:9,20 126:22,23 137:4
   143:6,11,13,18 155:20
   157:10
**taken** 9:14 87:14 112:2
   154:10 162:4 163:3
**takes** 13:23 63:7
**talk** 12:24 13:17 77:13 80:18
   85:21 86:3 87:19 102:23
   113:24 121:20 123:19,20
   124:17 125:12 127:18
   130:13,14 147:9
**talked** 67:6 151:21,24
**talking** 13:12 14:11 63:4
   71:5 90:3 92:2 110:20
   111:23 123:9 130:5,6
   131:12 133:21 134:10,13
   138:19,22 144:10 154:6,6,7
   157:4
**talks** 121:9 126:13
**Tara** 18:7,7
**target** 101:18,19
**taught** 101:14 107:24 118:20
**tax** 72:4
**taxes** 34:10 70:23 71:4,8,15
   71:20 72:2
**teach** 33:16,19 100:9 101:25
   102:24 104:15 106:13
   107:21
**teachers** 24:12
**teaches** 111:13
**teaching** 107:13,20 111:10
   111:13 121:10

**team** 27:21,21 158:16,24
   159:8,18,21,25 160:4,7,13
   160:16
**Teams** 1:22 11:14 38:14
   105:11
**techniques** 111:13
**teenager** 60:25
**telephone** 9:14 10:4
**telephonic** 10:3
**telescoping** 55:17
**tell** 23:19 27:3 28:13 32:16
   44:9 58:6 60:14,20 62:19
   69:18 71:7 74:6 75:17 78:7
   79:5 102:9 105:24 109:5
   111:8 118:13 121:15
   127:19 131:16 147:11
   149:15 158:23
**telling** 156:13
**temperament** 94:14 97:6,21
   98:7
**temple** 29:3,12,15
**ten** 15:13 38:11 54:17 56:12
   102:4 108:11 118:4 122:9
**tenant** 72:11,16
**tend** 91:17 155:7
**term** 34:15,16 119:6
**terrified** 131:22
**terrify** 135:19
**test** 4:10 69:17 109:2,4 112:2
   112:5,15,21 113:2,3,10,25
   114:5
**testified** 61:24
**testify** 163:7
**testifying** 7:15
**testimony** 6:9,11 7:22,25
   12:9 15:22 19:5,9,23 20:2,7
   96:17 127:15 139:23 161:2
   162:4 163:3,6 164:8
**tests** 101:21 112:18,19
**Texas** 134:20
**thank** 11:23 12:7,19,23 49:6
   53:25 56:23 60:24 65:3,14
   140:25 141:6,8,23 148:11
   161:9,12
**thanks** 65:21,21 127:13
   157:14 161:11

