UNITED STATES DISTRIST COURT
NORTHERN DISTRICT OF NEW YORK

_____

NEW YORK STATE RIFLE & PISTOL ASSOCIATION,
INC., ROBERT NASH, BRANDON KOCH, THOMAS
STIRNWEIS, WAYNE FRANCIS, KHOURY PORTER
and SCOTT NOREN,

                                     Civil Case No. 1:22-cv-00907

                     Plaintiffs,

v.

STEVEN G. JAMES, in his official capacity as Acting
Superintendent of the New York State Police, RODNEY
K. HARRISON, in his official capacity as Commissioner
of the Suffolk County Police Department, and Licensing
Officer for Suffolk County and PATRICK J. RYDER, in
his official capacity as Police Commissioner of the Nassau
County Police Department, and Licensing Officer for
Nassau County,

                     Defendants.

_____

## MEMORANDUM OF LAW IN REPLY

**GOLDBERG SEGALLA LLP**
Jonathan M. Bernstein, Esq.
Kevin M. Cannizzaro, Esq.
*Attorneys for Defendant*
*Patrick J. Ryder*
8 Southwoods Blvd., Suite 300
Albany, New York 12211
(518) 463-5400
jbernstein@goldbergsegalla.com
kcannizzaro@goldbergsegalla.com

57846714.v1

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES..................................................................................................................ii

PRELIMINARY STATEMENT....................................................................................................... 1

ARGUMENT ...................................................................................................................................... 2

    (I)   Plaintiff's submissions establish that none of his alleged harms are fairly traceable to Commissioner Ryder's enforcement of the CCIA licensing schemes  and therefore Plaintiff has no standing ...................................................................................................................................... 2

    (II)   The undisputed facts here show no free-standing municipal policy or local action that has expanded on the NYS licensing scheme ................................................................................... 6

    (III) The Second Circuit has already had the opportunity to consider the licensing provisions at issue here in historical context and found the majority of them to be constitutionally sound:... 8

CONCLUSION.................................................................................................................................. 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta*,
  594 U.S. 595, 141 S. Ct. 2373, 210 L. Ed. 2d 716 (2021) ...................................................12, 13

*Antonyuk v. Hochul*
  Antonyuk v. Hochul, 639 F. Supp. 3d .......................................................................................10

*Antonyuk v. James*,
  120 F.4th 941 (2d Cir., October 24, 2024) ...............................................................................8, 10

*Batista v. Rodriguez*,
  702 F.2d 393 (2d Cir. 1983) .......................................................................................................7

*Bucklew v. Precythe*,
  587 U.S. 119, 139 S. Ct. 1112, 203 L. Ed. 2d 521 (2019) ...................................................12, 13

*Chevron Corp. v. Donziger*,
  833 F.3d 74 (2d Cir. 2016) .......................................................................................................3

*City of Los Angeles v. Patel*,
  576 U.S. 409 (2015) ...................................................................................................................13

*Cmty. Hous. Improvement Program v. City of New York*,
  59 F.4th 540 (2d Cir. 2023) .......................................................................................................13

*Flast v. Cohen*,
  392 U.S. 83, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968) ...................................................................5

*Giambalvo v. Suffolk Cnty.*,
  155 F.4th 163 (2d. Cir., September 12, 2025) ............................................................8, 9, 11, 12

*In re Bibox Holdings Ltd. Securities Litigation*,
  534 F.Supp.3d 326 (S.D.N.Y. 2021)(a) .......................................................................................2

*In re Motors Liquidation Co.*,
  829 F.3d 135 (2d Cir. 2016) .......................................................................................................5

*Kellog v. Nichols*,
  170 F.4th 20 (2d. Cir 2025) .......................................................................................................3, 4

ii

*Martin-Trigona v. Shiff*,
  702 F.2d 380 (2d Cir. 1983) ....................................................................................12

*Melendez v. City of New York*,
  668 F. Supp.3d 184 (S.D.N.Y. 2023) ........................................................................3

*Palisades Ests. EOM, LLC v. Cnty. of Rockland*,
  2025 U.S. Dist. LEXIS 85721 (S.D.N.Y May 5, 2025) ............................................2