| | | |
|---|---|---|
| **that's** 13:25 29:25 34:15,16 69:14 89:11 110:7 117:13 | **Thompson** 3:10 4:4 11:17,18 12:22,25 14:8,9 17:17 | **title** 26:17 |
| **theft** 70:11 | 21:24 22:8 26:22,24 27:3,7 | **today** 11:7 12:5,24 20:6,10 23:10,13,16 62:21 81:6 |
| **themself** 145:15 | 27:10 39:6,9 40:9,12 43:12 | 149:8 161:2 |
| **there's** 125:8,8 | 44:24 45:6,10,14 47:20,22 | **today's** 20:16 140:24 |
| **thereabouts** 68:4 | 48:17,23 49:4,7 50:14,18 | **told** 59:22 61:14 69:5 |
| **They'd** 136:2 | 50:25 51:5,9 53:24 54:5 | **tomorrow** 63:16 65:24 |
| **thing** 13:10 32:2 48:20 51:6 | 61:22 64:20 65:3,6,10,16 | 107:13 137:17 |
| 59:16 61:15 64:7 71:7,10 | 65:20 73:9,14,20 83:6,10 | **tool** 137:23 |
| 96:8,9,9,13 104:11 116:8 | 83:16 105:4,9 115:13,17 | **top** 27:4 39:11,13 42:17 |
| 134:19 135:2 | 126:21 127:2,7,12 140:16 | 108:11,17 142:8 148:15 |
| **things** 13:7 20:25 24:19 | 140:19 141:7,19,24 142:5 | 159:6 |
| 40:20 58:3 63:13 96:7,14 | 148:7,11,12 157:9,14,18,23 | **topic** 160:20 |
| 97:14,14 106:10 115:7 | 158:9,13 161:10,12 164:6 | **topics** 102:10,13,15,17 118:9 |
| 119:12 124:4 125:5 129:24 | 164:13 | **torque** 68:23 |
| 135:21 138:3,12 | **thought** 51:7 | **Torts** 70:14 |
| **think** 14:12 19:12 24:24 28:8 | **thousand** 25:19,23 72:5 | **totally** 58:10 |
| 28:9 31:14,22 36:7,10 | **threat** 67:2 | **touch** 62:22 76:22,24 |
| 37:12,13,14 40:18 50:11 | **threatened** 37:20 | **traditional** 122:16 |
| 51:17 53:24 56:20 58:24 | **threatening** 136:8 | **train** 62:25 63:3,5 66:15 |
| 59:24 61:4 62:14,20,23 | **three** 5:10 24:6 25:17 39:11 | 136:23 145:8,13,15,19,21 |
| 71:4,5 78:14,20 81:4 82:8 | 39:13 42:17 45:3 51:24 | 145:23 146:3,11,20 152:18 |
| 83:13,13 84:17 85:9 88:10 | 54:7,13 72:17 91:3 103:9 | **trained** 32:21 57:14 58:15 |
| 88:14 89:12 90:16,23 96:12 | 117:7 131:17 142:8,14 | 59:3 66:8 130:10 159:19 |
| 96:13 98:22 99:2,14,19 | 143:4 157:20 158:15 | **training** 11:6 24:11 33:12 |
| 106:6,7 108:8 110:8,10,14 | **threw** 61:20 | 58:2 62:15,17,19 90:21 |
| 111:23 112:13 114:10,24 | **throw** 124:21 | 100:3,12 104:21 106:8 |
| 115:14 118:5 120:9 124:21 | **thrown** 69:4 | 108:24 111:12 114:16 |
| 125:15,17 126:6,7,24 128:5 | **thumbhole** 55:19 | 118:17,20 119:21 125:15 |
| 128:13,18,21,25 129:5,18 | **thumbs** 14:14,19 | 125:18 126:8,17 143:24 |
| 129:23 131:24 132:21 | **tie** 137:5 | 151:14 152:3,8,20 159:12 |
| 133:14,23 134:6,7,8 136:4 | **till** 79:21 | **trainings** 103:3 |
| 136:20 137:15 138:15 | **time** 1:21 12:24 13:12 15:2,2 | **transcribing** 65:15 |
| 139:12,20 140:16,17 | 15:9,18 18:5 20:2,24 23:8 | **transcript** 9:8 13:9,11 14:16 |
| 141:21 144:12,12 148:9 | 46:9 47:5 49:11 51:18 | 14:21 162:5,7 164:8,10,11 |
| 153:3,4 156:20 158:10 | 58:24 61:4,6 63:2,3 66:15 | **transcription** 163:9 |
| 160:13,14,19,20 161:5 | 73:6 78:2,14 79:10,14 | **transit** 142:11 147:3 |
| **thinking** 19:15 59:12 115:25 | 83:19 88:19 89:9,25 90:10 | **transparent** 58:10 |
| **thirties** 122:12 | 104:10 107:23 109:2,2,3,3 | **transportation** 66:3 103:15 |
| **thirty** 71:21 149:21 164:9,10 | 118:16 119:25 120:5,6,9,10 | 135:17 142:11 |
| **Thirty-five** 102:14 112:13 | 121:21,22,24,25 122:5,8,16 | **trap** 138:2 |
| 116:17 | 135:3 137:8 142:20 149:6 | **travel** 142:17 |
| **thirty-one** 148:15 | 149:25 150:6 153:11 161:9 | **traveled** 73:6 |
| **thirty-two** 148:16 | 161:13 162:4 163:4 | **treat** 86:12 |
| **Thomas** 1:6 3:11 11:21 | **times** 26:22 103:17 119:17 | **trial** 6:13 8:3 |
| 65:10 | 120:8 142:14 143:4 | **trick** 125:19,21 |