*Peck v. Cty. of Onondaga New York*,
  2021 U.S. Dist. LEXIS 157561 at *9 (N.D.N.Y. Aug. 20, 2021) ..............................7

*S. Jackson & Son*,
  24 F.3d ......................................................................................................................5

*Tangreti*,
  983 F.3d .....................................................................................................................7

*Stagg, P.C. v. U.S. Dep't of State*,
  983 F.3d 589 (2d, Cir. 2020) ....................................................................................3

*United States v. Rahimi*,
  602 U.S. 680 (2024) ..............................................................................................8, 11

**Statutes**

§ 400.00(1)(b) .........................................................................................................8, 9

42 U.S.C. § 1983 .....................................................................................................1, 7

62 Tenn. L. Rev. 679, 681 (1995) ..............................................................................13

N.Y. Penal Law § 400.00 ............................................................................1, 8, 9, 10, 12

## **PRELIMINARY STATEMENT**

Taken to their logical conclusion, Plaintiff's arguments here amount to this: a municipality that validly enforces a mandatory state statute, without exercising discretion, may later be held liable for damages under 42 U.S.C. § 1983 simply for following the law. If accepted, Plaintiff's positions would place every New York municipality tasked with enforcing firearms licensing schemes in an untenable dilemma.  They could refuse to enforce mandatory state statutes and face consequences from state officials, or they could comply with their legal duties and later face damages in the event the statute they followed was subsequently found unconstitutional. Municipalities are not required to be caught in this trap.  The long history of local and state licensing of firearms permits in New York State and the United States belies any argument that the actions of Commissioner Ryder are constitutionally infirm.  Plaintiff Francis has failed to establish a live case or controversy between himself and Commissioner Ryder concerning the licensing scheme under N.Y. Penal Law § 400.00.  He also has failed to show that any of his alleged harms are traceable to Nassau County's maintenance of a pistol licensing scheme within its territorial boundaries. Finally, the Second Circuit has already recognized that the CCIA licensing schemes at issue here withstand a facial constitutional challenge.  Plaintiff's arguments ignore the substantial body of case law developed over the past two (2) years addressing the facial constitutionality of licensing schemes maintained by New York municipalities.  In the end, Plaintiff has not established Article III standing as to the sole Nassau County Defendant, and Commissioner Ryder should be granted summary judgment.

Commissioner Ryder now submits the following Reply memorandum of law in further support of its Memorandum of Law in opposition to Plaintiff's motion for summary judgment and in support of his cross motion for summary judgment, to amend his Answer to the Second Amended Complaint, and his cross-motion for Judgment on the Pleadings in light of Mr. Francis'

1

clear failure to state a plausible claim, and respectfully requests that this Court issues a decision and order dismissing Plaintiff's Second Amended Complaint in its entirety, on the merits and with prejudice.

## **ARGUMENT**

**(I)      Plaintiff's submissions establish that none of his alleged harms are fairly traceable to Commissioner Ryder's enforcement of the CCIA licensing schemes and therefore Plaintiff has no standing**

In opposition, Plaintiff Francis makes clear that his alleged harms arise solely from the New York State Penal Law, not from any distinct local statute or Nassau County policy. He therefore has not established standing to pursue his claims against Commissioner Ryder because he has adduced no evidence to show that his harms are casually related to Ryder's enforcement of any state or local policy. If Plaintiff's theory were sufficient, every county in New York State that simply maintains a licensing scheme consistent with the Penal Law's licensing requirements would be exposed to damages, regardless of whether the alleged harms Francis claims were traceable to that county's enforcement of the same. That position is contrary to settled law in this Circuit.[1]

A plaintiff is required to show standing "with respect to each asserted claim" underpinned by a "distinct and palpable injury to [themselves]" flowing from that claim.  Palisades Ests. EOM, LLC v. Cnty. of Rockland, 2025 U.S. Dist. LEXIS 85721, *64 (S.D.N.Y May 5, 2025); In re Bibox Holdings Ltd. Securities Litigation, 534 F.Supp.3d 326, 334 (S.D.N.Y. 2021) (quoting Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 64 (2d Cir. 2012). The injury-in-fact requires a plaintiff to show "an invasion of a legally protected interest [that] is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560.  An injury is "concrete"

---

[1] Plaintiff makes no arguments in opposition to Commissioner Ryder's cross-motion to Amend his operative Answer in this case, to add standing as an affirmative defense, and therefore the Court should grant the unopposed cross-motion for the reasons stated in Ryder's initial motion papers submitted in May.