**tried** 42:17 74:2 84:14
**trigger** 104:24 119:9
**trip** 112:10
**true** 63:20 138:10 162:5,7 163:10
**truly** 111:17
**trumps** 156:2
**truth** 12:10,11,11 163:7,7,8
**truthful** 19:6,8,23,24 20:7 139:23
**try** 17:5 50:3 74:21 76:2 92:5 111:17 119:19 145:14 147:5 153:10
**trying** 14:4 37:12 40:19 58:3 90:6 99:10 106:5 160:22
**turn** 17:14 18:16 100:21
**turned** 84:15
**turning** 39:10
**twelve** 25:18 38:11 72:12,12 121:7 126:22
**twenty** 24:8 101:16 126:24 149:21,24
**twenty-nine** 72:12
**twenty-one** 144:7
**two** 5:8 19:25 25:19 39:11 40:6,10,14 41:10 42:16 45:16 52:17 54:15,18 55:6 55:8 68:8 70:18 77:15 78:14 87:16 89:22 100:16 101:7,11,11,12 102:4 103:6 103:9,22 104:20 106:5,6 107:11 114:16 120:8 157:11
**two-day** 100:25 106:7
**type** 58:17 118:17 149:17
**typewritten** 163:8
**typically** 155:7
**Tyrone** 149:22

**U**

**U** 4:6
**U.R.L** 36:3
**U.S** 5:14
**U.S.C.C.A** 105:22 106:2,3 107:17 109:13
**uh-** 14:19

**Uh-huh** 102:8 113:8 140:6
**uh-uh** 14:20
**ultimately** 18:25 19:20,21 62:4 86:16 109:15,17
**unauthorized** 8:20
**unconstitutional** 90:24 99:15,20
**undergrad** 24:23
**undermine** 74:19
**underrepresented** 76:10
**understand** 13:21 15:19 44:20 50:2 90:9 91:23 99:24 104:6 112:7 116:9,14 116:16,18 117:16 122:14 133:18 144:14,16 160:21
**understanding** 43:24 87:10 97:17 114:6,9 115:2 117:20 130:10 151:6,10
**understood** 13:22 50:22 66:17 75:11 84:18 91:19 153:9
**unduly** 147:22
**Uniform** 7:19
**Union** 148:17
**UNITED** 1:2
**unknown** 120:14,15
**unquote** 119:6 152:22
**unreasonable** 136:19
**unsafe** 137:7,22,23
**unsafely** 137:21
**unsuccessful** 18:21
**unusual** 135:8
**updated** 45:23 52:2 53:6
**upgrade** 47:4 89:20 90:2
**upgraded** 46:5 49:11 50:13 51:17
**Upstate** 106:4 117:6,13
**urban** 24:12 33:3
**usconcealedcarry.com** 105:19
**use** 9:19 34:15,19,21 35:15 35:16 57:19 66:19 67:3 73:2 81:21 94:15 97:7,23 103:3 106:11 111:14 115:23 116:17,19 119:6 121:21