2

when it is "real and not abstract", though not necessarily "tangible", and is "particularized" when it affects a plaintiff "in a personal and individual way". Spokeo v. Robins, 578 U.S. 330, 339-40, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)). The "actual or imminent" requirement demands a "plaintiff . . . show that he has sustained or is immediately in danger of sustaining a direct harm as a result of the challenged conduct." Melendez v. City of New York, 668 F. Supp.3d 184, 195 (S.D.N.Y. 2023); quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983).

Significantly, the United States Supreme Court and Second Circuit have long noted that "[i]t is not enough that a dispute was very much alive when suit was filed . . . . The parties must continue to have a personal stake in the outcome of the lawsuit." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990); Antonyuk v. James, 120 F.4th 941 (2d Cir. 2024). "When the plaintiff no longer has a legally cognizable interest in the outcome of the action, the case becomes moot and is no longer a 'case' or 'controversy' for the purposes of Article III." Stagg, P.C. v. U.S. Dep't of State, 983 F.3d 589, 601 (2d, Cir. 2020) (citing Already, LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)). "The question of standing bears close affinity to the question of mootness, which is whether the occasion for judicial intervention *persists*." Chevron Corp. v. Donziger, 833 F.3d 74, 123 (2d Cir. 2016) (emphasis in original) (internal quotation marks omitted).

Finally, it should be noted that the Second Circuit, in a different factual context has noted, that where a judge acts as the licensing official under NYS Penal Law, there is a legitimate question as to whether a live case or controversy exists in the context of firearms licensing absent a showing of a "live" case or controversy related to enforcement of the law. (See Kellog v. Nichols, 170 F.4th 20 (2d. Cir 2025) (analyzing claims brought against a judicial official, and granting immunity, in

3

the context of §400 of the NYS Penal Law and finding that there was not a live case or controversy between the parties).    In Kellogg, the Second Circuit explicitly reserved and refused to rule on whether its reasoning as it relates to the judicial officer in that case extends to a police commissioner who acts in a licensing capacity. Id.

Mr. Francis lacks standing to pursue his claims against Commissioner Ryder and has yet to show a distinct injury caused, or threatened to be caused, by a particular Nassau County policy that Ryder enforced.  Plaintiff repeatedly admits that the existing harms that exist here exclusively come from the restrictions found in the NYS CCIA and the actions of the state in enforcing the sensitive locations provisions. (See Dkt. No.147-1, generally/ Dkt. No. 148-1).   He has failed to identify a single coherent policy, action of high-ranking official, least of which Commissioner Ryder, or custom attributed to Nassau County and its impact on his constitutional rights. (Id).  At best, Plaintiff's arguments establish that while Ryder acts as the State licensing official for firearms licenses issued in Nassau County, he has acted primarily acted entirely consistent with the NYS Penal Law.  Plaintiff Francis has entirely failed to establish that there is a real and tangible threat that Commissioner Ryder will take steps to criminally enforce the previously enjoined components of the licensing scheme here and has further failed to show a live case or controversy present between himself and Ryder.

Further, Francis cannot trace his alleged injuries to a Nassau County policy that Commissioner Ryder enforced.  For example, while Plaintiff claims that the "infringement of his ability to carry, should he choose to do so, is traceable to the CCIA and the states enforcement of it and he meets the standing requirement". (Dkt. 147-1 at p.27), he makes absolutely no attempt to establish undisputed material facts which establish that an actual Nassau County policy or actor is implicated in that alleged violation. (Id.).   Further, he makes no claim that he has been deterred

4

from the licensing process present in Nassau County, that the scheme would negatively affect him nor have Plaintiff's established through admissible evidence that Francis would be deterred from re-applying through Nassau County's firearms licenses scheme when his current license expires.