**username** 35:20,24 36:4
**usually** 56:25 116:5 120:12
**utilize** 59:11
**utilized** 7:3
**utilizing** 118:19

**V**

**v** 1:1,10 2:1 3:1 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 159:1 160:1 161:1 162:1 163:1 164:1,4
**vacated** 18:25
**value** 109:22
**variables** 71:17

| | | |
|---|---|---|
| **variety** 71:16 | **walks** 109:25 | 99:1 100:1 101:1 102:1 |
| **various** 24:8,16 27:22 74:12 | **walkthrough** 124:20 | 103:1 104:1 105:1 106:1 |
| 74:13 96:6 109:25 110:3 | **want** 19:13 21:22 33:20 34:9 | 107:1 108:1 109:1 110:1 |
| **vary** 116:6 | 52:8 54:7 57:23,23,24 | 111:1 112:1 113:1 114:1 |
| **vehicle** 67:15 68:23 69:9 | 64:18 65:7 69:6 84:25 | 115:1,20,21 116:1 117:1 |
| 104:16,23 113:18,19,21 | 87:23 89:19 90:7 104:7 | 118:1 119:1 120:1 121:1 |
| 115:5 117:23 123:17 | 109:11 114:17 117:5 | 122:1 123:1 124:1 125:1 |
| 124:13 137:22 | 120:19,22 122:23 126:22 | 126:1 127:1 128:1 129:1 |
| **VENUE** 1:22 | 126:23 127:5 131:22,25 | 130:1 131:1 132:1 133:1 |
| **verbal** 14:17,22 113:9 | 138:7,11 143:10,13,15 | 134:1 135:1 136:1 137:1 |
| **verbatim** 111:4 | 144:14,17 145:22,25 | 138:1 139:1 140:1 141:1 |
| **verdict** 139:6,14 | 147:14 156:12,15 157:11 | 142:1 143:1 144:1 145:1 |
| **verification** 44:2 | **wanted** 65:17 108:14 152:17 | 146:1 147:1 148:1 149:1 |
| **verify** 39:4 123:12 | 160:12 | 150:1 151:1 152:1 153:1 |
| **version** 17:3,6 46:4,10 47:9 | **wanting** 75:21 | 154:1 155:1 156:1 157:1 |
| 65:23 155:24 | **wants** 154:3 156:20 | 158:1 159:1 160:1 161:1,8 |
| **versus** 21:7 78:12 103:11 | **warranted** 130:22 | 161:9,15 162:1,3,9 163:1,3 |
| 112:9 132:5 | **wasn't** 61:17 85:20 141:4 | 164:1,5,25 |
| **video** 8:7 9:7 | **way** 17:10,10 26:23 48:8 | **ways** 24:20 |
| **videoconference** 8:11,17 | 55:5 69:16 71:17 76:23 | **we'll** 12:5 14:13 15:10 |
| **view** 139:9 | 94:4 95:22 99:3 101:4 | 121:21 |
| **vindictive** 86:7 | 104:8 112:11 114:24 | **we're** 22:23 34:2 47:10 58:11 |
| **violation** 8:20 124:24 | 119:24 120:6 122:18,19 | 62:19 64:19,25 73:4,18 |
| **violence** 85:18 | 124:18 135:20 136:8 | 115:10 117:13 119:21 |
| **virtual** 17:20 | 144:22,25 146:7,11,19 | 127:11 133:7,21 134:13 |
| **virtually** 22:23 | **Wayne** 1:1,7,19 2:1 3:1 4:1,3 | 138:19,22 141:16 154:6,7 |
| **visible** 134:12 | 5:1,6,11,16 6:1 7:1 8:1 9:1 | 155:16,17 157:4,17 |
| **visual** 122:7 | 10:1 11:1 12:1,13,17 13:1 | **we've** 140:16,17,19 153:6 |
| **volunteer** 32:10 | 14:1,6 15:1 16:1 17:1 18:1 | **weapon** 54:20,24 56:25 57:4 |
| **vote** 138:16 | 19:1 20:1 21:1 22:1 23:1 | 59:8 63:18 94:15 97:7,22 |
| **voting** 138:17 | 24:1 25:1 26:1 27:1 28:1 | 119:7 |
| | 29:1 30:1 31:1 32:1 33:1 | **weapons** 56:8,12 93:13,18 |
| **W** | 34:1 35:1,21,21 36:1,10,10 | **wearing** 61:6 |
| | 37:1 38:1 39:1 40:1 41:1 | **website** 5:14,20 107:16,17 |
| **W** 3:5 | 42:1 43:1 44:1 45:1 46:1 | 110:5 158:6 |
| **W-A-Y-N-E** 12:18 | 47:1 48:1 49:1 50:1 51:1 | **websites** 110:6 |
| **wait** 13:13,14,15 14:4 47:18 | 52:1 53:1,11,12 54:1,2 55:1 | **week** 35:17 142:14,22,24 |
| 64:8 79:20 89:8 91:22 | 56:1 57:1 58:1 59:1 60:1 | 143:3,4 |
| 108:11 134:8 | 61:1 62:1 63:1 64:1 65:1 | **weekend** 111:2 114:10 |
| **waiting** 64:19 143:24 | 66:1 67:1 68:1,10,12 69:1 | **weekly** 142:24 148:18 |
| **waived** 7:10 | 70:1 71:1 72:1,21,25 73:1 | **weigh** 85:19 |
| **waiver** 6:12,22 8:2 | 74:1 75:1 76:1 77:1 78:1 | **weighted** 97:13 |
| **waiving** 39:14 | 79:1 80:1 81:1 82:1 83:1 | **welcoming** 158:17 |
| **walk** 62:21 134:11 | 84:1 85:1 86:1 87:1 88:1 | **well-** 93:16 126:13 |
| **walked** 134:21 | 89:1 90:1 91:1 92:1 93:1 | **well-regulated** 93:13 |
| **Walker** 68:20 | 94:1 95:1 96:1 97:1 98:1 | **went** 18:13,18 51:16 65:23 |
| **walking** 67:5 136:6 | | |