This is to say nothing of the fact that Plaintiff's claims as to the licensing schemes are entirely academic and speculative as to their impact. Plaintiff's counsel goes to great lengths to make the argument that his deposition testimony should be viewed as an "expression of the present" but then denies that it has any implication "as an expression of present intent for the future". (See Dkt. No. 148-1 at ¶¶9-10). Those statements are internally inconsistent, and merely a smokescreen for the reality that Mr. Francis spoke truthfully in relation to his true intent regarding the carrying of firearms in Nassau County, and beyond at his deposition. (See Francis Deposition at pp.65-66 (noting that Plaintiff Francis has no tangible future intent to carry firearms in Nassau County at any precise time in the future]).

For those reasons, as well as those argued in Ryder's initial briefs, Plaintiff lacks standing to assert a claim here against the Commissioner, and Ryder should be granted the relief he seeks." A controversy that is appropriate for judicial determination . . . must be definite and concrete, touching the legal relations of parties having adverse legal interests." In re Motors Liquidation Co., 829 F.3d 135, 168 (2d Cir. 2016) (quotation marks omitted). Without a case or controversy between adverse parties, a federal court does not have subject matter jurisdiction over an action. S. Jackson & Son, 24 F.3d at 431; see also Flast v. Cohen, 392 U.S. 83, 95, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968) (explaining that Article III's case-or-controversy requirement "limit[s] the business of federal courts to questions presented in an adversary context"). As previously argued, now that the parties have arrived at the summary judgment phase, it is quite clear that Plaintiff Francis lacks standing to pursue this claim as to the Nassau County Defendant because he cannot trace his

alleged harm to an enforcement action of Commissioner Ryder, or to any Nassau County local policy.

**(II)    The undisputed facts here show no free-standing municipal policy or local action that has expanded on the NYS licensing scheme**

Plaintiff's arguments against the sole Nassau County Defendant, Commissioner Ryder, if accepted would apply to any County in the State of New York without distinction from the facts at issue in this case.  In a desperate attempt to link Commissioner Ryder, Plaintiff stands on the unsupported position that because Ryder is "an officer being sued in his official capacity" it does not matter whether or not there is local policy in place that is driving the alleged constitutional violation in particular case.  Plaintiff is overreading the case law on the issue and disregards critical context.

It is the settled policy of the Second Circuit not to review the exercise of discretion by public officials in the enforcement of State statutes, in the absence of a clear [independent local] violation of some constitutional mandate." Vives v. City of New York, 524 F.3d 346, 354 (2d. Cir. 2008); see also Town of Castle Rock, Colo., v. Gonzales, 545 U.S. 748 (2005) (declining to find a property right in the enforcement of a restraining order in part because of "[t]he deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands").

A plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Keith v. Romain, 2026 U.S. Dist. LEXIS 45625, *12 (N.D.N.Y  Jan. 20, 2026 ); quoting Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020); quoting Iqbal, 556 U.S. at 676)); see also Davis v. Cnty. of Nassau, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005); quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)) (A "complaint must still allege particular *facts* indicating that an individual defendant was personally

6

involved in the deprivation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not suffice.")). Ryder's role as Police Commissioner is not "without more. . . [enough] to state a claim against him under Section 1983". See Tangreti, 983 F.3d at 618; Peck v. Cty. of Onondaga New York, 2021 U.S. Dist. LEXIS 157561 at *9 (N.D.N.Y. Aug. 20, 2021); quoting Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) ("A defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.")).

Plaintiffs have conceded that a municipality cannot be enjoined from implementing state law when it has no discretion over that implementation. (See Dkt. No.147-1 at p.63 [conceding the point]).  It is a fact that a municipality acts only through its officials and employees, and Plaintiff Francis must be able link a municipal policy to those municipal actors themselves for there to be a policy to sustain their damages claims against Ryder.  Ryder is not different from all of the County's in New York State that would be similarly "enjoined" if the licensing schemes of the CCIA were someday found to be unconstitutional. Even if Commissioner Ryder could hypothetically be enjoined from enforcing the CCIA following a declaration that the law is unconstitutional, such relief would not render the municipality constitutionally liable because the law was enacted by the State of New York, and the County had no role or agency. Vives, 524 F.3d at 354.  Plaintiffs have similarly failed to adduce admissible evidence to establish that Ryder has actually enforced the CCIA against him in a way that has tangibly impacted his constitutional rights. (See Dkt. No.147 & 148).