78:8 89:11,16 105:25 134:19
**weren't** 56:4 62:10
**west** 122:2
**Westchester** 83:2
**WhatsApp** 35:17
**when's** 107:23 142:20
**whim** 155:22
**whipped** 59:22 61:16
**who've** 119:4
**wider** 122:3
**wife** 18:12 23:25,25 47:12 84:3
**wildlife** 31:17
**willies** 120:11
**willing** 80:23
**win** 63:15 65:24 143:17
**wish** 84:14
**withdraw** 135:14 154:19
**withdrawn** 18:2 28:25 34:25 36:18 55:7 88:16 95:12
**withheld** 86:2
**withholding** 86:4
**witness** 6:18 7:14 8:8,9,14,15 8:25 9:2,4 12:13,17,20 14:7 17:12 21:16,22 22:5 47:21 48:22 54:4 60:21,24 72:23 72:25 73:11 83:8 126:25 127:3 157:13 161:11 163:6
**witness's** 8:16
**witnesses** 139:20
**woman** 69:10
**word** 80:10 94:24 164:16,17 164:18,19,20,21,22
**words** 92:24 138:8 152:22
**work** 25:6 28:3 75:23 142:14 142:25 143:8
**worked** 37:24
**working** 18:11 24:10,11 83:14
**works** 17:14 112:24 120:24
**world** 58:11 121:11,16 123:16 135:12
**Worokya** 121:8,9
**worry** 17:18
**worship** 103:16 147:10,20

148:17
**worshipers** 148:20
**worst** 13:10
**worth** 98:16
**worthy** 96:7
**would've** 59:23
**wouldn't** 56:4 66:5 71:5 84:13 90:17 144:14,17 147:8 156:15,15,23 157:5
**wounded** 144:7
**wrapped** 104:8
**write** 142:10
**writes** 108:22 111:6
**writing** 123:12
**writings** 42:8
**written** 4:10 8:19 113:7,9 115:11 150:25
**wrong** 58:16 74:22 81:13 119:11,12 121:8 132:11 135:10