Under any of the methods of ascribing liability for a constitutional violation to a municipality, a plaintiff must also plausibly establish a direct causal link between the policy and the alleged injury. Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  Plaintiff all but concedes

that no local policy is driving the alleged constitutional harm here. (See Dkt. No 148-1, ¶¶15-16[ admitting that the Nassau County Policy does not expand upon the NYS law and that it is functionally equivalent]).   For these reasons, the claims against Ryder should similarly because he cannot be held liable for damages for enforcing a state law that was constitutional at the time that he acted.

**(III)    The Second Circuit has already had the opportunity to consider the licensing provisions at issue here in historical context and found the majority of them to be constitutionally sound:**

Plaintiff's conveniently overlook that the Second Circuit has had the opportunity to address several prior challenges to the facial constitutionality of the licensing schemes contemplated by Section 400 of the NYS Penal Law.   For the same reasons that have been discussed by the Second Circuit Court of appeals over the past twenty (20) months, the licensing schemes maintained by Commissioner Ryder are undoubtedly constitutional. See Antonyuk v. James, 120 F.4th 941 (2d Cir., October 24, 2024); see also Giambalvo v. Suffolk Cnty., 155 F.4th 163, 170 (2d. Cir., September 12, 2025).

In Antonyuk II, the Second Circuit had the opportunity to address the licensing requirements found within NYS Penal Law §400 in light of the United State Supreme Court's decision in United States v. Rahimi, 602 U.S. 680 (2024).  See Antonyuk v. James, 120 F.4th 941 (2d Cir., October 24, 2024).  The Court of Appeals considered the Plaintiff's challenges to the provisions of the NYS licensing scheme in the context of the historical development of the regulatory background of CCIA licensing provisions in NYS.  Antonyuk II, 120 F. 4th at 956-57. In so doing, it considered one of the primary licensing requirements  that  applicants for  both in-home and concealed-carry licenses must have "good moral character" to obtain a license. N.Y. Penal L. § 400.00(1)(b). Id.

8

The Court also discussed and analyzed the CCIA licensing requirements regarding in-person meeting with a licensing officer and disclosure requirements to the officer related to: (1) the "names and contact information for the applicant's current spouse, or domestic partner, any other adults residing in the applicant's home, including any adult children of the applicant, and whether or not there are minors residing, full time or part time, in the applicant's home"; (2) the "names and contact information of . . . four character references who can attest to the applicant's good moral character"; (3) a list of all former and current social media accounts from the preceding three years; and (4) such other information as the licensing officer may require "that is reasonably necessary and related to the review of the licensing application." *Id.*§ 400.00(1)(o)(i)-(ii), (iv)-(v). Id. at 957.    The Court went on to conduct an exhaustive analysis of the licensing scheme in NY in the context of the historical analysis required by the United States Supreme Court.  (Id. at 980-993).   In its decision the Second Circuit vacated a preliminary injunction issued by the District Court on most of the facial challenges to the licensing scheme, while upholding only that to the provision related to the disclosure of an applicant's social media history. Id. at 975-976.  It also found that, as *Bruen* explains, several similar licensing regimes in other states with criteria identical to New York's are *consistent* with its analysis and could likely survive facial Second Amendment challenges and vacated prior injunction related to them. Id. at 976.

Similarly, in Giambalvo v. Suffolk County, the Second Circuit had the opportunity to consider facial challenges to the CCIA and various provisions of the Suffolk County Police Department licensing scheme.  See 155 F. 4th 163, 170 (2d Cir. 2025).  Specifically, the challenges addressed (1) the "good moral character" requirement of NY Penal Law §400.00(1)(b) ; (2) the requirements that applicants meet with officers for an in person interview and that they submit certain information including the identity of those in  their households and other information

9

determined necessary under §400.00(1)(o) & (1)(o)(i)-(v); and (3) the requirement of an eighteen hour firearms training and subsequent live fire training under § 400.00(1)(o)(iii) and the policy related to waiting times for processes. Id. at 172.   Plaintiffs in Giambalvo moved for an injunction attempting to prevent the Suffolk County Police Department from enforcing these provisions.  Id. at 172-73.   In denying the motion the Second Circuit addressed several provisions of the licensing scheme at issue here and found Plaintiff's Second Amendment challenge unlikely to be meritorious.  Id. at 176-.   The Court first found that at least as it relates to the challenged social media provision of the NYS Penal Law, Giambalvo's challenge was essentially moot because the State of New York had already been enjoined from enforcement of the requirement and there was no evidence in the record that the County Defendant, or any individual sued in their official capacity, was enforcing that provision. Id.[2]