**X**

**X** 1:18 2:9 4:2 5:2,2 162:8,11

**Y**

**yeah** 14:8,10 16:10,21,24 17:9 21:8 30:2 36:2,2,15 46:11,17,21 48:24 50:3,10 56:6 64:13,20 69:12,14 70:25 73:14 76:24 79:24 80:15 84:11,16,17 89:13 98:13 99:17 101:20 106:7 107:25 110:6,10 112:13,20 113:5 123:19 127:7 133:17 137:3 138:23 140:21
**year** 51:23 52:21 69:16 71:12 71:13
**years** 19:13 24:6,8 32:19 49:13 51:22 60:2 84:9 91:4 117:7,7 149:24 150:5
**York** 1:3,4,13 3:9,13,13 11:18,19,20 13:2,3 21:7 24:5,9 25:15 28:19 29:23 31:13 37:9,10,12,13,17,21 37:24,25 39:16 44:11 49:19 54:20,21,24,25,25 55:3,23

56:5,9,15,18 65:11 67:5 70:14,15 74:7,13 75:8 76:9 79:18,25 82:9,10,24 83:3,5 94:7,12 97:17 100:10 102:18 103:20 106:4 110:6 113:11 117:11,12,13 133:20 135:2,21,23 136:17 138:22 142:12,15,17 143:7 143:12,19 146:14,23 147:7 148:18 164:12,14,14
**Yorkers** 121:24
**you've** 106:21
**young** 60:25
**younger** 64:4
**youth** 24:10

**Z**

**0**

**1**

**1** 163:5,9
**1:16** 127:10
**1:54** 157:15
**10-24-25** 1:1 2:1 3:1 4:1 5:1 6:1 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1

110:1 111:1 112:1 113:1
114:1 115:1 116:1 117:1
118:1 119:1 120:1 121:1
122:1 123:1 124:1 125:1
126:1 127:1 128:1 129:1
130:1 131:1 132:1 133:1
134:1 135:1 136:1 137:1
138:1 139:1 140:1 141:1
142:1 143:1 144:1 145:1
146:1 147:1 148:1 149:1
150:1 151:1 152:1 153:1
154:1 155:1 156:1 157:1
158:1 159:1 160:1 161:1
162:1 163:1 164:1,5
**10:03** 1:21 11:2
**10:43** 45:11
**10:48** 45:12
**10005** 3:13 11:20 164:14
**105** 4:9
**11:17** 64:23
**11:18** 64:24
**11:28** 73:16
**11:32** 73:17
**113** 4:10
**115** 5:13
**12** 4:4
**12:40** 127:9
**141** 5:15
**148** 5:17
**158** 5:19
**161** 163:9
**16th** 121:8
**1819** 3:6 12:3
**18th** 3:12 164:13
**1st** 89:15,17 105:22

_____ **2** _____

**2:02** 157:16
**2:06** 1:21 161:17
**2001** 78:16
**2004** 16:14
**2015** 68:4
**2016** 68:4,4
**2017** 68:24 69:5
**2021** 49:16 77:22,24 88:18
88:21,24,25 105:22 106:25

**2022** 49:13 89:15,17
**2023** 49:14
**2024** 121:9
**2025** 1:20 30:21 107:12
115:20 162:10
**2026** 52:4 87:5
**22-cv-907** 1:10 164:4
**221** 7:19
**24** 1:20
**25th** 107:12
**28** 3:12 11:19 164:13

_____ **3** _____

**3/30/21** 51:15
**30** 164:9,10
**30th** 49:16 52:4 87:5
**3113** 9:11
**3113(d)** 8:6
**3116** 6:22
**3117** 6:23
**35203** 3:7 12:4
**39** 5:5

_____ **4** _____

**40** 5:8
**42nd** 121:23 122:10
**45** 5:10
**47** 4:7
**48** 4:8

_____ **5** _____

**523-7887** 164:2
**5th** 3:6 12:3

_____ **6** _____

**6/30/26** 50:11

_____ **7** _____

_____ **8** _____

**800** 164:2

_____ **9** _____

**93-ish** 19:14