The Court in Giambalvo then went on to discuss the merits of the remaining challenges to the licensing scheme. Id at p.176-77.   In following the directives of the United States Supreme Court, the Second Circuit considered the history of the states and country as it related to firearm licensing schemes in the backdrop of the *Bruen* analysis. Id. at 177-79.   It first addressed the character reference requirement found in NYS Penal Law 400.00(1)(o)(ii) and found that it is likely constitutional. (Id. at p.180).   The Court noted that it "must [] be constitutional for the licensing authority to investigate the applicant's character," and it "follows that the State can [] require modest disclosures of information that are relevant to that investigation and that will make the (permissible) assessment of dangerousness more efficient and more accurate." Id.; Antonyuk II, 120 F.4th at 1001. It noted also that the character references requirement too is likely

---

[2]  Similarly, here, Plaintiff Francis has entirely failed to adduce any admissible evidence sufficient to show that Commissioner Ryder has been enforcing any part of the social media licensing scheme that was enjoined across the state.

constitutional because it eminently furthers the efficiency and accuracy of a licensing officer's character assessment. See Id;  Antonyuk v. Hochul, 639 F. Supp. 3d at 306 (finding five colonial "gun laws based on a reputation-based perception of an individual" and three other historical statutes "requiring an applicant to provide character references to be permitted to carry a gun," which together "constitute a historical tradition of firearm regulation based on reputation (for example, by a reasonable number of character references)").

In relation to the in-person interview requirements of the NYS Penal Law, the Court similarly found it likely to be constitutional.  See Giambalvo, 155 F. 4th at 180.  The court noted that the purpose of the interview process was to allow licensing officers the opportunity to assess an applicant's character face-to-face and assess the applicant's character and their potential dangerousness.  Id.  The Court relied on the State of New York's numerous regulations, spanning from the colonial era to Reconstruction, that similarly required individuals to appear in person for the governing authority to make similar assessments.  Id.  It noted that during the Founding era, at least six colonies (Massachusetts, Pennsylvania, Maryland, North Carolina, Virginia, and New York) required individuals suspected of disloyalty to appear in person to swear an oath before a justice of the peace or face disarmament. Id. at pp.180-181.   In finding the in-person interview component of the New York State CCIA constitutional the Court noted that it was relevantly similar, both in the how and why, to these established and representative gun regulations within our Nation's history and tradition, and denied the preliminary injunction aimed at those provisions accordingly.  Id. at 181.

Next in turning to the live firearm training and 18-hour training course mandated by the NYS Penal Law the Court noted that for Plaintiff's To succeed on a facial challenge, they must "establish that no set of circumstances exists under which the [challenged provision] would be

11

valid." Rahimi, 602 U.S. at 693 (internal quotation marks and citation omitted).  The Court noted that Plaintiff had not established that all training courses in NY are so costly as to be unconstitutional.  See Giambalvo, 155 F. 4th at 182.  The Second Circuit concluded that because at least some of the training courses being offered are not so prohibitively expensive so as to rise to a Second Amendment violation, the Applicants are unlikely to succeed on their facial challenge to the training requirement on this ground. Id.

Here, the licensing provisions at issue in summary judgement are the same as those considered by the Second Circuit in the cases above, which mirror the provisions of §400 of the NYS Penal Law.  (See Dkt. No.148-1 at p.20, ¶¶15-16).  The Nassau County licensing scheme does not require more than what is required by the NYS law provisions which were considered and heavily scrutinized by the Second Circuit in historical context.  (See Dkt. No. 148-1 at ¶16). It should be noted that Plaintiff Francis conducted almost no discovery in this matter as it relates to Commissioner Ryder and has presented no admissible evidence regarding the scope that these provisions have been enforced.  He certainly failed to present this Court with any evidence that the County is enforcing the sole provision of the licensing scheme which was enjoined: the social media component.  Nor could Mr. Francis make that show.  The record is clear that Francis never applied for a permit since 2021, nor has he established that such unconstitutional policy was in existence since, or that Plaintiff Francis has ever affected or aggrieved.  He cannot show that because he was not subject to those components at any point since the injunction regarding the social media component was put in place by the Second Circuit. (See Dkt. No. 148-1 at pp.16-20).

Ultimately, "classifying a lawsuit as facial or as-applied affects the extent to which the invalidity of the challenged law must be demonstrated. " Bucklew v. Precythe, 587 U.S. 119, 138, 139 S. Ct. 1112, 203 L. Ed. 2d 521 (2019). To mount a successful facial challenge, the

12

plaintiff "must 'establish that no set of circumstances exists under which the [law] would be valid,' or show that the law lacks 'a plainly legitimate sweep.'" Ams. for Prosperity Found. v. Bonta, 594 U.S. 595, 615, 141 S. Ct. 2373, 210 L. Ed. 2d 716 (2021).   In other words, "[a] facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications." Bucklew, 587 U.S. at 138; accord Cmty. Hous. Improvement Program v. City of New York, 59 F.4th 540, 548 (2d Cir. 2023). For this reason, facial challenges are "the most difficult to mount successfully." City of Los Angeles v. Patel, 576 U.S. 409, 415 (2015).

Plaintiff has not only failed to establish that the licensing schemes are unconstitutional in all its applications, but its arguments fly in the face of the existing Second Circuit precedent which have analyzed the same in light of the historical licensing schemes that have existed in the country. For those reasons, assuming that the Court does not accept Defendants other arguments, it should grant them summary judgement as to the facial challenge to the licensing scheme brought by Francis, and his co-Plaintiffs.  That is so because "for as long as licenses to carry concealed weapons have been issued in this country, the officials administering those systems have been tasked with making individualized assessments of each applicant". Antonyuk II, 20 F.4th at 989; See also Clayton E. Cramer & David B. Kopel, *Shall Issue: The New Wave of Concealed Handgun Permit Laws*, 62 TENN. L. REV. 679, 681 (1995) (noting that the first permitting statutes "were broadly discretionary; while the law might specify certain minimum standards for obtaining a permit, the decision whether a permit should be issued was not regulated by express statutory standards").  The Court should grant Commissioner the relief he seeks as the licensing schemes he maintains are consistent with the historical traditions of the United States.

## CONCLUSION

For the reasons stated above, and those in Commissioner Ryder's initial briefs, Plaintiffs' motion for summary judgment should be denied and the moving defendant's cross motion to

13

amend the answer and cross motion for summary judgment and for dismissal failure to state a claim granted dismissing this case should be granted with prejudice and on the merits, together with such other and further relief that the Cout deems just and proper.

Dated:  July 20, 2026

Respectfully submitted,

**GOLDBERG SEGALLA LLP**

Kevin M. Cannizzaro, Esq.
Jonathan M. Bernstein, Esq.
*Attorneys for Defendant*
*Patrick J. Ryder*
8 Southwoods Blvd., Suite 300
Albany, New York 12211
(518) 935-4240
kcannizzaro@goldbergsegalla.com
jbernstein@goldbergsegalla.com

TO:   **BRADLEY ARANT BOULT CUMMINGS**
James W. Porter, Esq.
*Attorneys for Plaintiff*
1819 Fifth Avenue North
Birmingham, AL 35203
(205) 521-8285
jporter@bradley.com

CC:   **OFFICE OF THE NEW YORK STATE ATTORNEY GENERAL**
Molly Thomas-Jensen, Esq.
James Thompson, Esq.
*Attorneys for Defendant*
*Steven G. James*
The Capitol
Albany, New York 12224
(518) 776-2581
molly.thomas-jensen@ag.ny.gov
james.thompson@ag.ny.gov

**SUFFOLK COUNTY ATTORNEY'S OFFICE**
Arlene S. Zwilling, Esq.
*Attorneys for Defendant*
*Rodney K. Harrison*

14

15

100 Veterans Memorial Hwy
Hauppauge, New York 11788
(631) 853-4055
arlene.zwilling@suffolkcountyny.gov